**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TEAM SYSTEMS INTERNATIONAL, LLC,[1]<br><br>Debtor. | ) <br> ) Chapter 11<br> )<br> ) Case No. 22-10066<br> )<br> )<br> ) |

**DECLARATION OF DEBORAH EVANS MOTT IN SUPPORT OF
DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY MOTION**

Deborah Evans Mott declares as follows:

1. I am Deborah Evans Mott, a member of Teams Systems International, LLC, a Delaware limited liability company, the debtor in the above-captioned bankruptcy case ("TSI" or the "Debtor"). On the date hereof, TSI commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). I am familiar with the day-to-day operations, business, and financial affairs of TSI and am authorized to make this declaration.

2. I submit this declaration (the "First Day Declaration") to provide the Court, creditors, and other parties in interest with an overview of the Debtor's business and to describe the circumstances compelling the commencement of this chapter 11 case. I also submit this Declaration in support of that certain motion filed by the Debtor contemporaneously herewith, or as soon as reasonably practicable hereafter, by which the Debtor seeks relief enabling it to continue its operation, minimize certain of the potential adverse effects of the commencement of this case and continued effects on its business, and preserve and maximize the value of the Debtor's estate.

---

[1] The Debtor in this chapter 11 cases has a last four digit federal tax ID of 8411. The location of the Debtor's service address in these chapter 11 cases is 16192 Coastal Highway Lewes, Delaware 19958.

I submit this First Day Declaration based on my own personal knowledge, except as expressly provided, and as my testimony, if called to testify.

## BACKGROUND

**A.     TSI's Business**

3.     TSI was formed in 2001 and is a Native American, woman-owned small business serving the United States government as a contractor with offices in Lewes, Delaware and Ponte Vedra Beach, Florida.

4.     For the past 20 years, TSI has performed government projects as a prime contractor and subcontractor in the areas of program management, financial and contracts management, tactical and specialized military training development, naval ordinance engineering, information systems design and integration, military firearms training, Department of State overseas foreign officer training, vehicle/weapons platform simulation, training center/classroom A/V system integration, force protection services, maritime security, and administrative staffing for government projects.  TSI was awarded the role of a prime contractor on the US Navy Seaport-E contract, as well as the Uniformed Services University DoD Training and Simulation $51M IDIQ MATOC.  TSI has contracted with numerous agencies, including the FBI, U.S. Army, U.S. Navy, U.S. Customs and Border Protection, and Defense Logistics Agency.  TSI follows all regulations of the National Industrial Security Program Operating Manual for sensitive contracts and cleared members, and maintains a cost accounting system that has been approved by the Defense Contract Audit Agency.

5.     TSI is owned and operated by the descendants of Commander Ernest E. Evans the first Native American Medal of Honor winner, awarded for his actions as the Captain of the U.S. Navy Destroyer Captain (USS Johnston) at the Battle of Leyte Gulf.

6. Ms. Mott, a descendent of Mr. Evans, is a member of TSI's Management Committee and majority shareholder. She received both undergraduate and graduate degrees from George Washington University in International Business/Economics and Finance/Accounting and, after graduate school, was appointed as a Foreign Service Officer and holds a personal security clearance. Ms. Mott has worked in project finance and managed overall contract administration and payments in support of government contracting for over 30 years. Ms. Mott previously managed the contracts administration and billing for over $56,000,000.00 worth of U.S. Army Corps of Engineers construction contracts at Ft. Lee Virginia and $7,500,000.00 worth of security staffing subcontracts for the U.S. Navy, Military Sealift Command.

7. Steven Acosta is also a member of TSI's Management Committee and is TSI's Tactical Training Director. Over the last decade, Mr. Acosta served on an Agency Anti-Terrorism Force Protection team in the Middle East, a Mobile Training Team, and served on Classified and Special Access programs run by a U.S. Intelligence Agency and the U.S. State Department. Throughout his career, Mr. Acosta routinely supervised operational risk mitigation planning, developed site assessment reports on the ground, and provided quick reaction force leadership and training for paramilitary units working in areas of operation for U.S. Central Intelligence Agency programs. Mr. Acosta has also deployed as part of an element for the Department of Defense as a fireteam small arms specialist attached to an Asymmetric Warfare Group. His duties included unit support with operational procedures, intelligence gathering, interviews of local nationals, and distribution of pertinent information to Special Operations Units that worked in tandem with his team on the ground. Mr. Acosta has worked as a security consultant for other government agencies and provided weapons/tactics instruction to both U.S. Personnel and local forces.

8. TSI is required to register in the US Government System for Award Management ("SAM") in order to serve as a US Contractor. All payments, for all agencies, are made by the US Treasury to the contractors bank account registered in SAM. All changes in SAM are reviewed and approved by the US CAGE office before taking effect. This review is currently taking up to 75 days, and that includes bank account information.

B. **Events Leading to TSI's Filing for Chapter 11 Relief**

9. TSI entered into a consulting agreement (the "Consulting Agreement with GPDEV, LLC, a California LLC ("GPDEV"), and Simons Explorations, Inc., a Colorado corporation doing business as Archangel International ("Simons"), for the procurement of a supply of bottled water from Niagara Bottling, LLC for TSI to sell to the federal government. TSI ultimately sold the water to the Federal Emergency Management Agency ("FEMA") for Hurricane Maria relief in 2017.

10. On September 21, 2018, GPDEV and Simons filed a complaint against TSI for declaratory relief in the United States District Court for the District of Florida, Case No. 18-cv-00442-RH-MAF (the "Florida Action").

11. After a trial conducted on August 23-25, 2021, a jury returned a verdict in the Florida Action awarding GPDEV $2,770,855 in damages and awarding Simons $2,483,722 in damages.

