UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Team Systems International, LLC,<br><br>Debtor(s). | Chapter 11<br><br>Case No. 22-10066-CTG |

**GPDEV, LLC AND SIMONS EXPLORATION, INC.'S MOTION FOR ENTRY OF AN ORDER DISMISSING THIS CHAPTER 11 CASE WITH PREJUDICE**

GPDEV, LLC ("**GPDEV**"), and SIMONS EXPLORATION, INC. ("**Simons**"), by and through their undersigned counsel, hereby file this Motion for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to Sections 105(a) and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), dismissing this Chapter 11 case. In support, GPDEV and Simons respectfully state as follows:

**PRELIMINARY STATEMENT**

As set forth in more detail below, GPDEV and Simons submit that there is "cause" to dismiss the above-captioned chapter 11 bankruptcy case, including, but not limited to, the Debtor's bad faith. This bankruptcy filing does not serve a valid bankruptcy purpose, and was filed merely to obtain tactical litigation advantage. And, under the totality of the circumstances and consideration of the *Primestone* factors, dismissal for cause is warranted. *See Primestone Inv. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Inv. Partners L.P.)*, 272 B.R. 554, 557 (D. Del. 2002) ("In conducting their good faith inquiry, courts typically review the record for evidence of various factors: a. Single asset case; b. Few unsecured creditors; c. No ongoing business or employees; d. Petition filed on eve of foreclosure; e. Two party dispute which can be resolved in pending state court action; f. No cash or income; g. No pressure from non-moving

creditors; h. Previous bankruptcy petition; i. Prepetition conduct was improper; j. No possibility of reorganization; k. Debtor formed immediately prepetition; l. Debtor filed solely to create automatic stay; and m. Subjective intent of the debtor.").

## JURISDICTION

1. This court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012.

2. The Motion is a core matter within the meaning of 28 U.S.C. 157(b)(2).

3. Venue of the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested in this Motion are Section 105(a) and 1112(b) of the Bankruptcy Code.

## BACKGROUND

5. On January 18, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition with this Court under Chapter 11 of the Bankruptcy Code.

**I. GPDEV and Simons' Federal District Court Judgments Against the Debtor.**

6. GPDEV and Simons have Federal District Court judgments against the Debtor in a combined amount of over $6 million.

7. The judgments relate to a 2017 contract dispute between Creditors and the Debtor.

8. More specifically, in August of 2017, GPDEV and Simons entered a contract with TSI wherein GPDEV and Simons procured water vendors for TSI to sell to the U.S. Department of Homeland Security, Federal Emergency Management Agency, and other agencies.

9. Pursuant to the agreement (and as later determined by the jury) GPDEV and Simons were to receive twenty five percent (25%) of the net amounts of income TSI received from amounts invoiced to and paid to by the agencies and or customers for the sale and delivery of ordered Nestle and Niagara bottled water.

10. Shortly after the agreement was signed, Hurricane Maria hit Puerto Rico in September, 2017. As a result of Hurricane Maria, FEMA ordered approximately 12 million liters of bottled water from TSI.

11. TSI supplied the 12 million liters of bottled water to FEMA, (utilizing bottled water from vendors procured by GPDEV and Simons) but TSI did not pay GPDEV or Simons in accordance with the contract.

12. After TSI failed to pay the contracted amounts owed upon demand, GPDEV and Simons filed suit on September 21, 2018, in the United States District Court for the Northern District of Florida styled GPDEV, LLC and *Simons Exploration, Inc. v. Team Systems International, LLC* (Case No. 18-cv-00442-RH-MAF) (the "**TSI Lawsuit**").

13. The TSI Lawsuit was tried to a jury and the Court and resulted in a verdict in favor of GPDEV and Simons. In sum, the Jury determined that TSI had received net income (profit) from the sales of bottled water of $25,011,788, and had severely underpaid GPDEV and Simons.

14. GPDEV was awarded a Final Judgment against TSI on September 28, 2021 in the total amount of $3,297,995.32 together with post-judgment interest after August 25, 2021 as provided by law.

15. Simons was awarded a Final Judgment against TSI on September 28, 2021, in the total amount of $2,948,080.46 together with post-judgment interest after August 25, 2021 as provided by law.

16. Thereafter, the Debtor appealed.

## II. The Debtor's Failed Efforts to Obtain a Stay Pending Appeal.

17. TSI did not pay or post security pending appeal, but has made substantial efforts to otherwise obtain a stay pending appeal – all of which have failed.

18. More specifically, the District Court denied TSI's Motion(s) (initial and emergency) to stay discovery in aid of execution on November 8, 2021[1].

