### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ○

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
|  | : | Case No. 22-10066-CTG |
| TEAM SYSTEMS INTERNATIONAL, LLC,[1] | : |  |
|  | : | **Hearing Date: March 9, 2022, at 9:00 a.m.** |
| Debtor. | : | **Obj. Deadline: March 2, 2022, by 4:00 p.m.** |
|  | : |  |
|  | : | **Re: D.I. 41 and 99.** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - 

### REPLY OF THE UNITED STATES TRUSTEE TO THE MOTION OF GPDEV, LLC AND SIMONS EXPLORATION, INC. FOR ENTRY OF AN ORDER DISMISSING THIS CHAPTER 11 CASE WITH PREJUDICE, THE ORDER TO SHOW CAUSE WHY THIS CHAPTER 11 CASE SHOULD NOT BE DISMISSED OR CONVERTED AND THE UNITED STATES TRUSTEE'S CROSS-MOTION FOR DISMISSAL OF THE CHAPTER 11 CASE, OR IN THE ALTERNATIVE FOR CONVERSION OF THE CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7

Andrew R. Vara, the United States Trustee for Regions 3 & 9 (the "U.S. Trustee"), through his undersigned counsel, respectfully replies to the Motion of GPDEV, LLC and Simons Exploration, Inc.'s for Entry of an Order Dismissing this Chapter 11 Case with Prejudice ("Dismissal Motion"), this Court's Order to Show Cause ("Order to Show Cause") and cross-moves for the Dismissal of the Chapter 11 Case, or in the Alternative for Conversion of the Chapter 11 Case to a Case Under Chapter 7 (the "Reply and Cross-Motion"), and respectfully states as follows:

### PRELIMINARY STATEMENT

1.      Team Systems International, LLC ("TSI" or the "Debtor") currently lacks counsel (D.I. 92) and is thus unable to proceed further with its bankruptcy case.  While such a deficiency might theoretically be cured, progress in this bankruptcy case is stymied until counsel is

---

[1] The Debtor in this chapter 11 case has a last four digit federal tax ID of 8411.  The location of the Debtor's service address in this chapter 11 case is 16192 Coastal Highway Lewes, Delaware 19958.

obtained.  The United States Trustee could not even conduct a meaningful section 341 meeting

of creditors so as to examine the Debtor's financial affairs.  Given the available information,

however, this case appears to be primarily a two-party dispute with few creditors, few real assets,

no meaningful ongoing business, no employees, and with little if any pressure from other

creditors.

2.      Subsequent to the entry of a September 28, 2021, judgment[2] (the "Judgment")

against TSI by GPDEV, LLC ("GPDEV") and Simons Explorations, Inc., d/b/a Archangel

International ("Simons"), the Debtor failed to obtain a stay pending appeal and failed to comply

with certain post-judgment discovery requests and the Debtor appears to have filed this chapter

11 case to reap the benefit of the automatic stay of GPDEV's and Simon's post-judgment

execution.  In the meantime, while the automatic stay is in effect, the Debtor intends to pursue its

appeal of the Judgment before the 11th Circuit Court of Appeals (the "Appeal") without having to

post a bond or security, thus gaining a tactical advantage vis-à-vis the Judgment and the Appeal.[3]

Therefore, under the facts and circumstances, the Debtor appears to have filed this case in bad

faith under 11 U.S.C. § 1112(b) warranting dismissal of this case.

3.      Alternatively, conversion to a chapter 7 proceeding may be appropriate in the

event the Court determines that the Debtor retains ownership over assets that may be liquidated.

---

[2] On September 28, 2021, U.S. District Court entered a judgment against the Debtor in excess of $6.246 million inclusive of interest described below.  Mott Declaration at ¶ 12.

[3] See, the Debtors Motion for Limited Relief from Automatic Stay to Continue the Eleventh Circuit Appeal (D.I. 38) where the Debtor seeks to lift the automatic stay to permit the Debtor's appeal pending in the Eleventh Circuit Court of Appeals to proceed to conclusion while staying any attempted execution or enforcement of the Judgment. See ¶ 2 of the Proposed form of Order Granting Debtor's Motion For Limited Relief From Automatic Stay to Continue the Eleventh Circuit Appeal (D.I. 38-1).

4.      There may be grounds for the appointment of a chapter 11 trustee as well under section 1104(a) of the Bankruptcy Code, but dismissal or conversion would appear to be more appropriate and cost-effective relief given the bad faith filing circumstances present in this particular chapter 11 case.

## JURISDICTION, VENUE AND STANDING

5.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion.

6.      The U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district, pursuant to 28 U.S.C. § 586. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. *See In re United Artists Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties to protect the public interest . . . that the Trustee has standing to attempt to prevent circumvention of that responsibility."); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for protecting the public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

7.      Under § 307 of title 11 of the United States Code (the "Bankruptcy Code" or "Code"), the U.S. Trustee has standing to be heard on the issues raised in this Motion.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### I.    Relevant Background

8.      On January 18, 2022, the Team Systems International, LLC (the "Debtor" or "TSI") filed a voluntary chapter 11 petition (D.I. 1).

