## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| TEAM SYSTEMS | ) Chapter 11 |
| INTERNATIONAL,LLC,[1] | ) |
| | ) Case No. 22-10066 (CTG) |
| Debtor. | ) |
| | ) |

**MOTION OF DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT
TO 11 U.S.C. §§ 105, 361, 362, 363(C), 364(B) AND 507 AUTHORIZING DEBTOR TO (A)
OBTAIN POST-PETITION UNSECURED FINANCING FROM ENTITIES
CONTROLLED BY STEVEN ACOSTA (B) MODIFYING THE AUTOMATIC STAY;
(C) SCHEDULING A FINAL HEARING AND (D) GRANTING CERTAIN
RELATED RELIEF**

Team Systems International, LLC, as debtor and debtor-in-possession (the "**Debtor**"), files

this motion (the "**Motion**")[2] for the entry of interim and final orders (a) authorizing the Debtor to

obtain post-petition unsecured financing; (b) modifying the automatic stay to the extent necessary

to effectuate the terms and conditions of the DIP Orders; (c) scheduling a final hearing and (d)

granting related relief. In further support of this Motion, the Debtor respectfully states as follows:

### INTRODUCTION

1.      The Debtor's proposed $200,000.00 debtor-in-possession financing (the "**DIP
Financing**"), will provide cash to fund the Debtor's chapter 11 case (the "**Chapter 11 Case**" or
the "**Case**") and the Debtor's working capital needs, including but not limited the funding of a
retainer to the Debtor's replacement counsel.    Access to the proposed DIP Financing will also

---

[1]      The Debtor in this chapter 11 case has a last four digit federal tax ID of 8411.  The location of the Debtor's
service address in this chapter 11 case is 16192 Coastal Highway Lewes, Delaware 19958.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Order.

send a clear signal to the market that the Debtor's operations can and will continue on a business-as-usual basis.

2.      The DIP Financing was the result of negotiations between the Debtor and Galleon Logistics LLC, an entity controlled by Steven Acosta (who is a member of the Debtor) (the "**DIP Lender**") in connection with the negotiations of a proposed plan of reorganization to be filed by the Debtor (the "**Plan**").

3.      A critical term of the DIP Facility is that Galleon Logistics LLC has agreed to subordinate its interest to allowed general unsecured claims, such that it will not be entitled to recover on its DIP until allowed general unsecured claims are paid in full.

4.      No other party came forward with terms any proposal to fund the Debtor's liquidity needs and support consummation of a suitable reorganization plan. The DIP Financing will provide the Debtor with the ability to retain counsel and guide itself through an adequately-capitalized exit from chapter 11, which will best preserve the value of the Debtor's business and operations.

5.      The DIP Financing will provide the Debtor with sufficient additional liquidity to fund the Debtor's business operations and administrative expenses during the Case. If approved, the Debtor will use the proceeds of the DIP Financing to, as necessary and among other things, fund and pay professional fees, pay operational costs such as insurance and taxes, as well as to fund the administration of the Case, in accordance with a budget agreed to by the Debtor and the DIP Lender attached hereto as **Schedule 1** to **Exhibit A** (as may be modified from time to time with the consent of the DIP Lender in its sole discretion, but without need for further Court order, the "**Budget**").

6.      The Debtor and its estate would suffer immediate and irreparable harm if the Debtor was denied the financing needed to sustain on-going business operations during this period of the

case. The DIP Financing ensures that the Debtor can continue to operate uninterrupted in the Case. Further, the terms of the DIP Financing are reasonable under the circumstances and were the product of good faith, arm's length negotiations.

7.    Thus, for the reasons set forth herein, the Debtor believes that approval of the DIP Financing will maximize the value of the Debtor's estate for the benefit of the Debtor's stakeholders and is an exercise of the Debtor's sound business judgment. Accordingly, the Debtor respectfully requests that the Court approve the relief requested herein and enter an interim order substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**") and a final order (the "**Final Order**," and together with the Interim Order, the "**DIP Orders**").

## JURISDICTION AND VENUE

8.    The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10.    The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, and 507 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002,

4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2002-1(b) and 4001-2.

## BACKGROUND

1.      On January 18, 2022, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.  The Debtor is authorized to continue to operate its business and manage its properties as a Debtor and Debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  As of the date hereof, no official committee of unsecured creditors has been appointed.

2.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Deborah Evans Mott in Support of Debtor's Chapter 11 Petition and First Day Motion* (the "Mott Declaration").

**I.      Obligations to Prepetition Lenders**

11.      As of the Petition Date, the Debtor had no secured creditors.

**II.      The DIP Financing**

12.      The DIP Financing represents the best source of financing available to the Debtor under the circumstances, and was negotiated at arm's length with the DIP Lender, resulting in terms that the Debtor submits are reasonable and appropriate to meet the Debtor's financing needs during the Chapter 11 Case.

