## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| TEAM SYSTEMS INTERNATIONAL, LLC,[1] | ) |
| | ) Case No. 22-10066 (CTG) |
| Debtor. | ) |
| | ) Re: D.I. 41 & D.I. 65 |
| | ) |

**DEBTOR'S OPPOSITION TO (I) GPDEV, LLC AND SIMONS EXPLORATION, INC.'S MOTION FOR ENTRY OF AN ORDER DISMISSING THIS CHAPTER 11 CASE WITH PREJUDICE AND (II) BERING STRAITS LOGISTICS SERVICES, LLC'S RESPONSE THERETO**

Team Systems International, LLC (the "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case, hereby responds in opposition (this "Opposition") to *GPDEV, LLC and Simons Exploration, Inc.'s Motion for Entry of an Order Dismissing this Chapter 11 Case with Prejudice* [D.I. 41] (the "Motion") and the *Response of Bering Straits Logistical Services, LLC to Motion to Dismiss* ("BSLS Response") [D.I. 65]. In support of this Opposition, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Debtor filed these cases in good faith in order to secure a needed breathing spell. First and foremost, this chapter 11 case will allow the Debtor's operations, mainly its fueling contracts with important governmental agencies in the national defense sphere – a function perhaps never so important as at this moment in time – to continue without interruption. Further, if the creditors moving to dismiss (GPDEV, LLC and Simons Exploration, Inc. – together, "GPDEV") or convert (Bering Straits Logistics Services, LLC or "BSLS," and, together with GPDEV, the "Moving Creditors") this case to one under chapter 7 provided the Debtor the time to collect

---

[1] The last four digits of the Debtor's federal tax ID are 8411. The location of the Debtor's service address in this chapter 11 case is 16192 Coastal Highway, Lewes, Delaware 19958.

receivables and FEMA payments owed, Debtor would then be able to post a bond while GPDEV and Debtor wait to receive a final decision on the issues on appeal to the Eleventh Circuit. If their claims are not overturned on appeal, this chapter 11 case will provide the GPDEV (as well as BSLS) an opportunity for an increased recovery, potentially in full, while also allowing Debtor to continue to operate as it has for the past twenty years. The spurious allegations of "bad faith" reflect instead a justifiable use of chapter 11 by Debtor to obtain a breathing spell which will reduce the risk of imminent, serious harm to Debtor's business and its ability to pursue valid claims for amounts owed to Debtor – amounts which, when paid, are expected to permit the Debtor to pay the Moving Creditors allowed claims in this case in full or substantially in full.  Accordingly, the Moving Creditors fail to rebut the presumptive "good faith" of Debtor's bankruptcy filing, and the Motion (and the BSLS Response urging conversion to chapter 7) must fail.

## **BACKGROUND**

2.      On January 18, 2022 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition") with this Court under chapter 11 of the Bankruptcy Code (the "Case"). Debtor is authorized to continue to operate and manage its business and assets as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      Debtor is a consulting service firm that specializes in government contracting. A description of the company and its business, and the facts and circumstances supporting Debtor's chapter 11 case, are set forth in greater detail in the *Declaration of Deborah Evans Mott in Support of the Chapter 11 Petition and First Day Motion* (the "First Day Declaration"),[2] filed substantially contemporaneously with the Petition and incorporated by reference herein. In further support hereof, Debtor is submitting (substantially contemporaneously herewith) a declaration of Steven

---

[2] Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration, as applicable.

Acosta, one of Debtor's principals (the "<u>Acosta Declaration</u>"), to provide additional factual background which the Court may find helpful.

4.      No official committee, trustee, or examiner has been appointed in the Case.

5.      On January 27, 2022, GPDEV filed the Motion seeking dismissal of the case for lack of good faith.  On February 7, 2022, BSLS filed the BSLS Response, suggesting that dismissal was unwarranted and that conversion to chapter 7 is appropriate instead.

