**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Team Systems International, LLC,<br><br>Debtor(s). | Chapter 11<br><br>Case No. 22-10066-CTG |

**CREDITORS' JOINT REPLY TO THE INTERIM CHAPTER 7 TRUSTEE'S RESPONSE TO CREDITORS' JOINT MOTION FOR RESOLUTION OF DISPUTED CHAPTER 7 TRUSTEE ELECTION**

GPDEV LLC ("**GPDEV**") and Simons Exploration, Inc. ("**Simons**"), by and through their undersigned counsel, file this Reply to the interim Trustee, George L. Miller's, *Response to Creditors' Joint Motion for Resolution of Disputed Chapter 7 Trustee Election* [D.I. 177], and in support respectfully state as follows:

**PRELIMINARY STATEMENT**

The herein reply is intended to supplement and clarify the issues before the Court for the disputed chapter 7 trustee election.

GPDEV and Simons are non-insider, undisputed, unsecured creditors with no materially adverse interest to other creditors in this case.

GPDEV and Simons primary concern at the moment is that the Debtor's principals are disposing of/encumbering the real property and other assets fraudulently transferred thereto in the years leading up to the bankruptcy filing.

GPDEV and Simons expressed this concern to interim trustee, George Miller in a post-conversion telephone discussion. However, Mr. Miller expressed that he did not share those same concerns.

Instead, Mr. Miller vocalized, in no uncertain terms, that he believes he must pursue the FEMA claim(s) through all appeals *prior to* commencing any avoidance actions to obtain or even encumber the real estate assets purchased in the Debtor's principal's name with funds from the Debtor during the pendency of the district court litigation.

There is good reason to believe the debtor's FEMA claim(s) are remote at best and are frivolous at worst. In fact, during their post-conversion telephone discussion, Mr. Miller told GPDEV and Simons that he spoke to the Judge in the FEMA litigation, and the Judge explained that TSI's claim would be rejected as a matter of law (because TSI never actually incurred restocking fees, FEMA is not liable for costs that TSI never actually incurred). But, Mr. Miller explained that he believed that the two Courts that have already rejected TSI's FEMA claims were wrong.

But, even if the debtor's FEMA claim(s) have merit (they do not), GPDEV and Simons have legitimate fears that Mr. Miller's intended strategy to pursue all FEMA claim(s) first and all fraudulent transfer claims second will draw down the limited resources of the estate, while inadvertently providing time for recipients of fraudulent transfers to further dispose of assets.

As such, GPDEV and Simons advocate for a more traditional and aggressive approach to ensure that assets potentially available for distribution are not diminished during the pendency of the adjudication of the debtor's FEMA claim(s).

To that end, at the 341 meeting, GPDEV and Simons elected Mr. Workman to serve as chapter 7 trustee in this case. Mr. Workman maintains an office in Delaware and is eminently qualified to perform the duties of a Chapter 7 Trustee in this case.

At no point in time did GPDEV and/or Simons express to Mr. Miller that they did not want him to pursue the pending Appeal in connection with their pre-petition judgments.

## BACKGROUND

As set forth in more detail in *Creditors' Joint Motion for Resolution of Disputed Chapter 7 Trustee Election* filed on May 13, 2022, GPDEV and Simons are the holders of unstayed, final judgments totaling approximately $6.3 million (inclusive of pre-judgment interest), which were entered in September, 2021, after a jury trial and verdict in the United States District Court for the Northern District of Florida.

As noted in this Court's Memorandum Opinion [D.I. 146] Granting GPDEV and Simons' Motion to Dismiss/Convert:

> As ultimately determined by the district court, the debtor received, over a period running from late 2017 until mid-2019, four payments from FEMA on account of its performance under the contract with FEMA which totaled just less than $37.6 million. TSI's expenses associated with the contract (also ultimately determined by the district court) came to just under $12.6 million, yielding net income of approximately $25 million. The total judgment (between the two judgment creditors) of approximately $5.25 million, before the award of pre-judgment interest, was their 25 percent commission on the $25 million of net income ($6.25 million), minus approximately $1 million that TSI had previously paid them.

Memorandum Opinion [D.I. 146, p. 7].

The District Court observed, "based on the evidence before it the jury 'could hardly have reached a contrary conclusion.'" Id. at p. 9 (citing D.I. 34 at p. 5).

