**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Team Systems International, LLC, | Case No. 22-10066-CTG |
| Debtor(s). | **Re: Docket No. 181** |

**GPDEV, LLC AND SIMONS EXPLORATION, INC.'S**
**OBJECTION TO THE CHAPTER 7 TRUSTEE'S**
<u>**APPLICATION TO RETAIN VENABLE LLP A SPECIAL COUNSEL**</u>

GPDEV, LLC ("**GPDEV**"), and SIMONS EXPLORATION, INC. ("<u>**Simons**</u>" and, together with GPDEV, the "<u>**Creditors**</u>"), by and through their undersigned counsel, hereby oppose the *Application of the Chapter 7 Trustee for an Order Authorizing Retention of Venable LLP ad Special Counsel to the Chapter 7 Trustee Effective as of May 17, 2022* (the "<u>**Retention Application**</u>") [D.I. 181] as follows:

**BACKGROUND**

1.  In August of 2017, GPDEV and Simons entered a contract with the Debtor, Team Systems International, LLC ("**TSI**"). Pursuant to the agreement (and as later determined by the jury) GPDEV and Simons were to receive twenty five percent (25%) of the net amounts of income TSI received from amounts invoiced to and paid to by the agencies and or customers for the sale and delivery of ordered water from Nestle and Niagara Water.

**I.    Creditors' Judgments Against the Debtor for Over $6 Million**

2.   After TSI failed to pay the contracted amounts owed upon demand, GPDEV and Simons filed suit on September 21, 2018, in the United States District Court for the Northern

District of Florida (the "**District Court**") styled as *GPDEV, LLC and Simons Exploration, Inc. v. Team Systems International, LLC* (Case No. 18-cv-00442-RH-MAF) (the "**TSI Lawsuit**").

3. The TSI Lawsuit resulted in the entry of a Final Judgment dated September 28, 2021, in favor of GPDEV and Simons. See GPDEV Claim 3-1; Simons Claim No. 4-1.

4. The Final Judgment awarded GPDEV $3,297,995.32, consisting of $2,770,855.00 in principal, plus $527,140.32 as prejudgment interest through August 25, 2021, together with post-judgment interest after August 25, 2021, as provided by law.

5. The Final Judgment awarded Simons $2,948,080.46, consisting of $2,483,722.00 in principal, plus $464,358.46 as prejudgment interest through August 25, 2021, together with post-judgment interest after August 25, 2021 as provided by law.

II. **The Debtor Transferred Millions of Dollars to or for the Benefit of Insiders During the Pendency of the TSI Lawsuit and Appeal**

6. While the TSI Lawsuit and Appeal were pending, from 2018 through 2022, the Debtor transferred many millions of dollars to and for the benefit of insiders – at least $9 million by Creditors' estimation.

III. **The Debtor's Chapter 11 Bankruptcy Filing**

7. On January 18, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition with this Court under Chapter 11 of the Bankruptcy Code.

8. Therein the Debtor scheduled assets consisting of only: (i) $164,000 in cash and cash equivalents; and (ii) approximately $21 million of alleged "Accounts Receivable."

9. Nearly all of the alleged "Accounts Receivable" scheduled are on account of purported claims the Debtor alleges against the Department of Homeland Security and the Federal Emergency Management Agency (the "**FEMA Claims**").

**IV.     The Conversion to Chapter 7 and Appointment of Interim Trustee George Miller**

10. On March 30, 2022, the Court entered a *Memorandum Opinion* determining that cause existed to convert this case to a case under Chapter 7 of the Bankruptcy Code.

11. The case was converted to a case under Chapter 7 on March 31, 2022.

12. Upon conversion of this case from chapter 11 to chapter 7, George Miller was appointed to serve as interim chapter 7 trustee

**V.      The Court's Determination that the FEMA Claims are Speculative and Highly Dubious**

13. In the Court's *Memorandum Opinion* converting the case, the Court concluded that:

> [T]he evidence provided in this case indicates that both the receivables that TSI says are due for past government contracting work and the prospects for future government contracting work are somewhere between speculative and highly dubious.

