**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TEAM SYSTEMS INTERNATIONAL LLC,<br><br>     Debtor. | Chapter 7<br><br>Case No. 22-10066 (CTG)<br><br>**Related Docket No. 174** |

## MEMORANDUM OPINION

In a case under chapter 7, the U.S. Trustee is directed to appoint an "interim trustee" promptly after the entry of the order for relief.[1] That interim trustee becomes the permanent trustee unless, at the meeting of creditors held under § 341 of the Bankruptcy Code, the creditors elect, under the procedures set out in § 702(b) & (c), a different person as the permanent trustee.[2]

Section 702, however, imposes restrictions on which creditors may call for an election. In particular, it provides that the holders of claims that are disputed, or creditors that hold an interest adverse to the estate, may neither call for nor vote in an election. When there is a dispute about the election arising out of the § 341 meeting, Bankruptcy Rule 2003(d)(2) provides that the U.S. Trustee is to make a report to the Court. If a motion seeking a resolution is timely filed, the Court is to resolve the dispute.

---

[1] 11 U.S.C § 701(a)(1).

[2] *Id.* § 702(d).

That is what has happened here.  For the reasons set forth below, the Court concludes that: (a) where an election is contested because of a dispute regarding the allowance of a creditor's claim, the court has the discretion (which the Court will choose to exercise here) first to resolve the claims allowance dispute and then resolve the election based on the outcome of the claims allowance dispute; (b) by operation of ordinary issues of preclusion, the holders of claims that have been reduced to judgment hold allowed claims; (c) the judgment creditors[3] do not hold interests that are materially adverse to the estate under § 702(a)(2), which would otherwise prevent them from either calling for an election or voting; (d) while the judgment creditors here (who hold a majority of the debt) are entitled to choose a trustee, the trustee they have chosen is not eligible to serve as trustee under § 321 of the Bankruptcy Code; (e) the language of § 702(d), which provides that if "a trustee is not elected under this section, then the interim trustee shall serve as trustee," carries with it the implication that an elected trustee must be eligible under § 321; accordingly, the judgment creditors' failure to elect a qualified trustee means that the interim trustee remains as the trustee.

## Factual Background

The debtor was a government contractor that filed this bankruptcy case in January 2022.  The bankruptcy filing was precipitated by two creditors having obtained judgments in the U.S. District Court for the Northern District of Florida

---

[3] GPDEV, LLC and Simons Exploration, Inc. are referred to collectively as the "judgment creditors."

that together total almost $6.3 million.  The debtor appealed those judgments to the Eleventh Circuit.  The debtor, however, failed to post a bond, which would have stayed enforcement of the judgment.  The debtor's further efforts to obtain a stay of the enforcement of the judgments were unsuccessful.  The creditors then began exercising creditor remedies, which precipitated the bankruptcy filing.

The creditors moved to dismiss the bankruptcy case as a bad faith filing under § 1112(b).  After holding an evidentiary hearing that spanned three days, this Court found that there was cause to convert or dismiss but that conversion to chapter 7 would best serve the interests of creditors and the estate.[4]  The Court accordingly entered an order converting the case.[5]  It bears note that because the judgment creditors' claim of bad faith relied on much of the same evidence that was presented to the district court in the underlying lawsuits, over the course of that three-day hearing the Court had occasion to review much of the record submitted to the district court and became familiar with the trial court record.

Following the entry of the order converting the case, the U.S. Trustee appointed George L. Miller as the interim trustee.[6]  The interim trustee provided notice of the § 341 meeting.[7]

---

[4] The Court's opinion is reported at *In re Team Systems International LLC*, No. 22-10066 (CTG), 2022 WL 961567 (Bankr. D. Del. Mar. 30, 2022).

[5] D.I. 151.

[6] D.I. 152.

[7] D.I. 154.

Following the § 341 meeting, the U.S. Trustee filed a report of contested election, which was admitted into evidence and describes what transpired at the meeting.[8]  The report explains that the debtor's schedules, as amended, list a total of eight claims, which total $7,878,435.45.  Of that amount, the two judgment creditors' claims were (together) scheduled in the amount of $6,246,075.78, and were listed as contingent, unliquidated, and disputed.   In addition, a claim by Bering Straits Logistic Services was scheduled in the amount of $1.5 million and listed as being contingent.[9]

The report notes that four proofs of claim were filed before or during the 341 meeting – one by the IRS (which was not scheduled) for $24,360, one by Bering Straits for $1,516,745.69 (approximately $16,745.69 more than the claim as scheduled), and two by the judgment creditors that were consistent with the scheduled amounts.  The proofs of claim thus increased the claim pool by $41,105.69 – to $7,919,541.14.  The interim trustee filed objections, immediately prior to the 341 meeting, to the claims filed by Bering Straits and the judgments creditors.[10]

At the 341 meeting, which was held telephonically, the judgment creditors requested an election of a permanent trustee.[11]  The interim trustee and the debtor both objected to the right of the judgment creditors to vote on various grounds, the most substantial of which are that the judgment creditors' claims are disputed and

---

[8] *See* D.I. 167.

[9] *Id.* ¶ 9.

[10] *Id.* ¶¶ 10-13.

[11] *Id.* ¶ 15.

that the judgment creditors hold interests that are materially adverse to those of other general unsecured creditors.[12]

During the election, the judgment creditors voted to elect Donald Workman as the trustee. The other creditors participating in the election voted against.[13] Because certain creditors did not participate in the election, the total value of the claims of creditors who participated was $7,865,252.47. While the U.S. Trustee's report identifies a handful of other disputes, the only issue that turns out to be material is whether the judgment creditors are entitled to request an election and vote.[14] If they are, then the judgment creditors' claims of $6,246,075.79 would make up at least 79 percent of the total claims participating in the election, in which case Workman would be elected trustee (subject to resolving the question of his eligibility).[15] If the judgment creditors are not eligible to request an election or vote, the interim trustee would become the trustee. The other disputes noted in the U.S. Trustee's report accordingly do not require further consideration.

