# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| TEAM SYSTEMS INTERNATIONAL, LLC, | Case No. 22-10066 (CTG) |
| Debtor. | **Re: D.I. 239** |

## OBJECTION OF THE CHAPTER 7 TRUSTEE TO MOTION OF INSIDERS TO COMPEL TRUSTEE TO FILE NOTICE CONFIRMING RECEIPT OF DOCUMENTS

George L. Miller, the chapter 7 trustee (the "Trustee") of the bankruptcy estate of Team Systems International, LLC (the "Debtor"), hereby objects to the Motion [D.I. 239] of Deborah Mott and Steven Acosta (together, "Insiders") seeking an order compelling the Trustee to file a notice with the Court indicating that he has received certain documents from the Insiders. The Trustee respectfully states as follows:

## BACKGROUND

1. Despite the requirement that the Debtor turnover all of its books and records to the Trustee in the Conversion Order, the Trustee was forced to file the *Motion of the Chapter 7 Trustee for Order Finding the Debtor and Its Members in Contempt and For Sanctions Against the Debtor and Its Members for Failure to Turnover Books and Records* [D.I. 186] (the "Sanctions Motion"). While Deborah Mott ("Mott") was the managing member responsible for the Debtor's accounting, Mott was conveniently absent at the hearing on the Sanctions Motion and conveniently absent from the section 341 meeting of creditors. Instead, Steven Acosta ("Acosta") served as the Debtor's only witness on both occasions and was not able to provide any real definitive answers

regarding the Debtor's accounting records, as he had no first-hand knowledge of the same. Instead, he was forced to rely upon what Mott had told him.

2. After the hearing on the Sanctions Motion, the Court indicated that it would grant the Sanctions Motion in part and asked the parties to submit a form of order consistent with what the Court shared on-screen with the parties. To ensure that the required production would provide what is needed to administer the Debtor's estate, the Trustee endeavored to specify the items for the turnover of accounting and financial documents that a multi-million dollar business should have readily available, especially one that recently completed extensive litigation concerning its income and expenses.

3. After various attempts to reach an agreeable form of order, the parties could not agree on a couple of open issues and submitted competing proposed orders to the Court. Ultimately, on July 14, 2022, the Court entered the *Order With Respect to Trustee's Motion to Hold Debtor in Contempt* [D.I. 222] (the "Sanctions Order"). Pursuant to the Sanctions Order, the Insiders were required to produce all of the documents listed in paragraph 2 of the Sanctions Order on or before July 13, 2022, or provide an affidavit signed by both Mott and Acosta indicating that such documents no longer exist or never existed. Unsurprisingly, the documents and other items were not produced on or before July 13, 2022, as provided by the Sanctions Order.

4. On July 14, 2022, the Trustee received 3 boxes of documents from the Insiders.

5. On July 15, 2022, the Trustee received a small supplemental production of documents from the Insiders.

6. On July 26, 2022, the Trustee received a broken computer from the Insiders.

7. On July 28, 2022, the Insiders filed a notice of appeal of the Sanctions Order [D.I. 229].

8.      On August 4, 2022, the Trustee received a small supplemental production of documents from the Insiders and a breakdown of the documents produced by category identified in the Sanctions Order.  While this supplemental production also included a representation from the Insiders' counsel, Kevin Mann, that the production was complete, the Insiders did <u>not</u> provide an affidavit signed by both of them indicating that any documents listed in paragraph 2 of the Sanctions Order that were not produced no longer exist or never existed.

9.      Despite their own tardiness in turning over the documents required by the Sanctions Order, on August 18, 2022, the Insiders filed their *Motion to Compel Trustee to File Notice Confirming Receipt of Documents* [D.I. 239] ("<u>Motion to Compel</u>").

## **OBJECTION**

10.     The Insiders made multiple productions, none on or before July 13, 2022, despite having ample time after the June 30, 2022 hearing and notice of the Sanctions Motion on June 9, 2022.  The Trustee has since completed his preliminary review of the documents produced.  He is not required to file any notice pursuant to the Sanctions Order, as the Insiders did <u>not</u> produce all of the documents and items required by the Sanctions Order and did <u>not</u> provide an affidavit signed by both Insiders indicating that such documents no longer exist or never existed.

