**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TEAM SYSTEMS INTERNATIONAL, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 22-10066 (CTG)<br><br>**Re: Docket No. 262** |

**OBJECTION OF DEBORAH MOTT AND STEVEN ACOSTA TO SECOND
MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER, PURSUANT TO
SECTION 105(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE
2004, AND LOCAL BANKRUPTCY RULE 2004-1, AUTHORIZING
AND DIRECTING THE EXAMINATION OF VARIOUS ENTITIES**

Equity interest holders, Deborah Mott and Steven Acosta (collectively, "Mott & Acosta"), by and through undersigned counsel, hereby respectfully submit this objection to the *Second Motion of Chapter 7 Trustee for an Order, Pursuant to Section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2004, and Local Bankruptcy Rule 2004-1, Authorizing and Directing the Examination of Various Entities* [Docket No. 262] (the "Motion"). For the reasons stated below, Mott & Acosta respectfully request that this Court deny the Motion.

**Background**

1.      On January 18, 2022 ("Petition Date"), Team Systems International, LLC (the "Debtor") commenced a voluntary case under Chapter 11 of the Bankruptcy Code by filing a bankruptcy petition.

2.      On March 31, 2022 an order was entered by this Court converting the case from a Chapter 11 to a Chapter 7 bankruptcy. George L. Miller ("Trustee") was appointed as the Chapter 7 trustee in this case.

3.      Mott & Acosta are equity interest holders in the Debtor.

4.      On or about June 9, 2022, the Trustee filed the *Motion of the Chapter 7 Trustee for Order Finding the Debtor and Its Members in Contempt and For Sanctions Against the Debtor and Its Members for Failure to Turnover Books and Records* [D.I. 186] (the "Sanctions Motion"), asking the Court to hold Mott & Acosta, as well as the Debtor, in contempt and to levy sanctions against them for their alleged failure to provide the Trustee with certain documents and other things related to the Debtor.

5.      After a hearing on the Sanctions Motion, the Court granted the Sanctions Motion, in part, and entered the *Order With Respect to Trustee's Motion to Hold Debtor in Contempt* [D.I. 222] (the "Contempt Order").

6.      Pursuant to the Contempt Order, Mott & Acosta were required to provide certain documents and things to the Trustee as identified in the fourteen categories delineated in paragraph 2 of the Contempt Order.  If any documents had already been produced, Mott & Acosta were required to identify such documents by Bates number.

7.      In addition to the documents that were provided to the Trustee prior to the entry of the Contempt Order, between July 13, 2022 and August 3, 2022, thousands of documents (as well as the broken computer identified in paragraph 2(b) of the Contempt Order) were provided to the Trustee.  Mott & Acosta provided the Trustee with over 22,000 pages of documents corresponding to the 14 document categories (as well as the broken computer).  Mott & Acosta also provided the Trustee with a list identifying, by Bates number, which produced documents fit into which category and indicated to the Trustee Mott & Acosta's belief that all Debtor documents that were in their possession, custody or control had been produced.

8.      On or about August 18, 2022, Mott & Acosta filed the *Motion to Compel Trustee to File Notice Confirming Receipt of Documents* [Docket No. 239].  Such motion has been

adjourned to a date to be determined as Mott & Acosta have attempted to work with the Trustee to confirm that all documents have been provided.  Unfortunately, the Trustee has continued to demand the production of broad categories of documents, many of which do not exist or are not in the possession, custody or control of Mott & Acosta.  Repeated attempts by Mott & Acosta to narrow the scope of the Trustee's demands have been met with silence or accusations of malfeasance.

9.      During the period that Mott & Acosta have been attempting to work with the Trustee, the Trustee filed his first 2004 exam motion [Docket No. 260], seeking documents from, among others, TSI Gulf Coast, LLC and Addy Road LLC – entities that the Trustee knows are associated with Mott & Acosta.

10.     On November 16, 2022, the Trustee, through counsel, sent a demand to Mott & Acosta's counsel requesting the following:

1.     Identify all entities that you (as used herein, Mr. Acosta and/or Ms. Mott) control or have an ownership interest in that received money or other consideration from Team Systems International, LLC (each such entity referred to herein as an "Other Entity") between September 1, 2017 through March 31, 2022.

2.     Describe the goods, services, or other consideration provided by each Other Entity to Team Systems International, LLC ("TSI") that formed the basis for any payment or other consideration received from TSI (each, a "TSI Transfer").

3.     Identify each TSI Transfer received by each Other Entity, including the date of the TSI Transfer and the consideration provided.

