# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TEAM SYSTEMS INTERNATIONAL, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 22-10066 (CTG)<br><br>**Re: Docket No. 272** |
| George L. Miller, solely in his capacity as the Chapter 7 Trustee of Team Systems International, LLC,<br>                Plaintiff,<br><br>-against-<br><br>Deborah Evans Mott, Steven M. Acosta, Christopher Mott, John S. Maciorowski, Addy Road LLC, Brent Road LLC, Benjamin P. Smith, Jessica M. Smith, and TSI Gulf Coast, LLC, and<br><br>John Does 1-100,<br>                Defendants. | Adv. Proc. No. 23-50004 (CTG)<br><br>**Re: Adv. Docket No. 3** |

**JOINDER OF BENJAMIN P. SMITH AND JESSICA M. SMITH TO THE OBJECTION OF DEBORAH MOTT, STEVEN ACOSTA, CHRISTOPHER MOTT AND JOHN S. MACIOROWSKI TO MOTION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER (I) EXTENDING THE FREEZE AND GRANTING PRELIMINARY INJUNCTIVE RELIEF, AND (II) GRANTING RELATED RELIEF, PURSUANT TO 11 U.S.C. § 105(a) <u>AND FED. R. BANKR. P. 7065 AND FURTHER OBJECTIONS TO MOTION</u>**

Defendants, Benjamin P. Smith ("Mr. Smith"), Jessica M. Smith ("Mrs. Smith" and collectively with Mr. Smith, the "Smiths")[1] files this joinder to the objection (the "Objection") filed by Deborah Evans Mott ("Debbie Mott"), Steven Acosta ("Acosta"), John S. Maciorowski ("Maciorowski"), and Christopher Mott ("Chris Mott"), to the *Motion of the Chapter 7 Trustee for*

---

[1] Brent Road LLC was voluntary dissolved pursuant to Articles of Dissolution filed with the Florida Division of Corporations on July 19, 2019. However, to the extent necessary, this joinder and further objections is filed on behalf of Brent Road LLC ("Brent Road").

*Entry of an Order (I) Extending the Freeze and Granting Preliminary Injunctive Relief, and (II) Granting Related Relief, Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7065* [Docket No. 272, Adv. Docket No. 3] (the "Motion")[2] and further objects to the Motion. For the reasons stated below, the Smiths respectfully request that this Court deny the Motion or, in the alternative, limit the relief awarded under the Motion.

## BACKGROUND

1. Mr. Smith and Mrs. Smith are husband and wife.

2. Mrs. Smith is the daughter of Debbie Mott.

3. Brent Road was a Florida limited liability company which was voluntarily dissolved on July 19, 2019.

4. Mrs. Smith was a member of Brent Road.

5. The Complaint alleges that the Debtor transferred $1,833,432.86 to Brent Road for the purchase of the Bethesda Property.

6. Upon dissolution of Brent Road, the Bethesda Property was transferred to Mrs. Smith.

7. Neither Brent Road, Mr. Smith nor Mrs. Smith are presently in possession of the $1,833,432.86 in cash because it was used to purchase the Bethesda Property.

## JOINDER

8. The Smiths and, to the extent necessary, Brent Road, join in the Objection to the Motion and for the reasons set forth in the Objection, the Smiths object to the Motion.

---

[2] Capitalized terms used herein and not defined herein shall have the meaning given such terms in the Motion.

## ADDITIONAL OBJECTIONS

A. **The Court Should Follow the *Grupo Mexicano* Decision that Bars the Preliminary Injunction Sought by the Trustee**

9. In *Grupo Mexicano de Desarrollo v. Alliance Bond Fund Inc.*, 527 U.S. 308 (1999), the United States Supreme Court held that in an action for money damages, a district court lacks authority to issue a preliminary injunction freezing a defendant's assets before a judgment is entered.

