# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Team Systems International, LLC, | Case No. 22-10066 (CTG) |
| Debtor. | Re: D.I. 310 & 311 |
| George L. Miller, solely in his capacity as the Chapter 7 Trustee of Team Systems International, LLC, | |
| Plaintiff, | Adv. Proc. No. 23-50004 CTG) |
| -against- | |
| Deborah Evans Mott, Steven M. Acosta, Christopher Mott, John S. Maciorowski, Addy Road LLC, Brent Road LLC, Benjamin P. Smith, Jessica M. Smith, TSI Gulf Coast, LLC, TSI Education & Training, Inc., and Team Systems International Southeast LLC, and | |
| John Does 1-100, | Re: Adv. D.I. 62 & 63 |
| Defendants. | |

**PRELIMINARY OBJECTION OF THE CHAPTER 7 TRUSTEE TO
(I) THE DELAY MOTION [ADV. D.I. 62]; AND
(II) MOVANTS' DISCOVERY REQUESTS**

George L. Miller, solely in his capacity as the chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Team Systems International, LLC (the "Debtor" or "TSI"), and plaintiff in the above-captioned adversary proceeding, hereby files this Preliminary Objection to (i) the *Motion for Entry of Orders: (A) Staying Prosecution of First Amended Complaint or, Alternatively, Extending Time to Answer, Move or Otherwise Respond; (B) Capping Recovery, If*

*Any, Under First Amended Complaint; (C) Granting Relief from the Automatic Stay to Permit TSI Members to Fund Appeal to Eleventh Circuit, (D) Compelling the Trustee to Abandon the $8.2 Million Receivable; (E) Compelling Trustee to Abandon Debtor's Business; and (F) Granting Related Relief* [Main Case D.I. 310; Adv. D.I. 62] (the "Delay Motion") filed by Defendants Deborah Evans Mott ("Mott"), Steven M. Acosta ("Acosta"), Christopher Mott, John S. Maciorowski, and Addy Road LLC (collectively, the "Movants"); and (ii) the *TSI Members' Requests for Admissions, Interrogatories, and for Production of Documents Directed to George Miller, as Chapter 7 Trustee*, attached hereto as Exhibit 1.

The Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1.  The Court should deny the Delay Motion. As discussed below, Movants have failed to show any basis for the multiple forms of extraordinary relief they seek. Movants' request for a stay or an extension is a transparent attempt at delay. Movants already have had ample time to file an answer. In addition, Movants have failed to show any cause to grant them stay relief to pursue litigation on behalf of the estate. And Movants are not entitled to abandonment of any estate assets. Movants are out-of-the-money equity. Their interests are manifestly at odds with the best interests of creditors. Indeed, Movants face serious allegations of intentionally defrauding their creditors. Granting Movants any of the relief requested would only serve to delay the administration of the estate, harm creditors, allow further obfuscation of the Debtor's assets, and reward Movants for their bad behavior.

2.  The Delay Motion is long on spin, and short on substance. Movants appear to recognize this. Just days after filing the motion, Movants' counsel purported to serve discovery demands on the Trustee. Those discovery demands, which were propounded in violation of the

Bankruptcy Rules and Local Rules,[1] seek documents and information to support the allegations in the Delay Motion—information that Movants must have had (but failed to turn over to the Trustee) in order to make their factual allegations in good faith. Many of the discovery requests seek documents and information that <u>the Trustee has requested from Movants but Movants have failed to turn over.</u> Upon information and belief, whatever documents and information exist in support of the Alleged A/R (defined below) and the other matters described in the Delay Motion are in the possession, custody, or control of Movants, their agents, or their affiliates.

3. The repeated personal attacks on the Trustee and his advisors both in the Delay Motion and in Court are unprofessional, have no basis in fact, and are a cheap stunt intended to distract from Movants' own well-documented history of misconduct.

4. For the following reasons, Movants are entitled to no relief, the Delay Motion should be denied, and Movants' discovery requests should be stricken. The Court should order Movants to file an answer and this adversary proceeding should proceed without further delay.

## **BACKGROUND**[2]

5. The Court is well-acquainted with the Movants and their *modus operandi*.

   a. Prior to the conversion of this case to chapter 7, the Court conducted a three-day evidentiary hearing in March 2022 on the motion of GPDEV and Simons[3] to dismiss or convert the case. If Movants believed the Debtor's accounts receivable or business had sufficient value to support a reorganization, they had ample opportunity to present any such evidence in March 2022. They presented no such evidence.

