**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| TEAM SYSTEMS INTERNATIONAL, LLC, | Case No. 22-10066 (CTG) |
| Debtor. | **Hearing Date:  6/14/23 at 10:00 a.m. (ET)**<br>**Obj. Deadline: 6/13/23 at 12:00 p.m. (ET)**<br><br>**Re:  D.I. 314** |

**OBJECTION BY TSI MEMBERS TO:**

**CHAPTER 7 TRUSTEE'S MOTION FOR A PROTECTIVE ORDER STRIKING THE**
**MEMBER DEFENDANTS' DISCOVERY REQUESTS AND NOTICE OF DEPOSITION**

Deborah Evans Mott, Steven M. Acosta, Christopher Mott, and John S. Maciorowski (collectively, the "Movants" or "TSI Members"), by and through their undersigned counsel, hereby object to the *Chapter 7 Trustee's Motion For A Protective Order Striking The Member Defendants' Discovery Requests And Notice Of Deposition* (the "Motion for Protective Order"), and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.      Before addressing the merits of the Motion for Protective Order, Movants  address the Trustee's contorted and feigned contentions and incorrect factual assertions:

**A.      The Trustee Pretends that Movants' Discovery Requests are Directed to the First Amended Complaint, not the Lift Stay and Abandonment Relief Sought in connection with the Substantive Motion.**

2.      Movants propounded Written Discovery[1] and noticed the Trustee's Deposition[2] (together, the "Movants' Discovery") in connection with their Substantive Motion.[3] The Trustee filed his Preliminary Objection.[4]  Movants' Discovery is propounded in connection with the contested matter.

3.      The Trustee pretends, however, that Movants' Discovery is propounded in connection with the First Amended Complaint ("FAC") and is therefore premature. *See* Motion at ¶ 18 ("The Member Defendants are defendants in a pending adversary proceeding.  Despite having been served with the summons and the First Amended Complaint, the Member Defendants have not filed an answer or otherwise responded to the First Amended Complaint.").  The Motion contends that Movants are not entitled to any discovery until they have answered the FAC and a scheduling order is in place.

4.      To clear up any confusion, Movants seek to stay the FAC.  The last thing Movants want to do is to move forward in any way with respect to the FAC (including taking discovery).[5]

---

[1] *Requests for Admissions, Interrogatories, and for Production of Documents Directed to George Miller, as Chapter 7 Trustee* (the "Written Discovery").  *See* Bank. D.I. 314; Adv. D.I. 71-2.

[2] *See* Notice of Trustee's deposition scheduled for June 12, 2023 [Bankr. D.I. 313] (the "Trustee's Deposition").

[3] *Motion for Entry of Orders: (A) Staying Prosecution of First Amended Complaint or, Alternatively, Extending Time to Answer, Move or Otherwise Respond; (B) Capping Recovery, if Any, Under First Amended Complaint; (C) Granting Relief from the Automatic Stay to Permit TSI Members to Fund Appeal to Eleventh Circuit, (D) Compelling the Trustee to Abandon the $8.2 Million Receivable; (E) Compelling Trustee to Abandon Debtors Business; and (F) Granting Related Relief* [DI 310] (the "Substantive Motion").

[4] *Preliminary Objection of the Chapter 7 Trustee to (i) the Delay Motion [Adv. D.I. 62] and (ii) Movants' Discovery Requests* [Bank. D.I. 312; Adv. D.I. 64] (the "Preliminary Objection").

