**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| Team Systems International, LLC, | Case No. 22-10066 (CTG) |
| Debtor. | |
| George L. Miller, solely in his capacity as the Chapter 7 Trustee of Team Systems International, LLC, | |
| Plaintiff, | Adv. Proc. No. 23-50004 (CTG) |
| -against- | |
| Deborah Evans Mott, Steven M. Acosta, Christopher Mott, John S. Maciorowski, Addy Road LLC, Brent Road LLC, Benjamin P. Smith, Jessica M. Smith, TSI Gulf Coast, LLC, TSI Education & Training, Inc., and Team Systems International Southeast LLC, and | |
| John Does 1-100, | |
| Defendants. | Hearing Date: 7/19/2023 at 1:00 p.m. (ET) Objection Deadline: 6/30/2023 at 4:00 p.m. (ET) |

**MOTION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER**
**PURSUANT TO FED. R. BANKR. P. 9019 AUTHORIZING AND APPROVING**
**THE SETTLEMENT AGREEMENT AND MUTUAL RELEASE BETWEEN**
**THE TRUSTEE AND THE SMITHS**

George L. Miller, solely in his capacity as the chapter 7 trustee (the "Trustee") of the

bankruptcy estate of Team Systems International, LLC (the "Debtor"), and plaintiff in the above-

captioned adversary proceeding, files this Motion seeking entry of an order, substantially in the

form attached hereto as Exhibit A (the "Approval Order"), pursuant to sections 105(a) of title 11

of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving the *Settlement*

*Agreement and Mutual Release* (the "Settlement Agreement"),[1] attached as Exhibit 1 to the

Approval Order, between the Trustee and Benjamin P. Smith ("Mr. Smith") and Jessica M. Smith

("Mrs. Smith", collectively with Mr. Smith, the "Smiths").  In support of this Motion, the Trustee

respectfully states as follow:

## JURISDICTION AND VENUE

1.      The district court has jurisdiction under 28 U.S.C. § 1334, which was referred to

this Court under 28 U.S.C. § 157.  This matter is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2).  Venue of this proceeding and this Motion in this district is proper under 28 U.S.C.

§§ 1408 and 1409.   Pursuant to Local Bankruptcy Rule 9013-1(f), the Trustee consents to the

entry of a final order by this Court with respect to the relief requested in this Motion.

2.      The predicates for the relief requested herein are Bankruptcy Code section 105 and

363 and Bankruptcy Rule 9019.

## BACKGROUND

3.      On January 18, 2022, the Debtor filed with this Court a voluntary petition for relief

under chapter 11 of the Bankruptcy Code.

4.      On March 31, 2022, the Court entered an order converting the Debtor's chapter 11

case to a case under chapter 7 of the Bankruptcy Code

5.      Also on March 31, 2022, the Trustee was appointed as the Chapter 7 Trustee of the

Debtor's estate.

---

[1] Capitalized terms used but not defined in this Motion have the meanings ascribed to such terms in the Settlement Agreement.

6.	Since his appointment, the Trustee has undertaken an investigation of the Debtor's prepetition transfers to and transactions with various parties.

7.	On January 10, 2023, the Trustee filed the original complaint against various defendants, including the Smiths, assigned Adv. Pro. No. 23-50004 (the "Adversary Proceeding"), pursuant to which the Trustee seeks, among other things, (i) to avoid and recover certain prepetition transfers to Deborah Evans Mott ("Mott"), Steven M. Acosta ("Acosta"), or another defendant, including the Smiths; (ii) to hold Mott and Acosta liable for breaching their fiduciary duties owed to the Debtor; (iii) to hold all defendants liable for aiding and abetting such breaches of fiduciary duty; (iv) to obtain preliminary and permanent injunctive relief; and (v) to obtain other relief, as set forth more fully in the Amended Complaint filed in the Adversary Proceeding [Adv. D.I. 37] (the "Amended Complaint").

8.	The Amended Complaint alleges that the Smiths received, among other transfers from the Debtor, certain real property located at 8401 Whitman Drive, Bethesda, Maryland 20817 (the "Bethesda Property") purchased for $1,840,000 with funds from the Debtor.

9.	The Smiths deny all wrongdoing, dispute all claims against them, and deny any liability whatsoever.

10.	Rather than proceed with litigation, the Parties engaged in arm's length negotiations regarding a resolution of the Adversary Proceeding as it relates to the Smiths.  Subject to Court approval, the Parties have agreed to resolve all claims and causes of action between them on the terms set forth in the attached Settlement Agreement.

