# Exhibit 1

# The Rosner Law Group LLC
### Attorneys at Law

824 N. Market Street, Suite 810
Wilmington, Delaware 19801
(302) 777-1111
www.teamrosner.com

FREDERICK B. ROSNER*
rosner@teamrosner.com

SCOTT J. LEONHARDT
leonhardt@teamrosner.com

JASON A. GIBSON
gibson@teamrosner.com

ZHAO "RUBY" LIU+
liu@teamrosner.com

* Also admitted in NY
+ Also admitted in PA

June 30, 2023

**Via Email**
Bryan J. Hall, Esq.
David Carickhoff, Esq.
Archer & Greiner P.C.
300 Delaware Avenue, Suite 1100
Wilmington, DE 19801

> Re:    **In re Team Systems International, LLC**
> **Chapter 7 Case No. 22-10066-(CTG)**
> **Demand Letter/Derivative Action**

Dear Bryan and David:

As you know, this firm is bankruptcy counsel to defendants Deborah Evans Mott, Steven M. Acosta, Christopher Mott, John S. Maciorowski, (collectively, the "TSI Members") and Addy Road, LLC. This letter (and the motion to be filed, if necessary, seeking derivative standing) addresses the Trustee's failure to: (a) prosecute the Appeal[1] and (b) file a claim for or otherwise seek to collect approximately $8.2 million in accounts receivable that constitute estate property (the "A/R"). The Trustee has been the permanent Trustee for nearly one year. The Trustee has an affirmative duty to conduct due diligence about estate assets including, specifically, the A/R and make a reasonable effort to collect the A/R acting alone or in concert with the TSI Members.

It appears to the TSI Members that the Trustee either disbelieves the A/R exist without undertaking the necessary diligence to support that belief or simply prefers to litigate (and thereby incur substantial professional fees) to augment the estate when augmentation is not necessary. As the TSI Members repeatedly have stated, there is more than enough value in collecting the $13.5 million receivable and the other A/R to pay lawful claims against the estate. That means

---

[1] Familiarity with capitalized terms is assumed.

prosecuting the FAC and related injunctive relief provided no value to the estate and only unnecessarily burdened the estate with professional fees.

The Trustee's chosen path of estate administration, litigation as opposed to mutual cooperation, has been extremely prejudicial both to creditors holding lawful claims against the estate and the TSI Members. The Trustee's path of aggressive litigation combined with the failure to prosecute the Appeal has unnecessarily prolonged the administration of the case—thereby delaying distributions to creditors holding lawful claims—and, assuming this is a 100% case, every dollar paid in professional fees comes directly out of the pockets of TSI Members. Even worse, following the Trustee's administration of the case, the TSI Members intend to re-start TSI and reserve the right to hold the Trustee fully liable for any A/R he failed to seek to collect while the automatic stay was in effect and the statute of limitations to file such claim expired.

The purpose of this letter is to make formal demand on the Trustee to prosecute the Appeal and either collect the A/R or allow the TSI Members to collect the A/R for the estate. The TSI Members intend to file a motion seeking derivative standing to take such action for and on behalf of the estate to be heard on July 19, 2023. Hopefully, a mutually agreeable arrangement can be reached before the hearing date.

## I.    The Trustee's Failure to Prosecute the Appeal.

The Trustee was appointed on March 31, 2022 [Bankr. D.I. 152] as interim trustee and a disputed trustee election ensued. The Trustee qualified as the permanent Trustee on July 15, 2022 [Bankr. D.I. 223]. During the disputed election, the Trustee objected to claims of GPDEV, LLC and Simon Exploration, Inc. (together, the "Judgment Creditors") [Bankr. D.I. 164, 165]. The Trustee advanced the position that the Appeal had substantial merit and should be prosecuted. In his June 15, 2022 testimony, the Trustee represented to the Court, that the Appeal "has merit" and the "the mistakes [of the trial court ruling] are so large you know, we're talking several millions of dollars . . . ." *See* June 15, 2022 Hearing Transcript.

However, since he qualified as the permanent Trustee, the Trustee has done an about face and evinced no intent to prosecute the Appeal. Although he may claim that the estate is administratively insolvent (because of legal fees unnecessarily incurred), the TSI Members, who share the Trustee's view that the Appeal has much merit, have offered to pay the full cost of prosecuting the Appeal provided the Trustee will not agree to settle the Appeal without first obtaining the TSI Members' written consent not to be unreasonably withheld (the "Offer"). The Offer was made as early as August 4, 2022. *See* exchange of email attached hereto as **Exhibit A**.

The Appeal is already filed and launched. TSI's appellant counsel, the Bresky Law Firm,[2] has filed an Opening Brief and, post-petition, was retained by the estate [Bankr. D.I. 75]. The Bresky firm has agreed to prosecute the Appeal to conclusion for a flat fee of $40,000. *See* June 24, 2022 Letter from Robin Bresky to Kevin Mann, Esq., counsel to TSI Members, attached hereto as **Exhibit B**. The TSI Members' Offer remains open.

---

[2] The Bresky Law Firm has merged with the law firm Schwartz Sladus Reich Greenberg Atlas LLP (SSRGA).

