# EXHIBIT T-1

**Declaration of George L. Miller**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Team Systems International, LLC,<br><br>　　　　　　Debtor. | Chapter 7<br><br>Case No. 22-10066 (CTG) |
| George L. Miller, solely in his capacity as the Chapter 7 Trustee of Team Systems International, LLC,<br><br>　　　　　　Plaintiff,<br><br>-against-<br><br>Deborah Evans Mott, Steven M. Acosta, Christopher Mott, John S. Maciorowski, Addy Road LLC, Brent Road LLC, Benjamin P. Smith, Jessica M. Smith, TSI Gulf Coast, LLC, TSI Education & Training, Inc., and Team Systems International Southeast LLC, and<br><br>John Does 1-100,<br><br>　　　　　　Defendants. | Adv. Proc. No. 23-50004 (CTG) |

## DECLARATION OF GEORGE L. MILLER

I, George L. Miller, not individually but solely in my capacity as chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Team Systems International, LLC ("TSI" or the "Debtor") pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the duly qualified and appointed Trustee of the Estate.

2. I submit this declaration in accordance with the Court's oral ruling at the hearing held on June 14, 2023 regarding the *TSI Members' Requests for Admissions, Interrogatories, and*

*for Production of Documents Directed to George Miller, as Chapter 7 Trustee* [Main Case D.I. 311; Adv. D.I. 63] (the "Member Defendants' Discovery Requests") issued by Defendants Deborah Evans Mott ("Mott"), Steven M. Acosta ("Acosta"), Christopher Mott, and John S. Maciorowski (collectively, the "Member Defendants").

3. In addition, I submit this declaration in support of the *Chapter 7 Trustee's (i) Preliminary Objection to the Member Defendants' Standing Motion; and (ii) Cross-Motion to Compel Mott and Acosta to Comply with the Contempt Order and to Enforce the Automatic Stay*, filed contemporaneously herewith.

4. Unless otherwise stated, all facts set forth herein are based on my personal knowledge, my review of relevant business records, information provided to me by my professionals, or my experience and knowledge. If called as a witness, I would testify competently to the facts set forth in this declaration.

## SAM.gov and the Debtor's Electronic Records

5. Upon information and belief, SAM.gov is an official website of the United States government where entities can register to bid on and receive payment for U.S. federal government contracts or receive federal funds.

6. Panel chapter 7 trustees are not government contractors and do not use SAM.gov in the ordinary course of fulfilling their duties as trustees.

7. The Debtor was a U.S. government contractor and is a registered entity with SAM.gov.

8. The Debtor's registration with SAM.gov and the information contained therein belong to the Debtor.

9. Upon information and belief, Mott was the Entity Administrator for the Debtor's SAM.gov account.

10. Upon further information and belief, Mott maintained computer software and/or login credentials to access the Debtor's SAM.gov account.

11. Upon further information and belief, on or about February 2, 2023, *i.e.*, after the Debtor's case was converted to chapter 7 and after I was appointed as the Trustee, Mott accessed the Debtor's SAM.gov account. Mott had no authority to do so. In addition, rather than transition the Debtor's SAM.gov account to me, Mott continued to list herself as the Debtor's contact in SAM.gov, even though Mott had no authority to do so. The Bankruptcy Code requires Mott to cede responsibility as the Debtor's Entity Administrator for SAM.gov to the Trustee, but Mott has failed to do so.

12. The Trustee is in the process of having the U.S. Government override Mott's responsibility as the Debtor's Entity Administrator in SAM.gov and place the Trustee as the Entity Administrator to obtain any payment.

13. Upon information and belief, Mott and Acosta have access to other Debtor login credentials and electronic records. My professionals and I have repeatedly asked Mott and Acosta to turn over all of the Debtor's electronic records, but Mott and Acosta have refused to do so.

14. Earlier in the case, Mott and Acosta turned over a damaged/blank laptop computer that did not contain any of the Debtor's files or the laptop's original operating system. Upon information and belief, Mott and Acosta may have retained this operating system and/or the Debtor's electronic records on computers in Mott's or Acosta's possession, custody, or control.

15. Upon further information and belief, Mott and Acosta continue to use and access Debtor email accounts. Acosta, in particular, has continued to use a Debtor email account –

sacosta@tsi-us.net – to communicate with third parties about the Debtor, its business, and property of the Estate. Acosta has no authority to do so. The Bankruptcy Code and orders entered by the Bankruptcy Court require Mott and Acosta to turn over all of the Debtor's emails to me, but Mott and Acosta have refused to do so.

