# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Team Systems International, LLC, | Case No. 22-10066 (CTG) |
| Debtor. | Hearing Date: 8/14/23 at 12:00 p.m.<br>Objection Deadline: 8/04/23 at 4:00 p.m. |

### MOTION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER PURSUANT TO FED. R. BANKR. P. 9019 AUTHORIZING AND APPROVING THE SETTLEMENT AGREEMENT BETWEEN THE TRUSTEE AND THE JUDGMENT CREDITORS

George L. Miller, solely in his capacity as the chapter 7 trustee (the "Trustee") of the bankruptcy estate of Team Systems International, LLC (the "Debtor"), files this Motion seeking entry of an order, substantially in the form attached hereto as Exhibit A (the "Approval Order"), pursuant to sections 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving the *Settlement Agreement* (the "Settlement Agreement"),[1] attached as Exhibit 1 to the Approval Order, between the Trustee and GPDEV, LLC ("GPDEV") and Simons Exploration, Inc. ("Simons", collectively with GPDEV, the "Judgment Creditors"). In support of this Motion, the Trustee respectfully states as follow:

## JURISDICTION AND VENUE

1. The district court has jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this district is proper under 28 U.S.C.

---

[1] Capitalized terms used but not defined in this Motion have the meanings ascribed to such terms in the Settlement Agreement.

§§ 1408 and 1409. Pursuant to Local Bankruptcy Rule 9013-1(f), the Trustee consents to the entry of a final order by this Court with respect to the relief requested in this Motion.

2. The predicates for the relief requested herein are Bankruptcy Code section 105 and 363 and Bankruptcy Rule 9019.

## BACKGROUND

3. On January 18, 2022, the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. On March 31, 2022, the Court entered an order converting the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code

5. Also on March 31, 2022, the Trustee was appointed as the Chapter 7 Trustee of the Debtor's estate.

6. Prior to the Petition Date, GPDEV and Simons obtained judgments from the United States District Court for the Northern District of Florida against TSI totaling more than $6 million (Case No. 4:18cv442-RH-MAF) (the "Florida Judgments"). TSI appealed the Florida Judgments to the United States Court of Appeals for the Eleventh Circuit (the "Eleventh Circuit Appeal"). The Eleventh Circuit Appeal was stayed when the Debtor filed for bankruptcy.

7. On April 27, 2022, GPDEV filed a proof of claim against the Debtor with the Bankruptcy Court (Claim No. 3 – the "GPDEV Proof of Claim"), asserting an unsecured claim in the amount of $3,297,995.32 based upon the Florida Judgments, comprised of $2,770,855.00 as principal, plus $527,140.32 as prejudgment interest.

8. On April 27, 2022, Simons filed a proof of claim against the Debtor with the Bankruptcy Court (Claim No. 4 – the "Simons Proof of Claim"), asserting an unsecured claim in the amount of $2,948,080.46 based upon the Florida Judgments, comprised of $2,483,722.00 as principal, plus $464,358.46 as prejudgment interest.

9. Following his appointment, the Trustee filed a preliminary objection to the proofs of claim filed by the Judgment Creditors. On July 15, 2022, the Court issued a *Memorandum Opinion* at docket no. 223 in the main case which, among other things, allowed the Judgment Creditors' filed proofs of claim against the Estate. Thus, absent a negotiated settlement with the Judgment Creditors, the Trustee would be forced to prosecute the pending Eleventh Circuit Appeal in order to have any chance to reduce the Judgment Creditors' proofs of claim.

10. Rather than proceed with litigation of the Eleventh Circuit Appeal, the Parties engaged in arm's length negotiations regarding a resolution of the Judgment Creditors' proofs of claim and the Eleventh Circuit Appeal. Subject to Court approval, the Parties have agreed to resolve the Judgment Creditors' proofs of claim and the Eleventh Circuit Appeal on the terms set forth in the attached Settlement Agreement.

## Summary of the Settlement Agreement[2]

11. As set forth more fully in the attached Settlement Agreement, the primary terms of the Settlement Agreement are as follows:

   a. **Effective Date**. The effective date of this Settlement Agreement and its terms shall be the date upon which the Bankruptcy Court enters a final, non-appealable order approving this Settlement Agreement (the "Effective Date").

   b. **Reduced Allowed Claims**. Upon the Effective Date, GPDEV shall have an allowed general unsecured claim against the Debtor's estate in the amount of $2,968,532.62 on account of its Florida Judgment (a reduction to the GPDEV Proof of Claim of $329,462.70). Upon the Effective Date, Simons shall have an allowed general unsecured claim against the Debtor's estate in the amount of $2,657,856.42 on account of its Florida Judgment (a reduction to the Simons Proof of Claim of $290,224.04). Neither GPDEV nor Simons shall be entitled to any other or further claims against the

---

[2] The summary set forth in the Motion is provided for the convenience of the Court and parties only. To the extent the summary conflicts with the terms of the Settlement Agreement, the actual terms of the Settlement Agreement shall control.

