**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| Team Systems International, LLC, | Case No. 22-10066 (CTG) |
| Debtor. | Re: D.I. 330 |
| | **Hearing Date: 9/20/2022 at 10:00 a.m. (ET)**<br>**Objection Deadline: 9/13/2022 at 4:00 p.m. (ET)** |

**SUPPLEMENTAL MOTION OF THE CHAPTER 7 TRUSTEE
TO COMPEL MOTT AND ACOSTA TO COMPLY WITH THE
CONTEMPT ORDER AND TO ENFORCE THE AUTOMATIC STAY**

George L. Miller, solely in his capacity as the Chapter 7 Trustee (the "Trustee") for the estate (the "Estate") of Team Systems International, LLC (the "Debtor"), hereby files this motion (the "Supplemental Motion"), pursuant to 11 U.S.C. §§ 105(a), 362(a), 541(a) and 542, in furtherance of the *Chapter 7 Trustee's (i) Preliminary Objection to the Member Defendants' Standing Motion; and (ii) Cross-Motion to Compel Mott and Acosta to Comply with the Contempt Order and to Enforce the Automatic Stay* [D.I. 330] (the "Cross-Motion")[1] filed on July 12, 2023. By the Cross-Motion, the Trustee objected to the Member Defendants' Standing Motion and cross-moved for entry of an order (a) directing the Debtor's former managers, Deborah Evans Mott ("Mott") and Steven M. Acosta ("Acosta"), to comply with this Court's *Order with Respect to Trustee's Motion to Hold Debtor in Contempt* [D.I. 222] and (b) prohibiting Mott, Acosta, and their respective agents and affiliates from violating the automatic stay or otherwise interfering with the administration of the Estate. As discussed more fully below, since the Trustee filed the Cross-

---

[1] Capitalized terms used but not defined in this Supplemental Motion have the meanings set forth in the Cross-Motion. A copy of the Cross-Motion is attached hereto and incorporated by reference into this Supplemental Motion. The Cross-Motion is scheduled for hearing on September 20 at 10:00 a.m., the same hearing as this Supplemental Motion.

Motion, Mott and Acosta, and now Christopher Mott, have continued to intentionally interfere with and obstruct the Trustee's administration of the Estate.  In addition, Mott and Acosta continue to exercise control over property of the Estate in violation of the automatic stay.  Accordingly, the Trustee files this Supplemental Motion to supplement the factual allegations set forth in the Cross-Motion and to seek additional sanctions and other relief against Mott, Acosta, and Christopher Mott.  In support of this Supplemental Motion, the Trustee respectfully states as follows:

## JURISDICTION AND VENUE

1.    The district court has jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The predicates for the relief requested herein include sections 105(a), 362(a), 541(a), and 542 of title 11 of the United States Code (the "Bankruptcy Code").

## RELEVANT BACKGROUND

3.    On January 18, 2022 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.    Prior to the bankruptcy filing, the Debtor was a U.S. government contractor and a registered entity with SAM.gov.  SAM.gov is an official website of the United States government, maintained by the United States General Services Administration ("GSA"), where entities can register to bid on and receive payments for U.S. federal government contracts or receive federal funds.[2]

---

[2] *See* https://sam.gov/content/about/this-site; *see also* Cross-Motion, Ex. T-5 (SAM.gov Quick Start Guide for Contract Registration).

5.      On March 31, 2022 (the "Conversion Date"), following a three-day evidentiary hearing, the Court entered an order converting the Debtor's case to a case under chapter 7 of the Bankruptcy Code.[3]

6.      Also on the Conversion Date, George L. Miller was appointed as the Chapter 7 Trustee of the Debtor's estate and subsequently qualified as the permanent Trustee.

7.      On July 14, 2022, the Court entered an order (the "Contempt Order") granting in part the Trustee's motion to hold the Debtor's former managers, Deborah Evans Mott ("Mott") and Steven M. Acosta ("Acosta"), in contempt for their failure to turn over the Debtor's books and records.[4]  Among other things, the Contempt Order directed Mott and Acosta to turn over (or identify bates numbers if already turned over) all assets, documents, and other property of the Debtor to the Trustee on or before July 13, 2022.

