## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

**CRAIG T. GOLDBLATT**
**JUDGE**



**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

February 1, 2024

**<u>VIA CM/ECF</u>**

     Re:    *In re Team Systems International, LLC*, No. 22-10066

Dear Counsel:

     The Court held a hearing on January 30, 2024, on the trustee's application to retain Chipman Brown Cicero & Cole LLP as general bankruptcy counsel [D.I. 399].[1] After the hearing, the Court indicated that it would grant the motion and proceeded to set forth its reasons on the record. While the Court's explanation might have been clear enough to allow the parties to understand the basis for the Court's decision, in light of the possibility that the ruling may be subject to review, the Court has concluded that it could not in fairness require a reviewing court to make sense of the Court's oral ruling. This letter ruling is accordingly intended to replace the Court's oral observations and provide the basis for the Court's decision to overrule the objection and grant the trustee's application.[2]

     This bankruptcy case was filed in January 2022 under chapter 11.[3] The debtor was in the government contracting business. After a multi-day evidentiary hearing on a motion to dismiss the bankruptcy case, the Court converted the case to one under

---

[1] Chipman Brown Cicero & Cole LLP is referred to as "Chipman Brown."

[2] The objecting defendants (as defined below) have separately moved to vacate the Court's January 31, 2024 bench ruling. D.I. 416. This decision to replace the bench ruling with this letter opinion essentially moots any challenge to the bench ruling. The Court believes, however, that the motion to vacate is in fact directed at the order this Court will enter granting the trustee's application. The Court will accordingly treat that order as being the subject of the motion to vacate, and will address that motion after it is fully briefed and before the Court for determination.

[3] D.I. 1.

chapter 7.[4]  George L. Miller was appointed as interim trustee.[5]  The Court authorized the trustee to retain Archer & Greiner as bankruptcy counsel under 11 U.S.C. § 327(a).[6]

The motion to dismiss the bankruptcy case was filed by the debtor's two largest creditors, GPDEV, LLC and Simons Exploration, Inc., both of which held judgments against the debtor relating to goods and services they provided to the debtor in connection with a government contract.[7]  Those creditors' efforts to enforce their judgments are what led the debtor to file this bankruptcy case.  After the case was converted to chapter 7, those creditors sought, at the § 341 meeting, to elect a chapter 7 trustee who would replace Miller and become the case trustee.  After an evidentiary hearing, the Court concluded that while those judgment creditors were in fact entitled to elect a trustee, the trustee they selected was not eligible to serve under § 321 of the Bankruptcy Code.  As a result, their effort to elect a trustee was unsuccessful and Miller remained in place as the case trustee.[8]

The bankruptcy case has been active and highly contentious.  A large part of the reason for that has been an adversary proceeding that the trustee filed against the owners of the debtor, seeking the recovery of millions of dollars of transfers that the trustee alleges that the debtor made to the defendants in the period prior to the bankruptcy filing.[9]

There are other disputes, too.  The objecting defendants take issue with what they describe as the trustee's failure to pursue estate receivables from the federal government that they contend would be sufficient, if recovered, to render the estate solvent and thereby obviate the fraudulent conveyance lawsuit.  The trustee faults the objecting defendants for failure to cooperate sufficiently with his efforts to pursue those alleged receivables.  At one point, the objecting defendants filed a motion seeking standing to act on behalf of the bankruptcy estate (in lieu of the chapter 7 trustee) to file claims and seek to recover on part of the alleged government receivable.[10]   The trustee then filed a Rule 11 motion against the objecting

---

[4] D.I. 151.

[5] D.I. 152.

[6] D.I. 173.

[7] Those creditors are referred to as the "judgment creditors."

[8] *See* D.I. 228.

[9] *See Miller v. Mott, et al.,* Adv. Proc. No. 23-50004-CTG (Bankr. D. Del.).  Certain of the defendants are the parties objecting to the retention of Chipman Brown.  Those parties are referred to as the "objecting defendants."

[10] D.I. 328.

defendants, contending that there is no competent evidence supporting the alleged receivable and that counsel for the objecting defendants failed to conduct reasonable diligence before filing the standing motion. And while the objecting defendants have since withdrawn the standing motion, the parties remain in discovery with respect to the trustee's Rule 11 motion.[11]

One additional aspect of this case's procedural history is also relevant to the current motion. After the judgment creditors, Bering Straits Logistics Services, LLC is the debtor's next largest creditor.[12] While Bering Straits has not been particularly active in the bankruptcy case, it did participate (incidentally) in the hearing on the motion to dismiss, as well as the hearing on the contested trustee election. Bering Straits' lead counsel has been Cabot Christianson, P.C., an Alaska-based law firm. Chipman Brown had served as Bering Straits' Delaware counsel.

