# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TEAM SYSTEMS INTERNATIONAL, LLC,<br><br>            Debtor. | Chapter 7<br><br>Case No. 22-10066 (CTG) |
| George L. Miller, solely in his capacity as the Chapter 7 Trustee of Team Systems International, LLC,<br><br>            Plaintiff,<br><br>-against-<br><br>Deborah Evans Mott, Steven M. Acosta, Christopher Mott, John S. Maciorowski, Addy Road LLC, Brent Road LLC, Benjamin P. Smith, Jessica M. Smith, TSI Gulf Coast, LLC, TSI Education & Training, Inc., and Team Systems International Southeast LLC, and<br><br>John Does 1-100,<br><br>            Defendants. | Adv. Proc. No. 23-50004 (CTG)<br><br>**Re: Bankr. D.I. 422, 423 & 437**<br>    **Adv. Pro. D.I. 145, 146 & 154** |

### DEFENDANTS' MEMORANDUM OF LAW
### IN REPLY TO THE U.S. TRUSTEE'S
### OBJECTION TO THEIR RULE 60(B)(3) MOTION

Deborah Evans Mott ("Mott"), Steven M. Acosta ("Acosta"), Christopher Mott ("Chris Mott"), John S. Maciorowski ("Maciorowski") (Mott, Acosta, Chris Mott, and Maciorowski are collectively referred to herein as the "Members") and Addy Road LLC ("Addy Road" and, together with the Members the "Defendants"), by and through their undersigned counsel, hereby submit this memorandum of law in reply to the Objection (the "UST Objection") by the United States Trustee (the "UST") to Defendants' Motion to set aside the Court's prior decision, entered on January 31, 2023 (D.I. 304; Adv. D.I. 29) (the "Decision") on the grounds of Federal Rule of Civil Procedure 60(b)(3).

Defendants' initial Motion papers showed that this Court has been under the impression at least since March, 2022, that the Debtor had little ongoing business at the time it sought chapter 11 protection, influencing the Court's decision to convert that case to a chapter 7 proceeding and to make findings regarding the Debtor's solvency, including in connection with the Court's January 31, 2023 Decision.  The UST's Objection makes two points in response.

First, the UST argues that Defendants seek to overturn this Court's decision converting this case to chapter 7, and that such relief is time-barred under Rule 60(b)(3).  In fact, Defendants' Motion seeks relief only with respect to the January 31, 2023 Decision.  In rendering that Decision, the Court analyzed claims of constructive fraud, for which solvency is a relevant issue.  *See* 11 U.S.C. § 548.  As the Court put it, a company's owner may decide to "distribute cash to myself when I think I can.  That's fine except, if you turn out to be insolvent and you do that, to then run the risk." [D.I.291 at 239:7-13].  As is set forth below, the UST in March, 2022 made misleading statements in Court to support its argument that the Debtor had little to no ongoing business, and

thereafter the Court addressed solvency issues as though the UST's statements were accurate and as though the Debtor had little ongoing business at the time it sought chapter 11 protection.[1]

Second, the UST defends as accurate its statement that "[t]wo of [the Debtor's] contracts . . . only one of them is apparently still operable, the other one apparently is not." [D.I. 191 at 100:12-14]. The UST's Objection misses the point.

At the March 16, 2022 hearing, the UST argued that the Debtor "really [had] no ongoing business" and that the Debtor "has few, if any, real assets, a modicum of ongoing operations, and no employees," and therefore that chapter 11 protection was improper, because there was no ongoing business to preserve. [D.I. 191 at 104:10-17, 98:2-3]. The Court understood the UST's argument, stating "I understand the issue here is, all right, [the Debtor] filed [in] order to obtain the benefit of the automatic stay to what end?" [*Id.* at 103:20-22 (emphasis added)].

To support those argument, the UST repeatedly claimed that the Debtor only had one government contract. [*Id.* at 100:12-14; 104:18-19]. Thus, while the UST's Objection focusses on proving the accuracy of the UST's "one contract" statements, that focus is beside the point. The UST mislead this Court into believing that because the Debtor had only "one contract," the Debtor lacked any substantial business to protect through a chapter 11 proceeding.

