## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TEAM SYSTEMS INTERNATIONAL,<br>LLC,<br><br>    Debtor. | Chapter 11<br><br>Case No. 22-10066 (CTG)<br><br>**Related Docket No. 339** |

## ORDER TO SHOW CAUSE WHY SANCTIONS
## <u>MOTION SHOULD NOT BE DENIED</u>

The debtor was a government contractor.  It filed a chapter 11 case after two creditors received large judgments in a breach of contract action in the U.S. District Court for the Northern District of Florida.  After an extensive evidentiary hearing on a motion to dismiss the bankruptcy, this Court converted the case to one under chapter 7.

The debtors' owners ("members," to use the vocabulary of a limited liability company) believe that the debtor is solvent because of large receivables due from the government on account of its prepetition work.  The debtor is also alleged to have made substantial prepetition payments to the members that the trustee seeks to avoid as fraudulent conveyances.

Because collection of the alleged receivables could generate sufficient funds to pay all unsecured creditors, the recovery of those funds would essentially moot the fraudulent conveyance litigation against the members (who would themselves receive any distributions of estate proceeds after claims are paid in full).  The members have therefore expressed frustration at the trustee's determination to focus its efforts on

pursuit of its fraudulent conveyance case, rather than the collection of the receivables.

At the same time, the chapter 7 trustee has expressed his share of frustration at what he describes as the members failure to provide him with the information he says he needs to pursue the alleged receivables.

The members filed a motion in which they sought derivative standing to pursue the receivables on behalf of the bankruptcy estate. [D.I. 328] The trustee responded by filing a Rule 11 motion, contending that there was no reasonable basis for bring the standing motion both because (a) the law does not permit a court to grant derivative standing to equity holders in a chapter 7 case and (b) there is no support for the contention that the receivables in question were in fact validly due and owing to the bankruptcy estate. [D.I. 339] The members thereafter withdrew the standing motion, contending that the statute of limitations to pursue the receivables had expired and that there was therefore no longer any point in obtaining standing to pursue them. [D.I. 385]

Litigation over the sanctions motion nevertheless continued, and the members sought extensive discovery against the trustee in response to the Rule 11 motion. The trustee filed two letter motions seeking to quash that discovery. [D.I. 466, 468]. The members responded to both of those motions. [D.I. 472, 478].

The Court has two overarching observations that inform its approach to the pending disputes, both of which relate to the Court's broader concern that the

disputes in this bankruptcy case need to move forward towards resolution on their merits rather than becoming bogged down in what appear to be sideshows.

*First*, the Court believes that the Bankruptcy Code vests the trustee with substantial discretion in making the strategic and tactical decisions involved in administering a bankruptcy estate. Holding aside the question whether the standing motion was sanctionable, the Court is hard pressed to believe that it would have thought it appropriate to displace the trustee as the individual or entity responsible to decide, on behalf of the bankruptcy estate, whether to pursue the receivables in question. The Court appreciates that the members strenuously disagree with the trustee's business judgments about how to administer this bankruptcy estate. Nevertheless, the trustee is the trustee.

*Second*, Bankruptcy Rule 9011 provides that an attorney who files a paper with the court certifies, among other things, that "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" and that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."[1]

If that direction is violated, "the court *may* … impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are

---

[1] Fed. R. Bankr. P. 9011(b).

responsible for the violation."[2]  The law is clear, however, that a court should not have a quick trigger in imposing such sanctions. To the contrary, "the rule is meant to be applied sparingly."[3]  Some litigation conduct, of course, is so improper that the imposition of Rule 11 sanctions is necessary and appropriate to protect other parties and the integrity of the Court's processes.  But one should not jump too quickly from the determination that an argument or assertion is incorrect to the conclusion that it is sanctionable.

The typical reason for granting derivative standing in bankruptcy is a concern that debtor in possession in a chapter 11 case may be reluctant to bring a suit against its own insiders.[4]  Because that concern is, by definition, absent in a case in which an independent chapter 7 trustee is appointed, this Court had earlier noted that it was not obvious that the notion of derivative standing ought to be applicable in a chapter 7 case.  In the interim, however, the Court has had occasion to focus on the Third Circuit's decision in *Cybergenics*, which is the leading case in this jurisdiction on a bankruptcy court's authority to grant derivative standing.[5]  That opinion makes clear that the court grounded the authority in substantial part on the fact that there was an established pre-Code practice, under the 1898 Bankruptcy Act, of granting

---

[2] Fed. R. Banrk. P. 9011(c) (emphasis added).

[3] *Vehicle Operation Tech. LLC v. American Honda Motor Co. Inc.,* 67 F.Supp.3d 637, 649 (D. Del. 2014).  *See also Trustees of Amalgamated Ins. Fund v. Crown Clothing, Inc.,* 27 F. Supp. 2d 507, 516 (D.N.J. 1998) ("While courts have discretion to impose sanctions for a litigant's abuse of process, such discretion should be exercised with restraint.")

[4] *See generally In re Pack Liquidating, LLC*, No. 22-10797, 2024 WL 409830 (Bankr. D. Del. Feb. 2, 2024).

[5] *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery,* 330 F.3d 548 (3d Cir. 2003) (en banc).

derivative standing to creditors.  In addition, the *Cybergenics* court relied on many cases in which the estate was otherwise being run by an independent trustee or receiver.[6]

Because Rule 9011 requires only that the claim be supported by "existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," in light of this language in *Cybergenics,* the Court is doubtful that the fact that this case involves members of a limited liability company that is in chapter 7 is likely to be sufficient to render the motion for derivative standing sanctionable under Rule 11.

The sanctions motion also contends that the members should be sanctioned because the claim that the receivables at issue were valid lacked evidentiary support. The Court has heard a great deal throughout the bankruptcy case about the debtor's alleged receivables.  As the Court observed before, if the Court thought it likely that the debtor was (as the members have argued at every turn) on the brink of bringing in sufficient funds to permit all creditors to be paid in full, it likely would not have converted the case to chapter 7.  That said, the chapter 7 trustee himself testified at an earlier stage of the case that he believed that certain of the receivables had substantial value.  The Court is candidly unclear about exactly what evidence the members had with respect to the alleged receivables that were the subject of the standing motion.  In light of all of the uncertainties around the validity of the estate's

---

[6] *Id.* at 570 & n.7 (collecting cases).

5

alleged receivables, however, the Court is doubtful that the record is so cut and dried that the receivables are *invalid* as to render the standing motion sanctionable.

For those reasons, the Court considers it unlikely that it would elect to impose sanctions even if the factual allegations set forth in the trustee's standing motion turned out to be true. And the Court's instinct is that the purposes of the Bankruptcy Code would be advanced if the motions for derivative standing and for sanctions were both put in the rear-view mirror and the parties focused their energies on the merits of the fraudulent conveyance claim that the trustee has determined to pursue.

While this Court's usual instinct is to grant the parties broad latitude to litigate their disputes as they see fit and to resolve the disputes that the parties bring it, in the unusual circumstances presented here the Court believes it appropriate for it to play a more active role in seeking to advance these disputes towards resolution. The Court accordingly directs the trustee to show cause, in a brief that shall not exceed 20 pages to be filed by 5:00 p.m. on May 17, 2024, why the Court would not and should not exercise its discretion to deny the motion for sanctions even if the factual allegations set forth in the standing motion were proven, after an evidentiary hearing, to be true. The members may respond to the trustee's brief in a responsive brief, not to exceed 20 pages, to be filed on or before 5:00 p.m. on June 6, 2024.

The Court will issue such further order(s) as it deems appropriate following the receipt of this briefing.

Dated: April 17, 2024

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE