## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TEAM SYSTEMS INTERNATIONAL, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 22-10066 (CTG)<br><br>**Related Docket Nos. 538, 561** |

### **PRELIMINARY OBSERVATION**

Having reviewed the parties' submissions, the Court sets forth these preliminary observations, in advance of the October 23, 2024 hearing, on Bering Straits' motion to stay the TSI members' objection to the allowance of Bering Straits' proof of claim.[1]

In February 2022, Bering Straits filed a proof of claim asserting a general unsecured claim against the debtor in the amount of $1,516,745.69.[2] The TSI members filed an objection to the proof of claim in June 2024, alleging that the proof of claim was the result of a "duplicate billing of transportation costs." They allege that allowance of the proof of claim would result in double recovery and would violate the False Claims Act.[3]

---

[1] Bering Straits Logistics Services, LLC is referred to as "Bering Straits." The "TSI members" are the holders of equity interests in the debtor, and defendants in an adversary proceeding brought by the trustee seeking to recover certain prepetition transfers on, *inter alia*, the grounds that they constitute fraudulent conveyances. *See Miller v. Mott, et al.*, Bankr. D. Del. No. 23-50004.

[2] D.I. 522-3.

[3] D.I 522 at 2-4.

Bering Straits responded by filing a motion to stay the TSI members' objection, alleging both that the TSI members lack standing to prosecute the claim objection and that the objection is premature at this stage of the Chapter 7 case.[4] Shortly thereafter, the TSI members sought to take discovery on their claim objection, serving subpoenas on certain Bering Straits employees. On September 5, 2024, Bering Straits moved to quash the subpoenas served by the TSI members.[5]

The Court's preliminary observation is that the TSI members' objection to Bering Straits' proof of claim, and all discovery related thereto, should be stayed pending resolution of the fraudulent conveyance claim asserted by the trustee against the TSI members. The allowance or disallowance of the Bering Straits claim may or may not make a practical difference to the TSI members. If the TSI members prevail on the trustee's fraudulent conveyance action or if their liability (plus the value of the other assets in the estate) is less than the debtors' total indebtedness *without* considering the Bering Straits claim, then the allowance or disallowance of the Bering Straits claim will make no economic difference to the TSI members. The TSI members will have a practical stake in the allowance or disallowance of the Bering Straits claim only if their liability to the estate (plus the value of the other assets in the estate) is greater than the estate's indebtedness *without* the Bering Straits claim. The Court is thus inclined, subject to hearing the parties' arguments, to quash the subpoena requests without prejudice to the TSI members' right to re-serve them if it

---

[4] D.I. 538 at 1-2.

[5] D.I. 561.

turns out that the allowance or disallowance of the Bering Straits claim will make an economic difference to the TSI members.

Bering Straits first argues that the TSI members lack standing to prosecute the claim objection.[6] The Court is unpersuaded by that argument. 11 U.S.C. § 502(a) states that any "party in interest" has standing to object to the allowance of a claim in a chapter 7 case. Bering Straits suggests that notwithstanding the language of § 502(a), only the chapter 7 trustee may object to proofs of claim.[7] It is true that there are cases that have so held.[8]

The Supreme Court, however, recently held in *Truck Insurance* that the phrase "party in interest" is meant to be interpreted broadly and should include any party who is "potentially concerned with, or affected by, a proceeding."[9] In light of *Truck Insurance*, § 502(a) must be read to permit not only the chapter 7 trustee, but all parties with a direct financial stake in the outcome of a claims allowance dispute, to object to the allowance of claims.[10]

---

[6] D.I. 538.

[7] D.I. 538 at 6.

[8] *See Pascazi v. Fiber Consultants, Inc.*, 445 B.R. 124, 129 (S.D.N.Y. 2011).

[9] *Truck Insurance Exchange v. Kaiser Gypsum Company, Inc.*, 602 U.S. 268, 269 (2024).

[10] *See 4 Collier on Bankruptcy* ¶ 502.02[2] (16th ed. 2023) (stating that, despite the split in authority in prior years, "the phrase 'parties in interest' in section 502(a), although not defined, necessarily includes those who have an interest in the assets of the debtor being administered in the case. Under such definition, the debtor's creditors, [the debtor, and at times, the equity holders,] are primary parties in interest. Thus, the right of these [primary parties in interest] to object to the allowance of another creditor's claim should be undisputed.").

Courts routinely grant standing to chapter 7 debtors to object to claims when there is a surplus or a reasonable possibility of surplus in the estate.[11] When the estate is solvent, the debtor maintains a pecuniary interest in the outcome of claims objections because the disallowance or reduction of a challenged claim will increase the refund to the debtor after the estate satisfies all allowed claims.[12] Therefore, if the debtor can show a reasonable possibility of surplus after all claims are paid, then the debtor is a "party in interest" under 11 U.S.C. § 502(a) and has standing to object to the proof of claim.[13] In corporate chapter 7 cases, if there is a surplus in the estate, the distribution made out to the debtor under 11 U.S.C. § 726(a)(6) is effectively a distribution to the debtor's equity holders.

For current purposes, one can hold aside the fact that if the TSI members are liable for an amount in excess of all of the estate's indebtedness, including the Bering Straits claim, any amounts they pay into the estate in excess of the estate's indebtedness would essentially be "round tripped" back to them on account of their equity interests. For the purposes of the current motion, it is sufficient that if the TSI members prevail, or if their liability on the trustee's claim (plus the total value of the other assets in the estate) is less than the estate's indebtedness without the

---

[11] *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) (citing Collier on Bankruptcy § 721.02[2] 15th ed. Rev. 1996); *id.* at § 502.02[2][c]); *In re Licata*, 659 F. App'x 704, 706 (2d Cir. 2016); *In re Thompson*, 965 F.2d 1136, 1143-1144 n. 12, 1148 (1st Cir. 1992); *In re Toms*, 229 B.R. 646, 650 (Bankr. E.D.P.A. 1999) (citing *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998).

[12] 11 U.S.C. § 726(a)(6); *In re Partners Group Financial, LLC*, 394 B.R. 68, 74 n.2 (Bankr. E.D.P.A. 2008).

[13] *In re 60 E. 80th St. Equities*, 218 F.3d at 115.

Bering Straits claim, then the allowance or disallowance of the Bering Straits claim will make no difference to the TSI members. They will be obligated to pay any judgment the trustee may obtain, and the proceeds of the estate will be distributed to creditors in accordance with their statutory priority.

If the amount the TSI members are obligated to pay exceeds that amount, then the allowance or disallowance of the Bering Straits claim would affect the point at which the recoveries on any judgment would start being returned back to the TSI members on account of their equity interests. In that sense, it is *possible* that the TSI members will indeed have a practical stake in the allowance of the Bering Straits claim.

At this point in the case, however, it is too soon to know whether that will be the case. The TSI members are the only party in interest to have objected to the allowance of the Bering Straits claim. In view of the burden and expense associated with litigating a claims allowance dispute, the Court is inclined to hold that dispute in abeyance unless and until it turns out that the resolution of that dispute will make a difference to the TSI members.

The Court is thus preliminarily inclined to grant Bering Straits' motion to quash the TSI members' subpoenas without prejudice to the TSI members' rights to re-serve them if it turns out that the allowance of the Bering Straits claim will matter to them. That said, these reactions are intended to be preliminary, and the Court is open to hearing the arguments of the parties at the hearing scheduled for October 23, 2024.

Dated: October 21, 2024

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE