## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Team Systems International, LLC, | Case No. 22-10066 (CTG) |
| Debtor. | |
| George L. Miller, solely in his capacity as the Chapter 7 Trustee of Team Systems International, LLC, | |
| Plaintiff, | Adv. Proc. No. 23-50004 (CTG) |
| -against- | Re: Adv. D.I. 254, 260, 281 |
| Deborah Evans Mott, Steven M. Acosta, Christopher Mott, John S. Maciorowski, Addy Road LLC, Brent Road LLC, Benjamin P. Smith, Jessica M. Smith, TSI Gulf Coast, LLC, TSI Education & Training, Inc., and Team Systems International Southeast LLC, and | |
| John Does 1-100, | |
| Defendants. | |

### RESPONSE IN OPPOSITION TO TRUSTEE'S MOTION FOR SANCTIONS AGAINST JOHN S. MALIK AND RANDY M. MOTT

John S. Malik, Esq. ("Mr. Malik") and Randy M. Mott, Esq. ("Mr. Mott") as lawyers (collectively, "Counsel") for the TSI Members and Defendants, identified above, submit the following opposition to the Chapter 7 Trustee's Motion for Sanctions Pursuant to Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1927 against John S. Malik, Esq. and Randy M. Mott, Esq., D.I. 650 ("Motion for Sanctions"), for Counsel's filing of a Motion to Compel Abandonment of Property.

*See* D.I. 643 ("Abandonment Motion"). The claims against the Federal Emergency Management Agency ("FEMA"), comprising of the $13.5 million arising from the reduction in the volume of bottled water ("Cancellation Claim") and the $5.7 million arising from the change in transportation of water ("Change Order Claim"), totaling over $19 million (collectively, "FEMA Claims") are valuable estate assets that have not been actively pursued by the Trustee, supporting the Movants' motion. *See* D.I. 643 at ¶ 1. Counsel and Defendants request that the Court deny the Motion for Sanctions. In support of this Opposition, Counsel respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Trustee omits the fact that Counsel acted to withdraw the DLA portion of their Abandonment Motion prior to the expiration of the Rule 11 "safe harbor" period.

2. The Trustee omits that fact that the invoices in dispute <u>contained different amounts</u> than the payments that show up on the Artisan bank records, actually incorrectly stating that the DLA document "*ties the payments…to the invoices.*" *See* D.I. 650 ¶ 20.

3. The Trustee ignores the fact that the payments do not match the invoices. The table below adds the exact amount of each invoice onto the Trustee's table in a new final column. *Cf. id.* at ¶ 17. Note also that the payment dates on the Trustee's table, *id.*, occur before the date of the statement.

| Bates Nos. | Statement Date | Payment Date | Amount | Corresponding Invoice(s) | Invoice amount |
|---|---|---|---|---|---|
| TSI000841 P0002200 | 11/30/21 | 11/18/21 | $29,187.49 | 54878 | **$29,287.98** |
| TSI000834 P0002193 | 12/31/21 | 12/6/21 | $22,869.63 | 55229 | **$22,931.01** |
| TSI000811 P0002197 | 1/31/22 | 1/5/22 | $48,307.59 | 55341 and 55398 | **$48,444.90** |
| TSI000811 P0002197 | 1/31/22 | 1/10/22 | $28,004.40 | 55369 | **$28,084.00** |

4. The fueling was generally done for Sentinel Class cutters that involved several of the same class and repeated refueling of the same boat. *See* D.I. 443-2.  Counsel pointed out in previous pleadings that the absence of identifying information on the invoice being paid made it impossible to determine that the Trustee's different amounts (shown above) were actually associated with the invoices that they claim.[1] *See, e.g.,* D.I. 647 at 4 (discussing the "lack of documentation for necessary tracking information"). Like fueling a car, price changes and volume variations can result in different final amounts with each pump, meaning an invoice *almost* matching an amount is insufficient to show it was paid. It is reasonable, if not likely, that a similar issue occurred in this instance.

5. The Trustee incorrectly claims that Counsel's statements "contain false contentions that the amounts paid … do not match the DLA invoices." *See* D.I. 650 ¶ 3. The amounts do not match and the Federal Government does not pay an invoice with such a consistent error.