12. On September 28, 2021, the District Court entered an order directing entry of judgment on the verdict and entered a judgment against TSI awarding GPDEV $2,770,855 plus $527,140.32 in prejudgment interest, and awarding Simons $2,483,722 plus $464,358.46 in prejudgment interest, together with post-judgment interest (the "Judgment").

13. On October 18, 2021, TSI timely appealed the Judgment to the Court of Appeals for the Eleventh Circuit (the "Appeal").

14. GPDEV and Simons have since sought additional discovery from TSI, which TSI has not responded to. TSI expects GPDEV and Simons to seek a motion to show cause against it imminently.

15. Because of the Judgment against it, TSI is unable to bid on any additional government contracts.

16. TSI has sought the protections of chapter 11 to enable it to gain some breathing room while the Appeal proceeds, as well as provide the necessary time to enable it to collect on its contractual claims against FEMA. FEMA owes two payments to TSI, one in the amount of $13.5 million for nonpayment of TSI's invoice for FEMA's reduction in the initial ordered quantity of bottled water. That claim is pending before the U.S. Civilian Board of Contract Appeals. The parties have completed cross-motions for summary judgment and the Board is expected to issue a decision in approximately two-four months. Additionally, TSI intends to file an approximate $6.8 million change order claim pursuant to FAR 52.243 Changes Fixed Price. Once filed, FEMA is required to respond within 60 days.

17. This breathing spell will allow for the collection of proceeds from the FEMA claims on each of these claims, providing TSI the funds to resolve the Judgment, if necessary, and emerge from this chapter 11 case as a healthier enterprise, continuing to serve the United States as a reliable contractor to important government agencies.

C.  **Corporate Structure and Employees**

18.  TSI is organized as a Delaware limited liability company. The Management Committee is comprised of Mr. Acosta and Ms. Mott. There are two additional members – Christopher Mott and John Maciorowski.

19.  TSI does not have any employees.

D.  **Capital and Debt Structure**

20.  The Debtor's assets consist of approximately $164,000 in a bank account at Artisans' Bank, accounts receivable in an approximate amount of $1.1 million, and the two payment claims against FEMA totaling approximately $20.3 million. There is no secured debt or unsecured debt, with the exception TSI's disputed liabilities as a result of the Judgment.

E.  **Goals of this Chapter 11 Case**

21.  The Debtor commenced this case with the goal of preserving and maximizing the value of its assets and maximizing recoveries to its creditors. The Debtor possesses sufficient assets to administer this case without the need to borrow funds. The Debtor expects the breathing spell this case will provide should allow it to resolve the claims it has with FEMA and the Judgment in the Florida proceeding.

**EVIDENTIARY SUPPORT FOR FIRST DAY MOTION**

22.  Contemporaneously with the filing of this Declaration, the Debtor is filing a motion seeking entry of interim and final orders (i) authorizing the maintenance of its bank account at Artisans' Bank (the "Bank Account") and continued use of its business forms; (ii) authorizing, but not directing, the continued use of its existing cash management system (the "Cash Management System"); and (iii) providing any additional relief required in order to effectuate the foregoing. The Debtor also requests the right, in its discretion, to (i) pay any Bank Account related fees; and

(ii) close or otherwise modify the terms of the Bank Account and open new debtor in possession accounts as may be necessary to facilitate the chapter 11 case and its operations, or as may otherwise be necessary to comply with the requirements of any debtor in possession financing and/or cash collateral order entered in this case.

23. Further, the Debtor requests that the Court waive the requirements of Bankruptcy Code section 345(b) on an interim basis and permit the Debtor to maintain its deposits in the Bank Account in accordance with existing deposit practices until such time as the Debtor obtains this Court's approval to deviate from the guidelines imposed under Bankruptcy Code section 345(b) on a final basis. The Debtor's existing deposit practices are significantly less burdensome and more appropriately tailored to its business needs than the practices otherwise required under the Bankruptcy Code and by the U.S. Trustee Guidelines.

24. The continued use of the Cash Management System and the Bank Account during the pendency of this case is essential to the Debtor's business operations. The Debtor believes that the Bank Account and related Cash Management System mechanisms are well-suited to the Debtor's business needs and operations. To require the Debtor to close the Bank Account and reestablish a new account would not result in greater administrative controls and would require considerable time and expense to the Debtor's estate. Moreover, permitting the Debtor to continue using its existing Bank Account is essential to a smooth and orderly transition of the Debtor into chapter 11 and to avoid disruption of its business and operations, including the disruption that could result if checks written but not negotiated or cashed prior to the Petition Date were dishonored, as well as the delay and complications inherent with having to deal with the federal government to set up payments to a new account.

25. The Cash Management System is a practical mechanism that allows the Debtor to transfer its revenues to the payment of its obligations that decreases the burden on the Debtor, and that provides several important benefits, including the ability to: (i) control and monitor corporate funds; (ii) ensure cash availability; (iii) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate balance and presentment information. Moreover, continued operation of the Cash Management System is crucial to the Debtor's ongoing business operations.

26. Without the relief requested, I believe the Debtor would be unable to effectively and efficiently maintain its financial operations. Such a result would cause significant harm to the Debtor's business and the value of its estate. Accordingly, I believe that the relief requested is in the best interest of the Debtor, its estate and creditors, and all parties in interest.

## **CONCLUSION**

27. For the reasons described herein and in the First Day Motion, I believe that the Debtor will be able to reorganize successfully, provided that it obtains the relief it seeks in the First Day Motion. I therefore, respectfully request that the Court grant the relief requested in the First Day Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 18, 2022            */s/ Deborah Evans Mott*
                                                                                      Deborah Evans Mott