19. And, TSI also sought a stay pending appeal from the Eleventh Circuit Court of Appeals (Case No. 21-13662-AA) which was denied on January 10, 2022.

## III. The Debtor's Efforts to Evade Post-Judgment Discovery.

20. TSI has been egregiously uncooperative with GPDEV and Simons efforts to obtain post-judgment discovery in aid of execution[2].

21. On December 1, 2021, and December 20, 2021, TSI was compelled to provide post-judgment discovery in aid of execution to GPDEV and Simons on or before January 14, 2021.[3]

---

[1] The District Court Order denying stay explains that the risk of loss to GPDEV and Simons would be substantial if a stay were to be imposed. A True and Correct Copy of the District Court Order denying TSI's Motion for a Stay Pending Appeal, is attached hereto as **Exhibit B**.

[2] TSI filed a Motion with the District Court that claimed, "TSI's principal and its bookkeeper were both diagnosed with significantly symptomatic COVID cases…" However, when Ms. Mott testified before this Court she claimed that TSI has no bookkeeper. A True and Correct Copy of the TSI's Motion for Extension of Time to Comply with Court Orders is attached hereto as **Exhibit C**.

[3] True and Correct Copies of the GPDEV and Simons discovery requests in aid of execution (which have been pending since October 28, 2021) are attached hereto as **Composite Exhibit E**. TSI is attempting to evade providing true and complete responses to such requests and is forum shopping in an effort to avoid a Court where the Judge is familiar with TSI's troubling record of noncompliance with court rules, orders and discovery obligations.

22. TSI failed to comply with the Federal Court's Orders, resulting in the Court's issuance of an Order to Show Cause, as to why TSI and its principal, Deborah Mott, should not be held in civil contempt for failure to provide the required information by the January 14 deadline.  A True and Correct Copy of the Show Cause Order is attached hereto as **Exhibit D**.

23. The Show Cause Order required Ms. Mott to appear by telephone for the show cause hearing on January 24, 2022 at 9:00 A.M., and to supply the Court and address were, "if held in civil contempt at a later hearing, the 'principal' and Ms. Mott will be available to be taken into custody by the United States Marshals Service and held until the required information is provided." *Id*.

24. As set forth in more detail below, there is "cause" to dismiss the above-captioned chapter 11 bankruptcy case, including, but not limited to, the Debtor's bad faith.  This bankruptcy filing does not serve a valid bankruptcy purpose, and was filed merely to obtain tactical litigation advantage.  And, under the totality of the circumstances and consideration of the *Primestone* factors, dismissal for cause is warranted.

## RELIEF REQUESTED

By this Motion, GPDEV and Simons request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, pursuant to Sections 105(a) and 1112(b) of the Bankruptcy Code, dismissing this Chapter 11 Case for cause and with prejudice.

## BASIS FOR RELIEF

I. **Overview of Section 1112(b) of the Bankruptcy Code.**

Section 1112(b) of the Bankruptcy Code provides, in pertinent part, that:

> On request of a party in interest, and after notice and a hearing, the court <u>shall</u> convert a case under this chapter to a case under chapter 7 <u>or dismiss a case under this chapter</u>, whichever is in the best interests of creditors and the estate, for cause….

11 U.S.C. § 1112(b) ) (emphasis added).

Section 1112(b)(4) contains a non-exclusive list of scenarios that constitute "for cause. Although not explicitly within the statutory scheme, courts have interpreted the "for cause" provision in section 1112(b) to include filings made in bad faith. *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154 (3d Cir. 1999); *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108 (3d Cir. 2004); *In re Am. Capital Equip., LLC*, 296 Fed. Appx. 270 (3d Cir. 2008).

Chapter 11 vests petitioners with considerable powers--the automatic stay, the exclusive right to propose a reorganization plan, the discharge of debts, etc.--that can impose significant hardship on particular creditors. Debtors should not be given those powers if their motives are inconsistent with the goals of bankruptcy. See, *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154 (3d Cir. 1999).

A good faith inquiry is a "fact intensive" examination of the "totality of the circumstances" to determine "where a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154 (3d Cir. 1999); *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108 (3d Cir. 2004); *15375 Memorial Corp. v. BEPCO, LP (In re 15375 Mem'l Corp.)*, 589 F.3d 605 (3d Cir. 2009).

When a debtor's good faith is called into question, the debtor bears the burden of showing that its filing was made in good faith. *In re Tamecki, 229 F.3d 205, 207 (3d Cir. 2000)*; *NMSBPCSLDHB LP v. Integrated Telecom Express Inc. (In re Integrated Telecom Express Inc.)*, 384 F.3d 108, 118 (3d Cir. 2004).