9.      On January 18, 2022, the Debtor filed the Declaration of Deborah Evans Mott in Support of the Debtor's chapter 11 petition and First Day Motion (the "Mott Declaration") (D.I. 3).[4]

10.     As set forth in the Mott Declaration, the Debtor is a prime contractor and subcontractor with respect to various aspects of government contracting including program management, financial and contract management, military-related services, maritime security, and administrative staffing for government projects.  Mott Declaration at ¶ 4.

11.     TSI was formed in 2001 and is a Native American, woman-owned small business serving the United States government as a contractor with offices in Lewes, Delaware and Ponte Vedra Beach, Florida. Mott Declaration at ¶ 3.

---

[4] The lone first day relief sought was the Motion for Entry of Interim and Final Orders (I) Authorizing Debtor To (A) Continue Its Existing Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Its Bank Account And Existing Business Forms, and (D) Implement Changes to the Existing Cash Management System as Necessary; (II) Scheduling a Final Hearing; and (III) Granting Related Relief (the "Cash Management Motion") (D.I. 4).

12.     TSI is required to register in the U.S. Government System for Award Management ("SAM") to serve as a U.S. Contractor. Mott Declaration at ¶ 8.

13.     The Debtor is a four-member Delaware limited liability company with no employees.  The Debtor's assets consist of (i) approximately $164,000 in an Artisan's Bank account, (ii) a $1.1 million account receivable, and (iii) two payment claims involving FEMA totaling approximately $20.3 million. There is no secured debt or unsecured debt with the sole exception of the Judgment.  Mott Declaration at ¶¶ 18-20.

## II.     The Agreement Among TSI, GPDEV and Simons, the September 28, 2021 Judgment and Post-Judgment Actions and Events.

14.     As set forth in the Dismissal Motion, in August of 2017, GPDEV and Simons entered a contractual relationship with TSI wherein GPDEV and Simons procured water vendors for TSI to sell to the U.S. Department of Homeland Security, Federal Emergency Management Agency, and other agencies.  Dismissal Motion at ¶ 8; See also Mott Declaration at ¶ 9.

15.     Pursuant to that agreement GPDEV and Simons were to receive twenty five percent (25%) of the net amounts of income TSI received from amounts invoiced to and paid to by the agencies and or customers for the sale and delivery of ordered Nestle and Niagara bottled water. Dismissal Motion at ¶ 9; See also Mott Declaration at ¶ 9.[5]

---

[5] TSI entered into a consulting agreement (the "Consulting Agreement with GPDEV, LLC, a California LLC ("GPDEV"), and Simons Explorations, Inc., a Colorado corporation doing business as Archangel International ("Simons"), for the procurement of a supply of bottled water from Niagara Bottling, LLC for TSI to sell to the federal government. TSI ultimately sold the water to the Federal Emergency Management Agency ("FEMA") for Hurricane Maria relief in 2017.  Mott Declaration at ¶ 9.

16.    After the agreement was signed, Hurricane Maria hit Puerto Rico in September of 2017 and as a result, FEMA ordered approximately 12 million liters of bottled water from TSI. Dismissal Motion at ¶ 10; See also Mott Declaration at ¶ 9.

17.    TSI supplied the 12 million liters of bottled water to FEMA, (utilizing bottled water from vendors procured by GPDEV and Simons) but TSI did not pay GPDEV or Simons in accordance with the contract.  Dismissal Motion at ¶ 11.

18.    Thereafter, GPDEV and Simons filed suit on September 21, 2018, in the United States District Court for the Northern District of Florida (the "TSI Lawsuit").  Dismissal Motion at ¶ 12; See also Mott Declaration at ¶ 10.

19.    The TSI Lawsuit resulted in a jury verdict in favor of GPDEV and Simons. In sum, the jury determined that TSI had received net income (profit) from the sales of bottled water of $25,011,788 and had underpaid GPDEV and Simons. Dismissal Motion at ¶ 13; See also Mott Declaration at ¶ 11.[6]

20.    On September 28, 2021, the United States District Court for the Northern District of Florida (the "U.S.D.C.") entered an order directing entry of the Judgment against TSI and awarding GPDEV $2,770,855 plus $527,140.32 in prejudgment interest, and also awarding Simons $2,483,722 plus $464,358.46 in prejudgment interest, together with post-judgment interest.  Mott Declaration at ¶ 12.

---

[6] Paragraph 11 of the Mott Declaration states that "[a]fter a trial conducted on August 23-25, 2021, a jury returned a verdict in the Florida Action awarding GPDEV $2,770,855 in damages and awarding Simons $2,483,722 in damages.".

21.    On October 18, 2021, TSI appealed the Judgment to the Court of Appeals for the Eleventh Circuit (the "Appeal").  Mott Declaration at ¶ 13.