13.      The Debtor has not been able to obtain an alternative financing commitment on terms better than those proposed by the DIP Lender. The terms of the $200,000.00 DIP Financing are set forth in the Term Sheet dated March 8, 2022 (the "**DIP Term Sheet**") attached hereto as **Exhibit B**.

14.     The DIP Financing is unsecured with an annual interest rate of 11%.  The unsecured debt shall be considered subordinated to all allowed general unsecured claims owed by the Debtor. If the Debtor confirms a chapter 11 plan by June 30, 2022, the debt will be converted into equity.

## RELIEF REQUESTED

15.     The Debtor seeks entry of the DIP Orders:

    a.     authorizing the Debtor to obtain unsecured post-petition financing in the amount of $150,000.00 on an interim basis and $200,000.00 on a final basis, in the form of the DIP Financing;

    b.     authorizing the Debtor to execute and deliver the DIP Tern Sheet and any other documents related thereto (as each of the foregoing may be amended, restated, supplemented, waived, and/or modified from time to time in accordance with the terms hereof and thereof, and collectively with the DIP Orders, the "DIP Documents") and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP Documents;

    c.     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Orders, as applicable;

    d.     scheduling a final hearing (the "Final Hearing") with regard to the relief requested herein and approving the form of notice with respect to the Final Hearing; and

    e.     granting related relief.

## TERMS AND CONDITIONS OF THE DIP FINANCING

16.     The following chart contains a summary of the salient terms of the proposed DIP Financing, together with references to the applicable sections of the relevant source documents, in accordance with Bankruptcy Rule 4001(b)(1)(B) and (c)(1)(B) and Local Rule 4001-2.[3]

---

[3] The summaries contained in this Motion are qualified in their entirety by the provisions of the documents referenced. To the extent anything in this Motion is inconsistent with such documents, the terms of the applicable documents shall control. Capitalized terms used in this summary chart but not otherwise defined shall have the meanings ascribed to them in the DIP Order or the DIP Note as applicable.

| Rule Citation | Summary of Material Terms |
|---|---|
| **Borrower**<br><br>Bankruptcy Rule 4001(c)(1)(B) | Team Systems International LLC, as debtor and debtor-in-possession. |
| **DIP Lender**<br><br>Bankruptcy Rule 4001(c)(1)(B) | Galleon Logistics LLC |
| **Commitment**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | The DIP Financing shall include an unsecured loan in the amount of $200,000.00, of which $150,000.00 is sought on an interim basis. |
| **Term**<br><br>Bankruptcy Rule 4001(b)(l)(B)(iii), 4001(c)(1)(B)<br><br>Local 4001-2(a)(ii) | The DIP Lender's agreement to provide the DIP Financing in shall immediately and automatically terminate (except as the DIP Lender may otherwise agree in writing in its reasonable discretion,), upon the earliest to occur of any of the following: (i) the date of final payment and satisfaction in full in cash of the DIP Obligations; (ii) the entry of an order by the Court granting a motion by the Debtor to obtain additional financing from a party other than DIP Lender under section 363 or 364 of the Bankruptcy Code; (iii) the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case into a case under chapter 7 of the Bankruptcy Code; (iv) the applicable DIP Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lender (which consent may be withheld in its reasonable discretion); (v) the Effective Date of the Plan; or (vi) upon five (5) business days' written notice of any Event of Default. |
| **Use of DIP Financing**<br><br>Bankruptcy Rule 4001(b)(l)(B)(ii)<br><br>Local Rule 4001-2(a)(ii) | Unless otherwise agreed to by the DIP Lender, the Debtor shall use the proceeds of the DIP Financing solely for operating working capital purposes and chapter 11 administrative costs in the amounts and otherwise in accordance with and for the purposes provided for in the approved Budget. |
| **Fees** | None. |

| Rule Citation | Summary of Material Terms |
|---|---|
| Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | |
| **Interest Rates**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | An annual interest rate of 11% unless the Debtor has a plan confirmed by June 30, 2022, at which point the debt will be converted into equity. |
| **Budget**<br><br>Bankruptcy Rule 4001 (c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | A budget mutually agreed upon by the Debtor and the DIP Lender, as may be modified from time to time by the Debtor with the consent of the DIP Lender in its sole discretion, but without need for further Court order. *See* Budget attached to the DIP Motion. |
| **Chapter 11 Milestones**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001- 2(a)(ii) | If the Debtor obtains an order from the Bankruptcy Court Confirming a Plan by June 30, 2022, the financing provided under the DIP Term Sheet shall be converted to new equity. |
| **Events of Default**<br>Bankruptcy Rule 4001(c)(l)(B)<br>Local Rule 4001- 2(a)(ii) | If any of the following events of default occur, the Note and any other obligations of the Debtor to the DIP Lender, shall become due immediately, without demand or notice: (a) the failure of the Borrower to pay the principal and any accrued interest in full on or before the Due Date; (b) the death of the Debtor or DIP Lender; (c) the application for the appointment of a receiver for the Debtor; (d) the making of a general assignment for the benefit of the Debtor's creditors; (e) a misrepresentation by the Debtor to the DIP Lender for the purpose of obtaining or extending credit. |