<b><u>ARGUMENT</u></b>

**I.    <u>Legal Overview</u>**

6.      GPDEV seeks dismissal of the Case on the basis that it was not filed in good faith. Under Section 1112(b) of the Bankruptcy Code, a court may find dismissal is warranted "for cause" if it is in the best interest of the creditors and the estate. *In re Primestone Inv. Partners L.P.*, 272 B.R. 554, 555 (D. Del. 2002). The Third Circuit makes clear that "a finding of lack of good faith should not [be] lightly infer[red]" and should be "utilized only in egregious cases[.]" *In re Gretz*, 2011 WL 1048635, at *2 (Bankr. D. Del. Mar. 18, 2011) (quoting *Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364, 373 (3d Cir. 2007)) (modifications in original).

7.      The Third Circuit places the initial burden to present a *prima facie* showing of lack of good faith on the movant. *In re S. Canaan Cellular Invs., Inc.*, 2009 WL 2922959, at *6 (Bankr. E.D. Pa. May 19, 2009). Only after the movant succeeds in making this showing does the burden shift to the debtor to establish that the petition was filed in good faith. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). Thus, the Moving Creditors bear the burden of establishing a lack of good faith.

8.      Lack of good faith is determined by reviewing "the totality of the circumstances" to determine "(1) whether the petition serves a valid bankruptcy purpose, *e.g.*, by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed

3

merely to obtain a tactical litigation advantage." *In re S. Canaan Cellular Invs., Inc.*, 2009 WL 2922959, at *6 (quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119–20 (3d Cir. 2004)).

9.      To assist in answering these questions, courts utilize a list of factors while recognizing that "no single factor is determinative of a lack of good faith in filing a petition." *In re Primestone Inv. Partners L.P.*, 272 B.R. 554, 557–58 (D. Del. 2002) (quoting *In re Tiffany Square Assocs., Ltd.*, 104 B.R. 438, 441 (Bankr. M.D. Fla. 1989)). The factors considered include:

> a. Single asset case;
>
> b. Few unsecured creditors;
>
> c. No ongoing business or employees;
>
> d. Petition filed on eve of foreclosure;
>
> e. Two party dispute which can be resolved in pending state court action;
>
> f. No cash or income;
>
> g. No pressure from non-moving creditors;
>
> h. Previous bankruptcy petition;
>
> i. Prepetition conduct was improper;
>
> j. No possibility of reorganization;
>
> k. Debtor formed immediately prepetition;
>
> l. Debtor filed solely to create automatic stay; and
>
> m. Subjective intent of the debtor.

*Id*. at 557 (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999)).

10.      Ultimately, the Third Circuit treats "the standard for good faith [as] a relatively lenient one." *In re Gretz*, 2011 WL 1048635, at *3 (citing *Perlin*, 497 F.3d at 373). It recognizes

that "[m]any (if not most) cases will involve debtors who have promised to pay but nonetheless defaulted. . . . Absent additional facts, these circumstances will not operate to a debtor beyond the succor of the bankruptcy laws." *Id*. at *3 n.5.

## II.     Debtor's Chapter 11 Filing is Distinguishable from Cases Cited by GPDEV

11.     As an initial matter, GPDEV cites the two cases in the Third Circuit and certain cases in the District of Delaware for the proposition that Debtor does not have a valid reorganizational purpose and instead filed for a tactical litigation advantage.[3] This Case is readily distinguishable from the cases relied upon by GPDEV.

12.     First, in *In re Integrated Telecom Express, Inc.,* 384 F.3d 108 (3d Cir. 2004), a solvent debtor filed for bankruptcy protection after threatening its landlord that if it did not accept a settlement of a lease dispute, the lessee would use bankruptcy to cap the landlord's damages. The Third Circuit held that the lessee had abused the bankruptcy process because the lessee/debtor was not in financial distress and was using the bankruptcy proceeding as a form of extortion.[4] In this case, Debtor is neither seeking to cap GPDEV's damages using a tool in the bankruptcy toolkit, nor is Debtor financially healthy and lacking a legitimate basis for Chapter 11 protection. Instead, the Debtor seeks an opportunity for a breathing spell that will continue to allow it to operate as a going concern for the benefit of all involved.

13.     In *In re SGL Carbon,* 200 F.3d 154 (3d Cir.1999), once again the Third Circuit ruled that a financially healthy debtor filed its bankruptcy petition in bad faith. The debtor faced a major antitrust litigation and conceded that it was financially healthy and would not have sought bankruptcy protection but for the antitrust claims. *Id.* at 162. The Third Circuit concluded that the

---

[3] Under the statute, "cause" includes a "substantial and continuing loss to or diminution of the estate" and an "absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A)-(B)). Neither is met here.
[4] The cases from this pleading were summarized in *In re Crown Vill. Farm, LLC*, 415 B.R. 86, 94 (Bankr. D. Del. 2009).

debtor filed the bankruptcy petition without a valid reorganizational purpose and, accordingly, the filing lacked the requisite good faith. *Id.* at 169.