Also notably, the District Court's November 8, 2021 Order states, among other things, that: (i) the Debtor has a "record of demonstrably false assertions in this litigation[;]" (ii) "the [Debtor] is unlikely to prevail on the merits on appeal. To the contrary, the plaintiffs' case on the merits was strong[;]" and (iii) "the likelihood that the [Debtor] will prevail on appeal on its challenge to the amount of the award—a challenge never made in this court—is [also] low[;]" and (iv) "if a stay is issued, and if, as the [Debtor] asserts, it cannot afford a bond, the risk of loss to the

[Creditors] will be substantial – the [Debtor] cannot post a bond, its ability to pay the judgment is in doubt today and will likely be in greater doubt as time passes."

GPDEV and Simons sought post-judgment discovery for the purpose of locating assets for execution. The Debtor and its principals were egregiously uncooperative and not responsive, resulting in the entry of orders compelling the production of documents and/or information.

Ultimately, GPDEV and Simons filed a Motion for Order to Show Cause as to why the Debtor and its principal should not be held in contempt.

As a direct result of that Motion, the Debtor filed a Chapter 11 case in this District on January 18, 2022, a litigation tactic to thwart GPDEV and Simons collection efforts without posting a bond to obtain a stay pending appeal.

On January 19, 2022, the District Court granted GPDEV and Simons Order to Show cause, compelling the Debtor's principal, Deborah Mott, to appear and show cause on January 24, 2022, and to "provide an address where, if held in civil contempt at a later hearing, Ms. Mott will be available to be taken into custody by the United States Marshalls Service and held until the required information is provided." Ex. 37 at p. 3. The Order to Show cause hearing was postponed due to the filing of this bankruptcy case.

While the TSI Lawsuit and Appeal were pending, from 2018 through 2022, the Debtor transferred many millions of dollars to and for the benefit of insiders – at least $9 million by Creditors' estimation.

On March 31, 2022, the debtor's chapter 11 bankruptcy case was converted from Chapter 11 to Chapter 7 on GPDEV and Simon's Section 1112(b) Motion [D.I. 41]. The interim trustee that was appointed is George L. Miller.

As detailed in the preliminary statement above, GPDEV and Simons attempted to meet telephonically with the interim trustee to provide useful information based on their significant history and involvement with the Debtors. It quickly became clear, however, that GPDEV/Simons have fundamentally different views than Mr. Miller on the best way to maximize the value of the assets of the estate.

GPDEV and Simons have expressed to the interim trustee that they have concerns that the Debtor's principals are disposing of/encumbering the real property and other assets fraudulently transferred thereto in the years leading up to the bankruptcy filing.

However, Mr. Miller expressed that he did not share those same concerns.

Instead, Mr. Miller vocalized, in no uncertain terms, that he believes he must pursue the FEMA claim(s) through all appeals *prior to* commencing any avoidance actions to obtain or even encumber the real estate assets purchased in the Debtor's principal's name with funds from the Debtor during the pendency of the district court litigation.

There is good reason to believe the debtor's FEMA claim(s) are remote at best and are frivolous at worst. In fact, during their post-conversion telephone discussion, Mr. Miller told GPDEV and Simons that he spoke to the Judge in the FEMA litigation, and the Judge explained that TSI's claim would be rejected as a matter of law.

But, even if the debtor's FEMA claim(s) have merit, GPDEV and Simons have legitimate fears that Mr. Miller's intended strategy to pursue all FEMA claim(s) first and all fraudulent transfer claims second will draw down the limited resources of the estate, while inadvertently providing time for recipients of fraudulent transfers to further dispose of assets.

As such, GPDEV and Simons advocate for a more traditional and aggressive approach to ensure that assets potentially available for distribution are not diminished during the pendency of the adjudication of the debtor's FEMA claim(s).

To that end, at the 341 meeting, GPDEV and Simons elected Mr. Workman to serve as chapter 7 trustee in this case. Mr. Workman maintains an office in Delaware and is eminently qualified to perform the duties of a Chapter 7 Trustee in this case.

At no point in time did GPDEV and/or Simons express to Mr. Miller that they did not want him to pursue the pending Appeal in connection with their pre-petition judgments.

## ARGUMENT

"The Bankruptcy Code establishes clear requirements for the parties and procedures involved in an election." *In re ETS of Wash., LLC*, 2021 Bankr. Lexis 2610 at *6; 2021 WL 4343622 (Bankr. D.C. Sept. 23, 2021). Section 702(a) sets forth the scope of creditors who are entitled to vote in a trustee election. It states:

a) A creditor may vote for a candidate for trustee only if such creditor –

1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h) or 766(i) of this title;

2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

3) is not an insider.