*See* Memorandum Opinion [D.I. 146] at pg. 3. In addition, the Court noted, "the Debtor's "prepetition receivables that provide the basis for the debtor's assertion that it will be able to satisfy all creditors in full appear to be dubious, at best." *Id*. at p. 25.

**VI.     The Meeting of Creditors and Creditors' Election of Permanent Chapter 7 Trustee**

14. The date first set for the Debtor's 341(a) meeting of creditors was April 28, 2022.

15. Pursuant to applicable rules, the creditors let the U.S. Trustee know that they intended to call for an election and (in response to a request) advised that they intended on voting for Donald A. Workman, Esq. of Baker Hostetler LLP to be the permanent Trustee.

16. In response, on April 28, 2022, the interim trustee filed objections to the claims of Bering Straits (E.I. 166), GPDEV (E.I. 164) and Simons Exploration. (E.I. 165) (collectively over 98% of the creditor class was the subject of the interim trustee's objections).

17. At the April 28, 2022 meeting of creditors, Creditors elected Donald A. Workman, Esq. of Baker Hostetler LLP to be the permanent Trustee.

18. However, interim trustee George Miller raised oral objections to Creditors' election of Donald A. Workman, Esq. of Baker Hostetler LLP.

19. On May 3, 2022, the United States Trustee filed a *Report of Disputed Election* (D.I. 167). The report indicates that if the votes cast by GPDEV and Simons are allowed, Donald A. Workman, Esq. of Baker Hostetler LLP will be the permanent Trustee.

20. An evidentiary hearing on the Disputed Election was held on June 15, 2022.

21. At the conclusion of the hearing, the Court reserved its decision and requested post hearing briefing by June 23, 2022.

**VII.    Trustee's Application to Retain Venable, LLC as Special Counsel**

22. On June 7, 2022, the Trustee filed the Venable Retention Application.

23. Therein the Trustee seeks authorization to retain Venable to pursue the purported FEMA Claims described above "on a [30%] contingency fee basis effective as of May 17, 2022." *See* Venable Retention Application at pg. 2.

24. Notably, the Venable Retention Application also seeks authorization for the Estate to reimburse Venable for all expenses incurred in connection therewith.

25. Specifically, the Venable Retention Application states that:

> The estate will reimburse Venable for any out of pocket expenses incurred in connection with the Litigation Services and/or Estate FEMA Claims. The estate will be solely responsible for the fees of any experts needed in connection with the Litigation Services and/or Estate FEMA Claims.
> …
> In connection with the Estate FEMA Claims, Venable may take all steps necessary for the handling of such causes of action, including without limitation hiring of experts, taking depositions, obtaining transcripts, preserving evidence, hiring investigators, filing

> documents, traveling, and document management. The Trustee, from the funds available in the Debtor's estate, shall, in the ordinary course, reimburse Venable for all reasonable and necessary out-of-pocket costs and expenses incurred in connection with the investigation and prosecution of the Estate FEMA Claims. Out-of-pocket expenses up to $2,000 do not need to be submitted to the Court for prior approval. Such out-of-pocket expenses may include, but are not limited to, filing fees, expert witness fees and expenses, expenses related to electronically stored information, deposition costs, copying expenses, travel costs, delivery fees, and computerized research charges. For the avoidance of doubt, Venable shall not be responsible for any expert witness fees and expenses. Retained experts (if necessary) will be paid for by the estate, not Venable.
>
> …
>
> Ligation of the Estate FEMA Claims will be factually complex and detailed, time consuming and expensive, with an uncertain outcome. Employing Venable under the proposed compensation structure set forth herein will avoid the estate bearing the risk of the fees to be incurred in pursuing the Estate FEMA Claims. Accordingly, the Trustee submits the proposed compensation arrangement is fair and reasonable and should be approved.

*See* Venable Retention Application at pg. 4-6.