## Jurisdiction

As a dispute arising under § 702 of the Bankruptcy Code, this motion is within the district court's "arising under" jurisdiction set forth in 28 U.S.C. 1334(b). As a

---

[12] *Id.* ¶ 27.

[13] *Id.* ¶ 31.

[14] *Id.* ¶ 32. The leading case setting forth the methodology governing the calculation of which creditors' claims count for the purpose of a contested election is Judge Gregg's decision in *In re Michelex Ltd.*, 195 B.R. 993 (W.D. Mich. 1996). Because the "math" of the election is not disputed in this case, those issues are not addressed in this Memorandum Opinion.

[15] The interim trustee noted during the 341 meeting that it reserved objection to Workman's eligibility. *See* D.I. 167 at 2 n.1.

case falling within the 1334(b) jurisdiction, the district court's February 29, 2012 standing order refers this matter, as 28 U.S.C. § 157(a) provides, to this Court.

## Analysis

### I.   A court may, in resolving a trustee election that is disputed on the ground that the creditor's claims are disputed, resolve the disputed claim on the merits.

Section 701 of the Bankruptcy Code directs the United States trustee to appoint a member of its panel of private trustees, "[p]romptly after the order for relief under this chapter,"[16] to "serve as interim trustee in the case."[17]   In a case that has been converted from chapter 11, as this one was, the entry of the order for relief occurs upon the court's entry of the conversion order.[18]   Here, the case was converted on March 31, 2022[19] and the U.S. Trustee appointed Miller as interim trustee later that same day.[20]

Section 702 addresses the election of trustee by a creditor.   The statutory text is set out in full in the margin.[21]   In broad strokes, § 702(a) identifies the universe of

---

[16] 11 U.S.C. § 701(a)(1).

[17] *Id.*

[18] 11 U.S.C. § 348(a).

[19] D.I. 151.

[20] D.I. 152.

[21] It provides:

    (a)  A creditor may vote for a candidate for trustee only if such creditor—

        (1)  holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;

        (2)  does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest

creditors eligible to vote in an election – essentially the holders of fully liquidated claims that are not disputed, do not hold an interest materially adverse to the estate, and are not insiders. Section 702(b) provides that an election should take place if the holders of twenty percent of the liquidated and undisputed debt ask for one. Section 702(c) says that a candidate is elected if at least 20 percent of the holders of liquidated and undisputed claims actually vote in the election, and the candidate receives a majority of the votes cast. And § 702(d) says that if a trustee is not elected under this section, the interim trustee becomes the trustee.

---

as a creditor, to the interest of creditors entitled to such distribution; and

(3)  is not an insider.

(b)  At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.

(c)  A candidate for trustee is elected trustee if—

(1)  creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and

(2)  such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.

(d)  If a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case.

11 U.S.C. § 702.

In this case, the interim trustee filed objections to the claims of the judgment creditors immediately before the § 341 meeting.  The interim trustee's position is that this is an easy case.  As the interim trustee tells it, the fact that he objected to the claims means the claims are disputed.  Because their claims are disputed, the judgment creditors are not eligible to ask for an election.  The interim trustee thus becomes the permanent trustee.  The role of the court, according to the interim trustee, begins and ends with determining that the objection was on file as of the § 341 meeting.  If the objection to the claim was in fact properly filed, the interim trustee argues, there is nothing left for the court to decide.

There is (apparent) support in the case law for the interim trustee's position. It is certainly the case that a claim to which an objection has been filed is a disputed claim.[22]  That support comes in the form of language, in various opinions, stating that an objection to a creditor's claim as of the § 341 meeting stands as an absolute bar to the creditor's right to call an election or to vote.  *In re Ocean 4660*, from the District Court for the Southern District of Florida, is an example.[23]  "Appellants do not dispute that Trustee Yip objected to their claims.  That fact alone disqualifies Appellants from

---

[22] *See* 11 U.S.C. § 502(a) (a "claim or interest, proof of which is filed …, is deemed allowed, unless a party in interest … objects.").  *See also* Fed. R. Bankr. P. 2003(b)(3) (creditor that has filed a proof of claim is entitled to vote "unless objection is made to the claim or the proof of claim is insufficient on its face.").

[23] *In re Ocean 4660, LLC*, No. 15-60732-CIV (WJZ)*,* 2016 WL 8650434 (S.D. Fla. Mar. 30, 2016).

participating in an election of the trustee."[24]  The court goes on to cite four other cases in support of that proposition.[25]

But despite its sweeping language, the *Ocean 4660* decision, and each of the four cases it cites, does consider, at least to some extent, the merits of the objection to the claim.  In *Ocean 4660*, for example, the court concludes that "Trustee Yip had rational and legitimate bases to object to Appellants' claims," finding the objections to be "meritorious."[26]

In fact, a fair reading of the cases on which *Ocean 4660* relies makes clear that they stand not for the proposition that the mere filing of an objection to a claim is sufficient for the claim to be treated as disputed.  To the contrary, these cases go on to explain that "[i]t is not enough, however, to merely object to a creditor's claim in order to disqualify that creditor from participation in the selection of a permanent chapter 7 trustee.  The objection cannot be frivolous.  It must be supported by more than mere suspicion and may not be interposed for an improper purpose."[27]  Judge

---

[24] *Id.* at *2.