11.     The Insiders are seeking to shift the burden to the Trustee to indicate what documents and items the Insiders failed to produce, when they are more than capable of reviewing their own production and determining what documents and items are missing and whether they no longer exist or never existed.

12.     The Insiders produced an Index of the documents allegedly turned over to the Trustee.  There are significant gaps in the documents produced bates stamped DO00001 – DO22481.  The Index describes these bates stamped documents as "Previously Produced

Documents". The Trustee has no idea who produced these documents, who they were previously produced to and for what purpose. Regardless, approximately 11,000 of these documents allegedly produced were not received by the Trustee.

13. Paragraph 2(a) of the Sanctions Order required the Insiders to produce:

"Original" documents for all deposits and disbursements from 2017 through 2022 (including correspondence), original documentation of unpaid bills, original documentation for accounts receivables (whether collected or still due and outstanding), original documentation for all distributions to members from 2018 through 2022, and original documentation for all capital contributions including date of all contributions.

14. "Originals" were not produced. Copies were. The Trustee needs to know the source of the hard copy documents produced. If printed from an electronic source, the Trustee should have access to the same. Remarkably, the Trustee received no electronic data.

15. Certain documents were redacted. The Trustee needs the unredacted originals of these documents.

16. Certain emails that were produced do not contain the related attachments.

17. It is clear that not all documents set forth in paragraph 2(a) of the Sanctions Order were produced. There was support missing for certain deposits. By way of example, there was no support for the 10/9/2018 deposit in the amount of $376,019.20 from CCBCC Operations LLC. There were no calculations or other documents to support the significant member distributions. There were no employment or other compensation agreements to support payments to members. There were no documents to support the significant travel expenses paid to members and others. There were no required Tax Form 1099s in connection with receipts or disbursements.

18. There was missing support for disbursements made from 2017 through 2022. For example, there is missing support for payments made to "subcontractors":

- 7/18/2019 from BBVA Account #2888 in the amount of $2,500,000.00 (TSI000895 and TSI000069);

4

- 5/10/2021 from BBVA Account #2888 in the amount of $100,000.00 (TSI000138 and TSI000881);

- 5/10/2021 from BBVA Account #2888 in the amount of $150,000.00 (TSI000138 and TSI000881);

- 8/8/2018 from BBVA Account #7965 in the amount of $62,000.00 (TSI000016 and TSI000870);

- 9/17/2018 from BBVA Account #7965 in the amount of $147,993.60 (TSI000018 and TSI000869);

- 9/17/2018 from BBVA Account #7965 in the amount of $150,000.00 (TSI000018 and TSI000869);

- 10/16/2018 from BBVA Account #7965 in the amount of $200,000.00 (TSI000021 and TSI000868);

- 10/22/2018 from BBVA Account #7965 in the amount of $51,000.00 (TSI000021 and TSI000868);

- 11/6/2018 from BBVA Account #7965 in the amount of $16,875.00 (TSI000024 and TSI000867);

- 11/6/2018 from BBVA Account #7965 in the amount of $25,875.00 (TSI000024 and TSI000867);

- 12/17/2018 from BBVA Account #7965 in the amount of $25,000.00 (TSI000027 and TSI000866);

- 7/14/2020 from BBVA Account #7965 in the amount of $100,000.00 (TSI000274 and TSI000847);

- 12/6/2017 from BBVA Account #8953 in the amount of $448,000.34 (TSI 004276);

- 12/26/2017 from BBVA Account #8953 in the amount of $20,000.00 (TSI 004272 and TSI000944);

- 2/7/2018 from BBVA Account #8953 in the amount of $500,000.00 (TSI004266); and

- 6/18/2018 from BBVA Account #8953 in the amount of $100,000.00 (TSI000116 and TSI000935).

19. There was missing support for payments made for "professional services." For example:

- 6/4/2019 from BBVA Account #7965 in the amount of $25,000.00 (TSI000162 and TSI000860);

- 7/2/2019 from BBVA Account #7965 in the amount of $14,500.00 (TSI000164 and TSI000859);

- 7/10/2019 from BBVA Account #7965 in the amount of $928,843.10 (TSI000164 and TSI000859);

- 4/17/2020 from BBVA Account #7965 in the amount of $42,686.00 (TSI000268 and TSI000850);

- 8/17/2020 from BBVA Account #7965 in the amount of $4,000.00 (TSI000268 and TSI000850); and

- 5/14/2018 from BBVA Account #8953 in the amount of $100,000.00 (TSI000112 and TSI000936).