4.     Provide any documentation, including any invoices, purchase orders, emails or other communications regarding the provision of such goods, services, or other consideration to TSI from each Other Entity that supports each TSI Transfer.

5.     Provide any documentation, including any invoices, purchase orders, emails, other communications, bank statements, and cancelled checks, regarding each TSI Transfer.

6.     Identify each payment or other consideration that you (Mr. Acosta and Ms. Mott) received from TSI (each, a "TSI Distribution") from January 1, 2018 through the present date.

7.     Provide any personal bank statements, cancelled checks, or other documentation regarding each TSI Distribution.

8.     Provide your (Mr. Acosta and Ms. Mott) personal federal tax returns for the tax years 2017 through 2021, including any supporting schedules to such returns.

9.     Identify any real estate that you or an entity that you control acquired on or after January 1, 2018, including the address and tax parcel number for such real estate, and identify the person(s) or entity that currently owns or holds such real estate.

11.     Although undersigned counsel met and conferred with the Trustee's counsel in an attempt to reach agreement on the requests, the Trustee refused to narrow his requests and immediately filed the Motion, painting Mott & Acosta as obstructionist because they wouldn't agree to the Trustee's overly broad demands.  The document demands in the Motion are virtually identical to the informal requests identified above.

12.     Since the conversion of this case, Mott & Acosta have attempted to assist and support the Trustee in his duties but have been met with nothing but vague document demands or absolute silence.   Mott & Acosta believe that, once the Trustee collects all outstanding receivables[1], there will be a surplus that flows to them.  To that end, they have a vested interest in providing the Trustee with all of the information, documents and assistance that he may need to complete his duties in this case.  However, it appears that the Trustee will never be satisfied that all Debtor documents have been produced by Mott & Acosta, so he now seeks their personal

---

[1] The Trustee has all necessary documents and has already taken action to collect the large FEMA receivable that will cover almost all known claims against the Debtor.  Upon information and belief, briefing has been completed, but the relevant contract board has not yet issued a decision on the receivable.

4

documents, not only from them, but also from Ms. Mott's personal counsel, Shulman Rodgers, P.A. ("Shulman").[2]

13.    The Trustee has obtained significant amounts of documents related to the Debtor's assets, liabilities and operations from the Debtor, Mott & Acosta, and other third-parties.  The Trustee is in possession of the Debtor's bank statements which should moot most, if not all, of this inquiry.  However, the Motion seeks vaguely described documents without limitation that may only have a trivial connection to the Debtor – or no connection at all – without describing how these requested documents will help the Trustee in fulfilling his duties.  The Trustee has not articulated any claim or basis for any claim against Mott & Acosta or any other party that justifies such unfettered and broad relief sought by the Motion.  The justification for such a fishing expedition is simply not warranted here.

## Objection

14.    Mott & Acosta object to the Motion on the basis that the proposed document requests are overly broad and unduly burdensome, are not likely to lead to the discovery of admissible evidence and the Motion fails to identify with any particularity the reasons why the production is even necessary.  Without articulating any potential claim, the Motion seeks the production of nine (9) different categories of documents – most of which are not limited by any specific time period.

---

[2] The Trustee seeks the following from Shulman:  "1) Produce a copy of all non-privileged communications, statements, invoices, bids, proposals, agreements, and/or any contracts, signed or unsigned related to the purchase of real estate on behalf of Deborah Mott or an entity owned or controlled by Deborah Mott from September 2017 to Present; and 2) Produce a copy of any and all non-privileged communications, statements, and agreements related to any trust, escrow or fiduciary accounts in the name of and/or for the benefit of Deborah Mott or an entity owned or controlled by Deborah Mott from September 2017 to Present."

15.     Mott & Acosta further object to the requests directed to Shulman as they have no connection to the Debtor's assets, liabilities or operations and are being made strictly to harass and embarrass Ms. Mott.

16.     Finally, Mott & Acosta object to the Motion to the extent that it seeks privileged or otherwise protected classes of documents.

### Basis for Objection

17.     The Trustee's Motion is overbroad. As a general rule, "[t]he purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'"  *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991).  A Rule 2004 examination should be used only to obtain information relating to the specific items delineated in Bankruptcy Rule 2004 itself.  *Id.*; *see also In re Bennett Funding Group, Inc*., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (a Rule 2004 examination is appropriate for revealing the nature and extent of the bankruptcy estate);  *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Calif. 1993) (purpose of Rule 2004 "is to allow inquiry into the debtor's acts, conduct or financial affairs so as to discover the existence and location of assets of the estate.").