10. The Smiths assert that the Court should follow the *Grupo Mexicano* decision and deny the Trustee's Motion.

11. While courts have held that *Grupo Mexicano* does not preclude a bankruptcy court from issuing a prejudgment asset-freezing injunction in an adversary proceeding alleging fraudulent conveyances and other equitable causes of action, such reasoning is not applicable in this case. *See e.g. Urban Commons Queensway, LLC v. EHT Asset Mgmt., LLC*, 2021 Bankr. LEXIS 2341 (Bankr. D. Del 2021); *Rubin v. Pringle (In re Focus Media Inc.)*, 387 F.3d 1077 (9th Cir. 2004); *In re Owens Corning*, 419 F.3d 195, 208 n.14 (3d Cir. 2005), as amended (Aug. 23, 2005), as amended (Sept. 2, 2005), as amended (Oct. 12, 2005), as amended (Nov. 1, 2007) (interpreting *Grupo Mexicano's* holding to have exceptions for bankruptcy courts and fraudulent conveyance actions).[3]

---

[3] The Courts that have found exceptions to the *Grupo Mexicano* decision in cases involving bankruptcy and fraudulent conveyances, and cases in which equitable relief is sought, appear to rely on language in the *Grupo Mexicano* decision in the which the Court explained that "we suspect there is absolutely nothing new about debtors' trying to avoid paying their debts, or seeking to favor some creditors over others -¬or even about their seeking to achieve these ends through 'sophisticated . . . strategies'." *Grupo Mexicano*, 527 U.S. at 322. The *Groupo Mexicano* Court went on to state that "[t]he law of fraudulent conveyance and bankruptcy was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not." Id. Courts have interpreted that language to mean that the *Groupo Mexicano* decision does not bar prejudgment asset-freezing injunctions in fraudulent conveyance cases and bankruptcy cases. However, it appears that the *Gruppo Mexicano* Court was simply recognizing that fraudulent conveyance actions are an available remedy for recovering assets transferred prejudgment and that bankruptcy is also available if a creditor believes preferential transfers or fraudulent transfers have been made by a debtor. The Court was not creating a rule that prejudgment asset-freeze injunctions are permitted in fraudulent conveyance cases and bankruptcy cases. In fact, the Court

12. The Trustee's Complaint does include a claim for a constructive trust. However, the constructive trust claim is clearly not the principal object of the suit. The main focus of the suit is money damages against the defendants.

13. The constructive trust claim only contains conclusory allegations and only alleges wrongful conduct by Debbie Mott and Acosta. The Trustee's inclusion of a boiler plate constructive trust claim with no specific allegations of wrongful conduct by the Smiths should not allow the Trustee to avoid the holding of *Grupo Mexicano* with respect to the Smiths, and to the extent the Court deems necessary, Brent Road.

14. Further, there is no evidence in this case that the Smiths and/or Brent Road are dissipating assets. In both the *Focus Media* and *Urban Commons Queensway* cases, there was evidence that assets were being dissipated by the debtor and the alleged recipient of the fraudulent conveyance. *See Focus Media*, 387 F.3d at 1086 ("There is also evidence in the record that in the past Rubin made away with Focus Media funds, suggesting that he may do the same with respect to the funds that Pringle seeks to recover…The bankruptcy court found that "that is substantial evidence that assets were being dissipated by Focus. Mr. Rubin is the shareholder of Focus. So the Court would infer from that that Mr. Rubin was causing the dissipation of the assets"); *Urban Commons Queensway*, 2021 Bankr. LEXIS 2341 *4-*5 ("Defendants Woods and Wu have a history of wrongful acts and have proven that they are capable of shuffling assets… Additionally, Plaintiffs bring before this Court evidence of multiple lawsuits and judgments against Defendants Woods and Wu for fraud, breach of repayment obligations").

---

declined to rule on the issue of whether a prejudgment asset-freeze injunction was an available remedy in a fraudulent-conveyance action. In footnote 7 of the *Gruppo Mexicano* decision, the Court states: "Because this case does not involve a claim of fraudulent conveyance, we express no opinion on the point." Grupo Mexicano, 527 U.S. at 324, n. 7. The Court also did not specifically address cases in which equitable relief is sought.

15. As set forth below, there is no evidence in this case that the Smiths (or Brent Road) have dissipated assets or concealed assets.

16. A preliminary injunction should be narrowly tailored to the harm which is sought to be prevented. *See Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974) ("Injunctions . . . must be tailored to remedy the specific harms shown"); *Old Charter Distillery Co. v. Continental Distilling Corp.*, 174 F. Supp. 312, 331 n.127 (D. Del. 1959) ("Injunctions . . . should be no broader than is necessary to give adequate protection to the plaintiff"). Therefore, the Motion should be denied as to the Smiths and Brent Road.