---

[1] Among other things, Movants failed to meet and confer with the Trustee prior to serving discovery. *See, e.g.,* L.B.R. 7026-1(a); 7026-3(b). Moreover, because Movants have not yet filed an answer, Movants are not entitled to serve discovery in the adversary proceeding. *See* Fed. R. Civ. P. 26(d).

[2] The Trustee incorporates by reference the factual background set forth in the Trustee's *First Amended Complaint* [Adv. D.I. 37] (the "<u>First Amended Complaint</u>"). The Trustee **disputes** the factual allegations by Movants, including paragraphs 14 through 32 of the Delay Motion, and leaves Movants to their burdens of proof.

[3] Capitalized terms used but not defined herein have the meanings set forth in the First Amended Complaint.

    b.    Following conversion, the Court conducted a hearing on June 30, 2022 on the Trustee's motion seeking to hold the TSI Members in contempt for their failure to turn over estate property, including books and records, and for sanctions. Following that hearing, the Court ordered Mott and Acosta to produce books and records to the Trustee and imposed a freeze with respect to the Ormond Beach Property, the Bethany Beach Property, and the Blue Springs Property [Main Case D.I. 222]. To date, Mott and Acosta have failed to comply with that order and have failed to turn over complete books and records. The real property freeze remains in place.

    c.    After the Trustee filed his original complaint, the Court conducted an evidentiary hearing on January 23, 2023 on the Trustee's motion seeking a preliminary injunction and other relief [Adv. D.I. 3]. At the conclusion of the hearing, the Court determined that the Trustee was entitled to a continuation of the freeze and certain other relief.

    d.    Thereafter, the Court on January 27, 2023 entered a preliminary injunction order against Movants [Adv. D.I. 25] (the "Preliminary Injunction") and on January 31, 2023 issued a Memorandum Opinion [Adv. D.I. 29]. The Court also directed Movants to provide documentation to the Trustee.

    e.    On April 3, 2023, the Trustee submitted a proposed form of second injunction order. [Adv. D.I. 35]. Based upon the values listed in the Movants' declarations submitted to the Trustee,[4] the aggregate value of the assets that would be frozen under the Trustee's proposed order is <u>less than</u> the aggregate amount of the filed proofs of claim.

    f.    On April 4, 2023, Movants submitted a competing form of order that included relief which went far beyond the scope of the Court's direction. [Adv. D.I. 36].

    g.    On April 12, 2023, the Court held a status conference on the parties' competing forms of order. During that status conference, Movants' counsel repeatedly made baseless attacks on the Trustee and his professionals. Importantly, Movants' counsel did not (and could not) dispute the representation that the total value of the disclosed assets to be frozen is less than the total amount of the filed proofs of claim. At the conclusion of the status conference, the Court gave Movants' counsel seven days to file a letter if Movants believed the stay was too broad and to request a further hearing.

---

[4] The Trustee does not concede that Movants' declarations and the valuations contained therein are accurate or correct and reserves all rights.

4

      h.      On April 19, 2023, Movants' then-counsel filed a letter "request[ing] that the Court schedule a hearing at which the Injunction Defendants may present evidence that the injunction that is currently in place operates to freeze assets with value exceeding the value of all proofs of claim in the aggregate." [Adv. D.I. 56].

      i.      The next day, April 20, 2023, the Trustee's counsel reached out to Movants' counsel multiple times to inquire about what additional evidence Movants intended to present at their requested hearing, given that (i) there are $8.9 million in filed proofs of claim listed on the official claims register in this case and (ii) according to Movants' own declarations, the total value of the disclosed assets to be frozen is less than that amount. Movants' counsel did not substantively respond to the Trustee's counsel.

      j.      Two business days after filing the above-referenced letter, Movants' litigation counsel withdrew their appearance. Movants made no further effort to secure the hearing requested in the April 19, 2023 letter. The Preliminary Injunction remains in place.

6.      The Trustee filed and served his First Amended Complaint on April 6, 2023. Answers or other responses pleadings were due on May 8, 2023.

7.      Rather than filing an answer and proceeding with the litigation (despite the fact that Movants previously complained about the delay in not being served with the original complaint), Movants filed the Delay Motion in which they seek at least five different forms of relief: (i) a stay of the adversary proceeding or an extension of time on behalf of all defendants; (ii) a cap on the Trustee's recovery at the conclusion of the litigation; (iii) relief from the automatic stay to pursue the appeal pending at the Eleventh Circuit; (iv) an order compelling the Trustee to abandon <u>to the Movants</u> certain alleged accounts receivable that the Members assert is worth $8.2 million (the "<u>Alleged A/R</u>"); and (v) an order compelling the Trustee to abandon <u>to the Movants</u> the Debtor's so-called "fuel business," which has not operated since on or about the Petition Date. Movants have failed to establish a prima facie basis for any of the relief sought.