[5] To avoid further confusion (feigned or otherwise), Movants believe this estate may be fully administered—and all *valid* estate claims paid—by a combination of collecting accounts receivable, prosecuting claims objections, and continuing the Appeal (which, itself, is a claims objection). The foregoing should be *concurrently* conducted.  The Trustee's likely concern is that if that path of estate administration is adopted and proves successful, then every estate

With this understanding, the Trustee's argument under the banner "Member Defendants are not Entitled to Take Discovery at this Juncture" is misdirected. *See* Motion at ¶19 ("Because the Member Defendants have not responded to the First Amended Complaint and have no made no attempt to confer with the Trustee as required by Federal Rule 26(f), they are prohibited from taking discovery at this time."). The Substantive Motion is a contested matter under Bankruptcy Rule 9014(c) and both the Movants *and Trustee* are entitled to discovery.[6] For the same reason, the Trustee's effort to quash the Trustee's Deposition should be denied. *See* Motion at ¶25 ("Because the Member Defendants have not yet responded to the First Amended Complaint, they are required to seek leave of Court prior to taking a deposition."). Further, the Trustee is a party and no deposition subpoena is required to compel his attendance at a deposition.

> **B.        Contrary to the Trustee's Assertion, the Parties *Did Not Make a Good Faith Effort* to Resolve the Discovery Dispute because the Trustee has no intention of producing discovery in connection with the Substantive Motion.**

5.        The Motion for a Protective Order contends:

> "Prior to filing this Motion for a Protective Order, counsel for **the Trustee attempted in good faith to confer with counsel for the Member Defendants and Addy Road to reach an agreement regarding the scheduling of the hearing and discovery.** The parties were unable to reach an agreement, thus necessitating the filing of this Motion."

*Id*. at ¶ 13 (**emphasis** added). The email exchange below challenges this statement.

---

dollar the Trustee heretofore spent seeking injunctive relief, preparing and prosecuting the FAC (and incurring a very substantial bill for those efforts), delivered *no value* to the estate. Even worse, Movants will be presented with the Trustee's bill for legal services; *i.e.*, every dollar paid to the Trustee is paid directly from Movants' earned income. To avoid that scenario, the Trustee objects to Movants' Discovery, the Substantive Motion and most likely will seek to settle with the Judgement Creditors rather than prosecuting the Appeal at no cost to the estate. The last thing the Trustee wants is to suffer the reversal of fortune that follows from the Eleventh Circuit reversing the claims of the Judgement Creditors or Movants reducing other claims against the estate. The Trustee has incurred enormous legal fees against the estate. He actually wants (and needs) substantial claims against the estate to justify his litigation indulgence.

[6] At the meet and confer conducted on June 9, 2023, Movants advised the Trustee that Ms. Mott and/or Mr. Acosta may submit Declarations ("Declarations") in support of the Substantive Motion. Movants did so acknowledging the Trustee's right to take discovery. It was agreed a discovery schedule will be worked out after the Declarations are filed.

**Email dated May 31, 2023 11:45 AM from Frederick B. Rosner to Bryan J. Hall and others.**

Bryan, my clients are amenable to an adjournment of the hearing date subject to the following:

The Trustee acknowledges that my clients are entitled to discovery in this contested matter. I am happy to discuss the scope and purpose of the requested discovery and, if possible, stipulate to facts. However, as a condition to any adjournment of the hearing date on the Motion, the Trustee must agree on a **firm** response date for the discovery requests and deposition date in advance of the adjourned hearing date. In other words, my clients are not amenable to an adjournment and then find they have to devote time and resources fighting for their right to take discovery in connection with the adjourned hearing date or, as you put it, "subject to further direction of the Court."

Subject to the Court's schedule, we could put the hearing date out roughly 45 days from today. That is more than ample time for the Trustee to respond to our discovery requests that were served on the Trustee nearly 30 days ago and set a mutually agreeable date for a deposition. I do not want to adjourn to a date past mid-July because a statute of limitations is running on the collection of $8.2 million in receivables.

Happy to discuss.

Best,

Fred

And here is Trustee's counsel's response:

**Email dated June 5, 2023 from Bryan J. Hall to Frederick B. Rosner**

Fred,

The conditions set forth below are not acceptable. The Trustee intends to file a motion for a protective order with respect to your client's discovery requests and notice of deposition. We will also be filing a motion to shorten notice, requesting that the motion for a protective order be heard at the June 14 hearing. We will state in the motion to shorten that your clients oppose the requested relief.