## Summary of the Settlement Agreement[2]

11.     As set forth more fully in the attached Settlement Agreement, the primary terms of

the Settlement Agreement are as follows:

     a.     <u>Settlement Amount.</u>  Subject to the terms of the Settlement Agreement, the Smiths shall pay to the Trustee the total sum of $1,000,000.00 in full and complete settlement of the Adversary Proceeding as it relates to the Smiths, including attorneys' fees and costs associated with the Trustee's demand (the "<u>Settlement Amount</u>").  The Settlement Amount shall be paid by check or wire transfer, in accordance with payment instructions provided by the Trustee, within 45 days of the entry of a final non-appealable order of the Bankruptcy Court approving the Settlement Agreement.

     b.     <u>Settlement Effective Date.</u>  The effective date of the Settlement Agreement and all of its terms (the "<u>Settlement Effective Date</u>") shall be the date on which the last of the following occurs:  (i) entry of a final non-appealable order of the Bankruptcy Court approving the Settlement Agreement pursuant to Bankruptcy Rule 9019, and (ii) the Trustee receives the entire Settlement Amount in good funds.

     c.     <u>Trustee's Limited Release.</u>  Effective upon the Settlement Effective Date, the Trustee, on behalf of the Debtor's estate and solely in his capacity as Trustee and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged each of the Smiths, individually and collectively, and their successors and assigns solely in their respective capacities as such (collectively, the "<u>Smith Releasees</u>"), but expressly excluding Mott and Acosta, from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, has had, may have or may claim to have against the Smith Releasees that were, or could have been, brought in the Adversary Proceeding, or otherwise.  For the avoidance of doubt, the foregoing release shall not limit nor be deemed to limit the rights of the Trustee to enforce the Settlement Agreement in accordance with its terms. For the further avoidance of doubt, no claims asserted against any other Defendants in the Amended Complaint are subject to the Trustee's limited release.  In the event that the Settlement Amount is not timely paid to the

---

[2] The summary set forth in the Motion is provided for the convenience of the Court and parties only.  To the extent the summary conflicts with the terms of the Settlement Agreement, the actual terms of the Settlement Agreement shall control.

Trustee, the Settlement Agreement shall be null and void and the Trustee may pursue any and all claims that the estate may have against the Smiths.

d.    <u>Smiths' Limited Release.</u>  Effective upon the Settlement Effective Date, each of the Smiths shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged the Trustee, the Debtor, the Debtor's estate and the respective successors and assigns of any of them solely in their respective capacities as such (collectively, the "<u>Trustee Releasees</u>"), but expressly excluding Mott and Acosta, from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Smiths have, have had, may have or may claim to have against the Trustee Releasees.  For the avoidance of doubt, the foregoing release shall not limit nor be deemed to limit the rights of the Smiths to enforce the Settlement Agreement in accordance with its terms.

e.    <u>Additional Agreements.</u>

i.    <u>Interviews.</u>  Upon reasonable prior written notice, including by electronic mail from the Trustee's counsel to Smiths' counsel, the Smiths shall participate in one or more telephonic or videoconference interviews with the Trustee and/or his designated representatives, at mutually agreeable dates and times, and shall provide the Trustee's counsel with copies of any documents requested in connection therewith that are reasonably in their possession, custody, or control and can be reasonably located.  The Smiths shall honestly and candidly answer all questions posed by the Trustee and/or his designated representatives during each such interview, as if the Smiths were testifying under oath and penalty of perjury, to the best of their knowledge, information, and belief.  The Trustee shall provide the Smiths with reasonable prior written notice (including by electronic mail from the Trustee's counsel to Smiths' counsel) for any in-person interview, meeting, or other event to which the Smiths may be required to travel outside the state where they reside.

ii.    <u>Discovery and Trial Testimony.</u>  After formal discovery has commenced in the Adversary Proceeding, or in any other action that has been or may be brought by the Trustee on behalf of the Debtor's estate, the Smiths, through their counsel, shall accept service of any subpoenas by the Trustee for documents and/or testimony under Rule 45 of the Federal Rules of Civil Procedure and Rule 9016 of the Federal Rules of Bankruptcy Procedure by electronic mail from the Trustee's counsel to Smiths' counsel.  In addition, upon reasonable prior written notice and

request from the Trustee, the Smiths shall voluntarily appear (either in person or by videotape deposition or live-stream video) and provide testimony at any hearing or trial in the Adversary Proceeding or in any other action that has been or may be brought by the Trustee on behalf of the Debtor's estate.  Should the Bankruptcy Court require live testimony, the Smiths shall comply.