In the 13 months the Offer has remained open, the Trustee has never responded to the Offer nor has he offered any legitimate business reason why the Appeal should not be prosecuted. It cannot be disputed that the potential reduction of the Judgement Creditors' claims against the estate is critical both to the administration of the estate and the TSI Members. A reversal of the judgment on Appeal will substantially reduce the stress on the Trustee to pay estate creditors holding valid claims against the estate in full and obviate the need for any injunctive relief against any of the TSI Members.

The reasons for moving forward with the Appeal are compelling. *First*, other than pursuing the Appeal, there is no way for the Trustee to object to the claims asserted by the Judgment Creditors. *Second*, if the Appeal is successful, it will reduce the aggregate claims against the estate by, at a minimum, 70%. *Third*, if the Appeal is not successful, the estate is no worse off than it is now. *Fourth*, by accepting the Offer, the Trustee will not have to expend *any* estate assets in terms of time or professional fees vetting the Judgement Creditors' claims. *Fifth*, counsel for TSI in the Appeal already has been retained by the estate. *Sixth*, pursuing the Appeal will only bolster the Trustee's negotiating leverage with the Judgement Creditors. *Seventh*, the Appeal is compelling because, as a matter of law, it is unlawful for the Judgment Creditors to receive a percentage commission for merely securing a government contract. *See* 41 U.S.C. § 3901(b)(1) (the federal statute prohibits any person from "secur[ing] the contract on an agreement or understanding for a commission, percentage, brokerage, or contingent fee…."); *see also* Federal Acquisition Regulation 52.203-5(a), which was specifically incorporated into FEMA's Request for Proposal and MATOC (similarly prohibits such contingent fees, defined as "any commission, percentage, brokerage, or other fee that is contingent upon the success that a person or concern has in securing a Government contract.").

## II.    The Trustee's Failure to Submit a Claim to Collect the A/R.

As the Trustee is (or should be) aware, there are approximately $8.2 million[3] in A/R that the Trustee could seek to collect for the benefit of the estate. There are compelling reasons the Trustee should seek to collect such amount. *First*, the A/R is property of the estate, and the Trustee has an affirmative fiduciary duty to monetize and collect all property of the estate. As a corollary, because the A/R is property of the estate, the TSI Members are prohibited from collecting it. *Second*, there is a statute of limitations looming, and the Trustee's failure to file a claim before that expires is, among other things, corporate waste, and a breach of the Trustee's duty of care and to be informed. *Third*, the Trustee's collection of all or even some of the A/R could shorten the time necessary to fully administer the estate and pay lawful creditors of the estate in full. *Fourth*, the Trustee's failure to collect property of the estate evinces an intent to administer the estate for his and his professionals' benefit; *i.e.*, incurring legal fees prosecuting the FAC instead of collecting property of the estate. *Fifth*, TSI Members intend to re-take and re-start TSI's business after the chapter 7 estate administration is concluded. The failure by the Trustee to file a claim **now** for **all** A/R during his tenure and before the applicable statute of limitations (approaching) expires will severely harm TSI and the TSI Members financially. The TSI Members reserve all rights against the Trustee and his counsel for their failure to take timely action to preserve and protect TSI's assets, including all A/R.

---

[3] The $8.2 million is *in addition* to the $13.5 million FEMA receivable that the Trustee is actively collecting.

For example, but without limitation, the Trustee was made aware that a claim should be filed with FEMA to collect $6.8 million at least one year ago.  *See* June 16, 2022 email from Steve Acosta to the Trustee and his counsel, attached hereto as **Exhibit C**.  As explained below and Mr. Acosta's email, this claim against FEMA arose when FEMA issued a certain change order when TSI, and its subcontractor Bering Straits, were delivering water to victims of Hurricane Maria in Puerto Rico. FEMA changed delivery terms from delivering water in break bulk to containers. That change caused TSI to incur substantial extra expense for which it is entitled to reimbursement from FEMA.

To date, notwithstanding that the Trustee has retained Venable LLP to collect $13.5 million from FEMA in a related transaction, the Trustee has not filed a certified submission for TSI's initial claim with FEMA for $6.8 million, the deadline of which is rapidly approaching.  Even if the Trustee disbelieves without meaningful, or any, reason, that the $6.8 million is collectible, that is no excuse not to file a claim.  At a minimum, filing the claim for $6.8 million will provide additional leverage with respect to collecting the $13.5 million claim against FEMA.

The Trustee has full managerial control over the chapter 7 bankruptcy estate of TSI, a federal contractor.  In seeking the role of permanent trustee in the trustee election, the Trustee held himself out to the Court and others as knowledgeable in the field of federal contracting and collection of amounts owed by various agencies of the federal government and that he held the required security clearances to serve as a key manager for TSI.  Notwithstanding his representations, the Trustee elected to close TSI's bank account at Artisan's bank.  That bank account was TSI's sole SAM-registered account and had a balance of $165,000 and another $100,000 in DLA Seacard payments in process.  The Trustee acted unilaterally in taking such action without consulting with any TSI Member and to date has not accounted for the $265,000 taken from the estate.  The prejudice to the estate by such closure may be substantial because, upon information and belief, the federal government will only remit amounts owed into a SAM registered account.  The Trustee's actions have jeopardized the estate's ability to realize on $22 million in accounts receivable.