### Artisans' Bank Account

16. Upon further information and belief, on or about September 21, 2021, the Debtor opened an account at Artisans' Bank (account ending -2968, the "Artisans' Account").

17. The Artisans' Account is the only bank account listed on the Debtor's schedules of assets and liabilities filed at docket no. 28 in the above-captioned main case (the "Schedules").

18. Mott signed the Schedules under penalty of perjury.

19. The Schedules do not disclose the source of the funds in the Artisans' Account or identify any restriction on the funds contained in the Artisans' Account.

20. According to the Debtor's books and records, prior to the petition date, the Debtor received at least four payments totaling approximately $37,583,272.58 in the aggregate from the United States Federal Emergency Management Agency ("FEMA") between on or about November 29, 2017 and on or about May 21, 2019, *i.e.*, years before the Artisans' Account was opened.

21. Upon information and belief, the Debtor used multiple accounts at BBVA Compass Bank (now PNC Bank) to receive payments from FEMA between 2017 and 2019, and there is no prohibition against using a Trustee bank account for any future payments by FEMA.

22. Following my appointment as Trustee, I caused the Artisans' Account to be closed to prevent funds from being transferred out of the Artisans' Account. At the time the Debtor's case was converted to chapter 7, there was approximately $139,203.04 remaining of the $37,583,272.58 that TSI collected from FEMA turned over to the Trustee.

## The Alleged A/R

23. Since my appointment as Trustee, I have repeatedly requested information from the Member Defendants regarding the $8.2 million in so-called "accounts receivable" that the Member Defendants have repeatedly asserted are owed to the Estate (collectively, the "Alleged A/R"). Mott and Acosta have failed and refused to turn over information necessary to evaluate the Alleged A/R.

24. The Member Defendants assert that FEMA owes the Estate $6.8 million for delivery/transportation costs. For support, the Member Defendants cite to a chart at page 65 of 76 of the proof of claim filed by Bering Straits Logistics Services, LLC (the "Bering Straits POC"). That chart actually lists $6,889,632.33 in transportation costs (*i.e.*, $6.9 million, not $6.8 million). The Bering Straits POC contains other documents which appear to show that, in the aggregate, Bering Straits billed TSI $7,586,236.92 for transportation costs (*i.e.*, $7.6 million, not $6.8 million).

25. TSI's contract with FEMA, as amended, required FEMA to pay TSI, among other things, the sum of $8,979,572.37 for transportation. Those transportation costs are included in a total contract line item amount of $18,338,852.73. FEMA paid the $18.3 million to TSI on or about November 29, 2017. This amount is only part of the approximately $37.6 million FEMA paid to TSI between November 2017 and May 2019 referred to above. Mott and Acosta have failed to account for all of the money TSI received from FEMA.

26. Therefore, according to the Debtor's books and records, it appears that FEMA may have paid the Debtor more for transportation costs than is listed in the Bering Straits POC.

27. Contrary to the Member Defendants' assertions, the Bering Straits POC does not contain any documentation that would support a claim against FEMA for $6.8 million, or otherwise. According to the Debtor's books and records, FEMA may have paid TSI 100% of the

5

contract amount, exclusive of the $13.5 million claim. Other than pointing to a single page in the Bering Straits POC, Mott and Acosta have refused to provide any other documentation supporting the $6.8 million Alleged A/R, such as an amendment to the contract, an invoice, correspondence with FEMA, or other documentation.

28. Moreover, the Bering Straits POC was filed in the amount of $1,516,745.69, not $6.8 million or more. This indicates that TSI already received payment from FEMA for a significant portion (or all) of the transportation costs, and Bering Straits was paid a substantial portion of their contract amount, according to the Bering Straits POC.

29. The Member Defendants also allege that the Debtor is owed approximately $1.2 million (the "$1.2M Alleged A/R") by the United States Defense Logistics Agency ("DLA"). The Debtor's Schedules do not list an approximately $1.2 million account receivable. The Member Defendants have failed and refused to turn over all documents and information related to the $1.2M Alleged A/R. Among other things, the Member Defendants have failed to turn over (i) a copy of the claim submitted to DLA, (ii) a copy of DLA's request for more information, or (iii) a copy of the Member Defendants' response submitted to DLA.