3

          Debtor's estate on account of the Florida Judgments and the claims addressed therein.

    c. **Bankruptcy Court Approval**. After this Settlement Agreement is executed by the Parties, the Trustee will file a motion with the Bankruptcy Court seeking approval of the Settlement Agreement. In the event that the Bankruptcy Court does not approve this Settlement Agreement, the Settlement Agreement shall be null and void and of no force and effect.

    d. **Dismissal of the Appeal**. Within 20 days after the Effective Date, the Parties shall work to dismiss the Eleventh Circuit Appeal. The Judgment Creditors agree that notwithstanding the dismissal of the Eleventh Circuit Appeal they will not argue res judicata (claim preclusion) or collateral estoppel (issue preclusion) in connection with any future claim dispute with the Trustee.

## RELIEF REQUESTED AND BASIS THEREFOR

12. By this Motion, the Trustee seeks entry of an order, substantially in the form of the Approval Order attached hereto, authorizing and approving the Settlement Agreement, which is attached as Exhibit 1 to the Approval Order, and granting related relief.

13. Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (*en banc*).

14. Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Bankruptcy Rule 9019 provides that on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. In deciding whether to approve a settlement pursuant to

Bankruptcy Rule 9019, the court should determine whether the compromise is fair, reasonable, and in the interests of the estates. *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998). The decision whether to accept or reject a compromise lies within the sound discretion of the court. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

15. In making this determination, the United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court should consider: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. *Martin*, 91 F.3d at 393. Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision. *Id.* at 395.

16. When applying the *Martin* factors to a particular motion, "the court is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted); *see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). Although approval of a compromise is within the "sound discretion" of the bankruptcy court (*World Health*, 344 B.R. at 296), the court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996).

17. The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the estate." *TSIC*, 393 B.R. at 78. A court need not be convinced that a proposed settlement is the best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted).

18. In addition, a settlement of claims and causes of action by a trustee constitutes a use of property of the estate. *See, e.g., Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*; *see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."). Courts normally defer to the trustee's business judgment so long as there is a legitimate business justification. *See id.*; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

19. Here, the Settlement Agreement with the Judgment Creditors falls well within the range of reasonableness and represents a sound exercise of the Trustee's business judgment.

20. In the exercise of his statutory duties and powers, the Trustee has investigated the GPDEV Proof of Claim, the Simons Proof of Claim, the Eleventh Circuit Appeal, and the underlying litigation in the United States District Court for the Northern District of Florida. The Parties engaged in extensive arm's length negotiations, during which the Judgment Creditors were ably represented by counsel. The Settlement Agreement provides for approximately a 10% reduction of the GPDEV Proof of Claim and the Simons Proof Claim, while avoiding the costs and delay of protracted litigation over the Eleventh Circuit Appeal and potentially a new trial on the merits. Additionally, the Settlement Agreement ends protracted and costly litigation expenses, which enhances the distribution to creditors.

21. The issues argued by the Debtor in its Opening Brief in the Eleventh Circuit Appeal include the following:

   a. The district court erred in failing to dismiss the case for lack of subject matter jurisdiction as there was not complete diversity of citizenship.

   b. The court abused its discretion by declining to allow amendment of TSI's Affirmative Defenses to include a defense of Illegal Contract, ultimately leading to Plaintiffs receiving an award of commissions that should be deemed contrary to the federal law which prohibits a commission for securing a federal contract.

   c. The court erred in finding that the Consulting Agreement was modified to include Nestle water and in awarding commissions on Nestle water.

   d. The court erred in finding that the Consulting Agreement applied to net income from retention of drop containers in Puerto Rico.

   e. Even if *arguendo* any commissions were due and unpaid, the amounts in the Judgment are erroneous, based on Plaintiffs' expert's summary which erroneously excluded certain expenses and wrongly included commissions on drop containers.

   f. The court erred by imposing or miscalculating prejudgment interest.

   g. The district court erred in denying TSI's motion for recusal.

22. As a threshold matter, the Debtor appears to have had credibility issues throughout the Florida litigation, including with respect to the reliability of its documents. Indeed, while the Debtor hired an expert regarding the net income and expenses, the Debtor's expert never testified at trial, the assumption being because the documents underlying his position were not reliable. This serves to undercut every argument made by the Debtor in its Opening Brief and especially undercuts the likelihood of succeeding on any issue requiring reliable evidence from the Debtor.