8.      On July 5, 2023, Mott, Acosta, Christopher Mott, and John S. Maciorowski (collectively, the "Member Defendants") filed the *Motion for Entry of Order Granting TSI Members Standing to: (a) Prosecute the Appeal and (b) File Claims and Collect Certain Accounts Receivable on Behalf of the Debtor's Estate* [D.I. 328] (the "Standing Motion").[5]

9.      On July 12, 2023, the Trustee filed the Cross-Motion (i) objecting to the Standing Motion and (ii) cross-moving for entry of an order (a) directing Mott and Acosta to comply with the Contempt Order and (b) prohibiting and enjoining Mott, Acosta, and each of their respective

---

[3] *See Order Converting Chapter 11 Case to a Chapter 7 Case* [D.I. 151].

[4] *See Order with Respect to Trustee's Motion to Hold Debtor in Contempt* [D.I. 222].

[5] On July 6, 2023, counsel for the Trustee called the Member Defendants' counsel, indicated that he believed they had Rule 11 issues in connection with the Standing Motion, and asked that they withdraw the Standing Motion.  Counsel for the Trustee also served a draft Rule 11 motion on counsel for the Member Defendants and gave them more than 21 days to withdraw the Standing Motion.  The Standing Motion was not withdrawn.  As a result, the Trustee was compelled to file the Rule 11 motion [D.I. 339].

agents and affiliates from violating the automatic stay or otherwise interfering with the administration of the Estate.

### a. The Debtor's SAM.gov Account

10.     As set forth more fully in the Cross-Motion, in or about June 2023, the Trustee learned that, after the Conversion Date, Mott had accessed and modified the Debtor's registration information in SAM.gov.[6]  Specifically, the Trustee learned that on or about February 2, 2023 at 6:25 p.m., Mott accessed and updated the Debtor's account on SAM.gov.  Mott continued to list herself as the only point of contact for the Debtor in SAM.gov.  There was no mention of the Debtor's bankruptcy filing, the conversion of the case to chapter 7, or the Trustee.

11.     The Trustee also learned that, sometime between October 19, 2021 and February 2, 2023, Mott accessed the Debtor's SAM.gov account and changed the Debtor's physical address from the Debtor's former address of 822 AIA N. Ste. 310, Ponte Vedra, Florida to an address in Prosper, Texas.[7]  Upon information and belief, Acosta lives in Prosper, Texas.[8]  The Debtor did not list any business address in Texas on its bankruptcy petition, schedules, or statements.[9]

12.     The Trustee attempted to obtain exclusive control over the Debtor's SAM.gov account.   Among other things, the Trustee had multiple telephone calls and written communications with representatives of GSA responsible for SAM.gov.  The Trustee also engaged US Federal Contractor Registration (USFCR), a third party that provides services and support for SAM.gov registration and registrations.[10]  The Trustee directed USFCR to add the Trustee and a

---

[6] *See* Cross-Motion, Ex. T-6 (printout from the SAM.gov website taken on June 15, 2023).

[7] *Compare* Cross-Motion, Ex. 6, page 1, *with* Cross-Motion, Ex. T-11, page 1.

[8] *See* Statement of Financial Affairs for Non-Individual Filing for Bankruptcy, part 2, question 4.3 [D.I. 29].

[9] *See generally* Voluntary Petition for Non-Individuals Filing for Bankruptcy [D.I. 1]; Schedules of Assets and Liabilities [D.I. 28]; Statement of Financial Affairs for Non-Individual Filing for Bankruptcy [D.I. 29].

[10] *See* https://usfcr.com/.

supervisor of USFCR as administrators of the SAM.gov account for the Debtor.  Aiden Ashe is a supervisor of USFCR.

13. After the Cross-Motion was filed, on or about July 26, 2023, the Trustee was assigned an "Administrator role" for the Debtor's entity registration in SAM.gov.  Attached hereto as <u>Exhibit T-12</u> is an email from SAM.gov dated July 26, 2023 confirming the Trustee's Administrator role.

14. The Trustee's status as Administrator of the Debtor's SAM.gov entity registration was confirmed in several subsequent written communications from GSA, including an email from SAM.gov dated July 27, 2023, which is attached hereto as <u>Exhibit T-13</u>, and an email from SAM.gov dated August 4, 2023, which is attached hereto as <u>Exhibit T-14</u>.

15. Thereafter, Mott, Acosta, and Christopher Mott (Mott's son) each took steps to actively interfere with and obstruct the Trustee's use, access, and control of the Debtor's SAM.gov account.