In November 2023, David W. Carickhoff and Bryan J. Hall, the two lawyers from Archer & Greiner who were most actively involved in the representation of the chapter 7 trustee, moved to Chipman Brown, thus precipitating the trustee's motion to retain Chipman Brown. Before Carickhoff and Hall joined Chipman Brown, Bering Straits consented to the substitution of Potter Anderson & Corroon LLP as its Delaware counsel, and the chapter 7 trustee agreed to engage separate counsel if he wished to proceed against Bering Straits.[13]

The objecting defendants object to the motion, claiming that Chipman Brown's prior representation of Bering Straits precludes it from serving as general bankruptcy counsel to the chapter 7 trustee.

## Analysis

### I.   The objecting defendants lack standing to object to the retention under 11 U.S.C. § 327(c).

The Court begins with the presumption that the objecting defendants, who hold equity in the debtor, are parties-in-interest in the bankruptcy case and have standing to appear and be heard on any dispute that might affect the value of their equity interests in the debtor. But even accepting the broadest possible view of standing as a general matter, a provision of the Bankruptcy Code, 11 U.S.C. § 327(c),

---

[11] *See* D.I. 385.

[12] Bering Straits Logistics Services, LLC is referred to as "Bering Straits."

[13] D.I. 399-1 at 2 (Hall Declaration).

addresses who may object to the retention of counsel on account of that counsel's representation of a creditor.  It provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.[14]

This language expressly and unambiguously limits standing to object to a retention in these circumstances to other creditors or the United States trustee.  The objecting defendants are neither.  They hold equity in the debtor but are not creditors.  They therefore lack standing to raise this objection.

The objecting defendants respond to that argument by taking issue with the assertion that they are not creditors.   Their basis for creditor status is 11 U.S.C § 502(h), which provides that "[a] claim arising from the recovery of property under section … 550 … of this title shall be determined, and shall be allowed … or disallowed … the same as if such claim had arisen before the date of the filing of the petition."[15]

Because the objecting defendants are being sued for a fraudulent conveyance, with the trustee's claim to recover the allegedly fraudulent conveyance arising under § 550, the objecting defendants assert that § 502(h) renders them creditors.  But that is wrong.  Section 502(h) does not *create* a claim, it merely addresses *when* a claim that might come into being as a result of the trustee's recovery of property would arise.  The provision states that if one holds a claim that arises from the recovery of property under § 550, the claim is treated as a prepetition claim.

There are contexts in which this provision does important work.  Consider a vendor that was owed $1,000 for goods or services provided before the bankruptcy and received payment in full on that claim in the 90-day period before the bankruptcy filing.  The prepetition payment effectively allowed that creditor to be paid in full on its claim, while other general unsecured creditors would receive whatever *pro rata* distribution was available to similarly situated creditors.  For our purposes, let's assume that is $.30 on the dollar.

---

[14] 11 U.S.C. § 327(c).

[15] 11 U.S.C. § 502(h).

Under 11 U.S.C. § 547, the trustee may be able to avoid the $1,000 payment as preferential and recover the $1,000 from the vendor. But if the trustee in bankruptcy can recover $1,000 from the vendor, then the vendor is *worse* off than it would have been had it not received the prepetition payment, in which case it would have come into bankruptcy holding a $1,000 claim on which it would have received a *pro rata* distribution of $300. Section 502(h) solves that problem. It allows the preference defendant who repays the $1,000 to assert a prepetition claim for $1,000, and thus receive whatever *pro rata* distribution other similarly situated creditors are receiving.

Section 502(h) may also have some application in a fraudulent conveyance case. Consider a customer of the debtor who (without any knowledge of the debtor's fraudulent intent) buys a widget from the debtor for $100 that was actually worth $1,000. Because the customer did not pay reasonably equivalent value, the transfer of the widget may be avoidable by the trustee in bankruptcy under 11 U.S.C. § 548. In that case, § 548(c) gives the customer a lien on the widget to the extent of the value it paid, here, $100. Section 502(h) thus allows the customer, after returning the widget, to assert its secured claim.