The DLA fuel contract identified as the Debtor's "only" contract [D.I. 437 ¶ 23] was a Multiple Award Task Order Contract ("MATOC") and encompassed multiple fuel orders on an as-needed basis. That contract was not a "one-off" contract but instead a continuing source of

---

[1] Defendants previously have pointed out that, in contrast to claims that the Debtor was insolvent, the Trustee filed a 2021 tax return for the Debtor indicating $11.7 million in accounts receivable, which is considered accrued income.  26 CFR §1.446-1(C)(ii)(a).  The Trustee also has pursued at least one pre-petition receivable against FEMA for work performed in response to Hurricane Maria.  Defendants also object to other party's characterizations of distributions to Defendants as "insider" or "fraudulent" transfers, and maintain that no fraud – constructive or actual – has been shown for any such transfer.

business. It had a potential value of over $2 million. *See* Exhibit A. Mr. Acosta testified that the Debtor would receive as many as ten such fuel orders a day. Some of those orders were competitive bids, and some were exclusive – the Debtor did not need to bid on those orders, but instead could simply accept those orders. *See* Deborah Mott February 7, 2022, Deposition Transcript (Exhibit K) at 163-170. Defendants' Motion refers to hundreds of these offers, and the Debtor has received at least 2,485 such fuel orders under the DLA MATOC. The nature of the DLA MATOC was described in the February 2022 testimony but discounted by the UST for no discernible reason, and the Defendants' testimony that the Debtor would continue to receive such orders has proved entirely accurate. A sample of fuel orders under the DLA MATOC is attached hereto as Exhibit B.[2]

Indeed, Defendants' Memorandum included an email from DLA demanding to know why the Debtor did not respond to an urgent fuel request relating to the current U.S. Navy Red Sea operations. Francis Murphy, Contract Administrator for DLA Energy sent Defendants an email dated June 29, 2022, referencing the DLA MATOC and demanding to know why the Debtor had not responded to "several orders":

> *"As far as DLA Energy is concerned this contract remains in effect and TSI's obligation to deliver when orders are placed remains.*
>
> *I see that TSI has not fulfilled an order under the contract since November, 2021. Several orders placed since then were either declined, cancelled, or were not accepted at all."*

*See* Exhibit D.

---

[2] The Trustee has been repeatedly informed of these fuel orders, as has the UST. Both refused to do anything to allow the filling of the orders by the Debtor, either out of ignorance of how the business worked or indifference to the income that it would produce (or perhaps because the fuel orders disprove their claims that the Debtor was without substantial business). *See* Exhibit C.

Since that email, the U.S. Navy has been in a state of combat in the relevant region and needs fuel.[3] Clearly, the Debtor had a viable ongoing business and the UST incorrectly argued otherwise.

At the time it filed its chapter 11 petition, the Debtor also had a contract to provide wiring systems for Patriot missiles. *See* Exhibit E. This contract arose from an ongoing relationship with KSM (recently acquired by another company) that provided periodic opportunities to provide specialized wiring and connection systems to the U.S. military. Follow-up on such opportunities has been frustrated by the bankruptcy.

Other sources of business also existed at the time of the Debtor's chapter 11 filing. The AIRCARD described in Mr. Acosta's testimony and dismissed by the UST was an IDIQ MATOC agreement to supply jet fuel at the request of the military. That agreement was extended in March, 2022. *See* Exhibit F. The SEACARD was another IDIQ MATOC agreement to provide fuel at the request of the military. *See* Exhibit G. The SEACARD led to thousands of fuel task orders, including orders post-petition. Exhibit H is a composite of those orders.

Accordingly, the UST was incorrect when it told this Court that the Debtor had "only one" operable contract, only "a modicum of ongoing operations," and no substantial ongoing business to protect through its chapter 11 filing. The Court relied upon those statements thereafter, including with respect to the January 31, 2023 Decision. The UST's Objection fails to rebut the UST's misrepresentations and does not otherwise state any valid reason to deny the Motion.

Dated: February 27, 2024                      Respectfully submitted,
       Wilmington, Delaware

---

[3] The Debtor was a key fuel provider to the CENTCOM region. *See* Exhibits I and J. The Debtor was an American company with an FCL operating in the region.

{00038212. }                         4
4716510.3

**THE ROSNER LAW GROUP LLC**

<u>/s/ Frederick B. Rosner</u>
Frederick B. Rosner (DE #3995)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Phone: (302) 777-1111
Email: rosner@teamrosner.com

**GOLENBOCK ASSOR BELL & PESKOE LLP**

<u>/s/ Michael M. Munoz</u>
Michael M. Munoz (admitted *pro hac vice*)
711 Third Avenue
New York, New York 10570
Phone: (212) 907-7345
Email: mmunoz@golenbock.com

**RANDY MOTT, ESQ.**

<u>/s/ Randy Mott</u>
Randy Mott, Esq.
DC Bar 211037
1627 K St. N.W. Suite 400
Washington, DC  20006
Phone: 202-470-0106
randymott@rmottlaw.com
(*pro hac vice* motion pending)

*Counsel to Deborah Evans Mott, Steven M. Acosta, Christopher Mott, John S. Maciorowski, Addy Road LLC and Team Systems International Southeast LLC*