6. While accusing Counsel of taking "unfounded cheap shots," the Trustee levels an *ad hominem* attack regarding the use of artificial intelligence in attempting to sanction Counsel for a pleading they did not file. *Id.* at ¶¶ 4, 11 (citing D.I. No's 615, 616). Mr. Malik had not entered his appearance at the time and Mr. Mott was incapacitated with a spinal injury in Poland. *See* Adv. D.I. 409 (Mr. Malik entering his appearance on June 20, 2025, over 4 months after the filing of prior counsel's motion to compel abandonment, *see* D.I. 612); *see also* Adv. D.I. 391 (Trustee's Counsel noting Mr. Mott's then-recent "medical treatment"). Mr. Mann was the filer

---

[1] The Trustee's redacted DLA production, lacking Electronic Fund Transfer ("EFT") and Trace Check Number data due to security clearance limitations, *see* D.I. 645-3, made definitive payment matching difficult.

and the attorney normally charged with proofing pleadings for the TSI members. In this case, he was the only lawyer participating at the time.[2]

7. The Trustee now claims that the FEMA Claims were "dubious" and has dropped all efforts to collect them.[3] D.I. 650 at ¶ 28. Yet the Trustee refuses to legally abandon them, which would merely recognize their actual status at this point.

8. The Trustee omitted the fact that Mr. Acosta's anticipation of filing the Change Order Claim in March 2022 was subsequently disrupted by TSI consultant Mark S. Moritz' illness.[4]

9. The Trustee assumes that the shift from break bulk (pallet delivery) to shipping containers incurred no extra cost or was done without FEMA direction. These assumptions are contradicted by the extensive documents in the Trustee's hands. *See* Bates Nos. D000001-D022481; D.I 167-5 (Bering Straits Proof of Claim).[5] Among others, these documents include a certified claim dated October 2, 2023, documenting an additional $0.46 per liter cost due to

---

[2] Mr. Mott's spinal injury occurred the first week of December 2024. He was in and out of emergency rooms and medicated until he was admitted and confined to a hospital bed for 90 days until June 1, 2025. If full medical records need to be supplied, Mr. Mott is prepared to enter them into the record, despite his privacy rights.

[3] This result, achieved through the Trustee's administration via David Carickhoff and Venable LLP, represents the loss of a significant estate asset. The Trustee's approach to the litigation, coupled with his decision not to utilize the TSI Members' expertise, contributed to this outcome.

[4] Gellert's admission to the Court that Acosta's testimony "could be misleading" due to being "misinformed" is contradicted by the March 23, 2022, emails. *See* D.I. 144; *see also* D.I. 647-8, 9. These show scheduled meetings between Acosta, St. Moritz, and Venable to advance the claims, with delays attributed to St. Moritz's medical procedure and scheduling. The misleading testimony appears to have stemmed from Gellert's failure to communicate adequately with his client or accurately represent the claims' status.

[5] The Trustee tries to use the amended amount of the change order as evidence of something amiss, *see* D.I. 650 ¶ 35, ignoring that Bering Strait's transport of the containers was the change order activity and needs to be adjusted due to their double-billing the first leg of that transport. *See* D.I. 522-11.

FEMA's change in delivery requirements. *See* D.I. 643-3 at 9. All in all, the total claim amount is $5,738,935.75 based on 12,479,040 liters delivered. *Id.* at 10. Supporting documentation also included FEMA's October 6, 2017, directive to shift from break bulk to container delivery. *Id.* at 10-14. Additionally, itemized subcontractor costs, *id.* at 9 & 15, further support the claim.[6]

10. The Trustee continues its false narrative that relevant documents were not turned over, despite having all of the documentation in hand. This includes the details on the change order that were provided to the Trustee on October 5, 2023, and are now ignored. *Id.* at 7. There was never any response from the Trustee or Venable that identified additional necessary missing documents. *See, e.g.,* D.I. 643-3, 643-4. Mr. Carickhoff entered that case as Counsel and had access to the full docket. *See* D.I. 647-7; *see also Team Sys. Int'l, LLC v. Sec'y of the Dep't of Homeland Sec.*, D.I. 15 at 26, No. 23-1556 (Fed. Cir. 2023) (noting Mr. Carickhoff's notices of appearance in a Federal Circuit case involving TSI).