The Third Circuit has identified two essential elements for a good faith bankruptcy filing. First, the bankruptcy petition must serve a valid bankruptcy purpose by preserving a going concern value or value that would otherwise be lost outside of bankruptcy. And second, the bankruptcy cannot be filed merely to obtain tactical litigation advantage. *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154 (3d Cir. 1999); *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108 (3d Cir. 2004); *15375 Memorial Corp. v. BEPCO, LP (In re 15375 Mem'l Corp.)*, 589 F.3d 605 (3d Cir. 2009). Here, both inquiries compel dismissal of the Debtor's case.

Additionally, courts within the Third Circuit have also considered the following factors (collectively referred to as the "**Primestone factors**"): "a. Single asset case; b. Few unsecured creditors; c. No ongoing business or employees; d. Petition filed on eve of foreclosure; e. Two party dispute which can be resolved in pending state court action; f. No cash or income; g. No pressure from non-moving creditors; h. Previous bankruptcy petition; i. Prepetition conduct was improper; j. No possibility of reorganization; k. Debtor formed immediately prepetition; l. Debtor filed solely to create automatic stay; and m. Subjective intent of the debtor." *See Primestone Inv. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Inv. Partners L.P.)*, 272 B.R. 554, 557 (D. Del. 2002).

II. **This Bankruptcy Case Does Not Serve a Valid Bankruptcy Purpose.**

GPDEV and Simons submit that the alleged receivables set forth on the Debtor's schedule A/B are illusory, and the Debtor's sole purpose in filing this bankruptcy case was to obtain a tactical litigation advantage. More specifically, the Debtor seeks a stay pending appeal, after already twice being denied such stay by both the Florida District Court and 11th Circuit Court of Appeals.

**III.     The Debtor Filed This Case Solely to Obtain a Tactical Litigation Advantage.**

By its own admissions in the *Declaration of Deborah Evans Mott in Support of Debtor's Chapter 11 Petition and First Day Motion* (D.I. 3), TSI is a company that historically operated as a government contractor, but no longer able to bid on any additional government contracts due to the Final Judgments against it held by GPDEV and Simons. Mott Declaration at ¶ 15. TSI has no employees. Mott Declaration ¶ 19. TSI's sole asset appears to consist of $164,000 in a bank account at Artisans' Bank[4], and alleged "accounts receivable" which GPDEV and Simons believe are dubious, at best. Mott Declaration, ¶ 20. The Debtor's Schedule A/B (D.I. 28) filed on January 26, 2022, list no real or personal property, $119,000 in Accounts Receivable within the last 90 days, and $21,37,000.00 in "Over 90 days old" accounts receivable that GPDEV and Simons believe are entirely illegitimate. As will be discussed below, its largest accounts receivable claim of $13,500,000 against was denied by FEMA because it was an illegitimate claim for "restocking fees" for bottled water never ordered or stocked. TSI has no other creditors than GPDEV and Simons. Mott Declaration *Id*. The Debtor has no true ongoing business or employees[5].

The Debtors Schedule D fails to list GPDEV or Simons as Secured Creditors despite the existence of their final recorded judgments. See Schedule D (D.I. 28, p. 6). The Debtor's Schedule F/F (D.I. 28. P. 7-8) lists only 7 debts. Moreover, the debts owed to GPDEV and

---

[4] GPDEV and Simons believe TSI swept its operating bank account of funds in order to evade a writ of execution. FEMA paid TSI $37,579,577.37 for the supply of Nestle and Niagara water to Puerto Rico. A True and Correct Copy of Trial Exhibit 20 A-1, is attached hereto as **Exhibit F**. TSI made $25,011,787 in profit for the sale and delivery of bottled water for Hurricane Maria relief. When the TSI operating account that collected the $37,579,577.37 was garnished, the remaining funds in the account were $0.00. A True and Correct Copy of the Response of Garnishee PNC Bank, N.A., to Writ of Garnishment is attached hereto as **Exhibit G**. TSI claims that its assets include a $164,000.00 account at Artisans' Bank. Ms. Mott testified before this Court that the PNC account was swept and the Artisans' Bank account was created after the jury verdict was rendered on August 25, 2021.

[5] Mr. Acosta with TSI testified (before the jury verdict was entered) that the TSI Lawsuit prevented TSI from engaging in other business opportunities. Acosta Deposition p. 17: 9-15; p. 48: 8-11. A True and Correct Copy of the June 8, 2021, Deposition of Steven Acosta is attached hereto as **Exhibit H**.