22.    GPDEV and Simons sought discovery from TSI, which TSI has not responded to. TSI also expected that GPDEV and Simons would seek an order to show cause in relation thereto. Mott Declaration at ¶ 14.

23.    TSI did not post any security pending appeal and attempted to otherwise obtain a stay pending appeal which were unsuccessful.  Dismissal Motion at ¶¶ 17-19.

24.    According to the Movants, their discovery requests in aid of execution have been pending since October 28, 2021. Dismissal Motion at ¶ 21, fn. 3.

25.    On November 8, 2021, the District Court denied TSI's motion to stay discovery in aid of execution 2021.  In denying TSI's motion, the U.S.D.C. stated that:

> The defendant filed a notice of appeal and moved to stay execution on the judgment without posting a supersedeas bond or other security. The defendant later filed an emergency motion to stay because the time at which the plaintiffs could execute was approaching. A prior order denied the emergency motion and indicated an explanation would follow. This order provides the explanation and denies the original motion to stay.

See November 8, 2021, Order at p.1. (Dismissal Motion, Exhibit B) (D.I. 41-4).

26.    On November 30, 2021, the U.S.D.C. entered an Order Requiring the Defendant to Provide Form 1.977 or Show Cause Why it Should Not be Required To Do So. November 30, 2021, Order. (Dismissal Motion, Exhibit D) (D.I. 41-6).

27.    This November 30, 2021, order required TSI to provide post-judgment discovery in aid of execution to GPDEV and Simons on or before January 14, 2021.[7]

28.    Thereafter on December 1, 2021, the U.S.D.C. entered an order that in summary required TSI to answer the pending interrogatories and produce the documents described in the pending production requests to the extent the requested information is within the scope of Form 1.977 by January 14, 2021, and that the attorneys must confer by December 15, 2021, in a good-faith effort to agree on all discovery issues. U.S.D.C. D.I. 334.

29.    On December 20, 2021, the District Court entered an Order Increasing the Time Period Covered by Parts of Form 1.977. U.S.D.C. D.I. 338.

30.    On January 7, 2022, TSI filed a Motion (and Memorandum) for Extension of Time to Comply With Court Orders. U.S.D.C. D.I. 340.

31.    On January 10, 2022, the District Court denied the Motion (and Memorandum) for Extension of Time to Comply With Court Orders. U.S.D.C. D.I. 342.  This order denying the motion for an extension stated in pertinent part that:

- GPDEV and Simons obtained a jury verdict and judgment and initiated efforts to obtain information useful in attempting to collect on the judgment.
- TSI resisted and prior orders blocked some of GPDEV and Simons' efforts but ordered TSI to provide appropriate information and set a firm deadline of January 14, 2022, to comply which date was 45 days after entry of the first order and more than enough time to compile and produce the requested information.

---

[7] In particular, the District Court order required the Defendant to provide to GPDEV and Simons by January 14, 2022, a complete, truthful, and signed answer to every part of Form 1.977, unless (1) by December 14, 2021, TSI shows cause why it should not be required to do so, and (2) by December 21, 2021, the court enters an order abrogating the requirement to do so. U.S.D.C. D.I. 333.

- TSI has surely known since soon after entry of the Judgment, when it decided not to post security, that it was going to have to provide information of this kind. The judgment was entered nearly four months ago.
- TSI's motion stated that it needs more time because individuals identified only as its "principal" and "bookkeeper" were both diagnosed "last week" with "significantly symptomatic COVID cases."
- TSI's motion was unaccompanied by medical documentation and did not even aver that either individual has received medical care. The motion did not include an offer to provide information already compiled before onset of any illness.
- TSI may file a renewed motion that identifies by name the affected individuals, indicates the status of efforts to compile the necessary information before the onset of symptoms, is sworn under penalty of perjury identifying the federal district in which it is sworn, and is supported by medical documentation or a representation that such document is forthcoming from a medical provider identified in the motion; and,
- Unless an order extending the deadline has been entered, the deadline remains January 14.

U.S.D.C. D.I. 342.

32.     TSI also sought a stay pending appeal from the Eleventh Circuit Court of Appeals (Case No. 21-13662-AA) which was denied on January 10, 2022.  See Dismissal Motion at ¶ 19.

33.     On January 18, 2022, GPDEV and Simons filed a Motion for Order to Show Cause why TSI and its Officers Should Not be Held in Contempt Of Court for Violating the Court's Orders ("Order to Show Cause Motion")[8].

34.     As set forth in the Order to Show Cause Motion, GPDEV and Simons stated that the U.S.D.C. issued multiple orders commanding TSI to provide post-judgment information, including the production of documents, responses to interrogatories and requests for production in aid of execution by January 14, 2022, but that TSI had failed to do so.  See Motion for Order to Show Cause U.S.D.C. D.I. 345 at ¶¶ 1-2.

---

[8] See Dismissal Motion at ¶ 22 and Exhibit D thereto.  See also U.S.D.C D.I. 345.