| Rule Citation | Summary of Material Terms |
|---|---|
| **Waiver / Modification of the Automatic Stay**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iv) | The automatic stay shall be modified to the extent necessary to permit the DIP Lender to exercise its remedies, as applicable, in accordance with the terms of the DIP Orders and DIP Documents. |

## THE DEBTOR HAS AN IMMEDIATE NEED FOR CASH

17.     The Debtor proposes to use the proceeds of the DIP Financing to, among other things, to fund general administration of the Bankruptcy Case in order to effectuate a plan. Without access to the DIP Financing to satisfy these obligations, the Debtor may have insufficient liquidity to continue to administer its estate and exit the Chapter 11 Case. Thus, the Debtor's access to the DIP Financing will facilitate its efforts to maximize value of the Debtor's estate for its creditors through confirmation of the proposed Plan.

## ALTERNATIVE SOURCES OF FINANCING ARE NOT READILY AVAILABLE

18.     The Debtor does not believe that alternative sources of significant financing, especially on an unsecured subordinated basis are readily available.

19.     In sum, the Debtor believes that, given the realities of the current circumstances of its Chapter 11 Case, the proposed DIP Financing represents the best option available to address the Debtor's liquidity needs. It is the product of extensive arm's length negotiations.

## BASIS FOR RELIEF

**A.      The Debtor Should Be Authorized to Obtain DIP Financing Through the DIP Financing**

        **i.      Entering into the DIP Financing Is an Exercise of the Debtor's Sound Business Judgment**

20.    The Court should authorize the Debtor, as an exercise of its sound business judgment, to enter into the DIP Documents and obtain access to the DIP Financing. Section 364 of the Bankruptcy Code authorizes a debtor to obtain financing under certain circumstances discussed in detail below. Courts grant a debtor considerable deference in acting in accordance with its business judgment in obtaining post-petition credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See, e.g., In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving post-petition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a [trustee] in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest.").

21.    Specifically, to determine whether the business judgment standard is met, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a trustee's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of the trustee's authority under the [Bankruptcy] Code").

22.    Furthermore, in considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the estate and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (recognizing a trustee may have to enter into "hard bargains" to acquire funds for a reorganization of the estate). The Court may also appropriately take into consideration non-economic benefits to an estate offered by a proposed post-petition facility. For example, in *In re ION Media Networks. Inc.*, the bankruptcy court for the Southern District of New York held that:

> Although all parties, including the Debtor and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. *Relevant features of the financing must be evaluated, including non economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization.* This is particularly true in a bankruptcy setting where cooperation and establishing alliances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.

No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) (emphasis added).

23.    The Debtor's determination to move forward with the DIP Financing is an exercise of the Debtor's sound business judgment following an arm's length process and careful evaluation of alternatives. Specifically, the Debtor requires post-petition financing to fund the Debtor's administrative expenses of the chapter 11 process. The terms of the DIP Financing are advantageous to the Debtor particularly because it is on an unsecured, subordinated basis. Moreover, if a Plan is confirmed by June 30, 2020, the DIP Financing will be converted into new equity and help allow the Debtor to thrive post-confirmation . Accordingly, the Debtor negotiated

the DIP Documents with the DIP Lender in good faith, at arm's length, and with the assistance of its advisors, and the Debtor believes that it has obtained the best financing available under the circumstances. The Debtor seeks to obtain the DIP Financing on an unsecured basis.

>ii.     **No Comparable Alternative to the DIP Financing Is Reasonably Available**

24.     In satisfying the standards of section 364(c) of the Bankruptcy Code, a debtor need not seek credit from every available source, but needs only to demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) ("the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor's estate, "it would be unrealistic and unnecessary to require the trustee to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989). Generally, a debtor's efforts are to be considered on a case by case basis, particularly "[g]iven the 'time of the essence' nature of this type of financing." *In Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987). *See also In re Sky Valley, Inc.*, 100 B.R. at 112-13 (exhaustive search not required where the business suffered from financial stress, had little or no unencumbered property, and primary property was subject to numerous liens, and thus debtors' approach of only four lenders was sufficient under such circumstances).