14.     In *SGL Carbon*, the evidence presented included, among other things, testimony from the debtor's vice president "[a]knowledging that bankruptcy protection was the 'sole reason' [the debtor's] Executive Committee had authorized the Chapter 11 petition" and that "he believed filing for Chapter 11 would 'change the negotiating platform' with plaintiffs and 'increase the pressure on . . . plaintiffs to settle.'" *Id.* at 158. Here, the Debtor's lack of liquid assets to pay the judgments in favor of GPDEV makes it clearly distinguishable from *SGL* in that the Debtor is not financially healthy. Further, there is plainly no negotiation advantage being gained, as the Debtor is not seeking to use any of the bankruptcy court tools to gain leverage against GPDEV.  In fact, rather than seeking to obtain an advantage or delay, Debtor itself has sought relief from the automatic stay in order to allow the Eleventh Circuit appeal to continue (which relief GPDEV curiously opposed).  Again, the underlying showing of bad faith present in *SGL* is not present.

15.     In *In re 15375 Memorial Corp.,* 400 B.R. 420 (D. Del. 2009), the district court, reversing the bankruptcy court, ruled that the debtors filed their bankruptcy petitions as a litigation tactic and that the cases should therefore be dismissed. The district court found that because the debtors did not have any meaningful assets, the debtors did not file the bankruptcy case to maximize value, and, given the litigation facing debtors (and their parent company), the case should be dismissed. *Id.* at 427. Specifically, the Court noted that the estate would not be maximized by the filing because the "petitions did not maximize the value of Debtors' estates." *Id.* at 427. The *Memorial* court noted that the debtors needed only to make a showing that the restructuring would preserve "some value that otherwise would be lost outside of bankruptcy," but the debtors could not do so. *Id.*

16.     Here, however, Debtor's bankruptcy filing does meet the "some value" threshold. First, outside of bankruptcy, GPDEV has attempted, and will likely continue to attempt, to garnish all incoming funds owed to the Debtor. This would result in Debtor being unable to compensate its counsel, Venable LLP ("Venable"), for pursuing the FEMA Claims and other accounts receivable owed to Debtor; and would render Debtor unable make payments to its main fuel supplier with whom it coordinates to provide the Defense Logistics Agency ("DLA") with fuels.[5] The automatic stay stops these garnishment efforts so that the Debtor can compensate both Venable and its fuel supplier, purely on a postpetition basis, such that each can continue to operate in a manner that is likely to bring substantial funds into the estate. Accordingly, unlike in *Memorial*, this bankruptcy proceeding and accompanying "breathing spell" provide at a minimum "some value" to the estate not available outside of bankruptcy.

17.     In *Derma Pen,* prior to the petition date, the debtor notified a contract counterparty that it was terminating a distribution agreement. *In re Derma Pen, LLC,* 2014 WL 7269762 (Bankr. D. Del. Dec. 19, 2014). Litigation ensued over the contract counterparty's right of first refusal regarding a trademark purchase as a result of the termination. Shortly before the eve of trial, the debtor filed its petition. *Id.* at *1. The contract counterparty moved to dismiss the bankruptcy case. *Id.* The court dismissed the case, reasoning that while a debtor need not be insolvent at the time of filing and that early access to bankruptcy relief may be necessary prior to insolvency, it does not open the door for a "premature filing." *Id.* at *8 (citing *SGL Carbon,* 200 F.3d 154, 163 (3d Cir. 1999)). The court noted that the record did not demonstrate that the debtor was in financial distress at the time of its filing. Its schedules indicated the debtor was solvent, listing assets worth

---

[5] In this Case, Debtor will not make any payments to its trade creditor on account of prepetition claims without further order of the Court.