11 U.S.C. § 702(a). Bankruptcy Rule 2003(b) "clarifies, *inter alia*, that in addition to the requirements of § 702(a), an otherwise qualifying creditor *must have filed a proof of claim or a writing evidencing the creditor's right to vote prior to any election.*" *Id*. *ETS of Wash, LLC*, at *7 (citing to Fed. R. Bankr. P. 2003(b)) (emphasis added).

**I.      GPDEV and Simons were Eligible to Vote to Elect Mr. Workman as Trustee**

As noted in the United States Trustee's Report of Disputed Election [D.I. 167] "there is only one dispute that will impact the result: whether the claims filed by GPDEV and Simons are eligible to vote." Report of Disputed Election [D.I. 167 at ¶ 3].   Minutes before the scheduled 341(a) meeting, the interim Trustee objected GPDEV and Simons' claims asserting that their claims were categorically ineligible to vote since the Debtor had filed an appeal of the judgments.

**A.      The Williams Case is Legally and Factually Distinguishable from the Above-Captioned Case**

In support of his argument that GPDEV and Simons claims are disputed, the Trustee exclusively and entirely relies on the case of *In re Williams*, 277 B.R. 114 (Bankr. C.D. Cal. 2002) where the Court found "no cases on point as to whether a claim based on a judgment on appeal is 'undisputed' under § 702(a)(1)." *In re Williams*, 277 B.R. 114, 119 (Bankr. C.D. Cal. 2002).

In *Williams,* as a matter of first impression, the court determined that "to allow the other party to the lawsuit to select the trustee would put her in an enviable but unjust position." *Id*.  Under the facts of that case, the Court determined, "The law does not sanction having Swenson choose her opponent on appeal any more than it allows her to select debtor's attorney." *Id*.

But notably, *Williams* presented a far different factual scenario from the one now before this Court.  In *Williams*, the Debtor, an individual by the name of John D. Williams, had at least 35 creditors.  See **Exhibit A**, Claims Register from Case No. 01-bk-13240-GM.  One of those creditors was Rosemary Swenson.  Ms. Swenson had obtained two judgments against the Debtor totaling $175,278.07, and had recorded those judgments within the 90-day period before the bankruptcy case was filed.  The Debtor had appealed both judgments.  The Debtor also had filed a preference action against Swenson. Swenson filed two secured proofs of claim (claims 5 and 6) alleging she was a secured and not unsecured creditor.

7

The Court first determined that Swenson's claim was ineligible to vote because it was a secured claim that was not avoided as of the date of the election. *Id*. Williams, 277 B.R. at 117. The court next determined that Swenson's claim was not "allowable" denying her theory that her claims could be deemed unsecured if she lost the preference action due to the language of Section 502(d), requiring a transferee of property to turn over the property or have their claim disallowed. *Id*. Because Ms. Swenson had not released her liens as of the date of the election, her claims were not "allowable" as necessary for participation in the election. *Id*. Next, the court found Ms. Swenson held interests materially adverse to the bankruptcy estate due to her "probable preferential transfer" and the existence of the preference actions. *Id*. at 118. After all of this, the Court then found Ms. Swenson's claim was also not undisputed due to the appeal and prospect that Ms. Swenson would be able to select the trustee who would control the appeals and adversary proceedings pending against her. Id. 118-121.

Under the facts of the *Williams* case, Ms. Swenson's interests were adverse to the unsecured creditor body for many reasons. In that case, there were many creditors who might have been harmed had Ms. Swenson succeeded in appointing a trustee that would have eliminated the appeals and adversary cases, and/or would have eliminated the challenge to her asserted secured claims. In the case of Team Systems International, the case remains primarily a two-party dispute. By finding that the claims of GPDEV and Simons are disputed, the Court would effectively be allowing the Debtor and its counsel to select its adversary.

Here, unlike Williams, moving creditors, GPDEV and Simons are motivated not by any desire to eliminate the appeal, but by a desire for a trustee to be inserted who will diligently and promptly pursue avoidance actions that the interim Trustee has stated he is unwilling to pursue until the end of all appeals of the FEMA claims, which this court properly described as

"somewhere between highly speculative and dubious". Memorandum Opinion at p. 3.  In any event, *Williams* is non-binding authority.  This court should deviate from its finding and hold GPDEV and Simons claims are undisputed as they are non-stayed final judgments which have not been overturned on appeal.