## ARGUMENT

**I.    The Court Should Deny the Application Without Prejudice or Hold the Application in Abeyance Pending a Ruling on the Contested Election**

The Court should deny the application without prejudice, or delay ruling on the Application, until a resolution is had on GPDEV and Simons Motion to Resolve Disputed Election. Depending on the outcome of the Motion to Resolve the Election, the interim Trustee may be replaced by a permanent Trustee with differing views on the proper path forward to maximize the value of the estate. If the interim Trustee is allowed to employ Venable prior to a resolution of the election, the limited funds in the estate may be substantially diminished by the terms of the requested employment.

**II.     Venable May Hold Interests Adverse to the Estate and its Creditors**

Section 327(e) of the Bankruptcy Code permits the Trustee, with the courts approval, to employ professionals for a specified purpose if such employment "is in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e).

The Debtor's Statement of Financial Affairs [D.I. 29 at p. 2] reveals that within 90 days of the filing of the petition, the Debtor paid Venable LLP not less than $38,671.60 for alleged "services". Venable's receipt of potentially avoidable transfers in connection with the FEMA claims or otherwise, may mean that it holds an interest adverse to the Debtor or to the estate. Neither the Application nor the Rule 2014 Declaration in support thereof describe with requisite specificity the factual circumstances surrounding Venable's receipt of substantial funds in the period immediately preceding the filing of this bankruptcy case.

The Application should be denied without prejudice for failing to state specific facts relating to its receipt of funds immediately prior to the petition date. In addition, the Application fails to explain with specificity what specific actions Venable may bring, and the estimated costs and expenses attendant thereto.

**III.    The Terms of the Proposed Employment are Unreasonable**

As noted above, Venable has already been paid at least $38,671.60 in connection with "services" which appear connected to the pursuit of FEMA claims. The Application notes, in addition, "Venable is owed an additional "$35,865.70 for pre-petition services, which is []  partially secured by a retained paid by the Debtor to Venable in the amount of $10,000."

The Trustee's Application seeks to employ Venable, LLP, on a contingency basis which would award Venable a contingency of 30% of all gross recoveries, with full reimbursement of

costs incurred by the bankruptcy estate.  At this point, it appears that all or most of the work required to be performed has been performed <u>and paid for</u> by the Debtor.  The application appears to propose a windfall for Venable in the event it succeeds, by allowing it an additional 30% of the potential funds available for distribution to the estate, for work largely already performed and paid for by the Debtor.

The Application also burdens the estate with covering all costs and expenses Venable may incur in the course of prosecuting the FEMA claims and appeal(s), which could be substantial. As the interim Trustee notes, such expenses "may include "hiring of experts, taking depositions, obtaining transcripts, preserving evidence, hiring investigators, filing documents, traveling, and document management."  Application p. 4.   In short, Venable could easily expend more than the limited funds on hand pursuing the FEMA claims, leaving the estate administratively insolvent and unable to pursue other viable causes of action.  The Court should not approve either the proposed contingency or the proposal for the estate to bear all costs associated with the FEMA claims which are highly unlikely to prevail.

**WHEREFORE**, GPDEV and Simons respectfully request that the interim trustee's Application to Employ Venable, LLP [D.I. 181] be denied without prejudice.

Dated:  June 21, 2022	KASEN & KASEN, P.C.

*/s/ Jenny R. Kasen*
Jenny R. Kasen, Esquire (DE Bar No. 5849)
The Brandywine Building
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 652-3300
Facsimile: (856) 424-7565
E-Mail: jkasen@kasenlaw.com

-and-

MICHAEL H. MOODY LAW, P.A.

*/s/ Michael H. Moody*
Michael Moody, Esq.
1881-A Northwood Center Blvd
Tallahassee, FL 32303
Telephone: (850) 739-6970
E-Mail: Michael.Moody@michaelhmoodylaw.com

*Counsel to GPDEV, LLC and*
*SIMONS EXPLORATION, INC.*