[25] *Id.* at **2-3. (citing *In re San Diego Symphony Orchestra Ass'n*, 201 B.R. 978 (Bankr. S.D. Cal. 1996); *In re TBR USA, Inc.*, No. 2:07 CV 170 (JTM), 2009 WL 9057729 (N.D. Ind. Mar. 12, 2009); *In re Amherst Technologies, LLC*, 335 B.R. 502 (Bankr. D.N.H. 2006); and *In re Williams*, 277 B.R. 114 (Bankr. C.D. Cal. 2002)).

[26] *Ocean 4660*, 2016 WL 8650434 at *3.

[27] *Amherst Technologies*, 335 B.R. at 509 (internal citations omitted).  *See also San Diego Symphony Orchestra*, 201 B.R. at 983 (indicating that a claim may not count as disputed unless there are "genuine issues of law or fact" – the test for whether a claim is subject to "bona fide dispute" under § 303, though suggesting that the test "may well be even less than that"); *In re Williams*, 277 B.R. at 120 ("If the dispute is easy to resolve, complete resolution is appropriate. If, as in this case, the matter is complex or the court would normally defer to the ruling of the state appellate court, the test should be whether the debtor's objection to the claim is frivolous.").

Lifland put the point slightly differently: "An unsupported allegation of a dispute regarding a claim is insufficient to disqualify a creditor' claim for qualifying a request for an election, or for voting."[28]   Or as the Bankruptcy Court for the District of Colorado put it, "this Court … believes that, at a minimum, a dispute must not be groundless, frivolous or interposed for improper purposes."[29]

So, despite the language of some of the opinions, no case actually stands for the proposition that the analysis begins and ends with the bankruptcy court asking whether an objection to the proof of claim was filed on the court's docket.  All of the cases engage some further enquiry into the nature of the dispute, with the consensus view approximating that of the Bankruptcy Court of the District of Colorado – the filing of an objection should not render the claim disputed if the objection is groundless, frivolous, or interposed for an improper purpose.

But where does this standard come from?  None of the cases of which this Court is aware even purports to engage that question.  At best, it is a judicial gloss on the term "disputed."  Otherwise put, these courts have presumably concluded that when Congress disqualified creditors whose claims are "disputed" from voting in a trustee election, it could not have intended to disqualify creditors whose claims were subject only to a "groundless" or "frivolous" objection, or one "interposed for improper purposes."  And while there is certainly some sense in that construction, it is also true that when Congress wanted to distinguish between claims that were subject to a real

---

[28] *In re Centennial Textiles, Inc.*, 209 B.R. 31, 34 (Bankr. S.D.N.Y. 1997).

[29] *In re USA Capital, LLC*, 251 B.R. 883, 889 (Bankr. D. Colo. 2000).

and legitimate dispute from those that were merely "disputed," it knew exactly how to do that, and did so in § 303(b)(1) when it identified the universe of creditors that may file an involuntary petition – those whose claims are "not subject to bona fide dispute."[30]

In this Court's view, however, the Bankruptcy Rules offer an alternative avenue to what may be the same destination, but one that does not require the same degree of judicial gloss on the statutory language. Specifically, Bankruptcy Rule 2003(b)(3) states that "[i]n the event of an objection to the amount or allowability of a claim for the purpose of voting, unless the court orders otherwise, the United States trustee shall tabulate the votes for each alternative presented by the dispute and, if resolution of such dispute is necessary to determine the result of the election, the tabulations for each alternative shall be reported to the court."[31]

The clear implication of this rule is that the U.S. Trustee's report should (as the report now before the Court certainly does) set out the tabulation of votes with sufficient clarity that after the Court decides whether or not a claim counts, it will be easy enough to do the math and then decide who has won the election. The Advisory Committee Note to the 1991 Amendment to Bankruptcy Rule 2003 makes this point very clearly. "If an election is disputed, the United States trustee shall not resolve the dispute.… [T]he United States trustee shall tabulate the results of the election for each alternative presented by the dispute.… If a motion is made for resolution of

---

[30] 11 U.S.C. § 303(b)(1).

[31] Fed. R. Bankr. P 3002(b).

the dispute in accordance with subdivision (d) of this rule, the court will determine the issue and another meeting to conduct the election may not be necessary."[32]

All of this makes perfectly clear that it is up to the bankruptcy court to resolve the disputed election.  But is that exercise merely one of reviewing the docket to see whether an objection was filed to a claim?  Or does the court have the discretion, in connection with resolving a disputed election, to resolve an underlying claims dispute and determine the winner of the election based on that resolution?

This Court concludes that the bankruptcy court does have the discretion to resolve a disputed election by resolving an underlying claims dispute.  The court in *Williams* seemed to hint at such an approach when it suggested that "[i]f the dispute is easy to resolve, complete resolution is appropriate."[33]  The *Williams* court went on to add that if resolution of the claims dispute will be complex, the court should not conduct a "mini-trial" that would unduly delay administration of the estate.[34]  This Court agrees with that analysis.

The court in *Ocean 4660* cited to the *second* part of what was said in *Williams* as support for the proposition that the "court may not resolve the underlying dispute to the claim."[35]  But that is directly contrary to the *first* part of the statement in *Williams* that if the underlying dispute is easy to resolve, the court should go ahead and resolve it.  And the court in *Ocean 4660* cites no other authority for the

---

[32] 1991 Advisory Committee Note to Fed. R. Bankr. P. 2003.

[33] 277 B.R. at 120.

[34] *Id.* at 120 n.8.

[35] 2016 WL 8650434 at *3.

proposition that a court "may not" resolve the underlying claims allowance dispute as part of resolving a disputed election. This Court therefore respectfully concludes that this statement in *Ocean 4660* is incorrect and declines to follow it.