20. Paragraph 2(i) of the Sanctions Order required the Insiders to produce "Schedules supporting 2018 and 2019 tax returns." By way of example, the Insiders did not produce any Form 1099-INT statements from BBVA even though the bank statements reflect interest income totaling in excess of $70,000.

21. Paragraph 2(k) of the Sanctions Order required the Insiders to produce "All disbursement records from 2017 forward including but not limited to bank statements, cancelled checks, payment ledgers, and accounts payable documents." By way of example, the following items were not produced:

- As to BBVA Bank Account #1519, certain bank statements prior to December 2017 and after November 2018;

- As to BBVA Bank Account #1519, transaction detail in 2017 and periods after 2018;

- As to BBVA Bank Account #1519, canceled checks;

- As to BBVA Bank Account #2888, certain bank statements after October 8, 2021;

6

- As to BBVA Bank Account #2888, various months of transaction detail in the periods 2019 – 2021;

- As to BBVA Bank Account #2888, canceled checks, including, without limitation, 7/18/19 – Check #65721507 – Check Amount $2,500,000.00;

- As to BBVA Bank Account #2888, no support provided for 2/27/2020 bank transfer in the amount of $3,000,000.00 (TSI000180 and TSI000891);

- As to BBVA Bank Account #7965, bank statements after December 2020;

- As to BBVA Bank Account #7965, various months of transaction detail in the periods 2017 – 2020;

- As to BBVA Bank Account #7965, canceled checks, including, without limitation, 6/29/2018 – Check #905001 - Check Amount $3,802.00; 6/29/2018 – Check #905002 - Check Amount $7,504.90; 9/5/2018 – Check #905014 – Check Amount $10,200.00; 10/12/2018 – Check #905019 – Check Amount $25,000.00; 11/1/2018 – Check #905020 – Check Amount $25,000.00; and 12/17/2018 – Check #905024 – Check Amount $25,000.00;

- As to BBVA Bank Account #8953, various months of transaction detail in the periods 2017 – 2018;

- As to BBVA Bank Account #8953, documents to support employee expenses and debit card charges;

- As to BBVA Bank Account #8953, canceled checks;

- As to TD Bank Account #3053, any documents; and

- Credit card statements or other documentation to support Debtor disbursements primarily characterized as travel, including, without limitation, regarding BBVA Account #1519 (TSI000933), 12/1/2018 – Citi Card $6,300.00; 12/1/2018 – Citi Card $7,250.00; 12/1/2018 – Citi Card $6,300.00; 12/1/2018 – Synchrony Bank $1,150.00; 12/1/2018 – Discover $5,500.00; and 12/1/2018 – 1st Bank of Omaha $6,655.16.

22. Further, Acosta told the Trustee that there were approximately an additional $2.5 million in accounts receivable that were not scheduled. The Insiders produced no documentation regarding the relevant contract, the computation of the approximate amount, who to invoice, etc.

23. The foregoing is not meant to be an exhaustive or complete list of unaccounted documents, but intended to demonstrate categories of documents never produced to the Trustee.

7

24. There were also issues in connection with the "broken computer" produced to the Trustee, which was provided without a power source and no computer data files.

25. Despite the various examples of documents not produced, the Insiders have not provided an affidavit indicating that such documents no longer exist or never existed.

26. Accordingly, the Insiders have failed to show they complied with the Sanctions Order and the Motion to Compel should be denied.

## RESERVATION OF RIGHTS

27. The Trustee reserves his rights to supplement or amend his objection based up any discovery in connection with the Motion to Compel and to make such other and further arguments or objections at any hearing on the Motion to Compel.

## CONCLUSION

WHEREFORE, for the reasons stated herein, the Trustee respectfully requests that the Court deny the Motion to Compel and grant the Trustee such other and further relief as the Court deems just and proper.

Dated: September 1, 2022

ARCHER & GREINER, P.C.

*/s/ David W. Carickhoff*
David W. Carickhoff (No. 3715)
Bryan J. Hall (No. 6285)
300 Delaware Avenue, Suite 1100
Wilmington, DE 19801
(302) 777-4350
(302) 777-4352 (fax)
dcarickhoff@archerlaw.com
bjhall@archerlaw.com

*Counsel for the Chapter 7 Trustee*