18.     Mott & Acosta recognize that Rule 2004 examinations may be broader in scope than discovery in ordinary civil litigation, however, the broad sweep of Rule 2004 is not limitless. *See, e.g.*, *In re Drexel Burnham Lambert, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991); *In re GHR Energy Corp.*, 41 B.R. 655, 660 (Bankr. D. Mass. 1985).  Although Rule 2004 "can net the dolphins as well as the tuna . . . the net, in the discretion of the Court, can be carefully stitched to limit its catch."  *Drexel*, 123 B.R., at 711.  Thus, while Rule 2004 is expansive, courts recognize that there are "well-established limits to this free-and-easy practice."  *See In re Duratech*

*Industries, Inc.*, 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999); *see also In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (recognizing that courts have limited Rule 2004 examinations, *inter alia*, to prevent abuse or harassment).  To that end, a Rule 2004 examination concerning matters having no relationship or no effect on the administration of a debtor's estate is improper. *See In re Countrywide Home Loans*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008); *In re Continental Forge Co., Inc.*, 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987); *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (Bankr. S.D.N.Y. 1984); *Drexel*, 123 B.R., at 711.

19.     Moreover, an examination under Rule 2004 "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." *Fed. R. Bankr. P. 2004(b)*; see also *Longo v. McLaren (In re McLaren)*, 158 B.R. 655, 657 (N.D. Ohio 1992) ("The purpose of a Rule 2004 examination is to allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate"); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991) (explaining that Rule 2004 allows a trustee in a Chapter 7 case to quickly discover crucial information regarding the debtor's estate).  Rule 2004 is intended to permit the debtor and other estate fiduciaries and court-appointed officers, as needed, to determine the extent of the estate's assets and recover those assets for the benefit of creditors. *Drexel*, 123 B.R. at 708.

20.     In granting a Rule 2004 examination request, the Court is required to make a finding of good cause for the examination.  *ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004).  Good cause is shown if the examination sought is "necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *Id.*; see also *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr.

E.D. Tex. 1998).  Here, the Trustee has not shown good cause for the proposed examination of Mott & Acosta.  In fact, the Trustee has not shown <u>any cause</u> as to why the requested discovery is necessary beyond the vague statement that it "is in furtherance of the Trustee's statutory duty to investigate the financial affairs of the Debtor, which include any fraudulent and/or preferential transfers of the Debtor's assets." (Motion at ¶ 16).  There is no mention of how the requested information would help the Trustee in his administration of the Debtor's estates beyond this vague statement.  Notably, there is no evidence that the Debtor was ever insolvent prior to the Petition Date, making any fraudulent transfer or prefence claims meritless.  And, if the Trustee is able to collect the Debtor's outstanding receivables, which he already has all necessary documents and information to do, all creditors should be paid in full.  The Trustee even filed a 2021 Form 1065 tax report for the Debtor showing an $11.9 million surplus flowing to equity *after* all creditors, including those holding disputed claims, are paid.  Thus, there is absolutely no reason why the requested documents could assist in reviewing potential fraudulent transfer or preference claims or why it would even be necessary to bring such claims when the estate is not even close to insolvent.

21.    Further, the bulk of the information requested from Mott & Acosta should be ascertainable from the Debtor's records (specifically bank statements) that are already in the Trustee's possession or bank statements that the Trustee and Mott & Acosta have not been yet able to obtain. Denial or limitation of the Motion would not cause an undue hardship on the Trustee.

22.    Additionally, while Mott & Acosta cannot speak to any burden that a 2004 examination may place on Shulman, the requested production from Shulman would greatly impact Ms. Mott personally.  Shulman has acted as Ms. Mott's personal counsel for many years and on many matters <u>unrelated</u> to the Debtor.  While the Trustee does seek only *non-privileged*

documents, any documents that are produced by Shulman will undoubtedly contain personal information about Ms. Mott and her finances. The Trustee has not provided any basis or good cause for the production of documents related to Ms. Mott's real property or her trust, escrow or fiduciary accounts (to the extent they exist). Nor has the Trustee indicated any connection between Ms. Mott's personal finances and the acts, conduct, property, liabilities or financial condition of the Debtor, or to any matter which may affect the administration of the Debtor's estate. The requests to Shulman are nothing more than a fishing expedition that is being used to harass and embarrass Ms. Mott. Thus, the Court should deny the Trustee's request for documents from Shulman.

23. Rule 2004 specifically states:

> (b) *Scope of Examination.* The examination of an entity under this rule or of the debtor under § 343 of the Code **may relate only to the acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate**, or to the debtor's right to a discharge. (emphasis added).