**B.    The Trustee Has Not Demonstrated a Likelihood of Success on the Merits Against the Smiths**

17. In paragraphs 70, 71 and 72 of the Motion, the Trustee alleges certain badges of fraud and overt acts of fraud or dishonesty.

18. However, with few exceptions, the alleged badges of fraud and overt acts of fraud or dishonesty are conclusory statements or focus on the alleged actions by Debbie Mott and Acosta, and not on any actions of the Smiths or Brent Road.

19. The only allegations against the Smiths appear to be that the Smiths are the daughter and son-in-law of Debbie Mott and the Smiths allegedly received fraudulent conveyances.

20. In addition, the Motion does not contain any allegations of facts or circumstances that would show that the Smiths have in the past or will in the future dissipate assets or conceal assets from the Trustee. In fact, the ownership of the Bethesda Property is a matter of public record and has never been concealed from the Trustee by the Smiths.

**C. The Trustee Will Not Be Irreparably Harmed in The Absence of An Injunction with Respect the Bethesda Property**

21. The alleged fraudulent conveyances to Brent Road and the Smiths are mostly limited to the Bethesda Property.

22. The Trustee cannot demonstrate irreparable harmed related to the Bethesda Property.

23. In light of the Trustee's suit, it is unlikely that the Smiths would be able to sell the Bethesda Property, even if they wanted to, given the inability of a buyer to obtain title insurance.

24. Moreover, the Trustee's allegations of irreparable harm in the Motion appear to focus on allegations that Debbie Mott and Acosta "have a documented history of moving or concealing assets using undisclosed bank accounts and shell companies" and that "absent the relief requested herein, there is a high likelihood that Mott, Acosta, and the other Defendants will continue to move and/or conceal assets." Motion at paragraphs 80 and 81.  However, the Trustee has no evidence that the Smiths have a history of moving or concealing assets or that they will move or conceal assets in the future.

**D. The Preliminary Injunction Will Inflict Unreasonable Harm on The Smiths**

25. The Motion simply contains conclusory statements that the injunction will not cause the Defendants unreasonable harm.

26. The Smiths are individuals with a family and living expenses that need to be paid and the injunction would prevent the Smiths from being able to pay their expenses.

27. Moreover, the amounts alleged in the Complaint as being Fraudulent Conveyances received by the Smiths were never transferred to the Smiths.  Instead, the amounts were transferred from the Debtor to escrow for direct payment to the seller of the Bethesda Property, and the amounts were used to purchase the Bethesda Property for Brent Road.  So, the injunction, if entered

as requested by the Trustee, would require Mr. Smith and Mrs. Smith each to freeze over $1.8 million, i.e. combined over $3.6 million (which amounts the Smiths do not have) when neither Mr. Smith nor Mrs. Smith received the Fraudulent Conveyances alleged in the Complaint.  Such a result will clearly cause unreasonable harm to the Smiths.

28. In addition, Brent Road is not presently in possession of the amounts alleged in the Complaint as Fraudulent Conveyances (approximately $1.8 million) because the money was used to purchase the Bethesda Property.  So, it is unreasonable to issue an injunction against Brent Road requiring it to freeze over $1.8 million dollars because Brent Road is not in possession of the money.

29. Moreover, Exhibit S to the *Declaration of William A. Homony in Support of the Motion of the Chapter 7 Trustee for Entry of an Order (i) Extending the Freeze and Granting Preliminary Injunctive Relief, and (ii) Granting Related Relief, Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7016* [Main Case D.I. 273; Adv. D.I. 4] reflects that Brent Road was voluntarily dissolved pursuant to Articles of Dissolution filed with the Florida Division of Corporations on July 19, 2019 (almost three and a half years before the Complaint was filed).  It will be practically impossible for a dissolved limited liability company to comply with an injunction because the dissolved limited liability company no longer exists and has no assets.