**OBJECTION**

### I.     No Stay of the Litigation or Extension is Warranted.

8.     As a preliminary matter, Movants' counsel has only appeared on behalf of five of the 11 named defendants in this adversary proceeding. Thus, Movants' purported request for an extension of the answer deadline on behalf of "**all** defendants" is procedurally improper and should be denied. Delay Motion ¶ 5, n.6 (emphasis in original).

9.     Similarly, Movants are not entitled to a stay of this adversary proceeding. Movants argue that this litigation should be stayed while collection of accounts receivable is pursued. Any recovery from the FEMA litigation or the Alleged A/R is speculative at this juncture. The Debtor's estate has twice lost the $13.2 million FEMA claim, which is on appeal, and neither the Trustee nor his FEMA contingency counsel has received sufficient documentation from Movants to bring the $8.2 million Alleged A/R.

10.     In the Delay Motion, Movants attempt to distort the Trustee's testimony at a June 2022 hearing in support of their request for a stay. Much has changed in the intervening year. For one thing, the FEMA claim has been <u>denied</u> by the Civilian Board of Contract Appeal. That has necessitated further appellate practice, which is being pursued by the estate's FEMA contingency counsel. Incredibly, in their discovery requests, Movants included multiple requests seeking confirmation that the FEMA claim had been appealed.[5] The Trustee has.[6] A simple PACER search taking less than one minute would confirm that. The fact that Movants do not even know

---

[5] In fact, Movants made three such requests. *See* Ex. 1, Request for Admission 33 ("Admit that, to date, the Trustee has not filed an appeal of the Contract Board's decision to the District Court."); Request for Admission 47 ("Admit that the Trustee has not yet filed an appeal from the Contracts Board's decision to the District Court."); Interrogatory 11 ("Describe in detail the reasons the Trustee has not yet filed an appeal to the District Court from the decision of the Contract Board not to pay the $13.5 Million Receivable."). This type of repetitive discovery demands, seeking information that is publicly available, demonstrates that Movants' discovery requests have no proper purpose.

[6] *See* Team Systems International, LLC v. Secretary of the Department of Homeland Security, No. 23-1556 (Fed. Cir. 2023).

6

the status of the FEMA litigation—by far the largest and, to date, the only documented receivable—demonstrates that Movants cannot be trusted to collect the estate's A/R or manage any other assets.

11.     Movants also point to the Alleged A/R.  However, as the exhibits to Movants' own motion make clear, the Trustee has <u>for months</u> been requesting information from Movants regarding the Alleged A/R, which Movants have refused to provide.  *See* Delay Motion Ex. D (email dated April 6, 2023) ("We [the Trustee's professionals] have been asking for months about the alleged $6m A/R due from FEMA in connection with the containers and the support for the same. No support has been provided.").  Movants do not allege in the Delay Motion that they provided any information after receiving the April 6 email.  They did not.

12.     The only documents Movants point to in support of the Alleged A/R are certain proofs of claim filed in the case.  *See* Delay Motion ¶ 23 (referencing a proof claim filed by Bering Straits).  Despite requests by the Trustee, Movants have never explained to the Trustee or his professionals where, for example, in the 79-page proof of claim filed by Bering Straits there is <u>any support</u> for a $6.8 million Alleged A/R owed by FEMA to the Debtor.  No such proof is apparent on the face of that proof of claim.  It is hardly surprising that a document by which a creditor seeks money from the Debtor does not provide sufficient support for any alleged amount owed by that creditor or by a third party.

13.     The Court previously gave Mott and Acosta the opportunity to present any evidence they might have to show the Alleged A/R has any value or that the Debtor's business could support a reorganization.  Movants offered nothing then and they offer nothing now.

14.     Given the disappointing outcomes to date in the FEMA litigation, coupled with the Movants' ongoing refusal to provide the Trustee with any meaningful documentation or

7

information to support the Alleged A/R, it would be reckless to follow Movants' proposal to rely on collections from accounts receivable to fund a recovery from a process run by Movants, who are not creditors but, rather, are purely defendants. Movants' proposal is unworkable nonsense.