Bryan

A true and correct copy of the full email exchange is attached hereto as **Exhibit A.**  This is *not* a good faith discussion and negotiation of Movants' Discovery.  It is a flat refusal by the Trustee to acknowledge Movants' right to obtain *any* discovery in a contested matter.

## OBJECTION

### A.    Movants' Discovery is Necessary and Appropriate because Adjudication of the Relief Requested by the Substantive Motion is Fact Sensitive.

6.    The Substantive Motion, the Preliminary Objection, the Declarations, and the to-be-filed Reply present a contested matter for the Court to adjudicate.  The Court, as trier of fact, will benefit from evidence adduced at trial in making its findings.  Movants are entitled to discovery pursuant to Bankruptcy Rule 9014(c) to address the factual disputes. For example, what are the Trustee's legitimate business reasons (if any) for not prosecuting the Appeal[7] cost free to the estate?  The Trustee asserts the "Delay Motion contains baseless and unsubstantiated allegations.[]"  The Motion also claims the Substantive Motion is "contrary … to common sense[,]" and the Discovery Requests are a "fishing expedition."  Motion at ¶ 21.  The Trustee dismissively labels the $6.8 million owed by FEMA to TSI; *i.e.,* now the bankruptcy estate, as the "Alleged A/R."

7.    The Trustee's positon on valuable estate property is an equally remarkable and telling.  Movants contend there are $8.2 million in estate accounts receivable to collect, a statute of limitations for collection is looming, and the Trustee either does not believe the receivables exist or, even if they exist, the Trustee will not submit a claim to FEMA because Movants, according to the Trustee, will not provide the information necessary to make any such claim.  Movants contend the Trustee's assertions are just cover for his true agenda; litigation and legal

---

[7] The cost of the Appeal, to be paid by a third party with funds not subject to the PI Injunction, is $40,000.  *See* **Exhibit B**.

{00035592. }

fees.  The Trustee's strategy is transparent: tarnish and label the TSI Members, blame them for *his*

*failure to collect* the $6.8 million owed by FEMA and thereby justify his prosecution of the FAC.

For these reasons, the Trustee will not agree to pursue the Appeal and thereby keep aggregate

claims against the estate elevated.

        8.      The purpose of discovery is to present documents or information to the Court in

admissible form to support the conclusion that an asserted fact is more probable than not.  Given

the Movants and Trustee's respective positons, the purpose of Movants' Discovery should be clear:

to substantiate the allegations in the Substantive Motion that the Trustee views as unsubstantiated.

In footnote 1, the Trustee sets forth his position by example.  The Trustee claims:

> "[T]he Member Defendants falsely claim that the Trustee is not taking steps
> to collect the Alleged A/R … the Trustee has for months been requesting
> that information from the Member Defendants, which they have failed and
> refused to turnover."

Motion at ¶ 21.  Further, "[the Trustee's professionals] have been asking for months about the

alleged $6m A/R due from FEMA … and support for same.  No support has been provided." *Id*.

at n.1.[8]

        9.      Movants dispute this, and maintain they repeatedly have advised the Trustee about

the receivables or he is otherwise on notice by reason of the documents TSI turned over to the

Trustee, documents filed on the docket, emails and the Bering Straits' proof of claim.  The

Trustee's position is flawed in several ways.  *First*, in the Trustee election, the Trustee held himself

out as knowledgeable about collecting government receivables.  *Second*, the Trustee has been on

notice about the $6.8 million FEMA Change Order Receivable since June 2022 and, in Movants'

view, has taken no action to collect that or other receivables.  *See* Ex. C.  *Third*, as set forth more

---

[8] During this time the Trustee has been incurring enormous professional fees drafting the FAC.

in detail below, the Change Order involves submission of a claim to FEMA for reimbursement of payments TSI made to Bering Straits. **Fourth**, the Trustee, seasoned with able counsel; *i.e.,* Venable and Archer & Greiner, has ample knowledgeable persons to gather the requisite information and submit a claim. The Trustee's contention that he can do nothing without the TSI Members is implausible and tactical.