iii.  <u>Smiths' Obligations Under Paragraphs 6(a) and 6(b) of the Settlement Agreement.</u>  In the event that a medical condition or other unforeseen circumstance outside of the Smiths' control limits the Smiths' ability to comply with his/her obligations under paragraphs 6(a) and 6(b) of the Settlement Agreement, the Smiths shall make reasonable best efforts to comply with such obligations.  Upon written request, including by electronic mail from the Trustee's counsel to the Smiths' counsel, the Smiths shall provide such documentation as the Trustee may reasonably request regarding the Smiths' medical condition, or other circumstances that the Smiths assert limits their ability to comply with their obligations under paragraphs 6(a) and 6(b) of the Settlement Agreement.

iv.  <u>Materiality Provision.</u>  The Smiths acknowledge and agree that the terms and conditions of paragraph 6 of the Settlement Agreement are a material part of the Settlement Agreement and the Trustee's willingness and agreement to enter into the Settlement Agreement.  The Smiths further acknowledge and agree that any material failure by the Smiths to fully satisfy their obligations under paragraph 6 of the Settlement Agreement to the best of their abilities, including without limitation, their obligation to provide truthful testimony, as may be determined by a court of competent jurisdiction, shall constitute a material breach of the Settlement Agreement by the Smiths.  Upon written notice from the Trustee of a purported material breach of the Settlement Agreement by the Smiths, including by electronic mail from the Trustee's counsel to the Smiths' counsel, the Smiths shall have ten (10) days (the "<u>Cure Period</u>") to (i) cure all such breaches or (ii) seek relief from the Bankruptcy Court.  In the event the Smiths fails to cure all such breaches during the Cure Period, or the Smiths seek relief during the Cure Period and the Bankruptcy Court determines that the Smiths materially breached the Settlement Agreement, then (i) the mutual limited releases set forth in paragraphs 4 and 5 of the Settlement Agreement shall be null and void and of no force and effect, (ii) the waiver of claims set forth in paragraph 4 of the Settlement Agreement shall be null and void and of no force and effect, and (iii) the Trustee may reinstate the Amended Complaint against the Smiths; <u>provided</u>, <u>that</u>, in any such reinstated Amended Complaint, the Smiths' right to argue that they did not breach the Settlement Agreement, and the Trustee's right to argue that the Smiths breached the Settlement Agreement, shall be preserved, together with all defenses in fact or law that the Smiths otherwise assert.  In the event the Trustee reinstates the Amended Complaint against the Smiths

and obtains a judgment against the Smiths, the amount of any such judgment shall be reduced by any portion of the Settlement Amount actually received by the Trustee.

v.   <u>Termination of Smiths' Obligations Under Paragraphs 6(a) and 6(b) of the Settlement Agreement.</u>  The Smiths' obligations under paragraph 6 of the Settlement Agreement shall terminate upon the earlier of (i) the Smiths' receipt of written notice thereof from the Trustee, including by electronic mail from the Trustee's counsel to the Smiths' counsel, (ii) the date the Adversary Proceeding is adjudicated or resolved against all of the other defendants and closed, and, (iii) the date on which the Chapter 7 Case is closed.

f.   <u>Dismissal of the Adversary Proceeding.</u>  Within five (5) business days after the entry of a final non-appealable order of the Bankruptcy Court approving the Settlement Agreement, the Trustee shall file a notice dismissing the Amended Complaint against the Smiths without prejudice and without costs to enable the Smiths to obtain funding to pay the Settlement Amount; <u>provided</u>, <u>that</u>, the dismissal of the Amended Complaint as against the Smiths shall not in any way impair, impact, or otherwise affect (i) the pendency of the Adversary Proceeding as against the remaining defendants thereto or (ii) the Parties' rights under the Settlement Agreement.  In the event the Smiths materially breach the Settlement Agreement, the Smiths hereby waive and agree not to assert any defense based upon statute of limitations or statute of repose to any claim or cause of action the Trustee alleges against the Smiths in any subsequent proceeding that was, or could have been, asserted in the Adversary Proceeding; <u>provided</u>, <u>that</u>, the Smiths shall not be deemed to have waived any defense based upon statute of limitations or statute of repose that may have existed as of the filing of the original complaint on January 10, 2023.

g.   <u>Time to Respond to the Amended Complaint.</u>  The Parties agree, and the order approving the Settlement Agreement shall provide, that the Smiths' time to respond to the Amended Complaint is extended until thirty (30) days after the date on which the Bankruptcy Court enters an order denying approval of the Settlement Agreement, should the Bankruptcy Court enter any such order.