At the last Court hearing, Trustee's counsel, remarkably, disclaimed knowledge of and the factual basis for any of the A/R and the related statute of limitations.  The Trustee's counsel also claimed he did not think the Trustee maintained his own SAM registered bank account.  This is disingenuous and raises concerns.  Both the Trustee and his counsel, Archer & Greiner, P.C., have their own credentials to access SAM.[4]  Although the below has already been transmitted to the Trustee, set forth below is a summary of the A/R owed to the estate for which the Trustee has failed to file a claim:

A. **The Change Order Receivable in the amount of $6.8 million is owed by FEMA.**
   This estate claim arises out of the same transaction that gives rise to the $13.5 million FEMA claim the Trustee (with Venable's assistance) is already pursuing. The Trustee understands that TSI hired Bering Straits Logistics Services, LLC ("Bering Straits") as its primary subcontractor for the Multiple Award Task Order

---

[4] Upon in formation and belief, both Miller Coffey Tate LLP and Archer & Greiner, P.C are registrants in the System for Award Management (SAM).  *See also* 48 CFR § 4.1800.

Contract (MATOC) awarded by FEMA.[5]  As set forth in Ms. Mott's deposition transcript discussed above, the Change Order Receivable results from a change order issued by FEMA during Hurricane Maria that required TSI (through its subcontractor Bering Straits) to deliver water in "containers" as opposed to "break bulk." This resulted in a significant change of already existing logistical plans and Bering Straits, as TSI's subcontractor, incurring substantial additional charges.  TSI paid Bering Straits and now the estate has a claim against FEMA for the amount it paid Bering Straits.

As noted, the Trustee was made aware of the Change Order Receivable as early as June 2022.  *See* June 16, 2022 email from Steve Acosta to the Trustee and his counsel (**Exhibit C**).  Mr. Acosta explained that he "tried to reach out to [the Trustee] a few times" and that Ms. Mott and he "would like to get tighter this week to go over the current FEMA Claim so [they] can go over the Pre Negotiated Liquidated Damages for Contract Line Item Number (CLIN) 005" as well as "the FEMA Change Order and the 3 DLA Invoices.").  Importantly, Mr. Acosta in his email pointed the Trustee to Ms. Mott's deposition transcript which described in detail the basis for the Change Order Receivable.  *Id.* ("Deborah in her deposition walks through the Change Order pretty well I am going to attach[] it with this email so you don't have to go find it and you will have a better idea when we do talk.").  The TSI Members have also made the Trustee aware of the location of the supporting documents; *i.e.,* the Bering Straits POC.

The Trustee's awareness of the Change Order Receivable is evidenced elsewhere. *See* exchange of emails between Trustee's and TSI Members' counsel dated October 24, 2022 attached hereto as **Exhibit D**.  ("The Insiders have continued to allege that the Debtor is owed $6.8 million in the form of a change order to be submitted to FEMA . . . . We believe that your clients' reference to a potential FEMA claim is related to additional costs incurred/paid by the Debtor due to FEMA delay and logistical issues that were not anticipated when the Debtor agreed to the contract per diem rate, resulting in significant losses.").

**As the TSI Members have previously and repeatedly advised, the Amount of the Claim the Trustee May Assert against FEMA is set forth in the Bering Straits Proof of Claim.**  Bering Straits was required to keep accurate books and records for all subcontractor performance.  *See* Attachment 1 to Bering Strait's Proof of Claim, page 8, § 15 (Accounting Records, Reviews, and Reporting).  All of the direct costs incurred by Bering Straits as a result of the change order were recorded and reflected in the Bering Straits' Proof of Claim.  *See* Attachment 3 to Bering Straits' Proof of Claim, at p. 65, an excerpt of which is attached hereto as **Exhibit E**.  TSI paid Bering Straits for these direct costs, plus a flat 6% fee pursuant to its contract with Bering Straits.  The deadline to submit a claim to FEMA for these additional expenses is approaching.

---

[5] A copy of the MATOC previously was produced to the Trustee as early as April 2022 bearing Bates No. TSI000540.

The Bering Straits' proof of claim sets forth the documents and other information necessary for the Trustee to submit a claim to FEMA for the Change Order Receivable. *See* **Exhibit C** at 2 (email at 12:24pm from TSI Members' counsel stating "I believe that the relevant change order relates to CLIN 2") and at 1 (email at 12:47pm stating "It is my understanding that all necessary documents related to both CLIN 16 and CLIN 2 are in the Bering Straits folder that was provided on 6/29/22. If you need to re-download them, they are at: https://www.dropbox.com/scl/fo/tb8oivw6t74kwtys4l0gk/h?dl=0&rlkey=ebou3v0gq6o7xyijiood00ly6.)