30. The Member Defendants further allege that the Debtor is owed approximately $198,000 by DLA (the "$198k Alleged A/R"). The Debtor's Schedules do not list an approximately $198,000 receivable. The Member Defendants have failed and refused to turn over all documents and information related to the $198k Alleged A/R. Among other things, the Member Defendants have failed to turn over (i) the supporting documentation for the $198k Alleged A/R and (ii) the Member Defendants' communications with DLA regarding the $198k Alleged A/R, including DLA's February 27, 2023 request for information.

31. In addition, the Member Defendants allege that the Debtor is owed approximately $32,140 by DLA (the "$32k Alleged A/R"). The Debtor's Schedules do not list an approximately $32,000 account receivable. The Member Defendants have failed and refused to turn over all documents and information related to the $32k Alleged A/R.

32. Upon information and belief, Mott, Acosta, and potentially others acting at their direction or on their behalf, have communicated with third parties regarding the Alleged A/R and/or other property of the Estate, even though they have no authority to do so.

33. The Member Defendants' filings with the Court attach or refer to documents relating to the Alleged A/R and/or other property of the Estate that were not turned over to me. This is indicative of a pattern of the Member Defendants failing to turn over documents and information relating to the Debtor and property of the Estate as ordered by the Court.

34. As of the execution of this declaration, I have made no determination as to whether or not to pursue any of the Alleged A/R, as I do not believe that I have been provided with sufficient evidence to make that determination. I expressly reserve all rights on behalf of myself as Trustee, the Debtor, and the Estate.

### FEMA Litigation

35. Prior to the petition date, TSI asserted a claim against FEMA for more than $13.5 million. FEMA denied that claim. TSI appealed and the Civilian Board of Contract Appeal affirmed FEMA's denial of the claim. At my direction, the Estate's contingency counsel appealed the denial of the claim against FEMA to the United States Court of Appeals for the Federal Circuit, where the appeal remains pending under *Team Systems International, LLC v. Secretary of the Department of Homeland Security*, Case No. 23-1556 (Fed. Cir. 2023).

### Filed Proofs of Claim and Eleventh Circuit Appeal

36. Prior to the petition date, GPDEV, LLC and Simons Exploration, Inc. (together, the "Florida Judgment Creditors") obtained judgments from the United States District Court for the Northern District of Florida against TSI totaling more than $6 million. TSI appealed to the United States Court of Appeals for the Eleventh Circuit. That appeal was stayed when the Debtor filed for bankruptcy.

37. Following my appointment as Trustee, I filed a preliminary objection to the proofs of claim filed by the Florida Judgment Creditors. On July 15, 2022, the Court issued a *Memorandum Opinion* at docket no. 223 in the above-captioned main case which, among other things, allowed the Florida Judgment Creditors' filed proofs of claim against the Estate.

38. I did not seek to lift the stay of the appeal of the Florida Judgment Creditors' judgments because (i) the Estate lacked, and presently still lacks, the resources to fund the litigation; (ii) the Member Defendants never made a credible offer to fund the litigation, as their so-called "offers" (a) failed to identify the source or amount of funding and (b) failed to provide for funding of the entire litigation, which includes not only the Eleventh Circuit appeal but also all subsequent proceedings, including before the Florida district court and the Delaware bankruptcy court; and (iii) unless and until there are sufficient Estate assets to provide a meaningful distribution to general unsecured creditors in my business judgment, there is no benefit to the Estate in pursuing the appeal at this time.

39. The Bankruptcy Court has been bombarded with requests by the Member Defendants seeking to have the Trustee cede administration of the Estate to them to pursue the Alleged A/R. The Member Defendants failed to pursue collection of the $6.8 Million Alleged FEMA Claims since 2017. The Member Defendants failed to pursue collection of any of the other

Alleged A/R either prepetition or during the chapter 11. My professionals and I have repeatedly requested that the Member Defendants provide sufficient credible documentation, if any, to support the Alleged A/R. To date, the Member Defendants have failed to do so.

40. In addition, upon information and belief, the Member Defendants are operating and/or accessing the Debtor's electronic records and software, such as the Debtor's SAM.gov account, Debtor email accounts and other computer records. I believe the Member Defendants are doing so in order to intentionally interfere with my administration of the Estate as Trustee. Moreover, upon information and belief, the Member Defendants may be in possession of the Debtor's records and other assets of the Estate, in violation of the Bankruptcy Code and multiple Court orders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: July 12, 2023

George L. Miller, not individually but
Solely in his capacity as the
Chapter 7 Trustee of
Team Systems International, LLC

227455042 v1