The credibility and reliability issues would still prevail based upon the Trustee's experience with the Debtor's representatives and the documentation produced thus far in this bankruptcy proceeding.

23. Of the seven issues argued in the Debtor's Opening Brief in the Eleventh Circuit Appeal, two would result in an expensive new trial (subsections "a" and "g" above). The Illegal Contract argument is undercut in the Opening Brief by statements indicating that the Debtor revised the original version of the contract to avoid it being an illegal contract (subsection "b" above). While the issue as to whether the Consulting Agreement was modified is couched as both an error of law and fact (subsection "c" above), each decision required a threshold amount of evidence regarding the modification and, from the portions cited, it appears such a threshold showing was made. The argument then shifts to the sufficiency of the evidence.

24. To prevail on the disputes regarding the commissions due, would require challenging findings of fact, which requires a showing that the findings were clearly erroneous (subsection "e" above) and, according to the Debtor, an error of law (subsection "d" above). As set forth above, the Debtor never submitted an expert report in the Florida litigation regarding the net income and expenses. The Trustee assumes no expert report was submitted by the Debtor because the underlying documents provided by the Debtor to its expert were not reliable – which raises additional concerns about challenging any factual findings in the Florida litigation. For example, it has been shown that the Debtor included certain expenses in the Florida litigation that related to the installation of a new pool at certain insiders' home – again raising additional concerns about the veracity of the Debtor's documents and undercutting the Debtor's ability to challenge the factual findings in the Florida litigation. In this bankruptcy case, the Debtor's insiders have stated that all records have been turned over to the Trustee. If so, in the Trustee's opinion, the

Debtor has not provided sufficient credible documents to challenge any factual findings from the Florida litigation. The Trustee's experience to date regarding the insiders' failure to turn-over the Debtor's books and records and their failure to provide credible support for the alleged A/R underscore the risk of attempting to challenge factual findings through the Eleventh Circuit Appeal.

25. With respect to the prejudgment interest (subsection "f" above), the Trustee has had the benefit of reviewing the Judgment Creditors' analysis of this issue before reaching the settlement.

26. Given the challenges to succeeding in the prosecution of the Eleventh Circuit Appeal, including those created by the Debtor's credibility issues and the Debtor's inability to produce reliable documents, the Trustee believes that the Settlement Agreement appropriately reflects the risks of pursuing the Eleventh Circuit Appeal, and appropriately accounts for the expense and delay of litigating the Eleventh Circuit Appeal and any new trial. The negotiated settlement also avoids pursuing an "all or nothing" course of action and getting nothing.

27. The Trustee believes the terms of the Settlement Agreement are fair, reasonable, and appropriate under the circumstances, and should be approved.

28. For the foregoing reasons, the Trustee respectfully submits the Settlement Agreement is in the best interest of the estate and creditors and should be approved.

## **NOTICE**

29. Notice of this Motion will be given to the following parties or their counsel of record, if known: (a) the Office of the United States Trustee; (b) creditors of the Debtor; and (c) all parties that have requested pursuant to Bankruptcy Rule 2002 to receive notices in the main cases. The Trustee submits that service of this Motion on the parties listed above is reasonable and appropriate in light of the circumstances of this case.

30.  No prior request for the relief sought in this Motion has been made to this Court or to any other Court.

## **CONCLUSION**

WHEREFORE, for the reasons stated herein, the Trustee respectfully requests that the Court enter the Approval Order authorizing and approving the Settlement Agreement and granting such other and further relief as is just and proper.

Dated: July 21, 2023　　　　　　　　　　　ARCHER & GREINER, P.C.

　　　　　　　　　　　　　　　　　　　　　*/s/ David W. Carickhoff*
　　　　　　　　　　　　　　　　　　　　　David W. Carickhoff (No. 3715)
　　　　　　　　　　　　　　　　　　　　　Bryan J. Hall (No. 6285)
　　　　　　　　　　　　　　　　　　　　　300 Delaware Ave., Suite 1100
　　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　　(302) 777-4350
　　　　　　　　　　　　　　　　　　　　　(302) 777-4352 (fax)
　　　　　　　　　　　　　　　　　　　　　dcarickhoff@archerlaw.com
　　　　　　　　　　　　　　　　　　　　　bjhall@archerlaw.com

　　　　　　　　　　　　　　　　　　　　　*Counsel to George L. Miller,*
　　　　　　　　　　　　　　　　　　　　　*Chapter 7 Trustee*