16. For example, on or about August 7, 2023, Mott purported to remove the Trustee's Administrator role for the Debtor in SAM.gov.  Attached hereto as <u>Exhibit T-15</u> is an email from SAM.gov dated August 7, 2023, stating, in relevant part "Deborah Mott removed your Administrator role . . . ."  Mott had no right to access the Debtor's SAM.gov account or to remove the Trustee's Administrator role.

17. Also on August 7, 2023, Acosta sent an email to the Trustee, the Trustee's counsel, representatives of the United States Trustee's Office.  A copy of Acosta's email is attached hereto as <u>Exhibit T-16</u>.  In that email, Acosta admits that "we contacted the Federal Service Desk," an arm of GSA, regarding the Debtor's SAM.gov account and that they locked the Debtor's account, thereby preventing the Trustee and his agents from accessing it.  Acosta had no right to contact

GSA or the Federal Service Desk regarding the Debtor's SAM.gov account or to remove the Trustee's Administrator role. In his email, Acosta falsely implies that the Debtor's SAM.gov account had been compromised. That assertion is disingenuous, at best. As discussed above, the Trustee's Administrator roll had already been established by July 26. Between July 26 and August 7, Mott and Acosta made no attempt to contact the Trustee or his counsel to confirm that fact or to express any concerns. Instead, without any good faith basis, Acosta and/or others contacted the Federal Service Desk and had the Debtor's SAM.gov account locked – all flagrant violations of the automatic stay.

18.     In response, the Trustee's counsel contacted counsel for Mott and Acosta and requested copies of all communications with the Federal Services Desk. Counsel failed to provide copies of any such communications and instead repeated Acosta's false narrative about the Debtor's SAM.gov account having been compromised.

19.     Then, on August 8, 2023, Christopher Mott called USFCR and made numerous false statements about the Trustee and the Debtor's SAM.gov account. A rough transcript of that call is attached hereto as Exhibit T-17. Among other things, during that call, Christopher Mott falsely stated to a USFCR representative that the Trustee and his counsel "never heard of" USFCR. *See* Ex. 17, Tr. pages 1, 2, 4, 5. Christopher Mott also made false and defamatory statements against the Trustee, calling him a "criminal" and repeatedly falsely stating "he's trying to steal our money." *Id.*, Tr. pages 1, 2, 3. Christopher Mott also falsely stated that "We got a judgment" against FEMA. *Id.*, Tr. page 2. Christopher Mott directed the USFCR representative that "none of your people are to log into my SAM account ever again," a direction he had no right to give. *Id.*, Tr. page 3. In addition, Christopher Mott falsely claimed that the Trustee and his attorney "lied." *Id.*, Tr. page 4. He concluded by again falsely stating that the Trustee and his attorney

"never heard of your company" and accused them of trying to steal "our money."  *Id.*, Tr. page 5.
Obviously, these statements by Christopher Mott are all patently false.[11]

20.     As the record in this case makes clear, Mott and Acosta have a history of
noncompliance and obstruction of the administration of the Estate.

21.     Now, Mott, Acosta, and Christopher Mott have crossed the line and are openly and
intentionally interfering with the administration of the Estate, exercising control over property of
the Estate, and willfully violating the automatic stay.  Accordingly, the Trustee was compelled to
file this Supplemental Motion seeking sanctions and other relief.[12]

**b.     The Debtor's Computer Equipment**

22.     In addition to the foregoing, Mott and Acosta have failed to turn over to the Trustee
all of the Debtor's computer equipment and electronic records.  As discussed in the Cross-Motion,
Mott and Acosta did turn over to the Trustee a damaged/blank laptop computer that did not contain
any of the Debtor's files or the laptop's original operating system.   However, their prior testimony
identifies other computer equipment that has not been turned over.

23.     For example, in her February 7, 2022 deposition, Mott testified that the Debtor used
"Peachtree" accounting software that is "a program on our financial computer."  *See* Deposition
of Deborah Mott Tr. 83:7-23 (Feb. 7, 2022), an excerpt of which is attached hereto as <u>Exhibit T-18</u>.[13]  The financial computer and Peachtree records have not been turned over to the Trustee.