The objecting defendants argue that because they are being sued under § 550, they are creditors holding contingent claims under § 502(h). And the objecting creditors are right in their suggestion that the fact that all of this is contingent on what might happen the adversary proceeding does not matter. The Bankruptcy Code's definition of claim is extremely broad and expressly includes "contingent" claims.[16]

That is all fine and good. But in order to have standing, the objecting defendants must still describe some set of circumstances in which they might end up holding a claim. They are being sued for fraudulent conveyance, not a preference, so they are unlike the vendor whose prepetition claim against the debtor would be restored when it repays the preferential payment it received. And unlike the widget-buyer in the fraudulent conveyance example, there is no allegation or suggestion that the objecting defendants paid anything in exchange for the prepetition transfers the debtor made to them. Their position throughout the bankruptcy case has been that the alleged transfers were tantamount to dividends of profits that a solvent corporation might make to its shareholders on account of their ownership of the company. The objecting defendants (despite being given every opportunity to offer a theory) have made no suggestion that there is any circumstance in which they would hold a claim against the debtor. As such, they are not creditors. Under the plain

---

[16] *See* 11 U.S.C. § 101(5).

language of § 327(c), they may not object to the trustee's motion to retain Chipman Brown.

## II. Even if the objecting defendants had standing, their objection to the application would nevertheless be overruled because it lacks merit.

In the alternative, however, the Court has little trouble finding Chipman Brown to satisfy the requirements of § 327(a) of the Bankruptcy Code. Section 327(a) provides that the "trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

In *In re Marvel Entertainment Group*, the Third Circuit described the standard under § 327(a) as one that depends on which of three categories is applicable:

> (1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion—pursuant to § 327(a) and consistent with § 327(c)—disqualify an attorney who has a potential conflict of interest and (3) the district court may not disqualify an attorney on the appearance of conflict alone.[17]

The Court is satisfied that Chipman Brown has no "actual conflict" that precludes its representation of the trustee. Bering Straits is a former rather than a present client of the firm's. And Bering Straits, which has the same lead counsel it has had throughout the case and new Delaware counsel, has not objected to the retention in any way.

At most, any conflict is "potential." And under *Marvel*, in the case of a "potential" conflict, the bankruptcy court has discretion to approve or disapprove the retention, based on the court's assessment of the totality of the circumstances. The objecting defendants contend that Bering Straits has some connection to the trustee's Rule 11 motion and that one or more lawyers at Chipman Brown may end up as witnesses in connection with that motion. And the objecting defendants further argue

---

[17] 140 F.3d 463, 476 (3d Cir. 1998). The objecting defendants urge the Court to apply the standard adopted by the Bankruptcy Court for the Northern District of Illinois in *In re Envirodyne Indust., Inc.*, 150 B.R. 1009 (Bankr. N.D. Ill. 1993). While the facts of *Envirodyne* are materially different from those here (the creditor in that case remained a client of the firm whose retention was at issue) such that it by no means clear that application of *Envirodyne*'s standard would lead to a different outcome in this case, this Court nevertheless believes it more appropriate to apply the principles set forth by the Third Circuit in *Marvel*.

*In re Team Systems International LLC*, No. 22-10066
February 1, 2024
Page 7 of 7

that the trustee will be required to retain conflicts counsel to deal with any possible objection to the Bering Straits proof of claim.[18]

This Court's assessment, based on its experience in having presided over this highly contentious bankruptcy case for more than two years, is that whatever disputes the estate may have with Bering Straits are of relatively minor importance in the scheme of this bankruptcy case. And even if an attorney from Chipman Brown were to be called as a witness in the Rule 11 Motion, that possibility would not bar other attorneys from Chipman Brown from continuing as counsel to the trustee. Nonetheless, the objecting defendants have made no persuasive argument that such testimony will be relevant to the Rule 11 dispute.

In sum, on the totality of the record and based on the extensive knowledge that the attorneys now at Chipman Brown have obtained over the course of this very contentious bankruptcy case, the Court does not believe that the circumstances identified by the objecting defendants provide a sufficient basis to deny the trustee's application. The application will therefore be granted, and a separate order will be entered.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge

---

[18] That proof of claim was objected to immediately before the § 341 meeting. The objection was withdrawn without prejudice in December 2023. *See* D.I. 398.