11. The Trustee continues to take "cheap shots" unrelated to either the Abandonment Motion or their sanctions motion. These are irrelevant to the application of Rule 11 or Section 1927, but are refuted in a section at the end of this pleading.[7]

---

[6] The Trustee misrepresents the timing of the notification to TSI of the change. *See* D.I. 650.

[7] The assertion of a client's alleged misconduct in unrelated matters is generally not relevant to imposing sanctions on an attorney under Fed. R. Civ. P. 11 or 28 U.S.C. § 1927. Both provisions target the attorney's own conduct in the specific litigation: Rule 11 focuses on whether the attorney made a reasonable pre-filing inquiry and certified that the submission was not frivolous, legally unsupported, or filed for improper purposes; § 1927 targets whether the attorney unreasonably and vexatiously multiplied the proceedings in that case. Even if the Defendants' filings had been in bad faith (which they are not), courts emphasize that an attorney is not vicariously liable for a client's general bad faith or prior unrelated actions, as this would undermine the objective standards of these rules and chill zealous representation.

12.   The Trustee inaccurately asserts that several categories of documents relevant to this motion were not produced. *See* D.I. 650 ¶ 34-35. This is contradicted by the record of documents produced. *See* D.I. 239, 239-2; *see also* D.I 390-1 at 8-9.

13. The unsupported assertion that the TSI members lack a person who can certify a claim for the FEMA amounts is also manifestly inaccurate.  *See, e.g.,* D.I. 650 at ¶ 36. Besides the unsupported assumption that Deborah Mott and Steve Acosta would be rejected by FEMA (neither convicted of anything despite efforts by the Trustee), TSI members have several Government Contracting experts familiar with the FEMA response in addition to Mr. Saint Moritz. The relevance of his unsupported assertion to sanctions also seems remote.

14. The Trustee argues that Counsel did not do an adequate investigation of the abandonment claim before filing. *Id.* at ¶¶ 57-63. This is categorically untrue and more boilerplate mud-flinging from the Trustee. For example, Mr. Mott has examined the files and briefs from the FEMA case in litigation; he also has experience in federal contracting from the beginning of his decades-long career in private practice, up to recent years advising clients on defense contracting. He further reviewed all the change order material and the opinion of Mark St. Moritz (a qualified expert) on that matter. Similarly, Mr. Malik reviews and reasonably investigates the factual bases underlying all filings bearing his signature through discussions with co-counsel and his clients.

15. The Trustee raises an argument that the FEMA Claims would be false claims, ignoring initially that the Cancellation Claim was submitted without any false claim allegations being made. Documents from FEMA also debunk any question about the change order being a false claim. *See* D.I. 643-3 at 9. Finally, False Claim Act liability requires proof of individual intent (comparable, for example, to the Trustee and his Counsel seeking to pay an illegal contract

claim to the Florida creditors. *See In re Team Sys. Int'l LLC v. George L. Miller*, No. 24-3365, D.I. 35 (3d Cir. 2025). The Trustee would not be participating in any claim filed by the members and would not be covered by the statute. How this allegation proves bad faith by Counsel is also a mystery.

16. The Trustee's indemnification argument, *see* D.I. 650 ¶ 38, rests on the same defective assumptions. It is equally irrelevant to the Motion for Sanctions.

17. The Trustee asks how members (not in bankruptcy) can pay Counsel to pursue the claims. *Id.* at ¶ 39. That is irrelevant to this motion and specious. No one is enjoined by this Court from paying attorneys, especially with income unrelated to the matters covered by the bankruptcy allegations. Attorneys can also work on contingency fees. *Cf. In re Wilson*, 94 B.R. 886, 889 (Bankr. E.D. Va. 1988); *see also In re Reed*, 184 B.R. 733, 738 (Bankr. W.D. Tex. 1995).