Simons are improperly scheduled as "contingent" "disputed" and "unliquidated" unsecured claims, despite the fact that they are Final Judgments entered more than 90 days ago. Aside from GPDEV and Simons, three of the seven listed unsecured creditors are law firms each allegedly owed small amounts of money, and each of whom are listed in the Debtor's Statement of Financial Affairs (D.I. 29, p. 1-2) as having received what appear to be avoidable preferential payments within the 90 days prior to the bankruptcy filing. The only remaining listed creditor is Lindsay Blee Americas, LLC, with a debt of $96,431.00 magically coming into existence within days of the return of the jury verdict in the District Court litigation. See Schedule E/F (D.E. 28, p. 1) (noting the "Lindsey Blee Debt" being incurred on August 31, 2021).

Debtor's Statement of Financial Affairs (D.I. 29, p. 5), at part 10, asked TSI if it closed accounts in the past year, but TSI's answer (none) conflicts with Ms. Mott's testimony to this Court (TSI's PNC bank account closed jury verdict). Additionally, after the Judgment was entered, TSI used funds from the account that was garnished to pay $192,000 in attorneys' fees. (D.I. 29, p. 2).

Additionally, beyond the facts set forth in TSI's declaration, the record in the District Court litigation shows that after this lawsuit was filed in 2018, TSI's members created multiple alter ego entities called "Galleon Logistics"[6], "Team Systems International Southeast"[7], "Team Systems International Agency II, LLC"[8], "Addy Road LLC"[9], and "CXD Industries LLC".[10]

---

[6] See **Exhibit H**, Steven Acosta Deposition p. 17: 4-8;

[7] A True and Correct Copy of the Electronic Articles of Incorporation for Team Systems International Southeast, a Florida Limited Liability Company, (signed April 15, 2021 by Deborah Mott), and a change in registered agent on November 16, 2021 is attached hereto as **Exhibit I**.

[8] A True and Correct Copy of the Electronic Articles of Incorporation for Team Systems International Agency II, LLC, a Florida Limited Liability Company, (signed on November 7, 2018 by Christopher Mott) is attached hereto as **Exhibit J**.

[9] A True and Correct Copy of the Electronic Articles of Incorporation for Addy Road, a Florida Limited Liability Company, (signed May 31, 2019 by Deborah Mott) and the 2020 and 2021 annual report is attached hereto as **Exhibit K**.

TSI appears to be a substantially non-operational entity whose only business is defense of collections activities by GPDEV and Simons to thwart their efforts to obtain satisfaction of the Final Judgment. Any future business TSI's members are able to obtain will have to flow through different business entities as they claim they admit in their First Day Declaration (noting that TSI can do no further contracting due to the existence of the Judgments). Upon information and belief, TSI has been pilfered by its members and an empty shell entity has been left behind.

By its own admission TSI has not responded to <u>any</u> of GPDEV or Simons' post-judgment discovery requests despite numerous Orders compelling TSI and Deborah Mott's compliance. TSI has no employees or legitimate business expenses and appears to solely be in the business of attempting to thwart GPDEV and Simons collection efforts.

In *In re Derma Pen, LLC*, Case No. 14-11894 (KJC), 2014 WL 7269762, at *9 (Bankr. D. Del. Dec. 19, 2004), the Court dismissed the debtor's case for lack of good faith because it was filed as a litigation tactic. Prior to the filing of bankruptcy, the debtor was engaged in contentious litigation with its contractual counterparties over contract and trademark disputes, which were resolved in favor of the creditors adversely to the Debtor. The Court found that there was "no indication that the Debtor's operations were suffering from financial distress" because (1) of the Debtor's 26 listed unsecured creditors only 9 were owed in excess of $5,000, and (ii) and of the total debt, approximately 12.4% was owed to insiders. The court determined that "the lack of facts demonstrating that Derma Pen was in financial distress at the time" of the filing indicated that the Debtor filed the bankruptcy case in an "improper attempt" to "disrupt the litigation process."

---

[10] A True and Correct Copy of the Electronic Articles of Incorporation for CXD Industries, a Florida Limited Liability Company, (signed on June 16, 2020 by Christopher Mott) and SAM.gov entity certification for CXD industries is attached hereto as **Exhibit L**. On the SAM.gov document at 2, CXD lists NAICS codes (for fuel and petroleum products--- which is TSI's business).

Here, the facts are far more egregious. TSI filed this case after its (i) repeated non-compliance with Judge Hinkle's Orders for it to comply with post-judgment discovery; (2) after the District Court and Eleventh Circuit Court of Appeals had both denied a stay of execution pending appeal; and (3) on the eve of a hearing wherein Judge Hinkle had ordered the Debtor's principal, Deborah Mott to appear and show cause as to why she should not be taken into custody by the United States Marshals Service for failure to comply with post-judgment discovery.