III.    **Additional Relevant Aspects of the Chapter 11 Case.**

        A.    *Alleged FEMA Claims*

      35.    The Debtor alleges that FEMA owes two payments to TSI, one in the amount of $13.5 million for the alleged nonpayment of TSI's invoice for FEMA's reduction in the initial ordered quantity of bottled water.  Mott Declaration at ¶ 16.  This claim was the subject of cross-motions for summary judgment before the U.S. Civilian Board of Contract Appeals.  Mott Declaration at ¶ 16.  Upon information and belief, both cross-motions for summary judgment were denied on or about January 27, 2022.

      36.    Additionally, TSI also alleges that it possesses a claim of approximately $6.8 million because of a change order pursuant to FAR 52.243 Changes Fixed Price.  The Debtors maintain that once this claim is filed FEMA is required to respond within sixty days. Mott Declaration at ¶ 16.  Upon information and belief, the Debtor has not yet formally pursued this claim.

        B.    *The Creditor Body*

      37.    The Debtor has few creditors.  Other than the GPDEV and Simons, there are six other listed creditors, including a healthcare insurer (CareFirst), three law firms (Bresky Law Firm, Wayne LaRue Smith, Esq. and Venable LLP who are listed as the Debtor's ordinary course

professional[9]) and two trade creditors, Lindsay Blee Americas LLC[10] and Bering Straits Logistics

Services, LLC.[11]  These six creditors are owed a total of $1,648,376.69.  (D.I. 28, 56).

38.     It was understood that the Debtor was not operating, has no on-going business and

was unable to bid on any government contracts.  Mott Declaration at ¶ 15.  However, upon

information and belief, it now appears that the Debtor may be enabled to bid on new governmental

contract opportunities.

### C.     Post-Petition Motions, Filings and Actions.

39.     Since the filing of the chapter 11 petition, the Debtors have filed the following:

a.     Chapter 11 schedules A-B, D, E-F, G, H Statement of Financial Affairs and related information on January 26, 2022 (D.I. 28, 29).

b.     Motion for Entry of an Order, Pursuant to Bankruptcy Code Sections 105(a), 327, 328, and 330, Authorizing the Debtor to Retain and Compensate Certain Professionals Utilized in the Ordinary Course of Business (D.I 24).

c.     Motion for Limited Relief from Automatic Stay to Continue the Eleventh Circuit Appeal (D.I. 38) seeking permission to proceed with its appeal of the Judgment while staying the any attempted execution or enforcement of the Judgment.

d.     Amended Schedules E and F on February 4, 2022 (D.I. 56).  The Amended Schedules added one additional unsecured creditor to Schedule F.

---

[9] See D.I. 24.

[10] Lindsay Blee Americas LLC is a subsidiary of Lindsay Blee Company in the UK, one of the world's leading independent marine fuel brokering & supply companies providing brokering services across the globe from offices in Florida and the UK.  The company also supplies marine gas oil products in the southeastern United States. See https://www.linkedin.com/in/alfred-canal-419309125.

[11] Bering Straits Logistics Services, LLC provides Material Integration, Point of Use and Logistics Process Automation, Warehousing and Storage System and Facility O&M services and logistics services in aircraft, maintenance, supply chain, mobility bag and tool crib management, as well as overall war readiness, to support national defense. See, https://beringstraits.com/bering-straits-logistics-services/.

40.    On February 7, 2022, Bering Straits Logistics Services, LLC ("BSLS") filed its Response to the Motion to Dismiss (the "BSLS Response") (D.I 65).

41.    In BSLS's Response, they state, among other things, that they agree with several of the arguments made by GPDEV and Simons in the Dismissal Motion in that there is no possibility of a reorganization, but that it may be more appropriate to convert the chapter 11 case to a chapter 7 case rather than dismiss the case.  BSLS Response at ¶¶ 1, 3.

42.    On February 16, 2022, GPDEV and Simons filed their Motion for Sanctions under FRBP 9037 and FRCP 37 seeking, among other things, a finding that the Debtor is in violation of Federal Rule 37; directing the Debtor to pay all of Creditors' fees and costs associated with Creditors' discovery, the Motion and to have the Debtor produce certain specified documents and other related relief (D.I. 87) (the "Sanctions Motion").

43.    On February 17, 2022, the Court so ordered that upon review of the Sanctions Motion, the Debtor is directed to respond to the Sanctions Motion by February 22, 2022, at 5:00 pm and upon receipt of the Debtor's response, the Court will determine whether to set a hearing on the Sanctions Motion. (D.I. 88).