25.     Because there is no secured debt and the nature of the DIP Loan is on an unsecured subordinated basis, the Debtor has determined that the DIP Financing provides the best option under the circumstances to both fund the Chapter 11 Case and bridge the gap until confirmation

of the Plan. Therefore, the Debtor submits that the requirements of sections 364 of the Bankruptcy

Code are satisfied.

**B.    The DIP Lender Should Be Deemed a Good-Faith Lender under Section 364(e)**

26.    Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to

collect on loans extended to a debtor's estate, and its right in any lien securing those loans, even if

the authority of the trustee to obtain such loans or grant such liens is later reversed or modified on

appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this
> section [364 of the Bankruptcy Code] to obtain credit or incur debt,
> or of a grant under this section of a priority or a lien, does not affect
> the validity of any debt so incurred, or any priority or lien so granted,
> to an entity that extended such credit in good faith, whether or not
> such entity knew of the pendency of the appeal, unless such
> authorization and the incurring of such debt, or the granting of such
> priority or lien, were stayed pending appeal.

27.    As explained herein, the DIP Financing is the result of the Debtor's reasonable and

informed determination that the DIP Lender offered the most favorable terms on which to obtain

needed post-petition financing, and of arm's length, good-faith negotiations between the Debtor

and the DIP Lender. The terms and conditions of the DIP Financing are reasonable and appropriate

under the circumstances, and the proceeds of the DIP Financing will be used only for purposes

that are permissible under the Bankruptcy Code. Further, no consideration is being provided to

any party to the DIP Financing other than as described herein. Accordingly, the Court should find

that the DIP Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy

Code and is entitled to all of the protections afforded by that section.

**C.    The Automatic Stay Should Be Modified on a Limited Basis**

28.    The Debtor requests that the automatic stay imposed by section 362 of the

Bankruptcy Code be modified to the extent necessary to implement and effectuate the terms and

provisions of the DIP Orders, as applicable. Among other things, the proposed DIP Orders provide that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified, to the extent necessary, to permit the DIP Lender to exercise certain remedies if an Events of Default occurs and is called by the DIP Lender.

29. Similar stay modifications are commonplace and standard features of post-petition financing arrangements, and, in the Debtor's business judgment, are reasonable and fair under the circumstances of this Chapter 11 Case. *See, e.g., In re Magnum Hunter Res. Corp.*, No. 15-12533 (KG) (Bankr. D. Del. Dec. 15, 2015) (terminating automatic stay after event of default); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. July 22, 2019) (modifying automatic stay as necessary to effectuate the terms of the order); *In re Z Gallerie*, LLC, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); ATD Corporation, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 26, 2018) (same); *In re In re Charming Charlie, LLC*, No. 17-12906 (CSS) (Bankr. D. Del. Dec. 12, 2017) (same).

**D.    Failure to Obtain Immediate Interim Access to the DIP Facility Would Cause Immediate and Irreparable Harm.**

30. Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than fourteen days after the service of such motion. Upon request, however, the Court may conduct a preliminary, expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

31. For the reasons noted above, the Debtor has an immediate postpetition need to access the liquidity provided by the DIP Financing. The Debtor cannot retain estate professionals in a timely fashion without access to the funds.  The Debtor will be unable to proceed with its Chapter 11 case and will suffer immediate and irreparable harm to the detriment of all creditors

and other parties in interest. In short, the Debtor's ability to administer the Case through the use of DIP Financing is vital to preserve and maximize the value of the Debtor's estate.

32.    The Debtor requests that the Court hold and conduct a hearing to consider entry of the Interim Order authorizing the Debtor, from and after entry of the Interim Order until the Final Hearing, to receive funding under the DIP Financing. This relief will enable the Debtor to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the Final Hearing.

### REQUEST FOR FINAL HEARING

33.    Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, and in no event after twenty-five days after the Petition Date, and fix the time and date prior to the Final Hearing for parties to file objections to this motion.

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

34.    To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### NOTICE

35.    Concurrent with the filing of this Motion, the Debtor is providing notice of the Motion to: (a) the U.S. Trustee; (b) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Debtor's assets; (c) all the Debtor's other creditors; (d) the DIP Lender; and (e) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Interim Order, substantially in the form attached hereto as Exhibit A, and the Final Order, grant the relief requested herein, and grant such other relief as is just and proper.

Dated: March 8, 2022                    **GELLERT SCALI BUSENKELL & BROWN, LLC**

*/s/ Ronald S. Gellert*
Ronald S. Gellert (DE 4259)
Margaret F. England (DE 4248)
Bradley P. Lehman (DE 5921)
1201 North Orange Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 425-5812
Facsimile:  (302) 425-5814
Email: rgellert@gsbblaw.com
mengland@gsbblaw.com
blehman@gsbblaw.com

*Proposed Counsel to Debtor and Debtor-in-Possession*