$6,203,011.97, and total debt of $1,712,883.36.[6] *Id.* at *4. Reviewing the schedules and statements, the court also noted "except for the rising litigation costs (the lion's share of its general unsecured debt), there is no indication that the Debtor's operations were suffering from financial stress." *Id.* at *8. While the *Derma Pen* court did not find the debtor's lack of financial stress dispositive, it was a factor in leading the court to hold that the debtor filed as part of a litigation tactic rather than a good faith reorganization attempt. The court noted the "lack of facts demonstrating that Derma Pen was in financial distress" at the time of filing indicated other motives prompted the filing. *Id.* at *9.

18.     GPDEV argues that in this Case even fewer unsecured creditors exist than did in *Derma Pen*, which is quantitively true. However, GPDEV ignores that the primary factor in that court's decision was the financial health of the debtor. No argument is made here that this Case was a "premature filing" akin to *Derma Pen*. In this case, owing to the Debtor's lack of liquid assets, there is no argument that can be made that Debtor is financially healthy under these circumstances. Thus, *Derma Pen* is easily distinguishable from the case at bar.

19.     In sum, Debtor filed for the valid bankruptcy purpose of marshalling its assets, managing its debts, and attempting to preserve itself as a going concern to maximize value for the benefit of all interested parties. Debtor did not file for any tactical litigation advantage, as no advantage to the Debtor exists by being in the "fishbowl" of the bankruptcy court's eye. Despite GPDEV's repeated protestations, the precipitating factor in Debtor's filing was not an adverse judgment – which had already been entered and was currently on appeal – but rather GPDEV's attempt to execute on Debtor's contracts with DLA—an act that could cause the complete collapse

---

[6] While the Debtor here has assets exceeding liabilities on its SOFA and schedules, a majority of Debtor's assets are (i) contingent on the outcome of the FEMA dispute or (ii) accounts receivable it will be owed over the next several years due to its ongoing contracts.

of Debtor's operations and ability to continue as a going concern. Moreover, it could result in Debtor being unable to pay its subcontractors for active government contracts, resulting in default—a situation that would be catastrophic.

### III.   The Primestone Factors Weigh in Debtor's Favor

20.    Contrary to GPDEV's conclusory statements otherwise, the *Primestone* factors support Debtor's position that this Case was filed in good faith.

#### a.    *This is Not a Single Asset Case*

21.    Courts in this district find a single asset case to be a possible indicator of bad faith. *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 299 (Bankr. D. Del. 2011) (debtor's only asset was its membership interest in a related entity); *In re PPI Enterprises (U.S.), Inc.*, 228 B.R. 339, 346 (Bankr. D. Del. 1998), *aff'd*, 324 F.3d 197 (3d Cir. 2003) (distinguishing the *Phoenix Piccadilly* case in which the court cited as evidence of bad faith attempts by a debtor holding a single asset to frustrate a secured creditor's collection attempts). While the Bankruptcy Code does not define "assets," section 11 U.S.C. § 521(1) requires a party to "disclose all assets, *including contingent and unliquidated claims.*" *In re Adams*, 481 B.R. 854, 856 (Bankr. N.D. Miss. 2012) (emphasis added). Thus, Debtor's valuable causes of action should be viewed as assets.

22.    GPDEV claims that Debtor has a single asset, the $164,000.00 in cash remaining in its bank account. However, Debtor's contingent, unliquidated claims are also assets per the Bankruptcy Code and applicable case law. Here, apart from the cash on hand in Debtor's bank account, Debtor has contract claims against FEMA for restocking fees.[7] While the January 27, 2022, decision from the United States Civilian Board of Contract Appeals denied summary judgment to Debtor, FEMA's cross-motion for summary judgment was also denied. Accordingly,

---

[7] True and correct copies of the Task Order Modifications with FEMA are attached as Exhibit "A" and the Debtor's Summary Judgment Reply explaining the Dispute is attached as Exhibit "B."

whether the restocking fees are collectable, and the proper amount of those restocking fees, are issues of fact that will go forward.