      **B.    The Appeal of GPDEV and Simons Judgments Doesn't Animate the Creditors' Actions**

The interim Trustee's Response curiously states that GPDEV and Simons "made it clear that they did not want him to pursue the pending Appeal in connection with their pre-petition judgments."  Response at ¶ 1.  Presumably the interim Trustee makes this assertion to bring the facts of this case in line with that of *Williams*, but the interim Trustee's assertions are not true.  At no point in time did GPDEV and/or Simons express to Mr. Miller that they did not want him to pursue the pending Appeal in connection with their pre-petition judgments.  Moreover, the facts of Williams are far different as noted above.

While GPDEV and Simons attempted to offer their time and knowledge to the Trustee on several calls, at no time did GPDEV or Simons ever try to demand that the Trustee not pursue the appeal.  To the contrary, the topic of the GPDEV and Simons appeal was not a meaningful part of any discussions, which mostly focused on the FEMA appeals that the Court has already observed appear speculative and dubious.  In each of these discussions GPDEV and Simons made clear that they were not looking to supplant the business judgment of the Trustee, but only providing their insights learned after the expenditure of hundreds of thousands of dollars in litigation against the Debtor.  The interim Trustee nevertheless believes he has an obligation to pursue the appeals prior to any challenge to actually fraudulent transfers of money that resulted in the purchase of real estate by the Debtor's principals.  If the interim Trustee is made the permanent Trustee, GPDEV

and Simons have legitimate concerns that the FEMA claims are a waste of time and money, and that the assets potentially available for recovery will continue to diminish.

### C. The Interim Trustee's Objections Do Not Render GPDEV and Simons Claims Disputed

Minutes before the 341(a) meeting of creditors, the interim Trustee filed objections to all proofs of claim, other than the claim of the IRS.

The interim Trustee's Response pp. 6-7 asserts that the existence of the objections renders all claimants subject of an objection ineligible to vote. The Trustee asserts that "<u>This should be the beginning and end of the analysis</u>." Id. p. 7 (emphasis original).

GPDEV and Simons maintain, however, that if an interim Trustee could keep their job in an asset case by avoiding any election by simply filing objections minutes before the 341(a) meeting, creditors would have no meaningful way to elect a trustee and Section 702 of the Bankruptcy Code would be meaningless.

As such, the Court should not allow the Trustee to thwart the will of the creditors by the use of objections filed within minutes of a 341(a) meeting.

## II. The Trustee's Numerous and Substantive Mischaracterizations to the Court

The interim Trustee's response contains numerous and substantive mischaracterizations to the Court.

In his *Objection to* GPDEV and Simons' motion, the interim Trustee emphasizes several times that "other" creditors all voted in favor of Mr. Miller.

Notably though, Mr. Miller's characterization makes it appears that many eligible voting creditors voted in favor of him. However, at the time of the 341(a) meeting there were only 4 proofs of claim filed. Proof of claim No. 1 was filed by Bering Straits Logistics, Proof of Claim

No. 2 was filed by the Internal Revenue Service, Proof of Claim No. 3 was filed by GPDEV, and Proof of Claim No. 4 was filed by Simons.

Only these four creditors could be eligible voting creditors in an election due to the requirement that a proof of claim being filed is a prerequisite to participation in an election. *See* 11 U.S.C. § 702(a); *see also* Fed. R. Bankr. P. 2003(b).

Of the four creditors with filed proofs of claim, both GPDEV and Simons voted in favor of Mr. Workman. Bering is the sole other creditor with a filed proof of claim at the time of the meeting of creditors, and it voted in favor of Mr. Miller.

Mr. Miller's references as to what other scheduled creditors may have tried to do is simply irrelevant and falsely makes it appear that Mr. Miller had meaningful support from "other creditors" when he, in fact, did not. *See*, *e.g*, Interim Trustee's Response [D.I. 177] ¶¶ 4("only the Disputed claimants voted for Workman as trustee. The other four creditors…voted for Mr. Miller), 25 ("It is not surprising that no other creditors voted for the Disputed Claimants' candidate"), 39 ("the other creditors recognized this and, …voted to elect Mr. Miller"). Of the four creditors who filed proofs of claim prior to the 341(a) meeting, three creditors voted. Two of those three voted in favor of Mr. Miller.[1]

Additionally, Donald Workman was present at the 341(a) meeting.