This Court finds further support for that conclusion from a sentence that was in a prior version of Bankruptcy Rule 2003(b) but was since deleted. Specifically, the version of Rule 2003(b)(3) that was promulgated in 1983 stated that "[n]otwithstanding objection to the amount of allowability of a claim for the purpose of voting, the court may, after such notice and hearing as it may direct, temporarily allow it for purpose in an amount that seems proper to the court."[36]

As the Court in *San Diego Symphony Orchestra* explained, this sentence created a difficulty in that it rendered the rule inconsistent with the statute itself. The entire notion of temporary allowance "presupposes that the claim is disputed in some manner."[37] And because the statute makes clear that a claim that is disputed may not vote, a rule providing for the temporary allowance of the claim for voting purposes – but otherwise left the claim "disputed" for purposes of distribution – could not be squared with the statute itself, and therefore was invalid.[38]

That much makes perfect sense. A court may not, in connection with resolving a disputed trustee election, *temporarily* allow a claim for purposes of voting. But the prior inclusion of that rule certainly suggests an answer to the question now before

---

[36] Fed. R. Bankr. P. 2003(b)(3) (1983). *See also* Darrell Dunham, *Election of Chapter 7 Trustees under the Bankruptcy Code*, 47 CLEV. ST. L. REV. 371, 387-388 (1999).

[37] 201 B.R. at 980.

[38] *Id.* at 981.

the Court – whether in connection with a disputed election a court is limited to asking whether the claim was disputed as of the time of the § 341 meeting, or whether it may resolve such a dispute as part of resolving the contested election. The drafters of the rule appeared to believe that a court could temporarily allow a claim and resolve the election based on the amount in which the claim was temporarily allowed. And if a court could do that, it is very difficult to see why a court could not (assuming that doing so would not delay the administration of the estate) resolve the claims dispute in its entirety.

As noted above, this articulation of the principle likely lands somewhere similar, in substance, to the rule articulated in *USA Capital* under which a filed objection is sufficient to render a claim disputed so long as it is not "frivolous," "unfounded," or "interposed for an improper purpose." Finding an objection to a claim to be "frivolous" or "unfounded" is, at bottom, no different from concluding that the claim should be allowed. And if the claim is frivolous or unfounded, it should not take a long or drawn-out hearing for the Court to reach that conclusion. The point is that if a court can quickly and easily reach the judgment that the claim should be allowed, it may do so, and resolve the disputed election on that basis. For the reasons described in Part II of this Memorandum Opinion, this Court concludes that the objection asserted to the judgment holders' claims is one that can be resolved quickly and easily without conducting a further proceeding that would delay the administration of the case. While the Court is disinclined to describe the objection as "frivolous" or "unfounded," it does not believe anything in the law (aside from the

14

"gloss" on the statutory language applied by some of the cases) requires it to affix such an adjective to the objection. As this Court construes the statute and rules, it is sufficient to say that the Court believes the objection is subject to quick and efficient resolution without delaying the administration of the estate, and that in the circumstances of this case, it has determined to exercise its discretion to do so.

This articulation of the standard is also consistent with the principle set forth in the case law that courts should not conduct extensive trials on a claims dispute in a way that would delay the administration of the estate. But unlike the court in *Ocean 4660*, this Court views it as a matter of judicial discretion. If it is apparent that there is a genuine dispute that will require substantial time and effort to resolve, a court can (and probably should) simply conclude that the claim is disputed, and that the creditor therefore may not vote under § 702(a)(1). But if the court believes it can resolve the dispute quickly, it also has the discretion to do so.

That leaves only the final category of objection contemplated by the court in *USA Capital* – those interposed for an improper purpose. The truth of the matter is that the structure of §§ 701 and 702 invite some measure of gamesmanship. An interim trustee is appointed promptly after the entry of the order for relief. That trustee will become the trustee unless he or she is replaced by an election at a § 341 meeting. But creditors whose claims are disputed may not call for or vote in an election. So an interim trustee who wants to retain the position can subvert the creditors' statutory right to elect a trustee of their own choosing by filing a claims

objection, before the § 341 meeting, whenever the trustee gets wind of a creditor's intention to call for an election.

This Court has no trouble concluding that an objection filed for that reason would be, in the words of *USA Capital*, "interposed for an improper purpose."  But like any legal standard that requires a showing of an actor's subjective intent, it is a matter that is difficult to prove and subject to the reality that a human's motive for taking any given action can at times be a confluence of different factors, some of them legitimate and others improper.[39]  Moreover, nothing in the language in § 702 of the Bankruptcy Code calls for the bankruptcy court to conduct a trial on the objector's unstated motives for filing a claims objection.  Thus, rather than articulating a standard that require the court to make a finding regarding a party's subjective intent, this Court believes it more appropriate for the court to consider the circumstances surrounding the filing of the objection as a factor that the Court may weigh in exercising its discretion whether to resolve a claims objection as part of resolving a contested election.

On this approach, unlike under the standard articulated in *USA Capital*, if the creditor's claim would properly be disallowed on the merits, the creditor would not be permitted to call for an election or vote, *even if* a party-in-interest objected to that claim "for an improper purpose."  Such an outcome, in this Court's view, is more consonant with the text of § 702 of the Bankruptcy Code than one in which the claims

---

[39] *See generally Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (establishing framework for establishing liability under Title VII of the Civil Rights Act of 1964 in cases in which an illegitimate factor (such as race or sex) played some role in the employment decision).

objection is discarded on the ground that the bankruptcy court concludes that the objection was filed for some improper or nefarious purpose.

This Court thus makes no determination one way or the other regarding the propriety of the interim trustee's motives for filing the claims objection here. Based on the approach set forth above, the nature of the claims objection as raising a pure issue of law that is readily resolvable would lead the Court, in any event, resolve it on the merits as part of resolving the claims election. The trustee's motive for filing the objection therefore turns out not to bear on the Court's analysis.[40]

## II. As the holders of unstayed judgments against the debtor that are entitled to preclusive effect, the judgment creditors' claims should be allowed.