24. Notwithstanding the broad scope of a Rule 2004 examination, "it must *first* be determined that the examination is proper." *In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983). "While it is obvious that particular rights of a creditor are affected when one of its debtors files for protection under the Bankruptcy Code, it cannot be said that a creditor necessarily loses the protections afforded by the Federal Rules of Civil Procedure especially in the context of an action arising under non-bankruptcy law." *Id.* While the purpose of Rule 2004 is broad, it is not without limits. "The examination of a witness [under Rule 2004] as to matters having no relationship to the debtor's affairs or no effect on the administration of the estate is improper." *In re Continental Forge Co., Inc.,* 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987); *see*

*also Matter of Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) (examination of entity was improper).

25.     Although Rule 2004 permits examinations of "third parties" the language of the rule makes it "evident that an examination may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy." *In Re GHR Energy Corp.,* 35 B.R. at 537.  Therefore, "it is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *Matter of Wilcher*, 56 B.R. at 434; *see also In re Continental Forge Co., Inc.,* 73 B.R. at 1007 (recognizes the non-debtor's right to privacy in its business affairs).  Here, the Trustee has sought information that is far outside of the Debtor's acts, conduct and financial affairs so far as they relate to the Debtor's bankruptcy proceedings.  For example, there is absolutely no need for the Trustee to obtain copies of Mott & Acosta's respective personal tax returns or information relating to their personal purchases of real property.  There is no nexus between these documents and the Debtor's affairs, especially since the Debtor is taxed as a passthrough entity and any Debtor-related income to Mott & Acosta is shown on the Debtor's tax returns.

26.     The production of documents pursuant to Rule 2004 may be compelled by subpoena pursuant to Federal Rule of Civil Procedure 45, made applicable to bankruptcy proceedings by Bankruptcy Rule 9016.  Fed. R. Bankr. P. 2004(c).  A party issuing a subpoena has a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  The court for the district where compliance is required "must quash or modify a subpoena" that (a) requires compliance beyond a 100-mile radius of where the person resides, is employed, or regularly transacts business in person; (b) requires disclosure of privileged or other protected matter, absent an exception or waiver; and/or (c)

subjects the person to undue burden.  Fed. R. Civ. P. 45(d)(3)(A)(ii)-(iv).  Even if the discovery requests are warranted, the relevancy of the requests is outweighed by prejudice, cost and burden to Mott & Acosta.

27.     Here, any subpoena issued pursuant to the Trustee's proposed order must be quashed because, among other defects:[3] (a) the requested discovery would subject Mott & Acosta to undue burden without any corresponding benefit to the Debtor's estate; (b) the bulk of the Trustee's document requests are not limited to any particular period of time or are limited to a time period that is far outside of the statute of limitations for any preference or fraudulent transfer claims that the Trustee could bring; (c) most of the information requested is obtainable from a more convenient and less expensive source, i.e. the Debtor's own records; and (d) the Trustee's document requests seeking "documentation, including any invoices, purchase orders, emails or other communications" are vague and ambiguous because the documents sought are not identified with any particularity.

28.     Should the Court determine that the Motion is otherwise proper, the Court should exercise its discretion to limit the scope of permitted disclosure.

## **Reservation of Rights**

29.     Mott & Acosta reserve all rights with respect to any subpoena issued on behalf of the Trustee (whether issued pursuant to an order granting the Motion or otherwise), including but not limited to the right to move to quash any such subpoena on any basis, seek an appropriate protective order, or seek any other appropriate relief in an appropriate forum.

---

[3] This Objection sets forth several of the most egregious defects in the Proposed Order and the Trustee's proposed discovery, and is not intended to be an exhaustive list.  Mott & Acosta expressly reserve all rights with respect to any subpoena issued on behalf of the Trustee, whether or not set forth in this Objection.

WHEREFORE, for the reasons stated above, Mott & Acosta respectfully request that the Court deny the Motion, or, in the alternative, reasonably limit the scope of the proposed form of order.

Dated: December 5, 2022                    CROSS & SIMON, LLC

                                          _/s/ Kevin S. Mann_____
                                          Kevin S. Mann (No. 4576)
                                          1105 N. Market Street, Suite 901
                                          Wilmington, Delaware 19801
                                          (302) 777-4200
                                          kmann@crosslaw.com

                                                  -and-

                                          Richard R. Robles, Esquire
                                          Law Offices of Richard R. Robles, P.A.
                                          905 Brickell Bay Drive, Suite 228
                                          Miami, Florida 33131
                                          (305) 755-9200
                                          rrobles@roblespa.com

                                          *Counsel to Deborah Mott and Steven Acosta*