### E. The Trustee Is Improperly Counting the Transfers Multiple Times Against the Smiths and Brent Road

30. Exhibit A to the Complaint asserts that Brent Road received the following transfers from the Debtor:

| Transfer Source | Transfer Date | Transfer Amount |
| --- | --- | --- |
| TSI BBVA Account #8953 | 5/14/2018 | $100,000.00 |
| TSI BBVA Account #7965 | 8/8/2018 | $62,000.00 |
| TSI BBVA Account #7965 | 8/8/2018 | $5,000.00 |
| TSI BBVA Account #9759 | 8/22/2018 | $1,666,432.86 |

7

| | | |
|---|---|---|
| **Total Transfers** | | **$1,833,432.86** |

31.     These same four transfers totaling $1,833,432.86 are also asserted on Exhibit A to the Complaint as having been received separately by Mr. Smith and separately by Mrs. Smith. So, these four transfers have been at least triple-counted by the Trustee as being received separately by Brent Road, Mr. Smith and Mrs. Smith.

32.     Neither Brent Road, Mr. Smith nor Mrs. Smith actually received the $1,833,432.86 because the amounts were paid to Shulman Rogers Gandal Pordy & Ecker P.A. to be used for the purchase of the Bethesda Property.

33.     On Exhibit A to the Complaint, the Trustee acknowledges the following about the four transfers:

> "Transfers were made by TSI to Shulman Rogers Gandal Pordy & Ecker P.A. for the purchase of the real property [the Bethesda Property] by Brent Road LLC and subsequently transferred to Jessica M. Smith and Benjamin P. Smith."

34.     The above statement shows that the Trustee knows that the four transfers were never received by the Smiths. Instead, the Trustee knows that the transfers were made to Shulman Rogers Gandal Pordy & Ecker P.A. to enable Brent Road to purchase the Bethesda Property. Similarly, the Trustee knows that Brent Road is not presently in possession of the transfers because the money was used to purchase the Bethesda Property.

35.     Notwithstanding this knowledge by the Trustee, by the Motion, the Trustee not only wants to enjoin the Smiths from selling, assigning, transferring, encumbering, or otherwise disposing of the Bethesda Property, he also wants to enjoin each of Brent Road, Mr. Smith and Mrs. Smith from selling, assigning, transferring, encumbering, or otherwise disposing of over $1.8 million of other funds. If the preliminary injunction were to be entered as requested by the Trustee, these three defendants would be required to freeze over $5.4 million combined, plus the Smiths

8

would be prohibited from disposing of the Bethesda Property. So, in essence, the Trustee is quadruple-counting the four transfers.

36. As stated previously, a preliminary injunction should be narrowly tailored to the harm which is sought to be prevented.

37. The Trustee has not shown the right to, or need for, a preliminary injunction against the Smiths and Brent Road. However, to the extent the Court in inclined to consider entering a preliminary injunction, the relief requested by the Motion in connection with the Bethesda Property and the corresponding four transfers totaling $1,833,432.86 used to purchase the Bethesda Property is too broad and must be limited.

### F. The Trustee Is Not Entitled to An Accounting and Can Request Information Through Discovery in The Adversary Proceeding

38. The Motion seeks to have the Court direct the Defendants to account to the Trustee for the Real Properties and the Fraudulent Conveyances within ten business days of entry of an order granting the Motion.

39. However, other than requesting the relief, the Motion is silent regarding the Trustee's need and justification for such an accounting.

40. Any information the Trustee wants to obtain about the Real Properties and the Fraudulent Conveyances should be sought in the normal course through discovery in the adversary proceeding.

WHEREFORE, for the reasons stated above, the Smiths request that the Court deny the Motion.

Dated: January 20, 2023

**WHITEFORD, TAYLOR & PRESTON LLC**[4]

/s/ *Richard W. Riley*
Richard W. Riley (Bar No. 4052)
600 North King Street, Suite 300
Wilmington, Delaware 19801
Telephone:    (302) 357-3265
Email:    rriley@wtplaw.com

- and -

Michael J. Roeschenthaler
Scott M. Hare
**WHITEFORD TAYLOR & PRESTON LLP**
200 First Avenue, Third Floor
Pittsburgh, Pennsylvania 15222
Telephone:    (412) 618-5800
Email:    mroeschenthaler@wtplaw.com
        share@wtplaw.com

- and -

Brandy M. Rapp
**WHITEFORD TAYLOR & PRESTON LLP**
Suite 1110
10 S. Jefferson Street
Roanoke, VA 24011
Telephone:    (540) 759-3560
Email:    brapp@wtplaw.com

*Counsel to Benjamin P. Smith and Jessica M. Smith*

---

[4]    Whiteford, Taylor & Preston LLC operates as Whiteford Taylor & Preston L.L.P. in jurisdictions outside of Delaware.