15. Another reason Movants are not entitled to a stay is that they have failed to identify the source or amount of funds they have available to fund an appeal of Florida Litigation to the Eleventh Circuit or the collection of the Alleged A/R. Movants' failure is notable because, elsewhere, Movants claim they do not have access to sufficient funds to defend this adversary proceeding. *See* Delay Motion ¶ 60. If they cannot even defend themselves against serious allegations of intentional misconduct, how can Movants possibly pursue affirmative litigation for the benefit of creditors?

16. Movants' request for a stay also fails because they have not identified any actual harm to them. Movants are out-of-the-money equity. Before Movants would ever see a penny from the Debtor's estate, all of the following obligations of the estate must be paid in full: (i) the Trustee's statutory commission; (ii) the chapter 7 administrative expenses; (iii) any unpaid chapter 11 administrative expenses that are allowed by the Court; and (iv) up to approximately $8.9 million in general unsecured claims. *See* 11 U.S.C. § 726. Unless and until all such obligations have been satisfied, the Trustee has the duty to pursue the litigation against Movants on behalf of the estate and creditors.

17. On the other hand, Movants' request for a stay would significantly harm the estate and creditors. This case has been plagued by (i) Movants' failure to cooperate, (ii) Movants' failure to produce complete books and records, in violation of multiple court orders, and (iii) other dilatory tactics by Movants. A further delay of this adversary proceeding would reward Movants for their misconduct while compounding the harm to the estate and creditors.

18. In addition, the public interest weighs against Movants' request for a stay. The public interest is served by the efficient and expeditious prosecution of litigation brought for the benefit of creditors owed approximately $8.9 million. The public interest is also served by rooting out fraud and other misconduct and holding the malefactors to account.

19. Movants fail to show they are entitled to either a stay of this litigation or an extension of time. This adversary proceeding should proceed and Movant should be ordered to answer the First Amended Complaint forthwith.

## II.    Movants' Request for a Cap on Recoveries Should Be Denied.

20. Movants ask this Court to enter an order, at the pre-answer stage, limiting the estate's recoveries against them. This is a bold request built on speculation and flawed logic. What is notable is that Movants do not even bother to deny liability, apparently preferring to instead focus on the size of the check they will eventually be forced to write.

21. Movants' reliance on *In re DSI Rental Holdings, LLC*, 2020 WL 550987 (Bankr. D. Del. Feb. 4, 2020) is misplaced. First, *DSI* was decided at the summary judgment stage. Here, Movants have not filed an answer. Second, the court in *DSI* held that "under the facts and circumstances that . . . the Debtors' receipt of such excess [above creditor recoveries] would be impermissible." *Id.* at *6. Movants point to no analogous facts or circumstances. Quite the opposite, Movants' declarations, if true, indicate that getting a full recovery for creditors in this case will be difficult, if not unlikely. It makes no sense to impose a pre-answer cap on recoveries on a future judgment if, in fact, the defendants that may eventually be subject to that judgment do not have the ability to pay the total amount of creditor claims. Unless and until there is a realistic possibility of recovering between approximately $10 million and $13 million, Movants' argument is pure speculation. Third, the *DSI* court held that the moving defendants had not proven they

were entitled to a cap on damages relating to the breach of fiduciary duty and other state law claims. The Trustee has similarly alleged breach of fiduciary duty and other claims against Movants, among others. At a bare minimum, *DSI* does not support the relief requested by Movants at this stage.

22. The other decisions cited in the Delay Motion are equally unavailing, as they stand for the unremarkable proposition that a debtor-in-possession cannot use the chapter 5 avoidance powers to recover amounts from its creditors for the debtor's own benefit.[7] That clearly is not what is happening here.

23. Since Movants have not yet filed an answer, and the estate is presently subject to $8.9 million in claims (plus administrative expenses) that the estate cannot pay, Movants' request for a cap on the estate's ultimate recovery is both speculative and premature.

### III. Movants' Other Requests for Relief Lack Merit.

24. Movants have failed to establish cause to grant them stay relief so they can pursue the Eleventh Circuit appeal. If anything, Movants' track record demonstrates cause to <u>never</u> permit them to prosecute litigation on behalf of the estate.