- **$6.8 million+ FEMA Change Order Receivable**. As early as June 2022, the Trustee was made aware of the change order receivable and the location of the supporting documents. *See* June 16, 2022 email from Steve Acosta to the Trustee and his counsel, attached hereto as **Exhibit C** (Mr. Acosta explained that he "tried to reach out to [the Trustee] a few times" and that Ms. Mott and he "would like to get tighter this week to go over the current FEMA Claim so [they] can go over the Pre Negotiated Liquidated Damages for Contract Line Item Number (CLIN) 005" as well as "the FEMA Change Order and the 3 DLA Invoices."). Importantly, Mr. Acosta in his email pointed the Trustee to Ms. Mott's deposition transcript which described in detail the basis of the FEMA Change Order Receivable. *Id.* ("Deborah in her deposition walks through the Change Order pretty well I am going to attach[] it with this email so you don't have to go find it and you will have a better idea when we do talk."). A copy of this email, including the excerpt of Ms. Mott's deposition testimony regarding the Change Order Receivable, is also filed with the Court. *See* D.I. 251-3.

  As set forth in Ms. Mott's deposition transcript, the Change Order Receivable resulted from a change order issued by FEMA, which required TSI to deliver the water in "containers" as opposed to "break bulk," which resulted in a significant change of logistical plan and incurrence of substantial transportation costs. The Trustee is well aware of this. *See* exchange of emails between Trustee and Movants' counsel dated October 24, 2022, attached hereto as **Exhibit D**, at 2 ("The Insiders have continued to allege that the Debtor is owed $6.8 million in the form of a change order to be submitted to FEMA . . . . We believe that your clients' reference to a potential FEMA claim is related to additional costs incurred/paid by the Debtor due to FEMA delay and logistical issues that were not anticipated when the Debtor agreed to the contract per diem rate, resulting in significant losses.").

  The Trustee also understands that TSI hired Bering Straits Logistics Services, LLC ("Bering Straits") as its primary subcontractor for the Multiple Award

Task Order Contract (MATOC) awarded by FEMA.[10]  Among other things, Bering Straits was required to keep accurate books and records for all subcontractor performance. *See* Attachment 1 to Bering Strait's Proof of Claim, page 8, § 15 (Accounting Records, Reviews, and Reporting).  All of the direct costs incurred by Bering Straits as a result of the change order were recorded and reflected in the Bering Straits' Proof of Claim. *See* Attachment 3 to Bering Straits' Proof of Claim, at p. 65, an excerpt of which is attached hereto as **Exhibit E**.  TSI paid Bering Straits for these direct costs, plus a flat 6% fee pursuant to its contract with Bering Straits.  However, to date, FEMA has not reimbursed TSI for these additional expenses.  The deadline to submit the claim may be as early as **July 8, 2023**.

The proof of claim filed by Bering Straits sets forth the documents and other information necessary to submit a claim for the Change Order Receivable. *See, e.g.,* Exhibit D at 2 (email at 12:24pm from Movants' counsel stating "I believe that the relevant change order relates to CLIN 2") and at 1 (email at 12:47pm stating "It is my understanding that all necessary documents related to both CLIN 16 and CLIN 2 are in the Bering Straits folder that was provided on 6/29/22.  If you need to re-download them, they are at:  https://www.dropbox.com/scl/fo/tb8oivw6t74kwtys4l0gk/h?dl=0&rlkey=ebou3v0gq6o7xyijiood00ly6.")

- **The $1.2 Million DLA Bulk Fuels RME Receivable**.  TSI was awarded a Bulk Fuels Contract by DLA for RME, a custom Fuel blend.  A copy of this contract was filed with the Court in connection with the conversion hearing. *See* D.I. 119-4.  Under this contract, DLA issued a task order, which was later terminated for "convenience."  DLA is required to reimburse TSI if the task order is terminated for the government's convenience.  TSI made a claim for payment and the contracting office (DLA) requested more information.  The information was provided, but DLA did not respond.  The next step is a letter to DLA's legal department requesting payment.  The deadline to submit the letter also is rapidly approaching: **August 17, 2023**.  TSI unfortunately cannot receive payment on this receivable at this time because the Trustee closed TSI's only SAM-registered bank account.