## **RELIEF REQUESTED AND BASIS THEREFOR**

12.   By this Motion, the Trustee seeks entry of an order, substantially in the form of the Approval Order attached hereto, authorizing and approving the Settlement Agreement, which is attached as <u>Exhibit 1</u> to the Approval Order, and granting related relief.

13.     Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain."  *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (*en banc*).

14.     Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).  Bankruptcy Rule 9019 provides that on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, the court should determine whether the compromise is fair, reasonable, and in the interests of the estates.  *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998).  The decision whether to accept or reject a compromise lies within the sound discretion of the court.  *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

15.     In making this determination, the United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court should consider: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors.  *Martin*, 91 F.3d at 393. Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision.  *Id.* at 395.

16.     When applying the *Martin* factors to a particular motion, "the court is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted); *see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). Although approval of a compromise is within the "sound discretion" of the bankruptcy court (*World Health*, 344 B.R. at 296), the court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996).

17.     The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the estate." *TSIC*, 393 B.R. at 78.  A court need not be convinced that a proposed settlement is the best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted).

18.     In addition, a settlement of claims and causes of action by a trustee constitutes a use of property of the estate.  *See, e.g., Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999).  If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code.  *See id.*; *see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."). Courts normally defer to the trustee's business judgment so long as there is a legitimate business justification.  *See id.*; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward*

*Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

19.     Here, the Settlement Agreement with the Smiths falls well within the range of reasonableness and represents a sound exercise of the Trustee's business judgment.

20.     In the exercise of his statutory duties and powers, the Trustee has investigated the Debtor's transfers to and transactions with, among others, the Smiths.  The Parties engaged in extensive arm's length negotiations, during which the Smiths were ably represented by counsel. The Settlement Agreement provides for a $1 million recovery for the estate, while avoiding the costs or delay of protracted litigation.  The Settlement Agreement also provides for cooperation by the Smiths, which will be helpful in satisfying the burden of proof on actual intent fraudulent transfer claims against other parties.  There is significant value in resolving the claims against the Smiths now during the early stages of the Adversary Proceeding.  The Settlement Agreement will provide the estate with resources to litigate this Adversary Proceeding against the other defendants and to pursue other potential targets.  The Settlement Agreement will also help to streamline the Adversary Proceeding by resolving the litigation with respect to one group of defendants, thereby enabling the Court and the parties to focus on the claims against Mott, Acosta, and the remaining defendants.

21.     The Trustee believes the terms of the Settlement Agreement, including the release provisions, are fair, reasonable, appropriate, and should be approved.

22.     For the foregoing reasons, the Trustee respectfully submits the Settlement Agreement is in the best interest of the estate and creditors and should be approved.

## NOTICE

23.     Notice of this Motion will be given to the following parties or their counsel of record, if known: (a) the Office of the United States Trustee; (b) counsel for the Smiths; (c) counsel

of record for all other parties to the Adversary Proceeding; and (d) all parties that have requested pursuant to Bankruptcy Rule 2002 to receive notices in the main cases.  The Trustee submits that service of this Motion on the parties listed above is reasonable and appropriate in light of the circumstances of these cases.

24.    No prior request for the relief sought in this Motion has been made to this Court or to any other Court.

## CONCLUSION

WHEREFORE, for the reasons stated herein, the Trustee respectfully requests that the Court enter the Approval Order authorizing and approving the Settlement Agreement and granting

Dated: June 16, 2023                           ARCHER & GREINER, P.C.

*/s/ David W. Carickhoff*
David W. Carickhoff (No. 3715)
Bryan J. Hall (No. 6285)
300 Delaware Ave., Suite 1100
Wilmington, DE 19801
(302) 777-4350
(302) 777-4352 (fax)
dcarickhoff@archerlaw.com
bjhall@archerlaw.com

*Counsel to George L. Miller,*
*Chapter 7 Trustee*