B. **The $1.2 Million DLA Bulk Fuels RME Receivable**. TSI was awarded a Bulk Fuels Contract by DLA for RME, a custom Fuel blend. This contract was filed with the Court in connection with the conversion hearing. *See* D.I. 119-4. Under this contract, DLA issued a task order, which was later terminated for "convenience." DLA is required to reimburse TSI if the task order is terminated for the government's convenience. Pre-petition, TSI submitted a claim for payment and the contracting office (DLA) requested more information. The information was provided, but DLA did not respond. The next step should be for the Trustee (through Venable) to send a letter to DLA's legal department requesting payment and include the prior claim submission as an exhibit. The deadline to submit the letter may be: **August 17, 2023**.

C. **The $198,000 US DLA Aviation Receivable**. TSI was awarded an Indefinite Delivery Indefinite Quantity (IDIQ) contract by US DLA Aviation. A copy of this contract was produced to the Trustee in or about June 2022, bearing Bates No. TSI000291. The last order under this contract needs to be processed in WAWF to include a PAR incident report. The DLA contracting officer has requested this information, as late as February 27, 2023.

D. **The $32,140 U.S. Marine Corp Receivable.** The TSI Members recently became aware of this receivable. There was a $32,140 task order (No. 0013) under the DLA Contract No. SPE4A6-14-D-6811,[6] attached hereto as **Exhibit F**. DLA was incapable of making this payment to TSI because the Trustee closed TSI's only SAM-registered bank account. This needs to be resubmitted in WAWF after a new TSI account is listed in SAM. *See* June 7, 2023 Email from DLA contracting officer, attached hereto as **Exhibit G**.

## III.    The Demand

The TSI Members hereby demand that the Trustee consent to the TSI Members being granted standing on behalf of the Debtor's estate to (a) prosecute the Appeal and (b) file claims and seek to collect the A/R for the benefit of the estate.

I look forward to hearing from you.

---

[6] A copy of this contract previously was produced to the Trustee, bearing Bates Nos. TSI000476-000477.

Respectfully submitted,


*/s/ Frederick B. Rosner*
Frederick Rosner (DE Bar No. 3995)


cc:    Counsel of record to all Defendants
       (by CM/ECF and email)

# Exhibit A

| | |
|---|---|
| **From:** | Kevin Mann <kmann@crosslaw.com> |
| **Sent:** | Tuesday, August 9, 2022 11:58 AM |
| **To:** | Carickhoff, Jr., David W. |
| **Cc:** | Richard Robles |
| **Subject:** | RE: Correspondence sent on behalf of Robin Bresky |
| **Attachments:** | 8-4-22 Team Flat Fee Confirmation_K. Mann.docx |

Dave – Just following up on the below.  Does the Trustee have any objection to the below proposal?

KEVIN S. MANN, ESQ.
CROSS & SIMON, LLC
1105 NORTH MARKET STREET
SUITE 901
WILMINGTON, DE  19801
302-777-4200 (OFFICE)
302-981-7193 (CELL)
KMANN@CROSSLAW.COM
WWW.CROSSLAW.COM

This e-mail communication is confidential and is intended only for the individual or entity named above.  If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others.  Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning 302-777-4200.  Please then delete the e-mail and any copies of it.  Thank you.

**From:** Kevin Mann
**Sent:** Thursday, August 4, 2022 5:00 PM
**To:** 'Carickhoff, Jr., David W.' <dcarickhoff@archerlaw.com>
**Cc:** 'Richard Robles' <rrobles@roblespa.com>
**Subject:** FW: Correspondence sent on behalf of Robin Bresky

Dave – I just received the attached from TSI's appeals counsel.

I know that you are concerned about the potential for a remand and a new trial.  Perhaps we can only seek stay relief for the completion of the appeal and, should the case be remanded, it would remain stayed unless there is further order of the Bankruptcy Court.  If we did that and my clients paid the $40,000 to the appeals counsel, would the trustee object?

Thanks,
Kevin

KEVIN S. MANN, ESQ.
CROSS & SIMON, LLC
1105 NORTH MARKET STREET
SUITE 901
WILMINGTON, DE  19801
302-777-4200 (OFFICE)

302-981-7193 (CELL)
KMANN@CROSSLAW.COM
WWW.CROSSLAW.COM

This e-mail communication is confidential and is intended only for the individual or entity named above.  If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others.  Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning 302-777-4200.  Please then delete the e-mail and any copies of it.  Thank you.

**From:** Gina Rosado <grosado@ssrga.com>
**Sent:** Thursday, August 4, 2022 4:43 PM
**To:** Kevin Mann <kmann@crosslaw.com>
**Cc:** David Martin <dmartin@ssrga.com>
**Subject:** Correspondence sent on behalf of Robin Bresky

Good Afternoon, Mr. Mann:
Please see attached correspondence sent on behalf of Robin Bresky.

SCHWARTZ
SLADKUS
REICH
GREENBERG
ATLAS LLP

## Gina Rosado
*Executive Assistant*
grosado@ssrga.com
2424 North Federal Highway, Suite 456
Boca Raton, Florida, 33431
Phone: 561-769-5600 | Fax: 561-769-5660
www.ssrga.com

# Exhibit B



Robin I. Bresky  -  Phone: 561-769-5600  -  rbresky@ssrga.com

June 24, 2023

SENT VIA E-MAIL

Kevin S. Mann, Esq.
Cross & Simon, LLC
1105 North Market Street
Suite 901
Wilmington, DE  19801

Dear Mr. Mann:

This will confirm that we will review the Answer Brief, draft the Reply Brief, attend oral
argument if necessary and respond to appellate matters needed to complete the appellate process
including any post decision motions for the flat fee of $40,000.00. This amount does not include
costs including travel costs, if needed.