24.     On March 14, 2022, during the evidentiary hearing on the motion to dismiss or
convert the case, Acosta testified that TSI kept its records "on a hard drive in a physical place,"

---

[11] The Trustee reserves all rights in both his capacity as Trustee and in his individual capacity.

[12] In addition, contemporaneously with the filing of this Supplemental Motion, the Trustee has filed the *Chapter 7 Trustee's Motion for Entry of an Order Regarding the Debtor's SAM.gov and CAGE Registration, Accounts, Bank Account Information, and Other Information* seeking entry of an order to aid the Trustee in obtaining exclusive control over, among other things, the Debtor's SAM.gov account.

[13] The entire transcript has previously been filed on the docket and is available at D.I. 87-16.

which Acosta added was kept in a safe in an office space in Mott's home in Haymarket, Virginia. *See* Tr. at 65:16-66:6 (Mar. 14, 2022), an excerpt of which is attached hereto as <u>Exhibit T-19</u>. [14] That hard drive has not been turned over to the Trustee. When asked if he had a "set of the business records on your computer in Texas," Acosta responded, in relevant part, "Most of them, yes." *Id.* at 66:7-9. The business records on the Texas computer have not been turned over to the Trustee.

## <u>RELIEF REQUESTED AND BASIS THEREFOR</u>

25.    By this Motion, the Trustee seeks the entry of an order, substantially in the form attached hereto, (i) compelling Mott and Acosta to comply with the Contempt Order within 14 days by either turning over all Debtor books, hard copy and electronic records, emails, login credentials, and computer equipment—including without limitation the financial computer and the hard drive—and /or executing affidavits under penalty of perjury that they have complied with the Contempt Order; (ii) enforcing the automatic stay and prohibiting and enjoining Mott, Acosta, Christopher Mott, and each of their respective agents and affiliates from violating the automatic stay or otherwise interfering with the administration of the Estate; and (iii) imposing appropriate sanctions against each of Deborah Evans Mott, Steven M. Acosta, and Christopher Mott for their intentional interference with the administration of the Estate, willful violations of the automatic stay, and other misconduct.

26.    Section 362(a) of the Bankruptcy Code provides, in relevant part, the filing of the Debtor's bankruptcy petition "operates as a stay, applicable to all entities, of," among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[15]

---

[14] The entire transcript has previously been filed on the docket and is available at D.I. 143.

[15] 11 U.S.C. § 362(a)(3).

27.     Section 541(a) of the Bankruptcy Code provides, in relevant part, that the Debtor's Estate is comprised of all property of the estate "wherever located and by whomever held," including without limitation "all legal or equitable interests of the debtor in property as of the commencement of the case" and "any interest in property that the estate acquires after the commencement of the case."[16]

28.     Section 542(a) of the Bankruptcy Code provides, in relevant part, that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 if this title, . . . shall deliver to the trustee, and account for, such property or the value of such property . . . ."[17]

29.     Section 105(a) of the Bankruptcy Code provides that "the court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."[18]  Section 105 further authorizes this Court to take any action "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."[19]

30.     Pursuant to section 105 of the Bankruptcy Code and the Court's inherent authority, this Court has the power and jurisdiction to enforce its own lawful orders.[20]

---

[16] 11 U.S.C. § 541(a)(1), (7).

[17] 11 U.S.C. § 542(a); *see also* 11 U.S.C. § 542(e) (providing, in relevant part, that "after notice and a hearing, the court may order an attorney, accountant or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.").

[18] 11 U.S.C. § 105(a).

[19] *Id.*

[20] *See, e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (U.S. 2009) (finding that a bankruptcy court retains jurisdiction to interpret and enforce its own orders); *In re Johns-Manville Corp.*, 97 B.R. 174, 180 (Bankr. S.D.N.Y. 1989); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 325-26 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders.").

31.     Section 105(a) also "gives the court 'general equitable powers . . . insofar as those powers are applied in a manner consistent with the Code.'"[21]  Such general equitable powers are frequently used by bankruptcy courts to make civil contempt findings.[22]

32.     It is beyond any reasonable dispute that the Debtor's registration, accounts, and other information in SAM.gov constitute property of the estate.[23]  Since the Conversion Date, the Trustee, **and only the Trustee**, has the exclusive authority to administer property of this Estate, including without limitation the Debtor's registration, accounts, and other information in SAM.gov. [24]  Similarly, the Debtor's financial computer, hard drive, and the Debtor's electronic records, wherever stored, are property of the Estate and must be turned over to the Trustee.