## **LEGAL ARGUMENT**

18. The Motion for Sanctions fails the standards set by both Rule 11 and Section 1927, as explained in sections divided appropriately below. Allegations of bad faith are key to both sections and incorporated by reference into each.

## I.     **THE MOTION FAILS TO SATISY RULE 11 CRITERIA**

19. First, the Trustee ignores the motion to withdraw the DLA claims in the Abandonment Motion within the safe harbor period.  *See* D.I. 646; *see also* Fed. R. Civ. P. 11(c)(2). Appeals courts have consistently protected and expounded on the sound policy underlying this safe harbor provision:

> To facilitate deterrence, the motion may not be presented to the court unless, within twenty-one days of service, the non-movant has not withdrawn or corrected the challenged behavior. Fed. R. Civ. P. 11(c)(1)(A). A court that imposes sanctions by motion without adhering to this twenty-one day safe harbor has abused its discretion.

*Divane v. Krull Electric*, 200 F.3d 1020, 1025 (7th Cir. 1999) (citing, among others, *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 150-51 (7th Cir. 1996)).

20. The Trustee attempts to get around this prohibitive barrier as an argument that the motion to withdraw without prejudice is inadequate under Rule 11. *See* D.I. 650 ¶ 45-48. This is at odds with well-established case law and is a frivolous bad faith assertion. *See, e.g., In re Schaefer Salt Recovery, Inc.,* 542 F.3d 90, 99 (3d Cir. 2008) ("a party cannot file a motion for sanctions … if the challenged paper, claim, defense, contention, or denial is withdrawn or corrected within twenty-one days after service of the motion on the offending party.").

21. A withdrawn pleading does not subject the party to Rule 11 sanctions if it is withdrawn without prejudice within the 21-day safe harbor period under Federal Rule of Civil Procedure 11(c)(2). The rule requires that a Motion for Sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." *See* Fed. R. Civ. P. 11(c)(2). The 1993 Advisory Committee Notes clarify that this provision creates a "safe harbor" to encourage timely withdrawal, providing "protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention," and that "the timely withdrawal of a contention will protect a party." Fed. R. Civ. P. 11 (advisory committee's note to 1993 amendment).

22. Courts interpret "withdrawn or appropriately corrected" within the meaning of Rule 11 to include an unequivocal request or motion for voluntary dismissal without prejudice. *See* Fed. R. Civ. P. 11 (advisory committee's note), ¶ 20; *see also, e.g., Mourabit v. Klein*, 393 F.Supp.3d 353, 365 (S.D.N.Y. 2019) ("[T]he rule does not state that the dismissal must be with prejudice and courts have found that a dismissal without prejudice is sufficient to bring the offending party within the protection of the safe harbor provision."); *Thompson v. Steinberg,* No.

21-2444-cv, 2023 WL 353359 (2d Cir. Jan. 23, 2023) (upholding the denial of sanctions when

withdrawn without prejudice); *Nagle Industries, Inc. v. Ford Motor Co.* 173 F.R.D. 448, 458-459

(E.D. Mich 1997) (denying sanctions when timely withdrawn without prejudice); *Dee-K*

*Enterprises, Inc. v. Heveafil Sdn. Bhd*. 177 F.R.D. 351, 354 (E.D. Va. 1998) ("Plaintiffs rightly

note that Rule 11 requires only that the nonmovant 'withdraw' the paper, not that this be done

with prejudice."). [8]

    23. The Rule 11 analysis for the balance of the Abandonment Motion beyond the DLA

portion fares no better. The Trustee has stopped any efforts to collect these claims and even refers

to them as "dubious." D.I. 650 at ¶ 28. This precisely fits the standard for abandonment set out in

Section 554(b) of the Bankruptcy Code. *See* 11 U.S.C. § 554(b); *see also In re Reich*, 54 B.R.

995, 1004 (Bankr. E.D. Mich. 1985) (discussing circumstances when an "asset with equity for

the estate may … be something that should be promptly abandoned" by a trustee). In other

words, the Trustee's own characterization of the FEMA Claims would support the reasonableness

of Counsel's filing of the Abandonment Motion.