## IV.  This is a Single Asset Case.

The Debtor appears to have a single asset, its $164,000 in cash remaining in its bank account. TSI also claims that it filed an account receivable from a lawsuit against FEMA (filed on July 20, 2021). TSI claims that FEMA owes it $13,504,320.00 restocking fee on water it never purchased and thus incurred no expense whatsoever (after it already made a $25,000,000.00 profit from the sale of bottled water). FEMA rejected this argument.[11] There is no reason to believe that TSI's Civilian Contract Appeals Board Claim will be successful. This claim is illusory at best. TSI has given no explanation for its other alleged accounts receivable which are likely similarly dubious, at best. TSI also has no other real or personal property or employees. *See* Schedule A/B (D.E. 28).

Upon information and belief, TSI's members have formed other businesses that ostensibly will conduct the same business as TSI. GPDEV and Simons should be permitted to secure their judgment by moving after the fraudulent transfers that surely took place utilizing the proceedings supplementary statute and Florida law, which provide substantial advantages to creditors in the matter. See Fla. State. § 56.29 (among other things shifting the burden to the Debtors to swiftly appear within 7 days of an affidavit identifying assets or transfers, requiring

---

[11] A True and Correct Copy of the FEMA's April 30, 2021 letter to TSI is attached hereto as **Exhibit Y**.

the Debtors to carry the burden to disprove the existence of fraudulent transfers, and awarding attorneys' fees for the collections effort).

V. **There are Few Unsecured Creditors.**

The Debtor has no legitimate unsecured creditors. Other than its attorneys (either the attorneys engaged at trial or appeal against GPDEV and Simons or attorneys engaged in TSI's recent claim against FEMA), who each received substantial pre-petition payments within 90 days of the bankruptcy filing, the Debtor lists only two trade creditors.

TSI lists an entity named Lindsey Blee Americas LLC as a creditor with a debt of $96,431.00 incurred on August 31, 2021. This debt was incurred only 4 business days after the jury rendered its verdict in the TSI Litigation. Lindsey Blee Americas LLC is operated by John Canal, who operated a different entity, Coakley Logistics, which was found at trial to have received in excess of $1,000,000 for work never performed. This is a claim that is dubious and requires documentation and proof before it may be accepted.

Plaintiffs each have a secured judgment, despite TSI's claim to the contrary, and this the quintessential two party dispute where the Debtor is seeking to use the bankruptcy process to frustrate ongoing collections activities.

VI. **The Debtor has no True Ongoing Business or Employees.**

The Debtor has no true ongoing business or employees. The Declaration of Deborah Mott clearly stated that it has no employees. Indeed, TSI's members have moved on to other business enterprises in the same field, as they continue to take payments from the Debtor's accounts.

VII. **The Petition was Filed on the Eve of Civil Contempt Sanctions Being Issued Against the Debtor and its Principal.**

The Debtor filed the petition on the eve of the District Court holding a show cause hearing in which Ms. Mott was to be taken into custody by the U.S. Marshals Service for

egregious failures to comply with post-judgment discovery.  It should not be lost on this Court that TSI filed a document with the District Court claiming, "TSI's principal and its bookkeeper were both diagnosed with significantly symptomatic COVID cases…" See, **Exhibit C**.  However, when Ms. Mott testified before this Court she claimed that TSI has no bookkeeper. This bankruptcy filing was done to frustrate the Court's Orders.  Judge Hinkle demanded proof of such claim, none has been provided.

Moreover, per Doc. 29 at 11.1 on page 4, the Robinson + Cole firm was paid $50,000.00 on January 14, 2021--- the deadline imposed by Judge Hinkle for the production of records in aid of execution.  TSI's claim that "Principal" and "Bookkeeper" had Covid appears to be yet another attempted a fraud on the court. See also **Exhibit D**.  Despite the Debtor having more than 115 days to provide the requested post-judgment discovery, not a single thing has been produced.  And the Debtors have inconsistently lied in the last month either to the District Court or this Bankruptcy Court or both about the existence of there being a "bookkeeper".  It is believed that no efforts were made to gather the information demanded by GPDEV, Simons, and Judge Hinkle.  TSI filed this bankruptcy solely to obtain the stay that the District Court and the 11th Circuit denied.