44.    On February 18, 2022, Robinson & Cole, Debtor's proposed counsel, filed a Motion to Withdraw as Counsel filed by Robinson & Cole LLP (D.I. 91) (the "Withdrawal Motion").  In the Withdrawal Motion, proposed counsel asserts that good cause exists to withdraw as counsel for the following reasons:

      a.    Failure of the Debtor to fully cooperate as is necessary to enable the Firm to properly discharge its responsibilities and obligations as Debtor's counsel in this bankruptcy case.

    b.      Failure of the Debtor to promptly communicate necessary information to enable the Firm to discharge its responsibilities to the Court and the Debtor as required under the Delaware Lawyer's Rules of Professional Conduct;

    c.      The existence of significant differences of opinion between Debtor and the Firm that makes continuing the representation unnecessarily difficult, and that,

    d.      The issues set forth above have created conditions whereby the Firm is not able to continue to represent the Debtor in this bankruptcy case consistent with its obligations to both the Court and the Debtor as required under the Delaware Lawyer's Rules of Professional Conduct.

Withdrawal Motion at ¶¶ 3-4.

45.      On Sunday, February 20, 2022, the Court granted the Withdrawal Motion and terminated Robinson & Cole's appearance in this case and its representation of TSI. The Court also extended TSI's deadline to respond to the Sanctions Motion [D.I. 87] to February 25, 2022, at 5:00 p.m. (D.I. 92).

46.      The First Meeting of Creditors pursuant to 11 U.S.C. §341 and §343 (the "First Meeting") was scheduled to be conducted by the U.S. Trustee on February 23, 2022, at 10 a.m. (ET). However, because the Debtor is without counsel, the First Meeting was continued to a date to be determined. (D.I. 94).

47.      On February 25, 2022, Bering Straits Logistics Services, LLC filed its Response to GPDEV and Simon's Motion For Rule 37 Sanctions Against Debtor (D.I. 98). In essence, BSLS reiterates its request to convert the chapter 11 case to a chapter 7 case and that the Sanctions Motion should be heard at the same time as the Dismissal Motion on March 9, 2022, at that the Debtor is unlikely to oppose either the Sanctions Motion or the Dismissal Motion because Debtor's counsel

recently withdrew from the case, the Debtor is without counsel and there is no pending application to retain new counsel. (D.I. 98).

48.     On February 28, 2022, this Court entered an Order to Show Cause why this chapter 11 case should not be dismissed or converted. (D.I. 99).

49.     After 5:00 p.m. on Friday, February 25, 2022, and again on Monday February 28, 2022, the U.S. Trustee received correspondence purportedly from one of the Debtor's principals in response to the Sanctions Motion.  However, these items were not submitted through any counsel representing the Debtor and do not appear to have been filed with the Court.

## LAW, ANALYSIS AND ARGUMENT

**I.    This Case Should be Dismissed Because the Debtor is Without Counsel.**

50.     On February 20, 2022, the Court granted the Withdrawal Motion and terminated Robinson & Cole's appearance in this case and its representation of TSI.  The Court also extended TSI's deadline to respond to the discovery motion (D.I. 87) to February 25, 2022, at 5:00 p.m. (D.I. 92).

51.     A corporation, or other artificial entity, such as an LLC, may appear in the federal courts only through licensed counsel. *Rowland v. California Men's Colony*, 113 S. Ct. 716, 721 (1993), See also *U.S. v. Cocivera,* 104 F.3d 566, 572 (3rd Cir. 1996) (Citing *Rowland* and *Simbraw, Inc. v. United States*, 367 F.2d 373 (3d Cir.1966) (per curiam)).  The failure of a chapter 11 debtor that is an entity to obtain counsel is cause for dismissal. *See, e.g*., In re Child Life, Inc., 126 B.R. 51, 52 (Bankr. N.D. Ohio 1991).

52. This Court approved Robinson & Cole's withdrawal of its appearance and the termination of its representation of TSI.  It is without question that the Debtor here is unrepresented by counsel and cannot move forward with this case in any fashion whatsoever and cannot appear in federal court without counsel. This case should be dismissed.

## II.   This Court Should Dismiss This Chapter11 Case or Convert this Case to Chapter 7 Because the Debtor Filed it in Bad Faith.

53. Section 1112(b) of the Code provides that, upon a finding of cause, a court shall convert a chapter 11 case to chapter 7 or dismiss the case entirely. 11 U.S.C. § 1112(b).  Section 1112(b)(4) enumerates sixteen examples that constitute cause, but the list is non-exhaustive. 11 U.S.C. 102(3) (instructing courts to interpret the use of "includes" to be not limiting).  As such, this Court has wide discretion in determining whether cause exists for the purposes of Section 1112(b). *In re SGL Carbon Corp*., 200 F.3d 154, 160 (3d Cir. 1999).

54. Section 1112(b) imposes a good-faith requirement on all chapter 11 filings. *Id*. at 162.  When the debtor's good faith is called into question, the debtor bears the burden of showing that good faith is present in its filing. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000).

55. Although the Code does not define good faith, showing good faith rests on two questions: (1) whether the petition serves a valid bankruptcy purpose, such as preserving a going concern or maximizing the value of the debtor's estate; and (2) whether the petition is filed to obtain a tactical advantage. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004).