23.     GPDEV fails to mention that Debtor has disclosed that it intends to file (imminently) an approximately $6.8 million claim against FEMA pursuant to a change order.[8] While BSLS, to its credit, acknowledges the existence of Debtor's $6.8 million change order claim against FEMA (BSLS Response at ¶ 27), BSLS asserts that this receivable is "stale" because it is older than 90 days. BSLS appears to fundamentally misunderstand how government contracting in the defense space (and government contracting in general) works, as the passage of a mere ninety days is immaterial when FEMA guidelines contemplate that claims will be submitted within six years. Additionally, Debtor will continue to collect from DLA on their ongoing and active fuel supply contracts. Accordingly, Debtor is not merely a single asset debtor, and this factor weighs against dismissal. Continued efforts to collect on FEMA claims and to perform under valuable, ongoing contracts will benefit all creditors, including the Moving Creditors who are seeking dismissal or conversion.  Through the bankruptcy process, Debtor can also pursue such avoidance claims as may be deemed appropriate, each of which is also an asset of Debtor.

24.     Even if the Court were to find that the additional accounts receivable on Debtor's statements and schedules are not assets, "there is nothing inherently improper in a single asset debtor filing a Chapter 11 Petition for Reorganization, even shortly before or after a foreclosure proceeding has commenced," but noting the filing cannot be "patently abusive." *In re Primestone Inv. Partners L.P.*, 272 B.R. at 558.  Under the circumstances presented here, Debtor's filing is not patently abusive.

---

[8] A true and correct copy of the change order is attached as Exhibit "C."

**b.** *Debtor Has Multiple Unsecured Creditors*

25.     Debtor has multiple unsecured creditors, including both trade creditors and professionals. Lindsay Blee Americas LLC ("Blee") is a physical supplier, trader, and broker of marine fuels across the globe and assists Debtor with its DLA contract.[9] Blee provides crucial fuel as part of Debtor's contract with the DLA,[10] which manages the end-to-end global defense supply chain for the five military branches, as well as certain other combatant commands and other governmental agencies. Resolution of the trade debt owed to Blee affects Debtor's national security contracts.

26.     Additionally, Debtor owes payments to the Bresky Law Firm, the Smith Firm, and Venable, none of which are for bankruptcy-related services. Debtor also has a contingent trade debt of approximately $1.5 million that will likely be owed to Bering Straits Native Corporation related to the pending FEMA Action.[11] Further, CareFirst, who administers the health insurance for Debtor's managers, is owed approximately $5,200.00. No claims process has been initiated in this Case to date, and additional creditors may emerge.

27.     To the extent that Debtor has few creditors, it is a testament to its proper planning for projects and history of timely payment during less troubled times. Moreover, this is not a case where a chapter 11 filing is being used merely to frustrate a secured creditor's foreclosure efforts. Accordingly, this factor should weigh in favor of Debtor.

**c.** *The Debtor Has an Ongoing Business and Active Members*

28.     Debtor is engaged in ongoing operations – delivering fuel for the U.S. military as required pursuant to its contract with DLA and making appropriate payments to its suppliers.

---

[9] *See* http://www.lindsay-blee.com/about-us/.

[10] *See* DLA Aviation Solicitation/Contract/Order for Commercial Items with TSI for time Period 08/01/2018 to 10/31/2022, TSI_000000051, attached hereto as Exhibit "D."

[11] A true and correct copy of Bering Straits Logistics Services, LLC's Proof of Claim is attached hereto as Exhibit "E."

Debtor delivers fuel to multiple sea vessels for the United States government.[12] Debtor has shown its capability and expertise in its performance on the Hurricane Maria task order and intends to continue providing such services for the nation going forward.[13]  Recently, Debtor was asked about its availability to fulfill a multimillion-dollar contract on a tight timeline in response to a request from the Department of Defense and the North Atlantic Treaty Organization ("NATO") to supply parts necessary for the operation of Patriot air defense guided missile systems, and Debtor reasonably expects to enter into that contract in the near future. Additionally, Debtor regularly receives requests for proposals from the government to bid on contracts.[14]  This includes conversations with key government agencies regarding these contracts as part of the day-to-day operations of Debtor's business.[15] Debtor periodically performs other services through DLA which are classified.

29.     Debtor's role is as a general contractor that helps meet governmental needs by managing the logistics and supply process as part of a logistics supply chain that does not require it to hire traditional employees. Debtor has operated profitably for over 20 years and has never had employees beyond its members. The fact that Debtor does not have employees beyond its managers is a function of Debtor's business and role in the national defense supply chain, not evidence that it is a "shell," is not doing business, or has no ability or intention to perform under its contracts and generate revenue as Moving Creditors ignorantly or misleadingly suggest.