The post-conversion 341(a) meeting of creditors was noticed to occur on April 28, 2022 at 10:00 A.M. Due to either significant time mismanagement or for punitive reasons, the interim

---

[1] The undersigned is cognizant that there is authority for the proposition that the universe of claims is broader than filed claims or writings. See, *e.g.*, *In re San Diego Symphony Orchestra Ass'n*, 201 B.R. 978, 981 (Bankr. S.D. Cal. 1996) (finding universe of claims not limited to those that had filed claims); *In re Michelex Ltd*., 195 B.R. 993 (Bankr. W.D. Mich 1996) (filing not required). However, even if all scheduled and filed claims had properly voted, the Trustee's language lacks context and accuracy in its descriptions. A total of 6 creditors attempted to cast votes in this case. Only 3 creditors attempted to cast votes that did not file a proof of claim. 2 of the 3 that did not file proofs of claims are likely also ineligible as they were potentially preferential transfer recipients or insiders as they assert that they remain counsel to the Debtor in various litigation cases, asserting total combined unsecured claims against the estate of only $6,000.

11

Trustee did not call up the case for its 341(a) meeting until approximately 5.5 hours after the scheduled time. Mr. Workman was present at the time of the scheduled 341(a) meeting and for most of the 5.5 hours counsel and all parties were forced to wait. Unfortunately, nobody anticipated that Mr. Workman would need to wait on the line for 5.5 hours to attend the meeting. In any event, Mr. Workman maintains an office in Delaware and is eminently qualified to perform the duties of a Chapter 7 Trustee in this case.

Additionally, on p. 13 of the Response, the interim Trustee asserts that GPDEV and Simons had "failed" in their Motion to Dismiss. As the Court is well-aware, GPDEV and Simons worked diligently and established good cause for dismissal or conversion of the case. The case was converted because GPDEV, Simons, and Bering Straits agreed together that conversion was preferrable to dismissal given the tools available in bankruptcy and the location of the assets transferred by the Debtor. GPDEV and Simons did not fail in the Motion.

The interim Trustee also alludes to the "complete diversity" issue stating that there is an "apparent lack of complete diversity" however, he fails to acknowledge that the District Court found there was complete diversity.

While TSI's appellate brief is silent on this point, Judge Hinkle found: [T]he defendant has proffered a curious document it says was a resolution making Mr. Acosta a member. It is more likely than not that the document was created after the jurisdictional issue arose and is not authentic. (ECF 58 at 5). Another issue raised by the appeal is that Judge Hinkle should have recused himself. Judge Hinkle addressed this issue and wrote:

> The defendant also complains that I have said the defendant tendered a fraudulent document in this litigation. Early in the case, a jurisdictional dispute turned on when an individual became a member of the defendant limited liability company. The defendant

12

tendered a resolution purportedly making him a member. The plaintiff asserted the resolution was not authentic—that it had been created only after the fact. I resolved the factual dispute in the plaintiff's favor. In my view, that was the proper finding based on the evidence. *See* Order of March 15, 2019, ECF No. 58 at 4-5. (ECF 161 at 3).

TSI's appeal does not even address this issue. But to be successful on appeal, TSI has to show that this finding of fact is "clearly erroneous" See, *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948), but it cannot do so and doesn't even try. But somehow this interim trustee is standing in TSI's shoes and carrying the banner for false documents and frivolous claims and denying Simons and GPDEV the right to vote for a different (qualified) trustee.

## CONCLUSION

This case presents an unusual and rare scenario necessitating the election of Mr. Workman as Trustee to ensure that the assets available for administration are not diminishing by inaction on behalf of the interim Trustee, who appears willing to wait for years for FEMA claims to produce a manna from heaven. GPDEV and Simons should be found to have claims that are eligible to vote and that they do not hold any interest materially adverse to the estate. Mr. Workman should be found to be the properly elected permanent Trustee in this case.

Dated:  June 10, 2022          KASEN & KASEN, P.C.

/s/ Jenny R. Kasen
Jenny R. Kasen, Esquire (DE Bar No. 5849)
The Brandywine Building
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 652-3300
Facsimile: (856) 424-7565
E-Mail: jkasen@kasenlaw.com

-and-

MICHAEL H. MOODY LAW, P.A.

13

        */s/ Michael H. Moody*
        Michael Moody, Esq.
        1881-A Northwood Center Blvd
        Tallahassee, FL 32303
        Telephone: (850) 739-6970
        E-Mail: Michael.Moody@michaelhmoodylaw.com

        *Counsel to GPDEV, LLC and SIMONS EXPLORATION,*