As noted above, this Court views the merits of the claims objections as presenting a straightforward legal issue that is susceptible to prompt resolution. The creditors in this case hold judgments, issued by the U.S. District Court for the Northern District of Florida, against the debtor. The judgments have not been stayed. While the debtor appealed the judgments to the U.S. Court of Appeals for the

---

[40] This Court appreciates that the analysis set forth above does differ, in some respects, from that of a line of cases (cited above) decided by bankruptcy and district courts from outside this circuit. The core difference is that while those courts conclude that certain claims objections, in effect, are insufficient to render the claim "disputed," this Court believes the more appropriate approach is to acknowledge that the court is resolving the objection (and thus rendering the claim undisputed) as part of resolving the contested election. While this Court does not lightly depart from (even non-binding) authority articulated by other bankruptcy courts, the Court is persuaded that it is appropriate to do so here in view of the fact that (a) the two approaches yield very similar results; and (b) the alternative approach relies heavily – too heavily, in this Court's view – on a judicial gloss that is untethered from the text of the Bankruptcy Code.

Eleventh Circuit, that appeal is subject to the automatic stay.[41]  Neither the debtor nor the interim trustee has moved to lift the stay to prosecute that appeal.

The trustee is certainly entitled to object to the claims.  But that objection can and should be resolved by ordinary application of principles of preclusion.  This basic principle was articulated by the Supreme Court in *Heiser v. Woodruff*.[42]  While *Heiser* is a pre-Code case, there is no doubt that the principles it articulates remain vital today.

There, a trustee in bankruptcy argued that a prepetition judgment obtained against the debtor in a federal district court had been procured by fraud.[43]  The debtor had tried, and failed, to persuade the district court to set aside the judgment on that basis.[44]  When the trustee sought to disallow the claim on that basis, the Supreme Court made clear that the prior judgment of the district court was entitled to preclusive effect.  "[W]e are aware of no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*, which is founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the

---

[41] *See Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1033 (3d Cir. 1991) (automatic stay "extends to appeals in actions that were originally brought against the debtor, regardless of whether the debtor is the appellant or the appellee.").

[42] 327 U.S. 726 (1946).

[43] *Id.* at 728.

[44] *Id.* at 729-730.

contested issue is decided against him, he may not later renew the litigation in another court."[45]

The Court noted a potential exception to the ordinary principles of preclusion because there was an allegation that the judgment had been procured by fraud. "Undoubtedly, since the Bankruptcy Act authorizes a proof of claim based on a judgment, such a proof may be assailed in the bankruptcy court on the ground that the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud of a party."[46]  But where the question of fraud had itself been fully litigated, that allegation cannot be resurfaced as a basis to disallow the claim.[47]  "Nor can an attack be sustained on a judgment allegedly procured by fraudulent representations of the plaintiff, when the charge of fraud has been rejected in previous litigations by the parties to the suit in which the judgment was rendered, or their representatives."[48]

The Court went on to explain that while *Pepper v. Litton*[49] held that *res judicata* did not preclude a bankruptcy court from equitably subordinating a claim reflected in a prior judgment, that is only so in which the basis for equitable subordination (there, the wrongful effort of an insider to award himself a claim

---

[45] *Id.* at 733.

[46] *Id.* at 736.

[47] *Id.* at 736, 739-740.

[48] *Id.* at 736.

[49] 308 U.S. 295 (1939).

against the company in order to dilute the recoveries of legitimate creditors) had not itself been previously litigated.[50] "[T]he theory relied upon as requiring disallowance or subordination of the contested claim rested upon grounds not previously adjudicated, and we explicitly noted that the state court did not adjudicate it."[51]

There is no question but that the application of ordinary preclusion principles require the allowance of claims that are reflected in a judgment, notwithstanding the fact that the judgment is on appeal. The Wright & Miller treatise explains this point. The rule in "federal courts [is] that the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided."[52] That rule applies regardless of whether the subsequent court believes that the pending appeal may have merit.[53]

To be sure, this rule may cause practical challenges. What happens to the order allowing the claim if the judgment on which it depended is later reversed on appeal? One suggestion offered by Wright & Miller, outside the claims allowance process, is for the party challenging the judgment to file "a protective appeal in the second action that is held open pending determination of the appeal in the first action."[54] To the extent the initial judgment is reversed on appeal, the second judgment can be reversed and remanded so that the issue is reconsidered in light of

---

[50] *Heiser*, 327 U.S. at 738-740 (citing *Pepper*, 308 U.S. at 302).

[51] *Id.* at 738.

[52] CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 4433 (3d ed. 2022).

[53] *Id.* ("*res judicata* does not depend on the correctness of the judgment").

[54] *Id.*

the reversal.  In the context of claims allowance in bankruptcy, however, such an elaborate procedure may be unnecessary, as § 502(j) of the Bankruptcy Code provides that a "claim that has been allowed or disallowed may be reconsidered for cause."[55] There can be little doubt that the reversal of a judgment on which a claims allowance decision was premised would constitute cause for its reconsideration.

These principles are sufficient to address the trustee's objection to the claims held by the judgment creditors.  The claims are reflected in a valid judgment of a federal district court.  That judgment is controlling.  The claims are therefore allowed. If and when that judgment is reversed on appeal, the Court would entertain a motion under § 502(j) either to disallow the claims or to allow them in some reduced amount. But until then, the judgment of the district court is preclusive in this Court, and the claims are to be treated as allowed in the amounts reflected in the judgments.  The judgment creditors were thus entitled to call for an election and to vote to elect a trustee.