25. The record in the Florida Litigation establishes a pattern of gross mismanagement by Mott and Acosta. Among other things, Mott and Acosta failed to properly oversee the Debtor's agents, failed to comply with discovery, allowed false documents to be produced, and withdrew

---

[7] *See In re Majestic Star Casino, LLC*, 716 F.3d 736 (3d Cir. 2013) (debtor could not use section 549 to challenge the post-petition revocation of its parent's S-corp status, which was not property of the estate); *In re Cybergenics Corp.*, 226 F.3d 237 (3d Cir. 2000) (creditors' committee suing in the name of the debtor could not pursue avoidance actions that had been sold to a third party); *Wellman v. Wellman*, 933 F.2d 215 (9th Cir. 1991) (debtor could not pursue avoidance actions where debtor had executed a non-recourse promissory note in an attempt to create a claim that would obtain a massive surplus recovery for the debtor from avoidance actions); *In re Allonhill, LLC*, 2019 WL 1868610 (Bankr. D. Del. Apr. 25, 2019) (among other things, rejecting debtor's chapter 5 claims and observing that, even if the debtor had prevailed, the debtor "would not recover damages that exceed its debt").

their own expert report and risked the entire case on the question of liability, which they lost at the trial court.

26. The record before this Court establishes that Mott and Acosta mismanaged the chapter 11 case. The Debtor's schedules and statements, which contain material misstatements or omissions, have never been amended. The few weeks that the Debtor was in possession were filled with credible allegations of false testimony and fabrication/surreptitious alteration of documents as well as a particularly damaging deposition of Ms. Mott. Days later, the Debtor's counsel abruptly withdrew. That left the Debtor without bankruptcy counsel for several weeks. Then, at the March 2022 evidentiary hearing on the motion to dismiss or convert, Mott and Acosta failed to present, or cause to be presented, any evidence to show that either the accounts receivable or the business could support a reorganization. That left conversion as the only path forward.

27. For these same reasons, it makes no sense to abandon any estate assets to Movants. If the assets have value, then Movants should voluntarily cooperate with the Trustee's efforts to try to recover that value for the estate. The only reason any assets are burdensome to administer is because of the Movants' obstructions.

28. The Delay Motion is another attempt by Movants to impede the administration of the estate, drive up costs, and delay creditor recoveries. The Delay Motion lacks any basis for the relief requested and should be denied.

### IV. Movants' Discovery Requests Should be Stricken.

29. As set forth above, Movants have not made a *prima facie* showing that they are entitled to any of the relief requested in the Delay Motion. Because Movants have not made a threshold showing, Movants are not entitled to compel the Trustee to produce documents and

11

information to show whether or not the allegations in the Delay Motion have any basis in fact. They do not.

30.     Movants appear to recognize that the allegations and factual contentions in their Delay Motion lack evidentiary support. Days after filing the Delay Motion, and without conferring with the Trustee's counsel or even waiting for a response to be filed, Movants' counsel purported to serve more than 80 discovery demands on the Trustee. *See* Exhibit 1. Although Movants attached more than 1,000 pages of exhibits to the Delay Motion, the motion and exhibits are largely devoid of substance. As a result, many of Movants' discovery demands seek documents or information that Movants have provided only copies of to the Trustee or would need to create. This leads to the conclusion that either (i) Movants already have the documents and information that support the allegations in the Delay Motion, in which case Movants engaged in an abuse of the discovery process, or (ii) the allegations in the Delay Motion are mere speculation, in which case the motion should be summarily denied.

31.     Had Movants simply filed an answer, this adversary proceeding would have proceeded to discovery and Movants could have sought discovery in the ordinary course. Their decision to instead file the Delay Motion and attempt to shift their burden of proof by improperly serving discovery on the Trustee underscores that this is just one big attempt at delay.

## RESERVATION OF RIGHTS

32.     The Trustee reserves the right to supplement this Preliminary Objection prior to or any hearing on the motion. The Trustee also reserves the right to seek further relief from the Court with respect to the Delay Motion and the Movants' purported discovery requests.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court enter a proposed order, substantially in the form attached hereto as Exhibit 2, (i) denying the Delay Motion in its entirety, (ii) directing Movants to file an answer to the First Amended Complaint within 14 days, (iii) striking Movants' discovery requests, (iv) granting the estate reasonable attorney's fees and costs incurred in responding to the Delay Motion and Movants' discovery requests, and (v) granting the Trustee such other and further relief as is just and proper.

Dated: May 16, 2023

ARCHER & GREINER, P.C.

*/s/ Bryan J. Hall*
David W. Carickhoff (No. 3715)
Bryan J. Hall (No. 6285)
300 Delaware Ave., Suite 1100
Wilmington, DE 19801
(302) 777-4350
(302) 777-4352 (fax)
dcarickhoff@archerlaw.com
bjhall@archerlaw.com

*Counsel to George L. Miller,*
*Chapter 7 Trustee*