- **The $198,000 US DLA Aviation Receivable**.  TSI was awarded an Indefinite Delivery Indefinite Quantity (IDIQ) contract by US DLA Aviation.  A copy of this contract was produced to the Trustee, bearing Bates No. TSI000291.  The last order under this contract needs to be processed in WAWF to include a PAR incident report.  The DLA contracting officer has requested this information, as late as February 27, 2023.

---

[10] The Change Order Receivable results from the same FEMA Hurricane Maria MATOC as the $13.5million receivable that the Trustee hired Venable LLP to collect.  A copy of the MATOC previously was produced to the Trustee as early as April 2022 bearing Bates No. TSI000540.

{00035592. }

- **The $32,140 DLA USMC Receivable**. The Movants recently became aware of a receivable in the amount of $32,140. There was a $32,140 task order (No. 0013) under the DLA Contract No. SPE4A6-14-D-6811. DLA was incapable of making this payment to TSI because the Trustee closed TSI's only SAM-registered bank account. *See* June 7, 2023 Email from DLA contracting officer, attached hereto as **Exhibit F**.

10.     The Substantive Motion seeks a variety of relief critical to the administration of the case, maximizing the value of property of the estate and eliminating invalid claims against the estate. These are the tasks of a trustee. Here, the Trustee evinces no intent to pursue these matters but every intent to sue the TSI Members for the amounts he has failed to collect. While there should be no dispute that the successful collection of $8.2 million in receivables and prosecution of the Appeal would shape the outcome of the case and substantially truncate the time necessary to pay all valid estate-claims in full,[11] the Trustee *refuses*[12] to take necessary actions and opposes the Substantive Motion. Movants are entitled to Written Discovery and the Trustee's Deposition to ascertain his business judgment in determining why he is not seeking to collect the $8.2 million in receivables. The Trustee should not be permitted to maintain an unchallenged grip on estate administration and pursue an expensive path of litigation at the direct expense of Movants. The Trustee must either defend his business judgement under oath or (hopefully) the divide between the Movants and the Trustee must be closed and a spirt of mutual cooperation adopted. **That includes give and take.**

---

[11] The Trustee labels Movants' request for relief a "Delay Motion." No delay can be found in a motion that seeks affirmatively to collect property of the estate that otherwise would remain uncollected or move forward with an Appeal to reduce claims against the estate when the Trustee is taking no action.

[12] The Trustee may tarnish the TSI Members in each filed pleading. That, however, is no excuse for his failure to collect millions in estate property that soon will be lost. The TSI Members reserve all rights.

{00035592. }

9

**B.      The Trustee has Not Met his Burden.**

11.      The Trustee has not shown good cause for this Court to issue the requested protective order. The Trustee previously painted the TSI Members as a bad actor and will point to that to substantiate any requested relief for the duration of the case. *See, e.g.,* ¶12 (asking the Court to take judicial notice of past events in the case to show the allegations in the Substantive Motion, such as the request to prosecute the Appeal or collect $8.2 million in estate receivables are contrary to commons sense). Pursuant to Rule 26(c), however, the Trustee has the burden to show good cause for entry of a protective order. The Trustee cannot rely on prior allegations to justify present (or future) relief.

12.      Specifically, the Trustee must make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" of good cause. *Flom v. Tharaldson Property Mgmt., Inc.*, No. Civ.A. 02-2637-JWL, 2003 WL 23696040, *1 (Bankr. D. Del., Aug. 29, 2003) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981)). The Trustee's burden of demonstrating "good cause" under Rule 26(c) "must be based on appropriate testimony and other factual data, not the unsupported conclusions of counsel." *Apco Oil Corp. v. Certified Transp., Inc.*, 46 F.R.D. 428, 432 (D.C. Mo. 1969) (emphasis added). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986), *cert. denied*, 484 U.S. 976 (1988) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)). The "harm must be significant, not a mere trifle." *Id.* (citing *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982).