Best,

/s/ *Robin Bresky*

Robin Bresky, Esq.

# Exhibit C

| | |
|---|---|
| **From:** | Steven Acosta <sacosta@tsi-us.net> |
| **Sent:** | Thursday, September 1, 2022 6:40 PM |
| **To:** | Kevin Mann |
| **Subject:** | Fwd: TSI |

---

# REDACTED (ATTORNEY/CLIENT PRIVILEGE)

---

Begin forwarded message:

**From:** Steven Acosta <sacosta@tsi-us.net>
**Subject: TSI**
**Date:** June 16, 2022 at 3:55:34 PM CDT
**To:** dcarickhoff@archerlaw.com
**Cc:** gmiller@mctllp.com

Dave,

I tried to reach out to bill a few times this week and just got an auto responder that he won't be back til the 28th. Here is what I sent him if you can direct me to who I should reach out to that would be great.

Bill,

Deborah and I would like to get together this week to go over the current FEMA Claim so we can go over the Pre Negotiated Liquidated Damages for Contract Line Item Number (CLIN) 005. We would also like to walk you through the FEMA Change Order and the 3 DLA Invoices (Not Claims). Let me know what time works for you.

Deborah in her deposition walks through the Change Order pretty well I am going to attacher it with this email so you don't have to go find it and you will have a better idea when we do talk.

DMOTT DEPO 07FEB2022. Page197 - 200

```
Q. TSI intends to assert a $6.8 million change order under
FAR 52.243 Changes Fixed Price.

                What's the basis for that
$6.8 million change order?
A. When we initially received the task order from CLIN 002,
containers were not part of the logistics plan that we bid
on. We bid break bulk.
We put a price in for break bulk. We had a logistics plan
to move break bulk. And 30 days into
```

1

it, FEMA came to us and changed the logistics plans
requirements to containers. They also reduced the
contract to 12 million.

The problem with that is 30 days into a hurricane on -- in
the Southeast and the East Coast, there were no containers
available. We had to pay to go get the containers in
Chicago,

St. Louis, I mean, just all over, bring the containers
back, in some instances take them to the water plant in New
Jersey where we had staged the water to be moved to Puerto
Rico because Holt terminals in New Jersey handles all of
the Fiji water that comes into the United States. So they
had equipment specifically designed to handle bottles of
water.

When FEMA changed the logistics plan, it meant we had to go
get containers halfway across the country, truck them back
-- now, mind you, this is a hurricane. So the trucking
charges were out of sight because there were -- there was a
scarcity of trucks.  We then had to take some of
those containers to hold terminals. They had to put the
water in the containers. Then we had to find chassis, which
were also a scarce resource and very expensive, load the
containers on the chassis, and the chassis had to drive
down to the Port of Jacksonville so that those containers
could be taken by barge to the Ayala terminal because the
Crowley terminal was completely backed up.

 In addition to that, we had to get containers to the
terminal in Savannah because we had 53-foot trucks with
bottled water heading to the terminal in Savannah that had
to be cross-stocked, taken out of the 53-foot trucks and
put into the 40-foot containers in Savannah. And then we
had to get dray, which is taking it from a laydown terminal
area to the barge that was also being loaded in Savannah.
The cost was enormous.

Then they barged them down to the Ayala terminal. The Ayala
terminal then unloaded all of it, and there was a FEMA
representative at the dock because they took possession of
the water immediately, but they issued a CLIN 16 contract
to us where they rented the containers with a daily rate.
 But the problem is, even though they  took custody and
control of the containers, we were still paying for the
containers, the storage. All

of those fees. And they were supposed to take it out of our
daily rate, but we were upside-down on the daily rate. And
once FEMA took all of the
containers out of the terminal, they continued to pay that
daily rate, so we were able to catch up to
cover the downside.

 So then FEMA brought the containers back to the terminal
in Ayala and left them. And at that point we had 685
containers, plus or minus some because they lost them, that
we weren't getting paid for. We had to pay for those
containers, to store them while we fed them back into the
United States. And at that time, because there was such a
glut of containers in the Jacksonville area, we couldn't
send them all at once. We had to feed them in at 50, 150,
75 every other week until the backup subsided. It cost us
millions and millions and millions of dollars.

 That's the basis of our change order.

Respectfully,

# Exhibit D

| | |
|---|---|
| **From:** | Kevin Mann <kmann@crosslaw.com> |
| **Sent:** | Monday, October 24, 2022 12:47 PM |
| **To:** | William Homony; Carickhoff, Jr., David W.; Richard Robles |
| **Subject:** | RE: TSI - Additional FEMA claim |

Thanks for the clarification.  It is my understanding that all necessary documents related to both CLIN 16 and CLIN 2 are in the Bering Straits folder that was provided on 6/29/22.  If you need to re-download them, they are at:  https://www.dropbox.com/scl/fo/tb8oivw6t74kwtys4l0gk/h?dl=0&rlkey=ebou3v0gq6o7xyijiood00ly6.