33.     Upon the entry of the Conversion Order, Mott and Acosta were "completely ousted" from any position of control over the Debtor, the Estate, or property of the Estate. [25]  Both the Bankruptcy Court and this Court's prior orders required Mott and Acosta to turn over all of the

---

[21] *In re Vaso Active Pharmaceuticals, Inc.*, 514 B.R. 416, 421 (Bankr. D. Del. 2014) (quoting *In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005)).

[22] *See, e.g., id.* (citing *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 331 (Bankr. D. Del. 1999), aff'd sub nom. *In re Cont'l Airlines*, 2000 WL 1425751 (D. Del. Sept. 12, 2000), aff'd sub nom. *In re Cont'l Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002); *In re Baker*, 390 B.R. 524, 531 (Bankr. D. Del. 2008) aff'd, 400 B.R. 136 (D. Del. 2009); *In re Anderson*, 348 B.R. 652, 661 (Bankr. D. Del. 2006); *In re WCI Communities*, Inc., No. 08–11643, 2012 WL 1981713 (Bankr. D. Del. June 1, 2012); *Accord In re Walters*, 868 F.2d 665, 669 (4th Cir. 1989); *Matter of Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 612 (5th Cir. 1997); *In re Skinner*, 917 F.2d 444, 447 (10th Cir. 1990); *In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996)).

[23] *See* 11 U.S.C. § 541(a)(1) (providing, in relevant part, that property of the Estate includes "all legal or equitable interest" of the Debtor in property as of the Petition Date "wherever located and by whomever held."). For example, courts have held that administrative privileges and other rights to a business-debtor's social media accounts are property of the estate. *See, e.g., In re Vital Pharm.*, 652 B.R. 392 (Bankr. S.D. Fla. 2023); *In re CTLI, LLC*, 528 B.R. 359, 378 (Bankr. S.D. Tex. 2015).  Similarly, courts have recognized that "documents, records, or papers relating to property of the estate" are property of the estate. *In re C.W. Mining Co.*, 442 B.R. 44, 47 (Bankr. D. Utah 2010).

[24] *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 352 (1985) ("The powers and duties of a bankruptcy trustee are extensive. Upon the commencement of a case in bankruptcy, all corporate property passes to an estate represented by the trustee. . . . [T]he Bankruptcy Code gives the trustee wide-ranging management authority over the debtor.") (holding that the trustee, not former management, controls the debtor's attorney-client privilege) (internal citations and quotation marks omitted).

[25] *Id.* at 352-53 (stating that, in a chapter 7 case, "the powers of the debtor's directors are severely limited.  Their role is to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors. . . .  Congress contemplated that when a trustee is appointed, he assumes control of the business, and the debtor's directors are 'completely ousted.'") (quoting See H.R.Rep. No. 95–595, pp. 220–221 (1977)).

Debtor's books and records to the Trustee.[26]  That included, among other things, the Debtor's SAM.gov account.

34.     Mott and Acosta failed to do so.  Quite the opposite, as set forth above, Mott and Acosta, and now Christopher Mott, have openly and intentionally interfered with the Trustee's administration of the Estate and have obstructed the Trustee's ability to use, access, and control property of the Estate, namely the Debtor's SAM.gov registration, accounts, and other information contained therein.

35.     Since the Conversion Date, Mott and Acosta have had no authority to submit annual representations and certifications on SAM.gov on behalf of the Debtor, including representations and certifications regarding the Debtor's ownership and control, tax liability and identification, size, data rights, or compliance with applicable law and regulation.[27]

36.     Mott, Acosta, and Christopher Mott appear to believe that the Debtor's SAM.gov account is important to the administration of the Estate.  Indeed, they have repeatedly raised the Debtor's SAM.gov account in their filings with this Court.[28]  This makes their intentional acts to interfere with the Trustee's administration of the Debtor's SAM.gov account all the more egregious.

---

[26] 11 U.S.C. § 521(a)(4) (directing the debtor to, among other things, "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate . . . ."); *see also* Conversion Order [D.I. 151]; Contempt Order [D.I. 222].

[27] *See* FAR 4.1202; FAR 52.204-8.