    24. The rest of the Trustee's arguments are unrelated to whether there was sufficient

cause to file for abandonment. The Trustee raised objections to the Abandonment Motion, each

easily dismissed and clearly having nothing to do with whether the Abandonment Motion as to

---

[8] *See also Robinson v. Alutiq-Mele, LLC*, 643 F.Supp.2d 1342, 1351 (S.D. Fla. 2009):

    Defendant contends that because the Rule 11 letter asked Plaintiff to dismiss the action
with prejudice, any lesser action (such as dismissal without prejudice) could not satisfy
the Rule 11 safe harbor provision. Defendant, however, presents no support for this
position. The safe harbor protection of Rule 11 is available to a litigant who 'withdraws'
the offending paper. F.R.C.P. 11(c). The Rule does not authorize the movant to place
conditions on the withdrawal or require the withdrawal to be with prejudice, in order for
the non-movant to avoid sanctions.

FEMA Claims was "frivolous" or without enough value to further pursue. The fact alone that the

Trustee agreed to fund the Cancellation Order Claim up to the U.S. Court of Appeals undermines

his argument that it was done in bad faith. His objection now seems to be that it is not worth

further pursuit, which, as explained above, would support the application of Section 554(b).

## II.    THE MOTION FOR SANCTIONS FAILS TO STATE A COGNIZABLE SECTION 1927 CLAIM.

25. The legal standard for section 1927 is a high bar:

> Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

26. The test under Section 1927 is strict and has been narrowly construed.  As federal

courts have explained time and again, "objectionable conduct—even 'unreasonable and

vexatious' conduct—is not sanctionable unless it results in proceedings that would not have been

conducted otherwise." *Peterson v. BMI Refractories*, 124 F3d 1386, 1396 (11th Cir. 1997); *but

see Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*, No. 2:14-CV-273-PRC, 2018 WL 4853500

(N.D. Ind. Oct. 5, 2018) (discussing the extreme, ongoing conduct that *is* objectionable enough

to warrant sanctions); *see also LaSalle National Bank v. First Connecticut Holding Group, LLC*,

287 F.3d 279, 288-289 (3d Cir. 2002) (collecting Third Circuit case law on the standard for §

1927, highlighting that "the statute should be construed narrowly and with great caution" and

"sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted

from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal.").

27. The Trustee's premise is that it is frivolous and in bad faith to seek to obtain assets

that are potentially worth millions that the Trustee has stopped trying to recover and now says are

of "dubious" value.[9]  On its face, this itself is a frivolous and bad faith allegation that unnecessarily multiplies the proceedings. As explored below, Trustee's repeated sanctions motions (this time, on the eve of the September 10, 2025 hearing) seem to serve no purpose other than running up Defendants' legal fees in the hopes that they run out of funds to pay Counsel and/or fail to respond to other attacks, eventually dissuading Counsel from continuing their zealous representation of TSI Members.

28. The Trustee's allegations to counter the Abandonment Motion and support their Motion for Sanctions are unsupported by bankruptcy law. Trustee routinely ignores facts in the record or misstates them. The Trustee's arguments offer absolutely no solution to the issue surrounding these assets. He will not take any action, yet denies the members their right to take action, even at their own expense and risk. The Trustee argues that the cost of pursuing the FEMA Claims exceeds their value to the estate, essentially arguing that the statutory criteria are met, but files for sanctions when the members' Counsel attempt to make the same argument.

29. There is no evidence of any bad faith or vexatious conduct by Counsel in pursuing the abandonment issue. Prior Counsel for the members in this case argued in favor of pursuing both FEMA Claims (the Trustee's Counsel argued for the Cancellation Claim). No one was sanctioned by this Court for making arguments earlier in support of the recovery of these claims, and it is frivolous and dilatory for the Trustee to threaten sanctions at this point.[10] As the Second Circuit has explained:

---

[9] The Trustee's decision not to pursue the $5.7 million Change Order Claim is equally significant. On October 6, 2023, David Carickhoff, the Trustee's attorney, stated, "The trustee will not be submitting a change order claim against FEMA today for $5.7m and will not authorize Ms. Mott to do so." D.I. 643-4.