**VIII.    This Bankruptcy is Premised Upon a Two-Party Dispute That Can be Resolved by the Pending Florida Litigation.**

The Debtor admits to having no other secured or unsecured creditors (see Mott Affidavit (D.E. 3 at ¶ 20)), and the 6 or 7 claims listed in the Debtor's 20 largest unsecured creditors and Schedule E/F appear to be illegitimate.  4 of the 6 are attorneys prosecuting appeals for the Debtor.  The remaining 2 "trade creditors" are fictional, one being a party found at trial to have received in excess of $1,000,000 for not performing any work, and the other a claim for $5,000 or less for medical expenses ostensibly for Deborah Mott.  Moreover the trade debt allegedly

owed to Lindsey Blee was incurred only a few days after trial in the District Court action, and the contact information for Lindsey Blee in the 20-largest list is the same individual found at trial to have received in excess of $1,000,000 for no work.

IX.     **The Debtor has No Cash or Income.**

The Debtor has no cash or income to speak of, and is simply delaying collection in the hopes of somehow running out the statute of limitations for distributions of the $25,000,000.00 in net income it received from the sales of bottled water.

X.      **The Debtor is Under no Pressure from Non-Moving Creditors.**

In this case, GPDEV and Simons are the only legitimate creditors of the Debtor. The issues of its fraudulent transfers can be effectively resolved in the District Court pursuant to Florida's powerful proceedings supplementary laws which enable the court to dispense swift justice to the dishonest judgment debtor.

XI.     **The Debtor Engaged in Improper Pre-Petition Conduct.**

The Debtor engaged in egregious pre-petition misconduct, ignoring multiple Orders of the District Court to supply information in aid of discovery and in discovery itself in the TSI Litigation. On numerous occasions TSI has filed documents that are not authentic, made false claims concerning the litigation and stonewalled time after time to prevent Simons and GPDEV from being able to obtain their judgment and then to prevent them from collecting on it.

During litigation before the District Court, the Debtor attempted to cover up its income and expenses. Debtor produced spreadsheets claiming $27,303,597.17 payments from FEMA when it was paid $37,579,577.37. TSI also claimed millions of dollars in other false expenses.[12]

---

[12] True and correct copies of ECF 105 (Plaintiff's Motion to Compel Records Production) including exhibits (documenting TSI's false claim of $27,303,597.17 as "Total Amount Received to Date by TSI from FEMA under MATOC", from the TSI Lawsuit are attached hereto as **Exhibit M.**

The Court explained: "[T]he defendant provided a false or at least incomplete summary and refused to produce documents as required not just in response to a production request but in response to an earlier order compelling production."[13] (**Exhibit O** at 5).

After these events occurred, TSI again produced documents claiming millions of dollars in expenses. Plaintiffs again argued that the records were inauthentic.[14] Judge Hinkle issued an order that found, "The plaintiffs moved for an evidentiary hearing to establish that the documents were fraudulent. The plaintiffs made a strong showing that something was amiss. At a nonevidentary hearing on the motion on April 27, 2021, defendant announced it would not contest revenue and expenses..." (related to delivery of bottled water in containers).[15] The documents in question were "withdrawn" by TSI.[16] At trial, during an attorney conference, the trial court explained, "If the defense provided untrue information -- I don't know whether that happened or not, but I do know that the plaintiffs have made a pretty good showing in some of the earlier papers that the defense provided untrue information. If that happened and they can prove it, then that's part of the proof."[17] The Court further ruled that TSI's expert witness, Mr. Schneider with KPMG could be cross examined concerning the false documents, Judge Hinkle explained, "This is not extraneous. This is not an extraneous false statement that just goes to impeachment. This is the merits of the case."[18]

---

[13] A true and correct copy of Judge Hinkle's April 9, 2020 Order (ECF 133) concerning "TSI's false or at least incomplete summary" from the TSI Lawsuit is attached hereto as **Exhibit O**.

[14] A true and correct copy of ECF 230, GPDEV and Simons, March 30, 2021, Motion for Evidentiary Hearing to Establish a Fraud on the Court, Sanctions Against Defendant, TSI and to Strike Newly Produced Documents from the TSI Lawsuit is attached hereto as **Exhibit P**.

[15] A true and correct copy of ECF 243, Judge Hinkle's May 8, 2021 Order Addressing Late and Incomplete Document Production from the TSI Lawsuit is attached hereto as **Exhibit Q**.

[16] True and correct copies of ECF 123 (Defendant's Response to Plaintiffs' Motion to Compel and Notice of Withdrawal of Ex. 1) and ECF 180 (Defendant's Notice of Clarification), from the TSI Lawsuit is attached hereto as **Exhibit R**. See also **Exhibit Q**.

[17] A true and correct copy of the trial transcript, volume III from the TSI Lawsuit is attached hereto as **Exhibit S**. See **Exhibit S**, p. 434:13-22.

[18] **Exhibit S** at p. 435:1-3.