56. Upon finding cause, the Court must determine whether conversion or dismissal best serves the interest of the creditors and the estate. *In re Am. Capital Equip., LLC*, 688 F.3d 145,

161 (3d Cir. 2012). Here again, the Court has wide discretion to use its "'equitable powers' to make 'an appropriate' disposition of the case[.]" *Id*. at 163 (quoting *In re Camden Ordnance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 798 (E.D. Pa. 2000)).

57.     In *Primestone Inv. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Inv. Partners L.P.),* 272 B.R. 554, 557 (D. Del. 2002) (Walrath, J.) the court identified certain factors related to the court's good faith inquiry as follows:

> a. Single asset case;
> b. Few unsecured creditors;
> c. No ongoing business or employees;
> d. Petition filed on eve of foreclosure;
> e. Two party dispute which can be resolved in pending state court action;
> f. No cash or income;
> g. No pressure from non-moving creditors;
> h. Previous bankruptcy petition;
> i. Prepetition conduct was improper;
> j. No possibility of reorganization;
> k. Debtor formed immediately prepetition;
> l. Debtor filed solely to create automatic stay;
> m. Subjective intent of the debtor.

*See, Primestone*, 272 B.R. at 557 (citing, *In re SGL Carbon,* 200 F.3d at 165; *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394-95 (11th Cir.1988); *In re SB Properties,* 185 B.R. 198, 205 (E.D.Pa.1995).

58.     As the *Primestone* court recognized, "[t]he focus of the inquiry is whether the petitioner sought 'to achieve objectives outside the legitimate scope of the bankruptcy laws' when filing for protection under Chapter 11." *Primestone*, 272 B.R. at 557 (*citing, SGL Carbon,* 200 F.3d at 165; *In re Marsch,* 36 F.3d 825, 828 (9th Cir.1994)). Additionally, "no single factor is determinative of a lack of good faith in filing a petition." *Primestone*, 272 B.R. at 558 (*citing In re Tiffany Square Assocs., Ltd.,* 104 B.R. 438, 441 (Bankr.M.D.Fla.1989)).

16

59.     Applying the relevant *Primestone* factors to the facts and circumstances of this case reveals the following:

### i.     *Single Asset Case*

60.     The Debtor's assets consist of an Artisan's Bank account with a balance of approximately $164,000.00 and Accounts Receivable ("A/R") of $21,375,000.00. See Schedule A/B, Parts 1 & 3 (D.I. 28); See also Mott Declaration at ¶ 20.

61.     The Debtor is the Prime Contractor for bunker fuel delivery to CENTCOM in the United Arab Emirates for the Defense Logistics Agency. This contract has 1-2 years (expires October 2023 with one year option).  See Schedule G (D.I 28).

62.     The Debtor also listed an indefinite delivery/indefinite quantity contract for fuel delivery to Mexico Defense Logistics Agency with a 1-2 term remaining (expires October 2022 with one year option). See, Schedule G (D.I 28).  However, this particular contract may be a little or no present value to the estate.

63.     The Debtor also claims to possess two (2) claims against FEMA, one in the amount of $13.5 million for the alleged nonpayment of TSI's invoice for FEMA's reduction in the initial ordered quantity of bottled water and another claim in the approximate $6.8 million alleged against FEMA as a result of a change order pursuant to FAR 52.243 Changes Fixed Price.  Mott Declaration at ¶ 16.

64.     There appear to be no other assets listed in the Schedules or Statement of Financial Affairs.

## ii.    *Few Unsecured Creditors*

65.    There are a total of eight creditors per the Schedules.  Other than GPDEV and Simons, there are two trade creditors, a healthcare insurer, and three attorneys/law firms, two of which are retained as OCPs and related to the litigation vis-à-vis the Judgment as follows:

- GPDEV, LLC – Judgment Creditor - $3,297,995.32
- Simons Exploration – Judgment Creditor - $2,948,080.46
- Lindsay Blee Americas LLC – trade debt (fuel contact) - $96,431.00
- CareFirst BC/BS – Healthcare Insurer - $5,928.67
- The Smith Firm – legal fees - $2,000.00 (OCP)12
- Venable LLP – legal fees - $24,000.00 (OCP)
- Bresky Law Firm - legal fees - $4,000.00 (OCP)
- Bering Straits – trade creditor - $1,500,000.00

66.    There are no other creditors listed on the Schedules or who have filed proof of claims ("POC") other than the IRS which filed a POC in this case for the sum of $24,360.00. (D.I. 87-17).

## iii.    *No Ongoing Business or Employees*

67.    The Debtor has no employees. See Mott Declaration at ¶ 19.

68.    The Debtor appears to have a contractual obligation under a Prime Contractor CENTCOM contract.  See Schedule G. (D.I. 28).  In addition, the Debtor may be able to bid on future contracts post-petition.

---

[12] The Smith Firm, Venable LLP and the Bresky Law Firm are all ordinary course professionals for the Debtor in this case (D.I. 24-1).