30.     Debtor currently has an active, ongoing business, and will continue to have ongoing business for the foreseeable future. Thus, this factor weighs in Debtor's favor.

---

[12] True and correct copies of Debtor's invoices and fuel delivery confirmation are attached hereto as Exhibit "F."
[13] True and correct copies of Debtor's contracts regarding Hurricane Maria are attached hereto as Exhibit "G."
[14] True and correct copies of e-mails requesting that Debtor bid on government contracts are attached hereto as Exhibit "H."
[15] True and correct copies of Debtor's correspondence with FEMA are attached as Exhibit "I."

**d.** ***The Petition was Filed Immediately Following a Value-Collapsing Attempted Garnishment of Debtor's Contract with the DLA***

31.    When the Judgment was entered against Debtor in the Florida Action in September 2021, it did not seek bankruptcy relief. Such relief was sought only after GPDEV took a series of steps including issuing writs of garnishment to DLA.[16]  Garnishing payment from DLA bars the Debtor from continuing to pay its fuel supplier, Blee. As such, the Debtor's business could not continue to operate. Accordingly, it was this value-collapsing action that led to this bankruptcy proceeding, not the Judgment in the Florida Action on a standalone basis. This factor weighs in Debtor's favor.

**e.** ***This Case Does Not Represent a Two-Party Dispute That Can Be Resolved in a Single Other Forum***

32.    *Primestone* counsels that bankruptcy courts should consider whether the case involves only a dispute between two parties. Here, Debtor operates a complex governmental logistics business. The Hurricane Maria Task Order led to two disputes which bear upon this case: (1) whether FEMA owes additional amounts under the Task Order, which is being resolved in the United States Civilian Board of Contract Appeals; and (2) whether GPDEV is entitled to the amount of the Judgment entered in the Florida Action, which is being resolved in the Eleventh Circuit and Florida district court.

33.    Accordingly, this is not a simple two-party dispute. It is a multi-party dispute that involves FEMA, DLA, and trade creditor Blee, and involves multiple forums. Notably, BSLS acknowledges that GPDEV's "argument that this is a two-party case is simply wrong." (BSLS Response at ¶ 3). Accordingly, this factor weighs in favor of Debtor.

---

[16] A true and correct copy of GPDEV's writ of garnishment to DLA is attached hereto as Exhibit "J."

**f.   *The Debtor Has Both Income and Accounts Receivable With Which It Will Fund Its Plan of Reorganization***

34.    GPDEV's argument is essentially that "[t]he Debtor has no cash or income to speak of, and is simply delaying collection in the hopes of somehow running out the statute of limitations for distributions of the $25,000,000.00 in net income it received from the sales of bottled water." Motion at 14.  This misstates the facts as well as Debtor's intentions and the law. Bankruptcy Code § 108 specifically provides for a 30-day period after the termination of the automatic stay for all claims against a debtor to be filed if the statute of limitations expired during the bankruptcy case.[17] Any statute of limitations that applies to claims against Debtor is tolled during the bankruptcy case. *Id.* Therefore, this Case will not have any meaningful impact on GPDEV's (or other creditors') ability to pursue whatever causes of actions it deems appropriate to assert.

35.    As noted above, Debtor has accounts receivable owed from DLA and causes of actions on disputed accounts receivable with FEMA. Additionally, as it continues to provide DLA with fuel post-petition, the Debtor will continue to receive additional funds.[18] Further, Debtor's principals contemplate lending money to Debtor on a subordinated basis as necessary in order to assist with Debtor's successful reorganization. Accordingly, this factor weighs in Debtor's favor.

---

[17] "Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of--
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim."

11 U.S.C.A. § 108(c).

[18] Blee will only be compensated for postpetition expenses. No prepetition expenses owed to Blee will be paid without further order of the Court.

Case 22-10066-CTG    Doc 119    Filed 03/08/22    Page 15 of 20

### g.  *There is Currently No Pressure from Non-Moving Creditors*

36.    Admittedly, Debtor does not currently have pressure from Blee, its main supplier of fuel for its DLA contract.  However, if non-payment occurred due to GPDEV's garnishment steps directed to DLA, Debtor would not be able to pay Blee, leading to significant pressure.[19] Accordingly, holding off on filing this Case would result in increased pressure from other creditors. Thus, this factor weighs in Debtor's favor or is at least neutral.