It is true that the Bankruptcy Court for the Central District of California concluded, in *In re Williams*, that a claim was "disputed" under § 702(a)(1) on the ground that the judgment was the subject of an appeal.[56]  The central basis for the court's conclusion, though, was that the creditor "should not be in a position to choose her opponent."[57]  That reasoning, however, has nothing to do with whether a claim is

---

[55] 11 U.S.C. § 502(j).

[56] 277 B.R. 114.

[57] *Id.* at 120.

"disputed." Rather, it is presumably the reason that Congress adopted § 702(a)(2), which bars a creditor from voting if that creditor has an interest that is materially adverse to those of other creditors. While that question is discussed below, for the purposes of §702(a)(1), this Court does not believe that the policy concern on which the *Williams* court relied provides a basis for disregarding established principles regarding the preclusive effect of a judgment on appeal.

## III.    The judgment creditors do not hold interests that are materially adverse to the estate.

Section 702(a)(2) provides that a creditor can only vote to elect a trustee (and can therefore call for such an election) only if the creditor "does not have an interest materially adverse … to the interest of creditors entitled to such distribution."[58] The caselaw construing this provision explains that in order to determine whether potential adversity is "material," courts employ a totality-of-the-circumstances test. "Relevant factors include the nature of the adverse interest, the size of the interest, and the degree to which it is adverse."[59]

The interim trustee points to several bases on which he contends that the judgment creditors are adverse to unsecured creditors more generally. The principal basis for this conclusion is the fact that the judgment is subject to appeal. Based on this Court's familiarity with the trial court record developed in connection with

---

[58] 11 U.S.C. § 702(a)(2).

[59] *In re Mirabile*, 456 B.R. 109, 111 (Bankr. M.D. Fla. 2009). *See also In re Metro Shippers, Inc.*, 63 B.R. 593, 598 (Bankr. E.D. Pa. 1986) (rejecting argument that creditors alleged to have received a preference are ineligible to vote because "mere suspicion that an unsecured creditor has been given a preference is insufficient to brand the creditor as the holder of a materially adverse interest").

consideration of the motion to dismiss the bankruptcy, the Court views the likelihood that the judgments will be reversed on appeal as exceedingly remote. The Court therefore does not view the appeal as sufficiently material to render the judgment creditors as having a material adverse interest.

While the trustee asserts that the district court judgment conflicts with "the plain language of the Consulting Agreement,"[60] a jury has already reached precisely the opposite conclusion. On appeal, the Eleventh Circuit precedent instructs that the court will view "the evidence in the light most favorable to" the jury's verdict and draw "all reasonable inferences in favor" of that verdict.[61] And here, the district court expressly found (in denying a stay pending appeal) that the jury "could hardly have reached a contrary conclusion."[62]

Nor is the Court persuaded that the arguments regarding the calculation of damages are sufficient for the appeal to be treated as material. As the Court explained in its motion to dismiss opinion, after TSI was either unwilling or unable to produce documents supporting its claims regarding the revenues and expenses associated with the contract, in order to avoid sanctions it stipulated to the judgment creditors' calculations, thus, in the district court's words, putting "all its ... eggs in the liability basket."[63] The district court specifically found, in this ruling, that TSI

---

[60] D.I. 177 ¶ 30.

[61] *St. Luke's Cataract and Laser Institute, P.A. v. Sanderson*, 573 F.3d 1186, 1207 (11th Cir. 2009).

[62] The relevant district court order was admitted into evidence, as Exhibit 34, at the hearing on the motion to dismiss. *See* Motion to Dismiss Ex. 34 at 5.

[63] Motion to Dismiss Ex. 32 at 4.

would not "contest[] the amount that will be due if the jury resolves [the question of liability] in the plaintiffs' favor."[64]  This Court accordingly does not view a potential appeal based on the calculation of damages as sufficiently material to disqualify the judgment creditors from calling for, or voting in, a trustee election.[65]

The interim trustee next suggests the possibility that the estate may hold an affirmative claim against the judgment creditors, which he contends would be sufficient for them to be treated as holding interests adverse to those of unsecured creditors.  But the claim the trustee seeks to assert is one for overpayment under the contract that was the subject of the district court litigation.  The trustee's ability to assert such a claim, then, depends entirely on the trustee prevailing in its Eleventh Circuit appeal, and thus adds nothing to the preceding analysis.

The most serious argument the trustee advances is that judgment creditors retained the right to seek an administrative claim.  The context of that claim was that, in connection with the litigation over the motion to dismiss, the judgment creditors sought sanctions against the debtor under Federal Rule of Civil Procedure 37 on account of its failure to produce certain documents.  While the Court denied

---

[64] *Id.*

[65] This Court notes that it is required to determine, for purposes of § 702(a)(2) of the Bankruptcy Code, whether the appeal is sufficiently meritorious that the judgment creditors, who would be the appellees in such an appeal, have interests that are materially adverse to those of other creditors.  This Court's determination that the arguments on appeal are insubstantial are for this purpose only.  The actual adjudication of the appeal, if a trustee ultimately determines to pursue it (a decision committed to the trustee's business judgment, which should not be affected by this decision), is a matter within the exclusive jurisdiction of the United States Court of Appeals for the Eleventh Circuit.  Nothing expressed herein can or should affect that court's consideration of those matters.

that motion, it did indicate that the judgment creditors might be able to recover their attorneys' fees (which was the sanction they sought under Rule 37) as an administrative claim on the ground that they made a "substantial contribution" under § 503(b)(3)(D).  At the hearing on the disputed election, however, counsel for the judgment creditors agreed to disclaim the right to pursue the administrative claim, thus resolving this basis for asserting that the judgment creditors were materially adverse to other creditors.[66]

For these reasons, applying the "totality of the circumstances" test articulated by the court in *Mirabile*, this Court does not believe that the potential adversity between the judgment creditors and other unsecured creditors is sufficiently material to disqualify the judgment creditors, under § 701(a)(2) of the Bankruptcy Code, calling for an election for a trustee or voting in such an election.