13.      The Motion falls short of establishing "good cause" and demonstrating with particular facts the criteria identified in relevant case law. The Motion instead is based entirely on summary conclusions and unfair characterizations of the Movants. Conclusory allegations made

by counsel cannot support Rule 26(c) relief. *See, e.g.*, *In re Lawrence*, 363 B.R. 668, 672-674

(Bankr. N.D.N.Y. 2007) (denying request for protective order based solely on conclusory

allegations).

14.    Finally, the Trustee repeatedly alleges that there are "numerous Discovery Requests

about matters that are solely within the knowledge of Ms. Mott or Mr. Acosta, for example, their

so-called SAM accounts." Motion at 27.  Discovery on these topics (unfortunately) is appropriate.

Unless the Trustee changes his course of estate administration (unlikely), millions of dollars of

estate receivables will soon to be lost on the Trustee's watch.  The Trustee no doubt will seek to

blame the TSI Members for his inaction, and thereby further justify the need to prosecute the FAC.

*See, e.g.,* email from David Carickhoff, Jr. to Frederick B. Rosner dated April 6, 2023:

> We have been asking for months about the alleged $6m A/R due from
> FEMA in connection with the containers and the support for the same.  No
> support has been provided.  Any risk of running out of time to submit such
> claim(s) is by your clients' own doing.
>
> We have been asking since the conversion to be provided with any
> necessary credentials.  As of this writing, we have not been provided with
> TSI's credentials to SAM.  Those credentials need to be provided to the
> trustee and he can update the bank information.

A true and correct copy of that email is attached hereto as **Exhibit G.**

15.    The Trustee has made an issue of "TSI's credentials to SAM … [and] updat[ing]

the bank information." This makes no sense whatsoever because the login credentials are personal,

not estate property, the Trustee closed TSI's SAM registered bank account and a statute of

limitations for collection is just around the corner.  However, it is still necessary and appropriate

for the TSI Members to establish a record whether "TSI's credentials to SAM" are property of the

estate, whether TSI Members may lawfully disclose their personal credentials and whether the

Trustee even needs them.  Upon information and belief, the Trustee (and his counsel) both have

their own SAM login codes and SAM registered bank accounts. The failure to collect the $8.2

{00035592. }

million cannot be attributed to the TSI Members failure to turn over their *personal* login codes for a bank account the Trustee closed.

16.     The TSI Members contend that all documents and information necessary to understand and file a claim for the $8.2 million receivable was turned over or is otherwise available to the Trustee.  There is nothing the TSI Members may do because the receivables are estate property and under the Trustee's sole dominion and control.  Absent a deal (unlikely) that involves *more* than the Trustee trying to force Ms. Mott to prepare and file a claim for the receivables (which would require her to retain Venable LLP and Mark St. Moritz[13] with personal funds that are, in any event, frozen) for the benefit of the estate, relief from the Court in the form of abandonment is requested.  The Movants need to take discovery on these topics for the Court to determine whether the Trustee is the proper steward for the $8.2 million in estate receivables or whether they should be abandoned.

**WHEREFORE**, Movants respectfully request that the Court deny Motion, permit the Discovery Requests to go forward and grant such other relief as is just and appropriate.

Respectfully Submitted,

Dated: June 13, 2023          **THE ROSNER LAW GROUP LLC**
          Wilmington, Delaware

          */s/ Frederick B. Rosner*
          Frederick B. Rosner (DE Bar No. 3995)
          Zhao (Ruby) Liu (DE Bar No. 6436)
          824 N. Market Street, Suite 810
          Wilmington, DE 19801
          Tel: 302-777-1111
          Email: rosner@teamrosner.com
          Email: liu@teamrosner.com

          *Attorneys for Movants*

---

[13] An expert on government contracting.

{00035592. }