KEVIN S. MANN, ESQ.
CROSS & SIMON, LLC
1105 NORTH MARKET STREET
SUITE 901
WILMINGTON, DE  19801
302-777-4200 (OFFICE)
302-981-7193 (CELL)
KMANN@CROSSLAW.COM
WWW.CROSSLAW.COM

This e-mail communication is confidential and is intended only for the individual or entity named above.  If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others.  Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning 302-777-4200.  Please then delete the e-mail and any copies of it.  Thank you.

**From:** William Homony <bhomony@mctllp.com>
**Sent:** Monday, October 24, 2022 12:41 PM
**To:** Kevin Mann <kmann@crosslaw.com>; Carickhoff, Jr., David W. <dcarickhoff@archerlaw.com>; Richard Robles <rrobles@roblespa.com>
**Subject:** RE: TSI - Additional FEMA claim

Kevin, the Trustee seeks the same requests with respect to delivery or any other costs incurred by the Debtor related to CLIN 0002, which includes identifying specific documents.  Not sure how any of your client's responses are helpful in any way.

Thanks.

**William A. Homony, CIRA**
**Miller Coffey Tate LLP**
**1628 John F. Kennedy Boulevard**
**Suite 950**
**Philadelphia, PA 19103**
**p (215) 561-0950 ext. 26**
**f (215) 561-0330**

**From:** Kevin Mann [mailto:kmann@crosslaw.com]
**Sent:** Monday, October 24, 2022 12:24 PM
**To:** Carickhoff, Jr., David W. <dcarickhoff@archerlaw.com>; Richard Robles <rrobles@roblespa.com>
**Cc:** William Homony <bhomony@mctllp.com>
**Subject:** RE: TSI - Additional FEMA claim

Dave – I have been informed that the documents related to CLIN 16 are all contained within the Bering Straits documents that have already been provided.  If you need me to resend them, please let me know.

However, it is my understanding that there is no money owed under CLIN 16.  I believe that the relevant change order relates to CLIN 2.

Regards,
Kevin

KEVIN S. MANN, ESQ.
CROSS & SIMON, LLC
1105 NORTH MARKET STREET
SUITE 901
WILMINGTON, DE  19801
302-777-4200 (OFFICE)
302-981-7193 (CELL)
KMANN@CROSSLAW.COM
WWW.CROSSLAW.COM

This e-mail communication is confidential and is intended only for the individual or entity named above.  If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others.  Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning 302-777-4200.  Please then delete the e-mail and any copies of it.  Thank you.

**From:** Carickhoff, Jr., David W. <dcarickhoff@archerlaw.com>
**Sent:** Monday, October 24, 2022 12:02 PM
**To:** Kevin Mann <kmann@crosslaw.com>; Richard Robles <rrobles@roblespa.com>
**Cc:** William Homony (bhomony@mctllp.com) <bhomony@mctllp.com>
**Subject:** TSI - Additional FEMA claim

Kevin and Richard,
The Insiders have continued to allege that the Debtor is owed $6.8 million in the form of a change order to be submitted to FEMA related to CLIN 0016 for Drop Trailers.  The Drop Trailer rentals were paid to TSI under the Hurricane Maria Task Order at a per diem rate of $175 per container.  It appears that FEMA paid the Debtor the contracted per diem rate for the entire contract period starting from 11/7/2017 – 7/7/2018 for the Drop Trailers.  We believe that your clients' reference to a potential FEMA claim is related to additional costs incurred/paid by the Debtor due to FEMA delays and logistical issues that were not anticipated when the Debtor agreed to the contract per diem rate, resulting in significant losses.  In order to allow the Trustee to evaluate this issue and to make a determination as to filing such a claim against FEMA, we are asking for the documents listed below from your clients as relates solely to the Hurricane Maria Task Order.  To the extent that your clients believe they have already produced such documents, we ask that they identify the responsive documents by bate stamp.   Please consider this my attempt to meet and confer under Rule 2004.

**Requested Information and Documents**
- Identify all subcontractors/vendors that rendered services to the Debtor related to the Drop Trailers.

- Identify all invoices or other documentation to support Drop Trailer related costs incurred and/or paid by the Debtor.
- Identify all payments made by the Debtor to third-parties related to Drop Trailers.
- Identify all monies the Debtor received from FEMA in connection with Drop Trailers.
- Any and all calculations and supporting documents related to the Insiders allegation that $6.8 million is owed to the Debtor from FEMA.