[28] *See, e.g., Declaration of Deborah Evans Mott in Support of Debtor's Chapter 11 Petition and First Day Motions* at ¶ 8 [D.I. 3] ("TSI is required to register in the US Government System for Award Management ("SAM") in order to serve as a US Contractor. All payments, for all agencies, are made by the US Treasury to the contractors bank account registered in SAM."); Standing Motion at ¶ 13 [D.I. 328] ("Without a SAM-registered account, the Trustee may not be able to collect the A/R or any amount owed to TSI by the Federal Government."). For the avoidance of doubt, the Trustee does not concede that any of the Member Defendants' assertions about SAM.gov are true.  In fact, some of them are demonstrably false.  But they are evidence that Mott, Acosta, and Christopher Mott believe that the Debtor's SAM.gov account is important and yet they knowingly interfered with the Trustee's ability to control the account.

37.     The intentional interference by Mott, Acosta, and Christopher Mott has frustrated the Trustee's efforts to obtain control over the Debtor's SAM.gov account.  It has also inhibited the Trustee's ability to correct the inaccurate and misleading information that Mott posted or allowed to remain on the Debtor's SAM.gov account, such as wrong contact information and a fictitious address in Texas.

38.     As set forth above, Mott, Acosta, and Christopher Mott have willfully violated the automatic stay and/or engaged in other intentional misconduct.  Their misconduct has needlessly delayed the administration of the Estate and driven up the fees and expenses in this case.

39.     For example, after the Conversion Date, Mott could have simply added the Trustee as the Entity Administrator to the Debtor's SAM.gov entity registration.  Not only did Mott fail to do that, she continued to access the Debtor's SAM.gov account months after conversion and continued to list herself as the sole contact for the Debtor, a statement that was misleading, at best.  Then, when Mott learned that the Trustee became Administrator for the Debtor's SAM.gov account, she affirmatively blocked his access to the account.

40.     Acosta and Christopher Mott each made false statements to various parties, implying without any good faith basis or attempt to confirm that the Debtor's SAM.gov account had been compromised.

41.     In fact, it was Mott who intentionally misused and compromised the Debtor's SAM.gov account by removing the Trustee's access before he could correct the false and inaccurate information that Mott either posted to SAM.gov or allowed to remain there.

42.     The flagrant misconduct by Mott, Acosta, and Christopher Mott has crossed a line and warrants appropriate sanctions, as the Court may determine in its discretion.  The Trustee respectfully submits that, at a bare minimum, Mott, Acosta, and Christopher Mott should be

ordered to pay all of the Estate's professional fees and expenses incurred in connection with their intentional interference with the Debtor's SAM.gov account.

43.     Further, Mott and Acosta should be ordered forthwith to turn over to the Trustee the financial computer, the hard drive, access to the Debtor's email accounts, and all of the Debtor electronic records.

## PRIOR REQUEST

44.     The relief requested in this Supplemental Motion supplements and expands upon the relief requested the Cross-Motion [D.I. 330], which is attached hereto and incorporated herein by reference.

## RESERVATION OF RIGHTS

45.     The Trustee reserves the right to supplement this Supplemental Motion prior to or any hearing on the Motion.

## NOTICE

46.     Notice of this Supplemental Motion will be provided to the following parties or their counsel of record, if known: (i) the United States Trustee for the District of Delaware; (ii) Mott, Acosta and Christopher Mott; and (iii) all parties that have requested pursuant to Bankruptcy Rule 2002 to receive notices in this case.  The Trustee submits that service of this Supplemental Motion on the parties listed above is reasonable and appropriate in light of the circumstances of this case.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court enter the proposed order attached to this Supplemental Motion, granting the relief requested in the

Cross-Motion as well as the sanctions relief requested above, and grant the Trustee such other and

further relief as is just and proper.

Dated: August 30, 2023                          ARCHER & GREINER, P.C.

                                                */s/ Bryan J. Hall*
                                                David W. Carickhoff (No. 3715)
                                                Bryan J. Hall (No. 6285)
                                                300 Delaware Ave., Suite 1100
                                                Wilmington, DE 19801
                                                (302) 777-4350
                                                (302) 777-4352 (fax)
                                                dcarickhoff@archerlaw.com
                                                bjhall@archerlaw.com

                                                *Counsel to George L. Miller,*
                                                *Chapter 7 Trustee*