[10] The sanctions motion is not an isolated act but part of a systematic approach since April 2022, where the Trustee has targeted TSI's Counsel with repeated sanctions motions, *see* D.I. 339; Adv.

> … a district court may not properly impose sanctions pursuant to 28 U.S.C.S. §
> 1927 unless the court finds the conduct to have been both unreasonable and for an
> improper purpose. Section 1927 requires a sanctioning court to do more than disagree
> with a party's legal analysis; the court must make a separate determination on both the
> issue of the reasonableness of the claims and the purpose for which suit was instituted.
> Before a sanction under § 1927 is appropriate, an offending attorney's multiplication of
> the proceedings must be both 'unreasonable' and 'vexatious.'

*Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70 (2nd Cir. 2006) (internal citations omitted); *see also*

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (summarizing the § 1927 in

similar terms); *Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*, No. 2:14-CV-273-PRC, 2018 WL

4853500 (N.D. Ind. Oct. 5, 2018) (same).

## III.    THE TRUSTEE'S IRRELEVANT AND INACCURATE ATTACKS ON COUNSEL SHOULD BE REJECTED.

30. The Trustee's Motion for Sanctions is loaded with irrelevant attacks on Defendants

and their Counsel, which should be ignored in consideration of this motion.

### A.  The Sanctions Provisions Have Specific Requirements That Cannot Consider the Trustee's Collateral Allegations.

31. Both Rule 11 and Section 1927 have specific standards for their application, which

are not met by reciting an attorney's client's alleged misconduct or other matters beyond the

scope of those standards. Rule 11 is limited to the objective information available to the attorney

at the time of filing as it bears on the validity of his pleading. *See, e.g., Mary Ann Pensiero, Inc.

v. Lingle,* 847 F.2d 90, 94 (3d Cir. 1988); *see also* Fed. R. Civ. P. 11 adv. comm. note 1983 ("The

court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by

---

D.I. 156, resulting in Counsel withdrawals. This pattern undermines the adversarial system
bankruptcy law contemplates and affects zealous representation essential to effective bankruptcy
administration. The pattern is evidenced by multiple prior sanctions motions targeting every
attorney who has represented the TSI Members, resulting in Counsels' withdrawals.

inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.").

32. Similarly, Section 1927 is also limited, this time to conduct that unnecessarily multiplies the proceedings. *See, e.g., Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) ("When congress amended § 1927 in 1980 … it made clear that the purpose of the statute was 'to deter unnecessary delays in litigation.'"); *see also Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176, 1185 (9th Cir. 1988); *Goodyear Tire & Rubber Co. v. Haege*r, 137 S. Ct. 1178 at n. 2, 5 (2017) ("sanctions under 28 U.S.C. § 1927, it noted, could address the wrongdoing of only Goodyear's attorneys, rather than of Goodyear itself … statutory sanction regimes similarly require courts to find such a causal connection before shifting fees."). In both instances, evidence in support of a sanctions motion should be limited to matters that relate to statutory standards, specifically the high standards that vastly exceed an attorney's zealous representation of their client.

## B.  The Matters Cited Are Inaccurate and Disputed.

### 1.  The Members turned over all documents sought by the Trustee.

33. Documents related to the FEMA Claims are discussed above.[11] Early in the case, the TSI members turned over all of the documents along with an index to the Trustee. *See* D.I. 239 at ¶ 6, 239-2; *see also* D.I. 456-2; P0000671-P0000675.[12] Those documents were reviewed by Miller Coffey Tate, as detailed in their submission of their professional certified records to this Court. *See* D.I. 390-1 at 8-9. This review took place before the Trustee obtained bank documents

---

[11] The bulk of these documents were prepared by Bering Straits in the role in the FEMA response. *See generally* D.I. 167-5. The Trustee had them early in the case, but obviously does not understand their content.

[12] Documents that start with P0 are documents provided to TSI Members by the Trustee.

from third parties and apparently did not place any credence to the altered documents coming

from the creditors and Robinson & Cole (absent recorded discovery of redactions, which would

have been a red flag to forensic auditors). The professional records submitted to the Court show

that all the transactions were reconstructed with the records provided.