Counsel for Simons and GPDEV explained to the Court, "…the documents that we believe show a false claim for receipts of 27 million instead of 37 million and then false claims of expenses, all of that is fair game for cross under that circumstance."[19] The Trial Court agreed, stating, "…for cross it's fair game, it seems to me."[20] Ultimately the witness who would have been cross examined on these points (Christopher Schneider of KPMG, TSI's expert witness in accounting), did not testify at trial.

Earlier in the case, when TSI challenged diversity jurisdiction, Judge Hinkle found:

> [T]he defendant has proffered a curious document it says was a resolution making Mr. Acosta a member. It is more likely than not that the document was created after the jurisdictional issue arose and is not authentic.[21] (**Exhibit T** at 4-5).

XII.    **The Debtor's Schedules and SOFA are Inaccurate**

TSI has also made false or incomplete filings before *this* court. TSI's Statement of Financial Affairs for Non-Individuals for Bankruptcy, (Doc. 29 at 3, item 4), asks, for a list of payments or transfers. TSI lists Christopher Mott as an insider at item 4.1. TSI lists the total value of the transfers at $42,352.00. TSI lists dates of the transfers with dates in March, June, July and August 2021. But, because payments on the app Venmo are public, GPDEV and Simons are aware of additional payments to Christopher Mott (who is also known as "Chris Mott"). On September 11, 2021, Steven Acosta (a member of TSI) made a Venmo payment to Chris Mott for "*TSI expenses*". Deborah Mott paid Chris Mott in Venmo payments on at least 12 occasions for items including a "monthly draw", "draw", "expenses".[22] The amounts of the payments are not available on Venmo, but this certainly should have been disclosed. As outlined

---

[19] **Exhibit S** at 437:12-15.
[20] **Exhibit S** at 437:16-17.
[21] A true and correct copy of the ECF 58, Judge Hinkle's March 15, 2019, "Order Denying the Motions to Dismiss and Transfer" from the TSI Lawsuit is attached hereto as **Exhibit T**.
[22] A true and correct copy of the a photograph of Venmo app. payments (taken by Mr. Peterson, who will testify in support of this motion for GPDEV) is attached hereto as **Exhibit U**.

herein, TSI pattern of obfuscation and disrespect for the judicial process that cannot be countenanced.

On Official Form 206E/F, Schedule E/F: Creditors who have unsecured claims at part 3.4, TSI lists an entity named Lindsey Blee Americas LLC with a debt of $96,431.00 incurred on August 31, 2021 (4 business days after the jury rendered its verdict in the TSI Litigation). On TSI's first day filing (Doc. 1 at 10), TSI listed John Canal as the contact person of Lindsey Blee USA.

Mr. Canal's business Coakley Logistics, LLC was paid more than a million dollars by TSI for two invoices that simply stated, "Logistics services and consulting for FEMA Bottled Water relief efforts for Hurricane Maria to Puerto Rico". In the TSI litigation, the jury rejected these expenses (for $448,000.34 and $588,000.00).[23]

With regard to Mr. Canal, the United States Bankruptcy Court for the Middle District of Florida [24], found that John Canal and others [25] breached their fiduciary duties, received preferential and constructively fraudulent transfers of assets from the Debtors. The $1,036,000.34 paid by TSI (in December 2017 and April 2018) to Coakley Logistics was available for Mr. Canal to use as settlement proceeds in his bankruptcy case, with a $1,350,000.00 payment to the trustee to resolve the bankruptcy matter. Aside from TSI's attorneys involved either in the TSI Litigation, its appeal or TSI's recently filed claim against FEMA, Linsey Blee is its only creditor.

---

[23] A true and correct copy of the TSI Lawsuit, Defendants Trial Exhibits I-13 (Coakley Logistics, LLC's December 1, 2017 invoice to TSI for $448,000.34) and I-14 (Coakley Logistics, LLC's April 15, 2018 invoice for $588,000.00) is attached hereto as **Exhibit V**. Additionally, Coakley Logistics is located at 1110 Douglas Avenue, Altamonte Springs, Fl., which is the same address as used by claimed creditor Lindsey Blee USA, See D.I. 1, p 10, and Christopher Mott's CXD Industries see **Exhibit L**.

[24] A true and correct copy of the Settlement Agreement attached to Amended Motion to Approve Settlement Agreement in re Bunkers International Corp., Case 6:15-bk-07397-CCJ, Doc 583, filed August 5, 2019, is attached hereto as **Exhibit W**.

[25] Alfred Canal, as well as others including Maria Canal, Lanac Investments, LLC; Bunkers International, LLC; Americas Bunkering, LLC; Bunkers International Supply & Trading, LLC.