### iv.     *Petition Filed on the Eve of Foreclosure*

69.     The case was filed on January 18, 2022, some 113 days after the entry of the Judgment and during on-going post-judgment discovery and execution on the Judgment where the Debtors suffered several failed attempts to obtain a stay pending appeal.

70.     As set forth and outlined in the Dismissal Motion and paragraphs 22 through 34, *supra*, the chapter 11 case was filed after months of GPDEV and Simon seeking discovery and to execute upon the Judgment.  By the Debtors own admissions, TSI did not respond to the discovery and TSI anticipated that GPDEV and Simons would imminently file for an order to show cause which ironically was filed on the same date that the chapter 11 petition was filed.

### v.     *Two Party Dispute Which Can Be Resolved In Pending State Court Action.*

71.     The chapter 11 filing was prompted by the entry of the Judgment and the execution upon same.  In essence, this case appears to be in essence a two-party dispute that could be resolved in the federal courts.

### vi.     *No Cash Or Income.*

72.     The Debtor has $164,000.00 in cash and A/R of $21,375,000.00. The Debtor has little if any present income other than the potential collection of the outstanding A/R and possibly sums due under the remaining outstanding executory contract.[13]   The bulk of the A/R ($21,256,000.00 or 99.44%) is ninety-days old or older. (D.I. 28, Schedule A/B, Part 3, No. 11).

---

[13] The Debtor has not filed any Monthly Operating Reports to date.

vii.     *No Pressure From Non-Moving Creditors*

73.     There does not appear to be any pressure from the other creditors regarding collection.[14]

viii.    *Previous Bankruptcy Petitions.*

74.     There are no prior known chapter 11 or 7 cases and no cases listed on the petition.

ix.      *Improper Prepetition Conduct.*

75.     As outlined in Section XI of the Dismissal Motion, GPDEV and Simons assert that TSI engaged in egregious pre-petition misconduct, ignored multiple District Court orders to supply information in aid of discovery and in discovery itself in the TSI Lawsuit, filed documents that are not authentic, made false claims concerning the litigation and "stonewalled" to prevent Simons and GPDEV from obtaining the Judgment and then prevented them from collecting on the Judgment. Additionally, TSI and its officers may have made pre-petition preferential transfers and fraudulent conveyances. See Dismissal Motion, Section XII at pp. 14-17.

76.     In the Dismissal Motion, GPDEV and Simons allege that the Debtor engaged in egregious pre-petition misconduct, ignoring multiple Orders of the District Court to supply information in aid of discovery and in discovery itself in the TSI Litigation. See Dismissal Motion, Section XI, p.14.

77.     In addition, the Movants allege that TSI's Statement of Financial Affairs (D.I. 29 at Part 3, No. 4) is inaccurate and fails to list certain transfers or payments made to an insider and

---

[14] The invoices related to the balance owed by TSI to BSLS with respect to the subcontract between TSI and BSLS for delivery of bottled water to Puerto Rico are dated 11/28/2017, 1/16/2018, 9/26/2018, 1/18/2019 and 7/5/2019. See Exhibit A to the BSLS Proof of Claim - Attachment 3 - Summary of Invoices and Payments. (D.I. 65).

they question certain of the claims listed on Schedule E/F (D.I. 28). See Dismissal Motion, Section XII, pp. 16-17.

### x.        *No Possibility Of Reorganization*

78.      There does not appear to be sufficient income or cash flow to support or fund a chapter 11 plan.  At best, the Debtor might collect on the outstanding A/R, including the FEMA claims, and conceivably pay creditors in full.  However, it appears that the Debtor, by taking advantage of the Bankruptcy Code's automatic stay, will continue to prosecute the pending appeal incurring additional costs and post-petition professional fees.  The outstanding A/R could also be collected by a chapter 7 trustee and distributed to creditors under 11 U.S.C. § 726.  Additionally, the Debtor is currently without counsel and cannot prosecute this chapter 11 case.

### xi.       *Debtor Formed Immediately Prepetition*

79.      The Debtor has been established and existed since in 2001.

### xii.      *Debtor Filed Solely To Create Automatic Stay*

80.      As outlined and stated above, the filing of this chapter 11 case has had the effect of a stay pending the appeal of the Judgment and was filed in the anticipation of the Judgment Creditors seeking an Order to Show Cause regarding post-judgment discovery.  The Debtor was unable to successfully procure a stay pending appeal and has not posted a bond or security vis-à-vis the Judgment and the appeal of same.  Additionally, the Debtor stated, through its officers, that TSI sought the protections of chapter 11 to ". . . gain some breathing room while the Appeal proceeds, . . .".  Mott Declaration at ¶ 16.