### h.  *The Debtor has not previously filed a bankruptcy petition*

37.    Prior to the Petition Date, Debtor has never filed a bankruptcy petition. Therefore, this factor weighs in favor of Debtor.

### i.  *Debtor's Prepetition Conduct Was Not Improper*

38.    There is no basis in the record of this Case to conclude that the prepetition conduct of Debtor, or for that matter its principals, was anything other than proper. GPDEV's false allegations of improper transfers are tolled while Debtor is in bankruptcy, so any such allegations can be pursued if the reorganization does not resolve such disputes.

39.    The alleged "cover ups" described by GPDEV are mere (false) allegations. For example, the allegation that Debtor "claimed millions of dollars" of false expenses and that TSI received $37,579,377.37 (rather than $27,303,597.17) were not findings of the District Court in the Florida Action. While an order was entered, there were no final factual findings by the District Court that the accounting was incorrect, as Debtor previously withdrew the subject documents which had been prepared entirely by their prior counsel without ever having been reviewed by Debtor.

---

[19] As this Opposition and the BSLS Response make fairly clear, GPDEV's assertion that "GPDEV and Simons are the only legitimate creditors of the Debtor" (Motion at 14) is demonstrably false and self-serving.

15

40.    Debtor will not waste the Court's time by addressing each irrelevant and unsubstantiated allegation of "improper" conduct raised in the Motion in order to smear Debtor and its principals. Debtor's prepetition conduct was proper, and Debtor cannot be faulted for defending itself in a bona fide contractual dispute with GPDEV.  Further, as discussed below, Debtor's conduct since filing this Case has been proper, and Debtor has sought to be cooperative. A debtor in a chapter 11 case is in a fishbowl, which requires disclosure of income and expenses. Debtor has already produced extensive documents related to Debtor's financial status, and GPDEV's allegations of "stonewall[ing]" are meritless.

### j.    *There is a Clear Possibility of Reorganization*

41.    Debtor has articulated two clear restructuring possibilities:  (1) Debtor succeeds on the FEMA claims and can post a bond, or, if Debtor is unsuccessful in the Eleventh Circuit appeal, pay the Judgment; or (2) Debtor is able to lift the stay to pursue the Eleventh Circuit appeal, and succeeds in obtaining reversal of the Judgment, which would resolve the underlying issue that forced Debtor into bankruptcy. In the midst of this, Debtor continues to perform under its existing contracts and generate revenue on a monthly basis. Accordingly, Debtor has valid pathways to a successful reorganization and this factor weighs in Debtor's favor.

### k.    *The Debtor Was Not Formed Immediately Prepetition*

42.    Debtor has been in business for over 20 years. This factor unquestionably weighs in favor of Debtor.

### l.    *The Debtor Did Not File this Case Solely to Obtain an Automatic Stay for an Improper Purpose*

43.    GPDEV argues that this Case was filed in the hope of obtaining a stay with "no legitimate ability" to formulate a plan of reorganization. (Motion at 18). Again, GPDEV ignores Debtor's ability to collect from FEMA (in addition to collecting revenue on its ongoing contracts)

16

and confirm a plan of reorganization that pays all creditors, including the Moving Creditors, in full or substantially in full, even if the appeal before the Eleventh Circuit Appeal is unsuccessful. As discussed at length herein, while the automatic stay is certainly beneficial, this Case was filed for proper purposes beyond any application of the automatic stay—the Case is meant to ensure the continued existence of Debtor and maximize its value to the benefit of all interested parties.

**m.  *The Subjective Intent of Debtor is to Preserve Value and Continue as a Going Concern***

44.    In this case, Debtor filed in good faith with the subjective intent to obtain a breathing spell in order to preserve the value of Debtor and enable it to continue as a profitable going concern.  GPDEV has failed to make a *prima facie* showing that the Case was filed in bad faith. Even if GPDEV had met its burden, Debtor has met its evidentiary burden of showing that the Case was filed for a valid bankruptcy purpose and not to gain a litigation advantage. The Florida Action has been pending for years, and it was only after Debtor's fueling business was harmed as a result of GPDEV's aggressive garnishment efforts that Debtor filed this Case.