---

[66] The interim trustee argues that the question of holding an adverse interest must be viewed as of the § 341 meeting, such that the judgment creditors' subsequent agreement to forego recovery on a potential administrative claim should be disregarded.  D.I. 205 at 3 n.1.  The Court disagrees.  This contention is a variant of the argument, rejected above, that the question whether the claim is disputed must be viewed as of the § 341 meeting.  For the reasons set forth above, the Court concluded that in connection with resolving the disputed election, the Court could resolve the claims dispute and, on that basis, resolve the disputed election.  The Court sees no reason why the same reasoning should not be applicable to a claim that a creditor holds a materially adverse interest: such an interest can be resolved in connection with the court's resolution of the election dispute.

The Court also notes that in view of its ultimate resolution of this matter, the Court believes it appropriate to release the judgment creditors from their disclaimer of a potential substantial contribution claim.  If circumstances warrant, the Court would be prepared to consider a motion, on the merits, to allow an administrative claim for substantial contribution arising out of the judgment creditors' work in connection with the ultimate conversion of the case to chapter 7.

## IV.    The trustee selected by the judgment creditors is not qualified to serve under § 321.

For the foregoing reasons, the judgment creditors were entitled to call for an election. The judgment creditors selected Don Workman of Baker Hostetler to serve as chapter 7 trustee.[67] The interim trustee argues, however, that Workman is not statutorily eligible, under § 321 of the Bankruptcy Code, to serve as trustee.[68]

Section 321 provides that a "person may serve as trustee in a case under this title only if such person … resides or has an office in the judicial district within which the case is pending, or in any judicial district adjacent to such district."[69] The record before the Court indicates that Workman lives in Washington, D.C. and that his principal office is also located in the District of Columbia. The Court takes judicial notice of the fact that the District of Maryland is located between the District of the District of Columbia and the District of Delaware, such that Workman neither resides nor has his principal office in the district within which the case is pending or in an adjacent district.

---

[67] The interim trustee makes the curious argument that a majority (in number) of the creditors who voted in the election voted to elect Miller, rather than Workman, as trustee. D.I. 177 ¶¶ 47-49. That is factually true but legally irrelevant. The text of § 702 is crystal clear that the election does not depend at all on the number of creditors who vote. It turns instead on which candidate "receives the votes of creditors holding a majority *in amount* of claims." 11 U.S.C. § 702(c)(2) (emphasis added). And where Congress wanted to require the support of a majority of creditors in number, it of course knew exactly how to do that. *See* 11 U.S.C. § 1126(c) (providing that acceptance by a class of a plan of reorganization requires acceptance by a majority of creditors in number and two-thirds in amount).

[68] While not in the record, the Court notes that the undersigned judge knows Workman to be a highly capable bankruptcy practitioner, whom the Court has every confidence would perform the duties of chapter 7 trustee with diligence, skill, and care. That, however, is irrelevant to the question now before the Court.

[69] 11 U.S.C. § 321(a)(1).

The judgment creditors' response, however, is that Baker Hostetler, Workman's law firm, has an office in Wilmington, Delaware and in Philadelphia, Pennsylvania (which is located in an adjacent district), and that Workman is qualified to serve as trustee on that basis. From first principles, is not obvious (one way or the other) whether a lawyer at a firm that has an office in a particular location, but who is not principally based there, is himself or herself a person who "has an office" in that city. And as a matter of policy, a fair argument can be made, based on the experience that many have had with remote work over the course of the pandemic, that one can effectively perform professional services without regard to one's physical location.

But the Court is not faced in this case with a question of first principles. Nor is it free, as a matter of public policy, to update the Bankruptcy Code in light of recent experience with remote work. Instead, the question is to make sense of the language in the existing Code in light of the applicable case law. And the difficulty for the judgment creditors is that case law, while sparse, appears to be uniformly on the interim trustee's side of the argument.

The parties point to only two cases that address the question whether an individual who has access to an office in a particular judicial district, but where the record does not indicate that the individual regularly works there, is someone who "has an office" in the relevant district. The first case was a pre-Code case, *In re*

*Drummond*,[70] which involved the construction of § 45 of the Bankruptcy Act,[71] which required trustees to "reside or have an office in the judicial district within which they are appointed."

*Drummond* held that a trustee was not eligible to serve as a trustee in the Eastern District of California. The trustee there had his principal office in Eureka, located in the Northern District of California, but "employed a secretary who was present in the Redding office, in the Eastern District of California, on an irregular schedule" – typically 15 to 20 hours per week.[72] The trustee himself, in the months leading up to the dispute, spent two to four days per month in the Redding office.[73]

The Ninth Circuit held that this was insufficient to qualify him to serve as a trustee. "The Referee … concluded that [the trustee's] opening of the office in Redding did not conform to the requirements of § 45 of the Bankruptcy Act."[74] The Ninth Circuit affirmed, emphasizing that the purpose of the requirement was to ensure that "a person qualifying under the section would be sufficiently … available for consultation and advice."[75]

The only other case identified by the parties is *In re Martech*.[76] That case involved a bankruptcy case pending in the District of Alaska. At the § 341 meeting,

---

[70] 416 F.2d 931 (9th Cir. 1969).

[71] This provision was then codified at 11 U.S.C. § 73.

[72] *Drummond*, 416 F.2d at 932.