Thanks,
Dave


**David W. Carickhoff, Jr., Esq.**

Archer & Greiner P.C.
300 Delaware Avenue
Suite 1100
Wilmington, DE 19801
302-356-6621
dcarickhoff@archerlaw.com
www.archerlaw.com



INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

# Exhibit E

## Water

| Vendor | Amount |
|--------|-------:|
| Nestle | 1,472,473.20 |
| Niagara | 462,898.80 |
| Niagara | 13,613.40 |
| Niagara | 555,172.80 |
| | 2,504,158.20 |

| | | |
|---|--:|---|
| # of Liters | 12,237,435 | |
| Bill @ $0.42/liter | 5,139,722.70 | Invoice Amount |

## Transportation

| Vendor | Amount |
|--------|-------:|
| Foss Maritime | 840,000.00 |
| Foss Maritime | 840,000.00 |
| Tote Maritime | 144,568.24 |
| Grimes Trucking | 1,765.00 |
| Grimes Warehousing | 48,325.00 |
| Seacube | 45,668.75 |
| Seacube | 88,100.00 |
| Holt Logistics | 289,835.00 |
| Holt Terminal | 190,119.50 |
| Holt Terminal | 158,472.40 |
| Luis Ayala Colon | 14,224.57 |
| Luis Ayala Colon | 13,641.98 |
| Luis Ayala Colon | 26,441.89 |
| Marsh & McLennan | 10,200.00 |
| Marsh & McLennan | 20,000.00 |
| TJM Trucking | 2,400.00 |
| TJM Trucking | 9,200.00 |
| TJM Trucking | 9,000.00 |
| Mobro Marine | 301,000.00 |
| Mobro Marine | 301,000.00 |
| Northcliffe Ocean | 397,750.00 |
| Northcliffe Ocean | 397,750.00 |
| PLS Logistics | 435,600.00 |
| PLS Logistics | 488,900.00 |
| PLS Logistics | 604,260.00 |
| PLS Logistics | 498,150.00 |
| PLS Logistics | 539,990.00 |
| US Fleettracking | 82,250.00 |
| | 6,886,632.33 |
| | 413,977.94 |

| | | |
|---|--:|---|
| Bill @ Cost + 6% NTE $0.62/liter | 7,313,610.27 | Invoice Amount |
| | 7,587,209.70 | |

# Exhibit F

# ORDER FOR SUPPLIES OR SERVICES

PAGE 1 OF 2

| 1. CONTRACT/PURCH ORDER/AGREEMENT NO. | 2. DELIVERY ORDER/CALL NO. | 3. DATE OF ORDER/CALL (YYYYMMMDD) | 4. REQUISITION/PURCH REQUEST NO. | 5. PRIORITY |
|---|---|---|---|---|
| SPE4A6-14-D-6811 | 0002 | 2014 AUG 19 | 0054681268 | DO-A1 |

**6. ISSUED BY** CODE SPE4A6

DLA AVIATION
ASC COMMODITIES DIVISION
8000 JEFFERSON DAVIS HIGHWAY
RICHMOND VA 23297
USA

**7. ADMINISTERED BY** (If other than 6) CODE SPE4A6

DLA AVIATION
ASC COMMODITIES DIVISION
8000 JEFFERSON DAVIS HIGHWAY
RICHMOND VA 23297
USA
Criticality: C  PAS: None

**8. DELIVERY FOB**
[ ] DESTINATION
[X] OTHER
(See Schedule if other)

**9. CONTRACTOR** CODE 32DB1   FACILITY

NAME AND ADDRESS:
TEAM SYSTEMS INTERNATIONAL LLC DBA
11921 FREEDOM DR STE 550
RESTON VA 20190-5635
USA

**10. DELIVER TO FOB POINT BY** (Date) (YYYYMMMDD): 2015 JAN 12

**11. X IF BUSINESS IS**
[ ] SMALL
[X] SMALL DISADVANTAGED
[X] WOMEN-OWNED

**12. DISCOUNT TERMS** Net 30 days

**13. MAIL INVOICES TO THE ADDRESS IN BLOCK** See Block 15

**14. SHIP TO** CODE

SEE SCHEDULE, DO NOT SHIP TO ADDRESSES ON THIS PAGE

**15. PAYMENT WILL BE MADE BY** CODE SL4701

DEF FIN AND ACCOUNTING SVC
BSM
P O BOX 369031
COLUMBUS OH 43236-9031
USA

MARK ALL PACKAGES AND PAPERS WITH IDENTIFICATION NUMBERS IN BLOCKS 1 AND 2.

**16. TYPE OF ORDER**
DELIVERY/CALL [X] This delivery order/call is issued on another Government agency or in accordance with and subject to terms and conditions of above numbered contract.

PURCHASE — Reference your _____ furnish the following on terms specified herein.

ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL OF THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME.

| NAME OF CONTRACTOR | SIGNATURE | TYPED NAME AND TITLE | DATE SIGNED (YYYYMMMDD) |
|---|---|---|---|

If this box is marked, supplier must sign Acceptance and return the following number of copies:

**17. ACCOUNTING AND APPROPRIATION DATA/LOCAL USE**

BX: 97X4930 5CBX 001 2620 S33189

| 18. ITEM NO. | 19. SCHEDULE OF SUPPLIES/SERVICES | 20. QUANTITY ORDERED/ACCEPTED* | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| | | 77 | | | |
| | Duty Free Entry Authorized | | | | |
| | See Section B | | | | |
| | Terms and Conditions in accordance with Basic Contract | | | | |

* If quantity accepted by the Government is same as quantity ordered, indicate by X. If different, enter actual quantity accepted below quantity ordered and encircle.

**24. UNITED STATES OF AMERICA**
ELIZABETH FUQUA
ELIZABETH.S.FUQUA@DLA.MIL
BY: PARFK37
*Elizabeth Fuqua*
CONTRACTING/ORDERING OFFICER

**25. TOTAL** $53,799.90

**26. DIFFERENCES**

**27a. QUANTITY IN COLUMN 20 HAS BEEN** [ ] INSPECTED [ ] RECEIVED [ ] ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED:

b. SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE

c. DATE (YYYYMMMDD)

d. PRINTED NAME AND TITLE OF AUTHORIZED GOVERNMENT REPRESENTATIVE

e. MAILING ADDRESS OF AUTHORIZED GOVERNMENT REPRESENTATIVE

f. TELEPHONE NUMBER   g. E-MAIL ADDRESS

| 28. SHIP. NO. | 29. D.O. VOUCHER NO. | 30. INITIALS |
|---|---|---|
| PARTIAL / FINAL | 32. PAID BY | 33. AMOUNT VERIFIED CORRECT FOR |
| 31. PAYMENT COMPLETE / PARTIAL / FINAL | | 34. CHECK NUMBER |

**36. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT.**
a. DATE (YYYYMMMDD)   b. SIGNATURE AND TITLE OF CERTIFYING OFFICER

35. BILL OF LADING NO.

| 37. RECEIVED AT | 38. RECEIVED BY (Print) | 39. DATE RECEIVED (YYYYMMMDD) | 40. TOTAL CONTAINERS | 41. S/R ACCOUNT NUMBER | 42. S/R VOUCHER NO. |
|---|---|---|---|---|---|

**DD FORM 1155, DEC 2001**   PREVIOUS EDITION IS OBSOLETE.   Adobe Professional 8.0

CONFIDENTIAL   TSI000476

| CONTINUATION SHEET | ORDER NUMBER / CALL NUMBER<br>SPE4A6-14-D-6811    - 0002 | Page of Pages<br>2   \|   2 |
|---|---|---|

# SECTION B

```
PR: 0054681268
SUPPLIES/SERVICES:
6150013680271


CABLE ASSEMBLY,SPEC
```

| CLIN | BASIC<br>REF<br>CLIN | QUANTITY | UI | UNIT PRICE | DOLLAR VALUE | DELIVERY<br>DATE |
|---|---|---|---|---|---|---|
| 0001 | 0001 | 77.000 | EA | 698.70 | 53,799.90 | 2015 JAN 12 |

```
BDN:

QTY VARIANCE: PLUS 0.00% MINUS 0.00%

INSPECTION POINT: ORIGIN

ACCEPTANCE POINT: ORIGIN

DELIVER FOB: ORIGIN

PARCEL POST ADDRESS:

W25G1U
W1BG DLA DISTRIBUTION
DDSP NEW CUMBERLAND FACILITY
2001 NORMANDY DRIVE DOOR 113 TO 134
NEW CUMBERLAND PA 17070-5002
US

FOR TRANSPORTATION ASSISTANCE SEE DLAD 52.247-9034.  FOR FIRST DESTINATION TRANSPORTATION (FDT)
AWARDS SEE DLAD 52.247-9059 AND
CONTRACT INSTRUCTIONS INSTEAD.

FREIGHT SHIPPING ADDRESS:

W25G1U
W1BG DLA DISTRIBUTION
DDSP NEW CUMBERLAND FACILITY
2001 NORMANDY DRIVE DOOR 113 TO 134
NEW CUMBERLAND PA 17070-5002
US



GOVT USE
```

| ITEM | PR | PRLI | External<br>PR | External<br>PRLI | External<br>Material | Customer RDD/<br>Need Ship Date |
|---|---|---|---|---|---|---|
| 0001 | 0054681268 | 0001 | N/A | N/A | N/A | 01/18/2013 |

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

TSI000477

# Exhibit G

**From:** Hill, Patrick A Capt USMC AVIATION (USA)
**To:** dmott@tsi-us.net
**Cc:** Hawkins, Marcus D CIV DLA AVIATION (USA); Taylor, Caitlyn J CIV DLA AVIATION (USA); Ouch, Boran CTR DLA AVIATION (USA); Morales, Aubrey L SSgt USMC DLA AVIATION (USA)
**Subject:** 8504344332 // SPE4A6-14-D-6811-0013 // 013680271
**Date:** Wednesday, June 7, 2023 8:52:46 AM
**Attachments:** image001.jpg

Good morning,

I just wanted to follow up on the status of the subject contract for 46EA. Thank you again for all of your assistance.

Very Respectfully,
Captain Patrick "Tex" Hill
H-1 Weapon System Support Manager
Marine Customer Facing Division (QAC)-
DLA – Aviation
6090 Strathmore Rd.
Richmond, Virginia 23237
Cell: 281-881-7053
Email: Patrick.hill@dla.mil

h1dra



I am a Weapon System Support Manager with DLA Aviation and am contacting you for coordination and information gathering purposes only. I have no authority to contractually bind or obligate the Government, or to change the terms and conditions of your contract or order. Any changes to the terms and conditions of your contract or order must be directed or approved by the contracting officer or someone designated by the contracting officer in writing. If you believe, based on our conversation/correspondence, that there is a need to change the terms and conditions of your contract or order, you should contact the contracting officer or other POC designated in your contract or order.