34. The Trustee, despite previously possessing the original hard copies from TSI, is now

seeking copies of the same documents which are irrelevant to the case and unlikely to lead to any

discoverable evidence in the case. The source of both the black and white redactions is admitted.

*See* D.I. 191 at 136; *see also* D.I. 512-4. White redactions have been conclusively proven to have

come from Robinson & Cole. *See generally* D.I. 512 at 6-11; *see also* 512-6. Producing more

copies of the bank records is entirely superfluous and not likely to lead to any admissible

evidence. Again, it is a vexatious and frivolous attempt at running up Counsel's fees.[13]

35. Production of the documents related to the claims sought in the Abandonment Motion

is discussed above. *See supra* ¶ 12.

**2. Attacks on the credibility of the TSI Members are misplaced.**

36. The Trustee attacks the credibility of Ms. Mott and Mr. Acosta as somehow related to

the filing of a claim with FEMA.  As to Ms. Mott the case is stayed,  Mr. Acosta's testimony on

the redactions is supported by Ms. Kasen's confession and the Robinson & Cole emails,

metadata and "confidential" stamp. *See, e.g.,* D.I. 191 at 136 (Ms. Kasen's testimony); *see also*

D.I. 512-4, 512-5, 512-6 (Robinson & Cole emails and metadata analysis report); D.I. 436-8 at

---

[13] In a desperate effort to try to create some evidence that the white-outs came from TSI members, the Trustee's Counsel, in the April 29, 2024 hearing, took a document out of his exhibit folder that was offered under an attestation of Mr. Homony that it was provided to him by the creditors. *See* Adv. D.I. 228 at 100. This testimony is supported by his own affidavit, Ms. Kasen's affidavit and Mr. Babbit's affidavit. His testimony is also physically impossible, since the document he is referring to had Robison & Cole's added CONFIDENTIAL language.

¶¶ 17-21 ("confidential" stamp added by Robinson & Cole). The only contrary testimony is Mr.
Homony's, who contradicts the sworn statement used to introduce the exhibit he testified about,
as well as his earlier testimony in the case.

37. The attack on Mr. Acosta is also both irrelevant and unconvincing. He took the
redactions to the U.S. Trustee before they were raised in court and was shrugged off. *See
generally* D.I. 512-10 at 4.[14] His testimony on the whiteouts is verified by Robinson & Cole
professionals, the metadata and the "confidential" stamp. The exchange with Mr. Gellert is also
misrepresented to the Court. *See* D.I. 647-8.

**3. The Trustee's recital of prior misconduct by TSI members is not factual.**

38. The Court's reference to the Florida case illustrating misconduct has been debunked
in previous pleadings and evidence provided by the Defendants. The bulk of this allegation rests
on the use of documents that were fabricated (not by TSI) and thrown out of the case in Florida
as hearsay, absent authorship or authentication. *See generally* Appellant Brief, *Mott v. Miller*, No.
24-1035, D.I. 16 (D. Del. 2024) (explaining this issue further). This wildly inaccurate
characterization also used the Florida Court's order, citing it out of context, in that no contempt
issue had been decided and the order withdrawn as it post-dated the Chapter 11 filing. *See
generally* D.I. 238 (Motion to Strike); *see also* D.I. 248 (Order).

**4. Prior client statements about the FEMA claim were not deliberately deceptive.**

39. Prior statements by Members are not relevant to the application of abandonment
criteria for the FEMA Claims or to Counsel's good faith analysis. Mr. Mott, who brings extensive
federal contract law expertise, conducted a thorough examination of the FEMA records

---

[14] Mr. Acosta also informed Trustee's Attorney David Carickhoff on May 5, 2022. *See* D.I. 512-
10 at 4.

pertaining to both claims referenced in the Abandonment Motion. The Trustee's Counsel, lacking comparable experience in this specialized area, has demonstrated significant gaps in understanding throughout this matter, including inaccurately characterizing the subject matter of the change order despite having access to identical documentation.

40. The Members' investigation extended well beyond client statements and incorporated substantial additional research. Specifically, the Members identified a new FEMA appropriation that included the previously cancelled order funds. Both parties were also aware that Mr. St. Moritz had been actively preparing the Change Order Claim prior to his illness, which occurred just before the conversion. The Trustee's administration of these claims has been nothing but an administrative failure.

**5. Withdrawal of law firms from the case is more symptomatic of the excessive use of sanctions motions by the Trustee than any other factor.**

41. The withdrawal of every law firm in the case was preceded by sanctions threatened by the Trustee or a limited engagement agreement (in the case of Gellert). Robinson & Cole constructed a story on their withdrawal to mask the fact that they had botched the document production, failed to notify clients of that development, and were threatened with sanctions by the Trustee for innocent conduct.[15] On multiple occasions, several Delaware bankruptcy Counsel advised they could not take actions on behalf of the client due to their own conflicts. Clearly, none of these matters has any bearing whatsoever on this Motion for Sanctions. The assertion of these unrelated matters is itself both in bad faith and frivolous, also leading to an unnecessary multiplication of the proceedings.[16]

---

[15] *See* Appellant Brief, *Mott v. Miller*, No. 24-1035, D.I. 16 at ¶¶ 2, 16, 22, 34 (D. Del. 2024).

[16] The fact that the Trustee himself authorized the pursuit of the FEMA Cancellation Claim and several prior defense Counsel advocated the Change Order Claim with no threatened sanctions illustrates that <u>this motion is filed in bad faith and for improper purposes</u>.

**6. Mr. Mott's sanctions are legally unauthorized and factually unsupported.**

42. This order is still pending on appeal to the U.S. District Court. The sanctions order is legally in error and an abuse of discretion in the handling of the facts established on the specific evidence relied upon. *See* Appellant Brief, *Mott v. Miller*, No. 24-1035, D.I. 16 (D. Del. 2024).

**7. Counsels' defense of the good faith of their DLA allegations cannot be used to counter the fact that the claim was withdrawn.**

43. This issue is discussed at length above. The Trustee, without any foundation in the law, tries to use dismissal without prejudice and a recitation of the good faith factual background to sustain its Motion for Sanctions. All that is required to use the safe harbor provisions is a withdrawal of the claim. *See, e.g., Thompson v. Steinberg,* No. 21-2444-cv, 2023 WL 353359 (2d Cir. Jan. 23, 2023); *see also supra* ¶ 22 (citing further authorities at length). Their advancement of this argument is contrary to the well-established law, and itself frivolous and done in bad faith.

## <u>CONCLUSION</u>

The Trustee's Motion for Sanctions contradicts itself in several places, asserting the FEMA Claims are "dubious," but declining to abandon them. Trustee ignores the fact that multiple Counsel previously argued to collect the FEMA Claims, including the Trustee as to the Cancellation Order Claim, and were not sanctioned by the Court. The excuses for his failure to collect are unfounded, undocumented and superficial on their face. Finally, nothing in the papers signed by Counsel targeted by the Trustee's Motion for Sanctions is remotely frivolous, done in bad faith or vexatious by unnecessarily multiplying the proceedings. To the contrary, Trustee's Counsel has vexatiously and frivolously moved to sanction Counsel time and again, resulting in nothing more than wasted time and skyrocketing legal costs.

\*\*\*

**WHEREFORE**, in light of the above, as well as any and all further facts the Court may find appropriate, Counsel and Defendants respectfully request that this Court deny the Motion for Sanctions.

Respectfully submitted,

**Dated**: September 24, 2025

**JOHN S. MALIK, ESQ.**
/s/ John S. Malik
Attorney at Law
100 East 14th Street
Wilmington, DE 19801
Phone: 302-427-2247
Email: jmalik@malik-law.com

**RANDY M. MOTT, ESQ.**
/s/ Randy M. Mott
DC Bar 211037
1627 K St. N.W. Suite 400
Washington, DC 20006
Phone: 202-470-0106
Email: randymott@rmottlaw.com
(admitted pro hac vice)
*Counsel to Deborah Evans Mott,*
*Steven M. Acosta, Christopher Mott,*
*and John S. Maciorowski*

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Bankruptcy Court for the District of Delaware by using the CM/ECF system. Participants in this case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ John S. Malik
John S. Malik