**XIII.**     **The Debtor has No Legitimate Possibility of Reorganization**

The Debtor appears to have no legitimate possibility of reorganization and no assets or income to fund a feasible plan of reorganization. The alleged "receivables" it claims will fund full payment for creditors appear to be patently frivolous. Further, it is exceedingly unlikely that the Debtor can prevail in its appeal of the GPDEV and Simons Judgment, where the Debtor used false documents and failed to put up its own expert at trial.

**XIV.**     **The Debtor Moved Funds and Closed Bank Accounts on the Eve of Filing for Bankruptcy**

While the Debtor was not formed immediately pre-petition, it is believed that it closed its PNC Bank accounts and move all then remaining funds to Delaware state banks that receive some level of exemption garnishment actions. Other than the bank account, it is believed that the Debtor has no other assets or operations in Delaware.

**XV.**     **The Debtor Filed Bankruptcy Solely to Create an Automatic Stay**

The Debtor admits it filed this case only because it was unable to obtain a stay of execution from the District Court or Eleventh Circuit Court of Appeals. The Debtor filed this case solely in the hopes of obtaining a stay when it has no legitimate ability to formulate a plan.

**XVI.**     **The Debtor Filed for Bankruptcy Solely with the Intent to Frustrate GPDEV and Simons' Collection Efforts**

As is well documented in this Motion, TSI's intent is to frustrate collections activities. Mr. Simons will testify that TSI has foreign contacts and concerning the potential for TSI's fraudulent transfers to have been taken off shore. That members of TSI has relationships with banking institutions in foreign jurisdictions and that the stay imposed by the bankruptcy court may ultimately frustrate collections activities.

Its sole motivation in filing this suit appears to have been to obtain a delay in execution

until the statute of limitations had passed for transfers made from the entity of the more than $25 million in net proceeds that were determined at trial to exist with respect to the bottled water contracts with GPDEV and Simons.  FEMA paid TSI on the following dates:  1.) November 29, 2017 ($18,338,823.00); 2) February 8, 2018 ($7,297,500.00); 3.) April 6, 2018 ($7,297,500.00); 4.) May 21, 2019 ($4,645,725.00)[26].  Further delay could implicate Plaintiffs efforts to recover damages for fraudulent transfers.  Additionally, Mr. Simons will testify that Chris Mott told him that he and his partners have a bank account in the Cayman Islands.

## CONCLUSION

In sum, there is "cause" to dismiss the above-captioned chapter 11 bankruptcy case, including, but not limited to, the Debtor's bad faith.  This bankruptcy filing does not serve a valid bankruptcy purpose, and was filed merely to obtain tactical litigation advantage.  And, under the totality of the circumstances and consideration of the *Primestone* factors, dismissal for cause is warranted.

In *In re 15375 Mem'l Corp.*, 589 F.3d at 626, the Third Circuit affirmed the District Court's decision to dismiss a bankruptcy case for lack of good faith because the case was primarily filed as a litigation tactic. The Court found that the Debtors filed their petitions in bad faith to gain a tactical advantage for themselves and the non-debtor shareholders starting down the barrel of alter-ego claims against the debtors' sole shareholder.

Here, there is no indication that the Debtor's financial operations are suffering from financial distress.  As proven at trial, TSI made more than $25 million in net income from the sale of bottled water to FEMA, enabled by GPDEV and Simons.  But for gross mismanagement,

---

[26] A true and correct copy of the ECF 305, Judge Hikle's September 28, 2021, Order of Entry of Judgment from the TSI Lawsuit is attached hereto as **Exhibit X.**  See, Exhibit X at 6.

<u>fraud</u>, or <u>fraudulent transfers</u>, TSI would have more than sufficient operating capital to continue its business and operations.

WHEREFORE, GPDEV and Simons respectfully request that the Court dismiss this case with prejudice pursuant to Sections 105(a) and 1112(b) of the Bankruptcy Code.

Dated: January 27, 2022			KASEN & KASEN, P.C.

					<u>/s/ Jenny R. Kasen</u>
					Jenny R. Kasen, Esquire (DE Bar No. 5849)
					The Brandywine Building
					1000 N. West Street, Suite 1200
					Wilmington, DE 19801
					Telephone: (302) 652-3300
					Facsimile: (856) 424-7565
					E-Mail: jkasen@kasenlaw.com

						-and-

					MICHAEL H. MOODY LAW, P.A.

					<u>/s/ Michael H. Moody</u>
					Michael Moody, Esq.
					1881-A Northwood Center Blvd
					Tallahassee, FL 32303
					Telephone: (850) 739-6970
					E-Mail: Michael.Moody@michaelhmoodylaw.com

					*Counsel to GPDEV, LLC and*
					*SIMONS EXPLORATION, INC.*