III.    **The Debtor's Chapter 11 Case was Filed in Bad Faith Because it Serves no Valid Bankruptcy Purpose.**

81.    A debtor availing itself of the automatic stay of litigation, without more, has not filed a chapter 11 petition for a valid bankruptcy purpose. "'[C]ourts universally demand more of Chapter 11 petitions than a naked desire to stay pending litigation,' and any perceived benefit of the 'automatic stay, without more, cannot convert a bad faith filing to a good faith one." *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 620 (3d Cir. 2009) (quoting *Integrated Telecom*, 384 F.3d at 128)).

82.    Here, it appears that the Debtor filed this chapter 11 petition to reap the benefit of the automatic stay and forestall the GPDEV and Simons' execution upon the Judgment as well as substitute the automatic stay for the unsuccessfully-sought stay pending appeal.  The Debtor has little if any assets and reorganization seems unlikely.  Filing this case only serves to stall the execution upon the Judgment and the post-judgment discovery process.  Use of the protections of the Code to undermine or collaterally attack the binding nature of the Judgment would be improper. *Cf. In re Van Eck*, 425 B.R. 54, 63 (Bankr. D. Conn. 2010) (noting that chapter 11 cannot be used as a platform to attack final orders of other courts).

IV.    **The Debtor's Chapter 11 Case was Filed in Bad Faith Because it only Serves to Gain a Tactical Litigation Advantage.**

83.    "Where 'the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being failed in good faith.'" *Bepco*, 589 F.3d at 625 (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999)).

85. Here, the Debtor filed the chapter 11 petition in what appears to be the final step in an orchestrated effort to avoid post-judgment discovery and to stay the collection efforts while the Circuit Court appeal proceeds where all other efforts have failed.  See paragraphs 22 through 34, *supra.*

## V.    **If Dismissal is Not Proper, This Case Should Be Converted to a Chapter 7 Case.**

86. Alternatively, if this Court determines that the Debtor retains ownership over significant assets not implicated by the Omnibus Agreement, then the U.S. Trustee submits that conversion to chapter 7 may be in the best interests of the creditors and the estate.

## VI.   **The Facts of this Case Could Otherwise Warrant the Appointment of a Chapter 11 Trustee.**

87. Section 1104(e) of the Bankruptcy Code requires the U.S. Trustee to move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive or chief financial officer, or members of the governing body who selected the debtor's chief executive or chief financial officer, participated in actual fraud, dishonesty, criminal conduct in the management of the debtor or the debtor's public financial reporting. 11 U.S.C. § 1104(e).

84. 11 U.S.C. § 1104(a) states that the Bankruptcy Court shall order the appointment of a trustee, at any time after the commencement of the case but prior to confirmation of a plan, on request of a party in interest or the U.S. Trustee, and after notice and a hearing:[15]

---

[15] Several courts have indicated that grounds for the appointment of a trustee must be established by "clear and convincing" evidence. *See In re G-1 Holdings, Inc.,* 385 F.3d 313 (3d Cir. 2004). However, considering Supreme Court precedent and the recent addition of § 1104(e) to the Bankruptcy Code, the better view is that the appropriate burden of proof should be the "preponderance of the evidence." *See Tradex Corp. v. Morse,* 339 B.R. 823, 829-32 (D. Mass. 2006) (citing *Grogan v. Garner,* 498 U.S. 279, 286 (1991)).

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

88.     Subsection (1) addresses management's pre and post-petition misdeeds or mismanagement, while subsection (2) provides the court with "particularly wide discretion" to appoint a trustee even absent wrongdoing or mismanagement.  *In re Bellevue Place Associates,* 171 B.R. 615, 623 (N.D. Ill. 1994).  Where the court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee is mandatory. *Official Comm. Of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.),* 285 B.R. 148, 158 (Bankr. D. Del. 2002).

89.     Although there appears to be cause for the appointment of a trustee in this case due to the Debtor's prepetition conduct leading to the filing of this chapter 11 case, the better result for this case for all parties is the dismissal of the case pursuant to section 1112 of the Bankruptcy Code.

## **CONCLUSION**

90.     This Court should dismiss this chapter 11 case.  If the Court believes issues prevent dismissal, then the Court should convert this chapter 11 case to a chapter 7 case because the Debtor filed its petition in bad faith.

## RESERVATION OF RIGHTS

91.    The U.S. Trustee reserves all rights, remedies, duties and obligations to, among other things, complement, supplement, augment, alter or modify this Motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.[16]

WHEREFORE, the U.S. Trustee request that this Court issue an order granting this Motion, or such other relief as the Court deems appropriate.

Dated: March 1, 2022
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**

By: */s/ Richard L. Schepacarter*
    Richard L. Schepacarter
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 N. King Street, Room 2207, Lockbox35
    Wilmington, Delaware 19801
    Phone: (302) 573-6492
    Fax: (302) 573-6497
    Email: richard.schepacarter@usdoj.gov

---

[16] Specifically, U.S. Trustee reserves the right to move this Court for an order directing the appointment of a trustee under section 1104(a) of the Code if the parties' further development of the record would support such relief and this case is neither converted nor dismissed.