45.    Moreover, this Court has instructed that the Debtor's postpetition conduct "may certainly bear on the court's assessment of the final factor – the debtor's subjective intent." Since the filing of this Case, Debtor filed its Schedules and Statements well before the 14-day deadline imposed by Rule 1007.  Debtor, notwithstanding certain discovery disputes, has produced every requested bank statement going back to 2018 and has otherwise substantially, if not completely, complied with GPDEV's discovery requests of Debtor, despite being unrepresented by counsel for a period of time.  Accordingly, Debtor's cooperative postpetition conduct should lead the Court to weigh this factor in Debtor's favor.

**IV.    BSLS's Proposal to Convert the Case is Premature**

46.     On February 7, 2022, BSLS filed the BSLS Response in which it proposes to convert, rather than dismiss, this case, focusing on the "diminution" in value argument. As discussed above, Debtor regularly receives requests for proposals from the government to bid on contracts, and Debtor continues to generate income every month by performing under its existing contracts. Accordingly, there is a valuable, ongoing business. BSLS also contends that the appeal to the Eleventh Circuit would be better pursued by a Chapter 7 Trustee. Debtor disagrees, as the Bresky firm and Debtor's management are closest to the facts of the appeal and underlying years-long litigation and are unquestionably best positioned to pursue such appeal. Additionally, the arguments put forth above in response to GPDEV's Motion apply with equal weight to the argument put forth by BSLS in the BSLS Response, particularly as they pertain to Debtor's assets, ongoing business, and prospects for a successful reorganization.

47.     At the very least, Debtor respectfully submits that it is appropriate under the circumstances to give the Debtor a breathing spell of 60-90 days in order to pursue its FEMA claims, continue collecting accounts receivable from DLA, and close on new deals with DLA, all of which may yield substantial value for the estate and the creditors.  Notably, there is no meaningful risk of diminution of the value of the estate in the meantime.

**V.    Debtor's Schedules and SOFA are Accurate and Any Inaccuracies Will be Addressed Promptly**

48.     Finally, GPDEV argues that Debtor made "false or incomplete" filings  regarding the schedules and SOFA, citing two issues: (1) unrecorded transfers to Christopher Mott on Venmo; and (2) calling into question the amounts owed to Blee.

49.     First, with respect to the transfers to Christopher Mott, these expenses were reimbursements for lunches and copy expenses during the Florida Action. To the extent these need

to be reported as a transfer to an insider and Debtor was not previously so advised, Debtor is prepared to amend its schedules as appropriate.

50.     Second, regarding the Blee claim, GPDEV casts aspersions but offers nothing to refute the fact that $94,410.00 is owed. As explained above and in the accompanying Acosta Declaration, the DLA contract exists, as do the receipts from the associated fuel supply transactions. Accordingly, the Court should not give any weight to this sideshow.

51.     Finally, as GPDEV and its counsel are undoubtedly aware, the schedules and SOFA, submitted within 14 days of the Petition Date as required under the bankruptcy rules without an extension, are routinely amended during bankruptcy cases.  To the extent any transfers of funds occurred in connection with Debtor's business and were in good faith overlooked, Debtor will promptly amend its schedules and/or SOFA to account any inadvertent errors or omissions.

**NOTICE**

52.     Notice of this Opposition will be provided to: (a) the office of the U.S. Trustee for the District of Delaware; (b) the Moving Creditors; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Debtor submits that no other or further notice is necessary.

**CONCLUSION**

WHEREFORE, Debtor respectfully requests that the Court enter an order denying GPDEV's Motion, denying BSLS's request to convert the case to one under chapter 7, and granting Debtor such other relief as the Court deems appropriate.

Dated: March 8, 2022                    GELLERT SCALI BUSENKELL &
                                         BROWN, LLC

                                         */s/ Bradley P. Lehman*
                                         Ronald S. Gellert (DE 4259)
                                         Margaret F. England (DE 4248)
                                         Bradley P. Lehman (DE 5921)
                                         1201 North Orange Street, Suite 300
                                         Wilmington, DE 19801
                                         Telephone: (302) 425-5800
                                         rgellert@gsbblaw.com
                                         mengland@gsbblaw.com
                                         blehman@gsbblaw.com