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] 188 B.R. 847 (9th Cir. BAP 1995).

creditors elected a trustee whose principal office was in New York but had an arrangement to lease an office in the offices of his Alaska counsel.[77]   The elected trustee "visited his office in Anchorage for the first time on the morning of the trustee election, and as of the date of the bankruptcy court's hearing had hired no staff for that office."[78]   The Ninth Circuit Bankruptcy Appellate panel concluded that it was bound to follow *Drummond*.   Writing in 1995, it explained that while *Drummond* (a decision from 1969) "was decided before the advent of facsimile machines, [improvements in commercial air travel] and other modern devices[,]" it concluded that the "fact that new technology has made communication and travel easier is not significant."[79]   The point of the statutory requirement, *Martech* explained, was to ensure that a trustee regularly be physically present in the jurisdiction.[80]   And if the invention of the fax machine provided no basis to disregard this statutory requirement, nor can the recent experience with Zoom meetings.

In this case, it bears note, the judgment creditors presented no admissible evidence at all of how much time Workman spent in his firm's offices in Wilmington or Philadelphia.   In that regard, the case is weaker than either *Drummond* or *Martech*, both of which included at least some evidence of the trustee's presence in the relevant district.

---

[77] *Id.* at 850.

[78] *Id.*

[79] *Id.* at 851-852.

[80] *Id.* at 851.

While neither *Drummond* nor *Martech* is formally binding on this Court, the Court finds it significant that they are the only cases addressed to this issue. In addition, the fact that *Drummond* was the only case addressed to the issue when Congress, in 1978, wrote language into § 321 of the Bankruptcy Code that closely tracked § 45 of the prior Act, is also of some significance.[81]

Thus, while this Court may have its doubts about the continued need for a provision like § 321, that is not a question within this Court's cognizance. Congress has made that decision. This Court will follow the uniform caselaw applying that provision and hold that Workman, despite being a skilled practitioner whom the Court believes would do an excellent job as trustee, is not statutorily eligible (based on the record developed in this case) to serve as a chapter 7 trustee in a case in this district.

## V.    The judgment creditors are not entitled to a second chance to elect a qualified trustee.

The final question presented in this case is whether the judgment creditors, who were entitled (by virtue of this Court's conclusions) to elect a trustee, but whose

---

[81] When statutory language is reenacted after a definitive construction of the language by the Supreme Court, case law explains that Congress is presumed to ratify the prior judicial construction. *See Shapiro v. United States*, 335 U.S. 1, 16 (1935). *See also Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.*, 139 S.Ct. 628, 633-634 (2019) ("In light of this settled pre-AIA precedent on the meaning of 'on sale,' we presume that when Congress reenacted the same language in the AIA, it adopted the earlier judicial construction of that phrase."). While the Ninth Circuit's decision is *Drummond* is not the kind of definitive decision that would require a conclusion that § 321 ratified its construction, the fact that it appears to be the only case on the issue at the time the 1978 Code was adopted should at least provide some reason to pause before adopting a different reading of § 321.

first choice turns out not to be eligible to serve under § 321, should be granted another opportunity to choose someone who is eligible to serve.

The statute itself does not provide a clear answer to that question.  Section 702(b) sets out the procedure for creditors to elect a trustee at the § 341 meeting; while § 702(d) states that if "a trustee is not elected," then "the interim trustee shall serve as trustee."[82]  This language does not address, at least not expressly, what happens if the trustee who is elected is not qualified to serve under § 321(a).  Section 703 does address what happens if a trustee fails to qualify under § 322 (which requires a trustee to post an appropriate bond) – creditors are permitted to elect a successor trustee.  The judgment creditors suggest that the Court should follow a similar procedure if the trustee is not eligible under § 321.[83]  The interim trustee, on the other hand, argues that one should draw a negative inference from the express determination to give creditors another chance to elect a trustee who fails to qualify under § 322.[84]  In other words, the fact that Congress said expressly that creditors get to conduct another election if their chosen candidate does not qualify under § 322 shows that it knew exactly how to give creditors such a second chance, and thus the failure to include such a provision when the trustee is ineligible under § 321 must be viewed as an intentional decision not to grant one.

---

[82] 11 U.S.C. § 702(d).

[83] D.I. 204 at 5-6.

[84] D.I. 205 at 4.

In view of that uncertainty, it is perhaps not surprising that the older authorities viewed this as an unresolved question. "In cases where the bankruptcy court rules that the elected trustee is not qualified, the law is unsettled as to whether the court should appoint the standing trustee or order a new election."[85]

But while the language itself is perhaps indeterminate, the Court is moved by the fact that the caselaw on this issue appears to be uniform: *every* case cited by the parties and identified by the Court 's research has found that, when the trustee elected by the creditors is not qualified, the interim trustee becomes the trustee.[86]

In the absence of any case in which a court has given a "second chance" to creditors who have elected a trustee who turned out not to be eligible under § 321, this Court is disinclined to break with the uniform body of law concluding that creditors' failure to elect a qualified trustee means that the interim trustee becomes the trustee.[87]    Accordingly, the Court believes the straightforward application of established legal principles to the facts of this case provides that the interim trustee is to become the trustee.

---

[85] Dunham, 47 CLEV. ST. L. REV. at 378 n.35.

[86] *See In re Frederick Petroleum Corp.*, 92 B.R. 273 (Bankr. S.D. Ohio 1988) (interim trustee became trustee when elected trustee lacked the requisite expertise); *In re Martech*, 188 B.R. at 849 & n.3 (interim trustee became trustee when elected trustee became trustee; court accordingly did not address whether creditors were entitled to request an election); *In re Mid Atlantic Retail Group, Inc.*, No. 07-81745 (WLS), 2008 WL 2491627 (Bankr. M.D.N.C. June 18, 2008) (interim trustee became permanent trustee when elected trustee failed to qualify under § 321).

[87] As noted above, *see* n. 40, this Court is reluctant to break with uniform caselaw, even when not binding, unless the Court concludes that the cases cannot be squared with statutory text or are otherwise wrongly decided.

Counsel for the trustee is directed to settle an order, on certification of counsel, so providing.

Dated: July 15, 2022

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE