**RANDY M. MOTT, Esq**
**1629 K St. N.W. Suite 300**
**Washington, DC 200006**
**703-258-4097**
**randymott@rmottlaw.com**

January 14, 2026

**By CM/ECF**

Honorable Craig T. Goldblatt
United States Bankruptcy Court
For the District of Delaware
824 N. Market Street, Third Floor
Wilmington, Delaware 19801

   Re: *In re Team Systems International, LLC,* Case No. 22-10066-CTG, D.I. 666
     Defendants' Opposition to Trustee's Letter Motion Regarding Defendants'
     Alleged Failure to Comply with Discovery

Dear Judge Goldblatt:

   Defendants Deborah Evans Mott, Steven M. Acosta, Christopher Mott, and John S. Maciorowski (collectively, the "Movants," "Members" or "Defendants"), the 100% owners of Team Systems International, LLC (the "Debtor" or "TSI"), and Addy Road LLC by and through their undersigned counsel, hereby oppose the *Letter Motion to Prohibit the TSI Members from Offering Evidence Based upon Their Failure to Comply with Discovery Regarding their Abandonment Motion* [D.I 666] ("Letter Motion") filed by George L. Miller, solely in his capacity as the Chapter 7 Trustee of TSI ("Trustee"), in relation, among others, to the *Motion of the Owners of Debtor to Compel Abandonment of the Property of the Estate* [D.I. 643] ("Abandonment Motion"). For the reasons set forth below and already on the record, the Trustee cannot meet his burden, nor request additional discovery and tie up the Court in an unnecessary discovery dispute. The Defendants respectfully request that the Court *deny* the Letter Motion and, including, but not limited to, sanctions, removal, surcharge, or referral, for the reasons explained below as well as all other reasons the Court may find relevant.

## STANDARD OF PROOF

   The Trustee's Letter Motion fundamentally misconstrues both the applicable legal standards and the extensive documentary record already before this Court. Under 11 U.S.C. § 554(b) and Fed. R. Bankr. P. 6007(a), abandonment is warranted where property is burdensome to the estate or of inconsequential value and benefit to the estate. As the party opposing abandonment, the Trustee bears the burden to show some "likely benefit" to the estate beyond mere speculation. *See In re Wilton Armetale*, Inc., 618 B.R. 424, 433 (Bankr. E.D. Pa. 2020) (collecting cases and summarizing the standard); *In re Blasingame*, 598 B.R. 864, 871 (B.A.P. 6th Cir. 2019) (same).

   The Trustee cannot meet this burden because his own statements, conduct and decisions establish that he is unable to collect both FEMA Claims, and that he has already abandoned them.

## RELEVANT BACKGROUND

The extensive documentary record demonstrates that the Trustee has possessed comprehensive documentation since July 2022, including the D0 production (D000001–D02248) billing records at D.I. 390-1 showing over 50 hours of professional review of the documents of FEMA issues, subpoena responses from multiple financial institutions, and participation in four years of Civilian Board of Contract Appeals ("CBCA" or "Board") and preliminary Federal Circuit proceedings.

Despite this comprehensive access, the Trustee has either lost one claim through initial failed litigation or deliberately allowed the other to expire through inaction.

The Trustee seeks to manufacture a discovery dispute to avoid his evidentiary burden. He cannot credibly argue that he needs additional discovery to oppose abandonment when he has already taken definitive, binding positions that both claims should not be pursued. He certified to this Court that the claim against the Federal Emergency Management Agency ("FEMA") arising from its $13.5 million reduction in volume of bottled water ("Cancellation Claim") was denied by the Federal Circuit for CBCA Appeals. *See* Ex. 1; D.I. 528. He informed the Movants' counsel *on* the FEMA notification deadline that he would not file the claim against FEMA arising from the $5.7 million change in transportation of water ("Change Order Claim") (collectively with the Cancellation Claim, the "FEMA Claims"), and would not authorize the Movants to do so. *See* Ex. 2.

These admissions satisfy the Movants' burden of demonstrating that the claims are burdensome or of inconsequential value to the estate <u>while the claims are under the control of the Trustee</u>. *See generally* D.I. 643; *see also* D.I. 647. No amount of additional discovery will enable the Trustee to contradict his own binding admissions to this Court and to opposing parties.

## ARGUMENT

## I. THE TRUSTEE BEARS THE BURDEN OF PROVING THE CLAIMS AT ISSUE HAVE NOT BEEN ABANDONED AND IS JUDICIALLY ESTOPPED FROM CONTRADICTING HIS PRIOR REPRESENTATIONS.

### A. The Legal Standard Places the Burden on the Trustee, as the Party Opposing Abandonment.

The Trustee's opposition fundamentally misapprehends the applicable burden of proof under Section 554(b). While the party requesting abandonment typically bears an initial burden to demonstrate that property is burdensome or of inconsequential value, the party opposing abandonment "bears a reciprocal burden to show some likely benefit to the estate; mere speculation about possible scenarios in which there might be benefit is not sufficient." *In re Wilton Armetale, Inc.*, 618 B.R. 424, 433 (Bankr. E.D. Pa. 2020) (citing 5 Collier on Bankruptcy ¶ 554.02); *see also In re Blasingame*, 598 B.R. 864, 871 (B.A.P. 6th Cir. 2019) (summarizing cases describing the standard); *In re Apex Long Term Acute Care-Katy, L.P.*, 599 B.R. 314, 323

(Bankr. S.D. Tex. 2019) (same); *In re Fields*, No. 03-8153, 2005 WL 2205787, at *10 (Bankr. C.D. Ill. July 27, 2005) (same).

Here, the Movants have more than satisfied their initial burden <u>through the Trustee's own admissions and conduct</u>. The Trustee has represented to the court that the Cancellation Claim was denied by the Federal Circuit for CBCA Appeals. D.I. 643-2. He has told the Movants' counsel that he will not pursue the Change Order Claim. D.I. Doc 643-4. He has taken no action to collect either claim for over one year following the Federal Circuit's adverse judgment. These undisputed facts establish a prima facie case that the claims are burdensome and that he has abandoned them.

The burden thus shifts to the Trustee to demonstrate some "likely benefit to the estate" from retaining these claims. *Wilson,* 618 B.R. at 433; *Blasingame*, 598 B.R. at 871; *Apex Long Term*, 599 B.R. at 323; *Fields,* 2005 WL 2205787 at *10. He cannot meet this burden. The Trustee cannot credibly argue that claims he has lost and dropped (or refused to pursue) have value to the estate. His position amounts to arguing that the claims are worthless *when he controls* them, yet too valuable to abandon to the Movants. This circular reasoning fails as a matter of law and logic.

**B. The Doctrine of Judicial Estoppel Prevents the Trustee from Adopting Contradictory Positions.**

The Trustee is judicially estopped from asserting that these claims now should not be abandoned after asserting in pleadings that they cannot or should not be pursued. The Third Circuit applies judicial estoppel when: (1) "a party's later position [is] 'clearly inconsistent' with its earlier position;" (2) "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 743, 750-51 (2001) (quoting, in part, *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999)); *see also Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990).

All three elements are satisfied here: First, the Trustee's positions are clearly inconsistent. On July 16, 2024, the Trustee's counsel filed a letter with this Court certifying that "the Federal Circuit issued the attached Judgment affirming the denial of the Debtor's claim against FEMA." Ex. 1 at 1. This representation was made in connection with the Trustee's District Court opposition to the Movants' standing, where the Trustee argued that the estate is administratively insolvent and that the denial of the FEMA Claims eliminates any equity interest the Movants might have. The Trustee has now assumed the opposite position in this proceeding – that these same claims have value sufficient to justify continued retention and opposition to abandonment.

Second, The Trustee's July 16, 2024, letter was filed on the bankruptcy docket without objection and has been relied upon by the Trustee in subsequent filings. The Court's acceptance of this filing without challenge constitutes adoption for estoppel purposes. *See Acosta et al v. Miller*, C.A. No. 1:23-cv-01038-GBW (D. Del. 2023) (Notice of Supplemental Authority, July

16, 2024); *see also id.,* D.I. 17 at 14 (Appellee's Brief, April 5, 2024) (claims are "both contingent and speculative at this time.").

Third, allowing the Trustee to take this inconsistent position would create unfair advantage and detriment. The Trustee seeks to use the alleged uncollected FEMA Claims to defeat the Movants' standing in collateral litigation while simultaneously arguing that the same claims cannot be abandoned, an untenable position  This tactical flip-flopping prejudices the Movants by denying them the ability to pursue potential recovery at their own expense while the Trustee warehouses claims he has already determined he is unable to collect.

The doctrine of judicial estoppel prevents precisely this type of gamesmanship. In re Slack, 290 B.R. 282, 283-84 (Bankr. D.N.J. 2003) (rejecting a creditors' evidence of value where the trustee made prior representations about lack thereof, finding in support of abandonment). The Trustee's certification to this Court that the Cancellation Claim was denied ( D.I. 643-2) and his argument in USDC court ( and the 3rd Circuit that the claim is only "speculative" constitutes a binding judicial admission that he has abandoned the claim. *See Acosta et al v. Miller*, C.A. No. 1:23-cv-01038-GBW (D. Del. 2023) (Notice of Supplemental Authority, July 16, 2024); Appellee Brief, *Acosta v. Miller,* 23-cv-01038-GBW D.I. 17, April 5, 2024, p 9)(claims are "speculative and contingent").

These admissions satisfy the Movants' burden of demonstrating that the claims are burdensome or of inconsequential value to the estate while the claims are under the control of the estate by the Trustee. The Trustee cannot now reverse this position for tactical advantage.

## C. The Trustee's Refusal to Pursue the Change Order Claim Binds the Estate Under Agency Principles.

The Trustee unequivocally refused to pursue the change order claim. The Trustee has had two years to reconsider that decision and has done nothing.

The Trustee's counsel stated on October 6, 2023: "We don't believe there is sufficient support to assert a $5.7m claim. The trustee will not be submitting a change order claim against FEMA today for $5.7m and will not authorize Ms. Mott to do so." Ex. 2. This statement was not preliminary or tentative. It was a definitive decision, communicated after the Trustee had possessed comprehensive documentation for over fifteen months and after the Trustee's counsel had reviewed draft claim materials provided by the Movants in the days immediately preceding their counsel emails. Moreover, in the two years since these statements, the Trustee has done absolutely nothing to collect the claim. It has been abandoned already.

Under principles of agency law, a trustee's authorized counsel binds the estate through statements made within the scope of representation. The Trustee cannot now disavow his counsel's October 6, 2023, communication simply because it proved to be a poor business decision. That decision was final when made and had immediate legal effect on the change order FEMA notification and collection. The Trustee cannot undo this consequence through revisionist arguments about "preliminary" assessments, especially after more than two years of subsequent total inaction.

**D. The Trustee's Burden Cannot Be Met Through Speculation About Hypothetical Documentation.**

The Trustee's opposition appears to suggest that unknown documents containing unspecified information might somehow demonstrate that the claims have value or satisfy his allegation that there is a missing piece. *See* D.I. 666 at 8. This speculation fails to meet the Trustee's burden under Section 554(b).

The burden to show value rests on the Trustee, not on the Movants. The Trustee must identify with specificity what documents are allegedly missing, explain why those specific documents are material, and demonstrate how those documents would establish "likely benefit to the estate." The Trustee should be required to legally explain this interpretation of how the claim is deficient and what documents would address this alleged deficiency. Finally, he must explain why knowing this, he failed to communicate this to either Defendants or FEMA to obtain those specific documents. Mere speculation that "more documents might help" is insufficient. *See In re Wilton Armetale, Inc.*, 618 B.R. at 433 ("mere speculation about possible scenarios in which there might be benefit is not sufficient."); *see also Fields*, 2005 WL 2205787, at *10.

The Trustee has not and cannot identify what specific documents would transform a claim that was (1) denied by the Federal Circuit of Appeals for the CBCA, or (2) allowed to sunset, for notification by the estate, through the Trustee's deliberate refusal to file it, into claims with positive value to the estate based on the Trustees prior business decisions. No such documents exist. Nor is there any evidence of the Trustee even identified what documents would be critical to the claim that are missing with a legal explanation of their importance. There was no request from Venable LLP lawyers for additional documents based on their federal contract expertise. There was no effort by the Trustee to obtain any alleged magical missing documents from FEMA (where another copy of the full record would be available). The Trustee elected to stop the collection efforts justifying his actions by asserting the claims were "dubious." See Exhibit 2.

**II. THE TRUSTEE HAS POSSESSED COMPREHENSIVE FEMA DOCUMENTATION SINCE JULY 2022.**

The Trustee's argument that he lacks adequate documentation to defend against the Abandonment Motion, *see* D.I. 666 at 7, is demonstrably incorrect and contradicted by the record before this Court, including the Trustee's own billing records and production from the Movants.

**A. The "D0" Production Provided Extensive FEMA Materials in July 2022.**

The Court should begin with the undisputed fact that the Trustee assumed control of the $13.5 million Cancellation Claim <u>four years ago</u> upon conversion to Chapter 7 in March 2022. The Trustee controlled outside counsel from the outset. His own attorneys from this bankruptcy proceeding entered an appearance in CBCA No. 7145 and participated in both the Board proceedings and the Federal Circuit appeal. There has been no allegation whatsoever that the record presented to these tribunals was incomplete or that Venable LLP – the government

contracts law firm retained by the Trustee at estate expense – lacked any document or information necessary to adjudicate the claims.

In July 2022, the Trustee received a comprehensive production of documents in the D0 range (D000001–D022481), which included extensive FEMA-related materials directly tied to both claims. This delivery is confirmed by the email chain in the Trustee's own production to the Movants (Bates-numbered P0000695–P0000699), *see* Ex. 3, which documents the transfer of multiple boxes of documents to the Trustee's professionals at Miller Coffey Tate LLP ("MCT").

The contents of the D0 production are further detailed in Exhibit A to the Movants' discovery responses, which is the Trustee's own list identifying FEMA-specific documents within the D0 range. Specific Bates ranges extracted from Exhibit A that relate directly to both FEMA Claims include:

- FEMA Production - TSI-LIST000001-0029, containing FEMA bottled water contracts, task orders, modifications (including the unilateral modification requiring container shipping), emails between TSI and FEMA officials directing the shipping change, public vouchers reflecting contract payments and cost increases, claim correspondence, and related records concerning both the volume reduction that forms the basis of the Cancellation Claim and the transportation change that forms the basis of the Change Order Claim.

- D001230 through D022481: Subsequent ranges in the D0 production containing additional FEMA task orders, contract modifications, email correspondence with FEMA officials (including Dan Paton and Carolyn Ward regarding the October 5-6, 2017 directive to use containers, *see* D.I. 643-3), itemized subcontractor costs, payment records, bank statements showing disbursements to logistics subcontractors, accounting records, internal TSI communications about increased costs, and supporting documentation for both claims.

These documents were turned over to and received by the Trustee's professionals in July 2022 – more than fifteen months before the request to submit the Change Order Claim. Mr. Mann certified to their turn-over and the MCT billing records show that they were received in 2022. Ex. 3; D.I. 390-1.

**B. The Trustee's Billing Records Confirm Over 36 Hours of Review of FEMA Materials.**

The billing records by the Trustee's accounting experts at MCT confirm that his professionals devoted extensive time – in excess of 36 billable hours in 2022 – to reviewing and analyzing the D0 production, including the FEMA materials relevant to both claims. *See* D.I. 390-1. Specific description of the entries include, among others:

| Employee | Date | Service Description | Time |
|----------|------|---------------------|------|
| WAH | 7/26/2022 | Ongoing review of recent insiders document production | 5.10 |

| Employee | Date | Service Description | Time |
|----------|------|---------------------|------|
| VJS | 8/1/2022 | Review Debtor documents turned over to the Trustee | 0.50 |
| VJS | 8/8/2022 | Discuss with J. Reynolds Bates stamp document production and request | 0.30 |
| VJS | 8/82022 | Review and analyze TSI documentation provided (0001-4309) | 1.10 |
| VJS | 8/8/2022 | Review and analyze provided Bates Stamp documentation (2500-5000) | 1.40 |
| VJS | 8/8/2022 | Review and analyze provided Bates Stamp documentation (5000-7500) | 1.20 |
| VJS | 8/8/2022 | Review and analyze provided Bates Stamp documentation (7500-10000) | 1.60 |
| VJS | 8/8/2022 | Review and analyze provided Bates Stamp documentation (1-2500) | 1.60 |
| JJR | 8/8/2022 | Examination of documentation production review | 1.10 |
| VJS | 8/9/2022 | Compile Bates Stamp documentation pertaining to Debtor Bank Accounts (BBVAA) | 1.40 |
| VJS | 8/9/2022 | Compile Bates Stamp documentation pertaining to Debtor Bank Accounts (Artisan) | 0.60 |
| VJS | 8/9/2022 | Compile Bates Stamp documentation pertaining to Check Images and general ledgers | 0.40 |
| VJS | 8/9/2022 | Review and analyze provided Bates Stamp documentation (10000-12500) | 1.20 |
| VJS | 8/9/2022 | Review and analyze provided Bates Stamp documentation (12500-15000) | 1.10 |
| VJS | 8/9/2022 | Review and analyze provided Bates Stamp documentation (15000-17500) | 1.40 |
| VJS | 8/9/2022 | Review and analyze provided Bates Stamp documentation (17500-22481) | 1.70 |

| Employee | Date | Service Description | Time |
|---|---|---|---|
| JJR | 8/9/2022 | Review of Debtor document production and bank statements for Counsel | 1.50 |

D.I. 390-1.

These entries total more than 36 hours of professional time devoted specifically to reviewing the D0 production in July and August 2022 (D000001-D022481). <u>The billing entries establish beyond dispute that the Trustee's professionals conducted a thorough, systematic, and comprehensive review of the FEMA Claims' materials, including itemized analysis of specific Bates-stamped ranges</u>. If the documentation was insufficient to evaluate the claims, the Trustee had more than fifteen months before the Change Order Claim submission to request additional materials. He did not do so. Nor did he seek additional documents – if anything was in fact missing – from FEMA.

## C. The Trustee's Active Participation in CBCA and Federal Circuit Proceedings Provided Full Access to All FEMA Documents.

The Trustee's counsel, David W. Carickhoff, Jr., entered a formal Notice of Appearance in CBCA No. 7145 on April 14, 2022, shortly after his retention as general bankruptcy counsel for the Trustee. The Board issued an Order on April 15, 2022, confirming Carickhoff's participation in a teleconference discussing the FEMA appeal and the Trustee's review of the matter. This active participation provided the Trustee and his counsel with direct, immediate, and comprehensive access to the entire FEMA Claims file, including, among others:

- IDIQ Contract HSFE70-17-D-0021 and all amendments;
- All task orders issued under the contract, including the bottled water task order at issue;
- All contract modifications, including the unilateral modification requiring container shipping;
- All email correspondence between TSI and FEMA officials, including the October 5-6, 2017 emails from Dan Paton and Carolyn Ward directing the change from breakbulk to container shipping;
- All public vouchers submitted by TSI and approved by FEMA showing contract payments;
- TSI's claim submissions to FEMA concerning both the volume reduction and transportation costs;
- The Contracting Officer's Final Decision denying the Cancellation Claim;
- All declarations, expert reports, and exhibits submitted in the CBCA proceedings;
- All joint statements, pre-hearing submissions, and post-hearing briefs filed before the Board;
- The CBCA's written decision and all related orders;
- All appellate briefs, appendices, and reply briefs filed in the Federal Circuit; and

- Oral argument recordings and the Federal Circuit's judgment.

All of the above was a part of the Trustee's counsel's presentation of the record to the Board, authenticating the documents.

The Federal Circuit appendix in Case No. 2023-1556 alone contains hundreds of pages of FEMA contract documents, correspondence, and supporting materials that were available to the Trustee throughout the four years of CBCA and appellate proceedings. . The Trustee not only had access to these materials but actively used them to brief and argue complex federal contract law issues before two federal tribunals.

Moreover, the record establishes that the Trustee actually obstructed the Movants from communicating with Venable LLP about the claims. The Trustee's FEMA attorneys refused to discuss the case with counsel for the Movants and communicated their opposition to any intervention or participation by the Movants in the Federal Circuit appeal. This obstruction demonstrates that the Trustee wanted exclusive control over the FEMA litigation and actively prevented the Movants from supplementing or supporting his efforts. He cannot now claim that the Movants failed to provide adequate documentation when he deliberately excluded them from participating in the very proceedings where such documentation would be used.

## D. Archer & Greiner Billing Records Show $18,670.50 in FEMA-Specific Work, Including Extensive October 2023 Review of the Change Order Claim.

Billing records by the Trustee's lawyers, Archer & Greiner, as produced by the Trustee, show repeated review, analysis, and discussion of the FEMA Claims' documents throughout 2022 and 2023, with total FEMA-specific fees exceeding $18,670.50. . These entries document extensive work on both claims, including:

- April 13-14, 2022: Multiple entries for telephone calls and document review in connection with FEMA Claims; and
- Ongoing entries through 2023: Review of FEMA documents, calls regarding FEMA Claims, analysis of contract modifications and volume reductions, and related litigation work.

Most significantly, the billing records show concentrated activity in October 2023 (immediately before the Change Order Claim submission request), demonstrating that the Trustee's counsel was actively reviewing and evaluating that specific claim:

- October 3, 2023: Telephone calls with William Homony and review of documents regarding alleged change order claim;
- October 4, 2023: Calls with John Boland of Venable LLP regarding FEMA matters;
- October 5, 2023: Review of additional materials provided by Movants' counsel and internal discussions about the claim; and
- October 6, 2023: Final review and decision not to pursue the claim.

*see also* Ex. 2 (documenting the decision not to pursue the claims).

These billing entries establish that the Trustee's counsel was not passive or uninformed about the Change Order Claim. Rather, counsel actively reviewed the claim in the days immediately preceding the deadline, consulted with other counsel, and made a deliberate, informed decision not to pursue it. This was a business judgment based on full information—not a documentation deficiency.

If the Trustee's professionals believed documentation was lacking after reviewing materials in July 2022, after participating in CBCA proceedings from April 2022 forward, and after receiving additional materials from the Movants in early October 2023, they had ample time and opportunity to request specific additional documents. They did not do so because the decision not to pursue the Change Order Claim was not based on lack of documentation but rather on the Trustee's decision.

At the same time, the Trustee represented to this Court that there was a contingency fee agreement with Venable LLP. When subpoenaed, neither the Trustee nor Venable LLP had any contingency fee document or documents discussing a contingency fee. To process the change order, TSI Members would need extensive communication with Venable and would have discovered there was _no_ contingent fee contract. Having Venable already bound to flat hourly fees, which totaled less than 100k, the question remains what would have happened with the $1.8 million "contingent fee" if the Trustee had charged it to the estate.

## E. The Trustee's Post-2022 Subpoenas to Financial Institutions Confirm He Already Possessed the Underlying Transaction Data.

The Trustee's argument that he lacks documentation, *see* D.I. 666, is further undermined by his issuance of duplicative subpoenas to financial institutions well after his professionals had completed their review and reconciliation of all TSI financial records. These include the same documents he requested from Defendants and had already obtained.

As documented and presented to the Court, the Trustee's professionals at MCT completed a comprehensive reconciliation of all TSI bank accounts, K-1 distributions, and financial transactions by August 30, 2022 – before the Trustee filed his preliminary injunction complaint. *See* D.I. 390-1. The billing records show detailed entries for reconciling each bank account, analyzing receipts and disbursements, and compiling payment documentation tied to FEMA vouchers and claims. *Id.*

Notwithstanding this completed reconciliation, the Trustee issued subpoenas to multiple banks in late 2022, 2023, and 2024 seeking duplicative records:

- September 28, 2022 letter to PNC Bank: requests information and full account records for Bank Account ending in 9759.
- December 19, 2023 subpoena to PNC Bank: commands production of documents including bank statements, cancelled checks, and detailed transaction records.
- February 27, 2024 PNC certification: confirms production of responsive records in response to the December 2023 subpoena.

- Multiple TD Bank responses: provide statements, wire transfers, withdrawal tickets, and detailed transaction records for specific debits that align with payments for FEMA-related costs.

These subpoenas targeted precisely the types of documents – cancelled checks, wire transfers, and transaction details – showing that TSI paid **the increased** costs associated with container shipping, as referenced in the Movants' October 6, 2023, communications with the Trustee. *See* Ex. 4 (Mr. Munoz' email noting "this is not information new to the Trustee").

The issuance of these duplicative subpoenas after the Trustee's professionals had already reconciled all accounts and compiled payment documentation serves as a binding admission: the Trustee already possessed the underlying transaction data showing TSI's payments for FEMA-related costs, including the incremental container shipping expenses. The Trustee subpoenaed banks to obtain copies of records he already had in order to verify or supplement his existing documentation, not because the documentation was missing. His current claim of inadequate documentation is contradicted by his own conduct in seeking duplicative records that confirmed what he already knew. *See* D.I. 224 at 89, 101; Ex. 8; *see also* D.I. 167-5.

**F. The Inescapable Conclusion: The Trustee Possessed Comprehensive Documentation and Made Informed Business Judgments Not to Pursue the Claims.**

The totality of this evidence establishes beyond dispute that the Trustee possessed comprehensive documentation concerning both FEMA Claims. The Trustee's current assertions to the contrary are contradicted, among others, through:

- His own billing records showing over 50 hours of D0 production review;
- His active participation for four years in CBCA and Federal Circuit proceedings with full access to all FEMA documents;
- His retention of Venable LLP as expert government contracts counsel;
- His $18,670.50 in Archer & Greiner fees for FEMA-specific work;
- His October 2023 concentrated review of the Change Order Claim with Venable's involvement; and
- His post-reconciliation bank subpoenas seeking duplicative transaction records.

The Trustee made his own business judgments that both claims should not be pursued: he litigated the Cancellation Claim to an adverse judgment, and he refused to file the Change Order Claim. These were decisions based on full information, not documentation deficiencies. The Trustee cannot now manufacture a discovery dispute to avoid the consequences of his own informed decisions.

**III. THE TRUSTEE'S REFUSAL TO PURSUE THE CHANGE ORDER CLAIM CONSTITUTES A BREACH OF FIDUCIARY DUTY.**

The Trustee's Letter Motion glosses over the most critical fact concerning the Change Order Claim: the Trustee's counsel unambiguously stated that the Trustee would not pursue the claim and would not authorize the Movants to do so. *See* Ex. 2.

The Change Order Claim accrued on October 6, 2017, when FEMA unilaterally directed TSI to change from breakbulk to container shipping through the email correspondence from FEMA officials Dan Paton and Carolyn Ward. *See* Bates No. D00000–D022481 ("D0" production documents); Ex. 2 (email chain showing October 5, 2017, email from Mr. Paton that FEMA "[p]er our conversation … cannot handle break bulk, water needs to be on containers," and October 6, 2017 email from Mr. Ward clarifying that the Port of San Juan would not accept water unless in containers or trailers).

This unilateral change constituted a constructive change order under FAR 52.243-1, the standard Changes clause incorporated into the FEMA contract. *See* Ex. 2 (Trustee's counsel stating "We don't believe there is sufficient support to assert a $5.7m claim. The trustee will not be submitting a change order claim against FEMA today for $5.7m and will not authorize Ms. Mott to do so.").

.      The Trustee's opposition to abandonment of a claim that he deliberately refused to collect through inaction is legally and factually unsupportable. He cannot argue that a claim he refused to file has value sufficient to justify retention.

## IV. THE MOVANTS' DISCOVERY PRODUCTION HAS BEEN COMPLETE WITHIN THE CONSTRAINTS IMPOSED BY THE STAY AND CONSTITUTIONAL PROTECTIONS.

### A. Fifth Amendment Protections Limit Compelled Testimony.

The Trustee's Letter Motion ignores significant constraints on the Movants' ability to produce compelled testimony. These constraints arise from this Court's orders and from constitutional protections that the Trustee himself has created in alleging fraud. *See* D.I. Adv 437.

Additionally, this Court has recognized that certain testimony cannot be compelled due to Fifth Amendment protections. The Trustee has extensively alleged fraud, conversion, and misconduct against the Movants in multiple proceedings spanning four years. Adv. Case 24-5004. Under these circumstances with the referral for criminal prosecution that parallels allegations in the civil case, the Movants have valid Fifth Amendment grounds to decline testimony that might be self-incriminating. This Court cannot compel such testimony. *See, e.g., United States v. Balsys*, 524 U.S. 666, 671-690 (1998) (summarizing landmark cases and analysis of the "Compelled Self-Incrimination Clause" of the Fifth Amendment, finding that "a more expansive principle underlies the Clause").

### B. All Responsive Business Records from TSI's Files Have Been Produced.

Despite these constraints, the Movants have produced all business records from TSI's files, including those that are responsive to the Trustee's discovery requests. *See* Ex. 6. These records have been identified as business records in their transmittal letters and in testimony provided at depositions. The production includes extensive FEMA-related materials, namely:

- FEMA contract documents, including the IDIQ contract, all task orders, and all modifications;
- FEMA correspondence and email chains documenting the shipping requirement changes;
- Itemized cost documentation from subcontractors showing the incremental costs of container shipping;
- Payment records, cancelled checks, and bank records showing TSI's disbursements;
- Accounting records tracking FEMA-related revenues, costs, and claim amounts; and
- Supporting documentation for both the Cancellation Claim and Change Order Claim, including draft claim submissions, cost calculations, and legal analyses

The Trustee received these materials in July 2022 through the D0 production and conducted an extensive review through his professionals, as documented in over 50 hours of billing entries. *See* D.I. 390-1. The Trustee's professionals reconciled all bank accounts, compiled payment documentation, and analyzed claim materials. *Id.* The notion that additional discovery is required to oppose abandonment is contradicted by the Trustee's own comprehensive review of the materials already produced four years ago.

**C. The Appropriate Discovery Sanction, If Any, Would Be Preclusion of Specific Evidence.**

Even if this Court were to find some discovery deficiency (and none exists), the appropriate remedy would be to preclude the Movants from introducing specific documents that were not produced, not wholesale denial of the Abandonment Motion by denying Defendants the right to use documents already produced.[1]

Moreover, it is unclear how the Trustee's burden of proof would be affected if FEMA documents in the record, including those produced by the federal government itself in the CBCA and Federal Circuit proceedings, were barred from consideration. The Trustee had full access to the complete appellate record containing hundreds of pages of FEMA documents. He cannot now claim he lacks information about claims he personally litigated for four years.

**D. Mr. Acosta's Deposition Would Serve No Purpose on the Abandonment Motion**

The Trustee's demand for Mr. Acosta's deposition should be denied because it would accomplish nothing relevant to the Abandonment Motion (or any other issue at this point).

Mr. Acosta has already been deposed multiple times and testified extensively in multiple proceedings: in the Florida adversary proceeding, at the conversion hearing in this case, and at the Rule 60(b)(3) hearing. His testimony is part of the record before this Court.

---

[1] Questions of the admissibility of the documents are premature until the hearing. Many have already been authenticated, for example.

Mr. Acosta has testified under oath that he possesses **no original business records**, only copies of certain documents already produced. *See* D.I. 507 at 170, 174-175, 178-182 (transcript of the April 29, 2024 hearing, among others stating that the white outs were only in the R&C documents, TSI documents had nothing but marginal notes whited out, and that Mr. Acosta only has copies). Mr. Acosta does not have primary knowledge of the FEMA discussions and negotiations.

As to any matter related to allegations of fraud or misconduct, Mr. Acosta will assert his Fifth Amendment privilege on advice of counsel. The Trustee has made extensive allegations of fraudulent conduct in the adversary proceeding, the sanctions motion, and multiple other filings over four years. These allegations create substantial risk of criminal exposure. Under these circumstances, Mr. Acosta's assertion of the Fifth Amendment privilege would be proper and this Court could not compel testimony. *See* Adv. D.I. 292; 292-1.

The Trustee bears the burden of showing that Mr. Acosta possesses specific, material information **not** previously disclosed that would help the Trustee prove that claims the Trustee has already lost or refused to pursue should be retained. He also should prove that he lacks other means to obtain the documents and, under the Court's order, the Trustee cannot meet this burden. The claim of needing Mr. Acosta's deposition is pretextual – an attempt to substitute some negative inference for the evidence the Trustee lacks.

## V. THE TRUSTEE'S PATTERN OF ALLEGING MISSING EVIDENCE WHEN HIS POSITIONS LACK MERIT SHOULD BE REJECTED.

The Trustee's Letter Motion continues a well-established pattern throughout this case: whenever the Trustee cannot support his positions with actual evidence, he alleges that evidence must be missing, that documents must be incomplete, or that the Movants must be concealing information. As explained in this section and further below, this pattern is documented in the record.

### A. Miller Coffey Tate Found No Evidence of Fraud After Comprehensive Review.

After the Trustee's professionals completed their exhaustive review and reconciliation of TSI's financial records, finding accounting support for the very transactions the Trustee alleged were fraudulent, the Trustee suggested to this Court that something must be missing. This occurred despite Miller Coffey Tate's complete reconstruction of K-1s, distributions, payments, and receipts for multiple years of transactions. *See* D.I. 390-1.

The billing records show that by August 30, 2022, Miller Coffey Tate had reconciled all bank accounts, prepared schedules of receipts and disbursements for each account from 2016 through 2022, compiled Bates-stamped documentation, and analyzed all transactions. Specific billing entries demonstrate the comprehensive nature of this work, for example including the following entries:

- KCA 4/22/2022: Preparation of disbursement analysis of K-1 transactions for years 2018-2021 (4.80 hours total);

- KCA 4/22/2022: Reconciliation of Debtor's bank statements to K-1 disbursements for partners (1.40 hours);
- VJS 8/23-8/29/2022: Multiple entries preparing schedules of receipts and disbursements for all accounts (over 20 hours total); and
- JJR 8/25/2022 and 8/29/2022: Analysis of receipts and disbursement reconciliation from 2017-2021 (4.20 hours).

Despite this comprehensive reconciliation finding no evidence of the alleged fraud, the Trustee filed his preliminary injunction complaint in September 2022 alleging missing funds and fraudulent transfers. When challenged, the Trustee suggested that additional records must exist that would support his allegations – records that were never identified and never found because they do not exist.

## B. Bank Records Showed No Missing Funds.

When all bank records were produced, initially from the Movants and later through duplicative subpoenas issued by the Trustee, the records showed no evidence of fraud, no missing funds, and complete accounting for all transactions. *See* D.I 390-1. The Trustee then attempted to create the illusion of missing information by pointing to Ms. Kasen's redactions of a key account number account which creditors, in turn: (1) falsely claimed was done by TSI Members to conceal the transaction; and (2) failed to produce authentic copies of the original documents through document production issues at Robinson & Cole. *See* D.I. 669 (Rule 60(d)(3) motion).

This Court observed, when the Trustee's counsel discussed a cashier's check in a discovery hearing, that "there is no missing money." Yet, the Trustee continues to maintain the fiction of missing assets to justify ongoing litigation against the Movants despite the complete absence of evidence supporting his fraud allegations.

## C. A Manufactured Discovery Dispute Would Not Support the FEMA Claims.

Now, faced with a motion to abandon claims he has already failed to collect and subsequently dropped for many months, the Trustee alleges that missing documents somehow would help him refute his own binding statements that the FEMA Claims are not going to be pursued.

This pattern should be rejected. The Trustee has comprehensive documentation – the same documentation he used to litigate the Cancellation Claim and the same documentation he reviewed for over 36 hours before deciding not to pursue the Change Order Claim. He retained expert government contracts counsel.  He made informed business decisions about both claims. Those decisions may have been correct or incorrect, but they were made with full information.

The Trustee cannot now manufacture a discovery dispute to avoid the consequences of his own informed decisions and binding representations to this Court.

**VI. THE TRUSTEE'S MATERIAL MISREPRESENTATIONS REGARDING POSSESSION AND REVIEW OF FEMA DOCUMENTS.**

The Trustee's Letter Motion fundamentally misrepresents his possession, review, and detailed knowledge of FEMA-related documents. The Trustee claims that TSI Members "refused to produce a single document" and "refused to identify documents the TSI Members allege they previously produced." D.I. 666 at 3. This representation is demonstrably false and contradicted by the Trustee's own evidence, his professionals' billing records reflecting extensive document review, his counsel's cross-examination testimony, and most damningly, by the fact that the Trustee's own accountant requested the document index that the Trustee now uses as his Exhibit A, while simultaneously claiming no documents were identified. *See* Ex 6.

**A. The Trustee's Discovery Requests Acknowledge Prior Production.**

Exhibit A to the Trustee's Letter Motion (the very discovery requests he now complains were not answered) proves the Trustee's knowledge that documents were previously produced. Requests 1 and 2 explicitly seek only documents "**not previously produced**" concerning the FEMA Cancellation Claim and Change Order Claim. *See* D.I. 666-1, RFPs 1-2; *see also* Fed. R. Civ. P. 34(b) (made applicable by Fed. R. Bankr. P. 7034, 9014). By requesting documents "not previously produced," D.I. 666-1, the Trustee's own discovery requests acknowledge that documents were previously produced. The TSI Members' responses that documents "have been provided" or were "extensive" and "provide all of the necessary information,", were therefore entirely accurate and appropriate under Federal Rule of Civil Procedure 34(b)(2)(B)-(C). When a discovery request asks for documents "not previously produced," the correct response to documents already in the requesting party's possession is exactly what TSI Members provided.

**B. The July 2022 "D0" Production to the Trustee and the September 2022 Index of Documents were Produced to, and Subsequently Used by, the Trustee.**

On July 14, 2022, TSI Members' prior counsel Kevin Mann emailed William Homony, the Trustee's professional accounting expert at Miller Coffey Tate LLP, and David Carickhoff, the Trustee's counsel at Archer & Greiner, confirming delivery of comprehensive Debtor documents: "I understand that several boxes of documents were delivered to your office today. There was one document that inadvertently didn't make it into that deliverable, so I'm overnighting it to you via FedEx." Ex. 3 (email chain at P0000695-P0000699). This production included documents Bates-numbered D000001 through D022481, totaling over 22,000 pages of documents delivered directly to the Trustee's professionals in Philadelphia.

On September 26, 2022, Mr. Mann responded to another of Mr. Homony's requests by providing a comprehensive 29-page index identifying every document in the D0 production: "Bill - Attached is a list identifying the missing documents." *See* Ex. 10 at 2 (September 26, 2022 email with "LIST ANSWERS.pdf" attachment). This detailed index, created at the Trustee's accountant's specific request, identifies the contents of all documents from D000001 through D022481, along with multiple additional ranges of FEMA production documents throughout the D0 range.

The Trustee has possessed this comprehensive document index since September 26, 2022, over three years before filing his Letter Motion claiming TSI Members "refused to identify documents." More significantly, this index was created specifically at the request of the Trustee's own accountant to help the Trustee locate and identify documents within the production. The Trustee now attaches his own discovery requests as Exhibit A to his Letter Motion while representing to this Court that TSI Members refused to identify previously produced documents. *See* D.I. 666-1. This is a material misrepresentation.

**C. The Trustee's Professionals Extensively Reviewed Every Page of the D0 Production.**

The Trustee's statutory duty under 11 U.S.C. § 704(a)(4) requires him to "investigate the financial affairs of the debtor." The Trustee's own billing records establish that his professionals at Miller Coffey Tate LLP devoted dozens of billable hours to reviewing and analyzing the entire D0 production from D000001 through D022481, including all FEMA materials. *See* D.I. 390-1. On July 15, 2022, William Homony spent 5.50 hours to "Review documents produced by insiders in response to sanctions order" at a cost of $2,942.50. *Id.* On July 25, 2022, Homony spent 7.30 hours to "Review insiders document production in response to sanctions order" at a cost of $3,905.50. *Id.* On July 26, 2022, Homony spent another 5.10 hours on "Ongoing review of recent insiders document production" at a cost of $2,728.50. *Id.*

But the most detailed review occurred in August 2022, when the Trustee's professionals systematically reviewed the D0 production in chunks. The billing records show that on August 8 and 9, 2022, the Trustee's professionals spent more than 15 additional hours across multiple staff members reviewing and analyzing specific sequential Bates-stamped ranges: "Review and analyze TSI documentation provided (0001-4309)"; "Review and analyze provided Bates Stamp documentation (2500-5000)"; "Review and analyze provided Bates Stamp documentation (5000-7500)"; "Review and analyze provided Bates Stamp documentation (7500-10000)"; "Review and analyze provided Bates Stamp documentation (10000-12500)" "Review and analyze provided Bates Stamp documentation (15000-17500)" "Review and analyze provided Bates Stamp documentation (17500-22481)" Ex. 7 (excerpt from billing records); D.I. 390-1 at 8-9; *see also See* U.S. Dep't of Justice, *Handbook for Chapter 7 Trustees* (Oct. 1, 2012) at ch. 4 (requiring diligent administration and investigation of estate assets).

These billing entries demonstrate that the Trustee's professionals did not simply receive the documents; they systematically reviewed them in sequential order from D000001 through the entire production range of D022481, spending dozens of billable hours and thousands of dollars to analyze the documents. The Trustee's professionals reviewed the FEMA documents. They knew what they had. They billed for reviewing what they had. The Trustee cannot now credibly claim that TSI Members failed to produce or identify these documents.

**D. The Trustee's Own Counsel Elicited Testimony Confirming Delivery of All FEMA Records.**

On June 30, 2022 (even before the D0 production was delivered in July 2022), the Trustee's counsel, Mr. Carickhoff, cross-examined TSI Member Mr. Acosta under oath about document production. Carickhoff asked: "Since Mr. Miller filed the sanctions motion, have you

provided him any additional documents?" Acosta testified: "We have. We provided Bering Straits -- so, Bering Straits was our subcontractor on the MATOC and I sent over all of Bering Straits' books and records. That was their part, or their job as a subcontractor was taking care of all books and records. I submitted all email, everything that has to do with the claim, the change order, and we've given the contracts for the DLA." Ex. 8; D.I. 224 at 88:7-15; *see also* Ex 10.

Later in the same cross-examination, Mr. Carickhoff returned to this point, asking whether TSI would have maintained records to litigate the FEMA Claims. Mr. Acosta testified: "Like I said, Bering Straits was our subcontractor, they kept all our books, the books and records on that TASK order and I've sent everything to you." D.I. 224 at 101:13-17. The Trustee's own lawyer conducted this cross-examination. The Trustee cannot claim ignorance of what he possesses when his own counsel elicited sworn testimony that all FEMA-related books, records, emails, and documents concerning the claims and change orders were provided to him.

**E. The "Non TSI Business Documents" Are the Bering Straits Subcontractor Records the Trustee's Counsel Asked About.**

The comprehensive document index that TSI Members prepared at William Homony's request identifies many documents as "Non TSI Business Documents" throughout the D0 production. *See* Ex. 10 at 2 (LIST ANSWERS.pdf). The Trustee knows from his own counsel's cross-examination that these are the Bering Straits subcontractor documents – the very entity that, according to Acosta's sworn testimony elicited by the Trustee's own lawyer, "kept all our books, the books and records" for the FEMA contract. D.I. 224 at 101:13-17. The Trustee's counsel specifically asked about these records. Mr. Acosta testified under oath that all Bering Straits records were provided. The Trustee's professionals received them, reviewed them systematically from D000001 through D022481, and billed dozens of hours for that review. The Trustee's accountant then asked for an index to help locate documents within the production, and TSI Members provided that index. The Trustee cannot now claim he lacks FEMA documents or that TSI Members failed to identify what was produced. *See* D.I 390-1; D.I. 334-1; D.I. 554-1.

**F. The Trustee's Representations Are Materially False.**

The evidence establishes facts that are completely inapposite to what the Trustee represents to this Court. The Trustee claims TSI Members refused to produce documents and refused to identify previously produced documents. The record shows through the Trustee's Testimony that TSI Members delivered over 35,000 pages of documents by July 2022, *see* D.I. 224 at 33; that the Trustee's professionals systematically reviewed those documents from D000001 through D022481 and billed dozens of hours for that review, *see generally* D.I. 390-1; that when the Trustee's accountant requested help identifying documents within the production, TSI Members' counsel provided a comprehensive 29-page index specifically identifying FEMA documents with cross-references; that the Trustee's own counsel elicited sworn testimony confirming delivery of all FEMA-related books, records, and documents ; and that TSI Members' counsel offered continued assistance locating documents within the production. .

The Trustee possesses the documents. The Trustee's professionals reviewed every page of the documents and billed for that review. The Trustee's counsel elicited testimony about the

documents. The Trustee's accountant requested an index of the documents. TSI Members provided that index. The Trustee now uses discovery requests as his Exhibit A while claiming documents were not identified, when his own accountant requested and received a comprehensive index three years ago. These representations to the Court are materially false and should be rejected.

## VII. THE TRUSTEE'S HISTORICAL PATTERN OF MISREPRESENTING THE RECORD TO OBTAIN FAVORABLE COURT RULINGS IS CONTINUED IN THE LETTER MOTION.

### A. The Trustee Misstated the Urgency in Document Production to the Court through False "Trial Deadlines," Contrary to the CBCA Orders.

In the June 30, 2022, hearing on the motion for contempt and sanctions, the Trustee testified extensively about his urgent need for documents to prepare for imminent trial in the FEMA litigation pending before the Civilian Board of Contract Appeals (CBCA 7145). *See* D.I. 224 . The Trustee repeatedly invoked a "July 15th trial deadline" to justify sanctions against TSI Members for allegedly withholding documents. *Id.* . However, the CBCA's own orders establish that *no such trial existed*, and that both the Trustee and his counsel knew this when the testimony was given.

In reality, the CBCA's docket includes, in relevant part, the following:

1. **March 9, 2022 Order**: The CBCA initially scheduled a hearing for *July 5-7*, 2022 (not July 15, 2022) with various pre-hearing deadlines, including expert reports, due by April 1, 2022 and completion of discovery by April 29, 2022. *See* Ex. 11 (CBCA Order dated March 9, 2022).

2. **March 31, 2022 Order**: Following the bankruptcy conversion on March 30, 2022, the CBCA issued a critical order that eliminated all deadlines. The Board stated: "To prevent prejudice to TSI, the Board *stays the current deadlines* in the Board's March 9, 2022 order (as well as the deadline for TSI's response to FEMA's discovery request)." Ex. 12 (CBCA Order dated March 31, 2022) (emphasis added). The order directed the Trustee to notify the Board of his assignment and to propose a new schedule by May 2, 2022.

3. **April 14, 2022 Appearance**: David W. Carickhoff, Jr., the Trustee's bankruptcy counsel from Archer & Greiner P.C., filed a Notice of Appearance in the CBCA proceeding, entering his appearance "for George L. Miller, in his capacity as chapter 7 trustee of Team Systems International, LLC" as "proposed general bankruptcy counsel for Mr. Miller." Ex. 13 (Notice of Appearance dated April 14, 2022). From this date forward, Mr. Carickhoff was counsel of record in the CBCA proceeding and received all orders directly from the Board.

4. **April 15, 2022 Order and Teleconference**: The CBCA held a telephone conference "to discuss the impact of appellant, TSI's, Chapter 7 bankruptcy on CBCA 7145." The order recites: "Mr. George Miller, the trustee for appellant, Mr. Carickhoff from Archer and Greiner, representing the trustee, Mr. Matthew Lane from FEMA, and Mr. James Boland, from Venable, LLP, were on the conference call with the undersigned." Ex. 14 (CBCA

Order dated April 15, 2022). During this teleconference, Judge Sheridan explicitly cancelled the July 5, 2022 hearing: "The hearing scheduled to begin on July 5, 2022, is _cancelled_, as are the other due dates set forth in prior Board orders." *Id.* The order directed that "[b]y no later than Thursday, _June 30, 2022_, the parties are to confer and mutually decide on a schedule for processing this case to resolution." *Id.* (emphasis added).

Thus, on April 15, 2022, more than two months before the bankruptcy hearing, both the Trustee and his counsel Carickhoff *personally participated* in a teleconference with the CBCA judge, who *explicitly cancelled* the July hearing and set June 30 as the deadline for proposing a new schedule, not for any trial.

In fact, two days before the Trustee's bankruptcy court testimony, the CBCA *extended* the deadline for the parties to submit a mutually agreed upon schedule to *July 15, 2022. See* Ex. 15 (CBCA Order dated June 28, 2022). This July 15 date was not a trial date, but merely the deadline for the Trustee and FEMA to jointly propose new procedural deadlines. The order was addressed to "George L. Miller of Miller, Coffey, Tate, LLP, Philadelphia, PA, Trustee for Appellant" and copied to all counsel of record including Carickhoff.

On June 30, 2022, three months after all CBCA deadlines were stayed, more than two months after the Trustee and his counsel personally participated in a teleconference where the CBCA *cancelled* the July hearing, and two days after the CBCA confirmed that July 15 was merely a scheduling deadline, the Trustee testified repeatedly about an urgent "July 15th trial" that required immediate production of documents, making the following testimony regarding relevant deadlines:

1. "Yes. I have to be ready for trial on **July 15th**, and I have probably five percent of the documents needed to prosecute the -- the case for the $12 million." D.I. 224  at 25 (emphasis added).

2. "I do have a high burden of evidence that has to be presented by **July 15th**. And so, with the current evidence that I do have because the debtors -- you know, the debtor's executives have refused to turn over the records to me, sufficient records to prosecute the case, it's going to be very difficult." *Id.* at 26 (emphasis added).

3. "With respect to the FEMA Claims that I have to **prosecute right now**, which are hard expenses, your clients have provided me virtually nothing." Id. at 33 (emphasis added).

4. Referencing "what the judge is basically saying in her order, you know, I think it was in March of 2022." *Id*. at 68-69. The Trustee acknowledged the March 2022 CBCA order (which had stayed all deadlines) while simultaneously claiming urgent trial preparation needs.

5. "Q: And with respect to this FEMA litigation that's currently pending, have you received sufficient information to be able to prosecute that in a fulsome way? A: As I've said, I believe I've received approximately 5 percent of the information that I would have to prosecute with the support for the expenses as requested by the Court." *Id.* at 76.

*See also* Ex. 17 (highlighting the relevant portions of the transcript).

After the bankruptcy court hearing, the CBCA issued a schedule based on the parties' joint submission, setting the matter for "a decision on the record" with briefs due through December 2022. Ex. 16 (CBCA Order dated July 18, 2022). In other words, *no hearing was scheduled*. The matter would be decided entirely on written submissions.

**B. The Trustee's Counsel Sat Silent Despite Personal Knowledge the Testimony Was False and his Duty to Correct the Record.**

Throughout this testimony, Mr. Carickhoff sat in the bankruptcy courtroom as the Trustee's counsel. Carickhoff had filed the Notice of Appearance in the CBCA proceeding. Mr. Carickhoff had personally participated in the April 15, 2022 teleconference where CBCA Judge Sheridan explicitly *cancelled* the July 5 hearing. Mr. Carickhoff had received the June 28, 2022 CBCA order clarifying that July 15 was merely a deadline for proposing a schedule. Mr. Carickhoff *knew* there was no July 15 trial. Yet, Mr. Carickhoff said nothing, while his client testified under oath about an urgent trial deadline that did not exist.

This silence is particularly significant because Mr. Carickhoff is himself a Chapter 7 panel trustee in the District of Delaware, subject to appointment under 28 U.S.C. § 586. As a panel trustee, Carickhoff is held to the highest standards of professional conduct and has heightened obligations as an officer of the court. Panel trustees must maintain the integrity of the bankruptcy system and ensure accurate information is provided to the court. Yet, Carickhoff sat silent while his client provided materially false testimony to obtain sanctions against TSI Members. And it worked, as the Judge issued an order encumbering the TSI Members' individual real estate for six months. *See* D.I. 222.

The Federal Rules of Bankruptcy Procedure impose an affirmative duty on attorneys to ensure that factual contentions made to the court have evidentiary support. When an attorney learns that a representation to the court is false, the attorney has a duty to correct that representation. *See* Fed. R. Bankr. P. 9011(b) (incorporating Fed. R. Civ. P. 11(b)).

Mr. Carickhoff's failure to correct his client's false testimony about the July 15 trial deadline violated these duties. The testimony was material – it was offered as the primary justification for sanctioning TSI Members for allegedly withholding documents needed for urgent trial preparation – and the testimony was false, as Mr. Carickhoff had personal knowledge from participating in the April 15 CBCA teleconference that no trial existed and that July 15 was merely a deadline for proposing a schedule. The failure to correct was knowing: Carickhoff was present in the courtroom, heard the testimony, and chose to remain silent despite his actual knowledge that the testimony was false.

**C. The Trustee Had Actual Knowledge There Was No Trial.**

The evidence establishes that the Trustee himself knew, or should have known, that his testimony about a July 15 trial was false:

*First*, the Trustee personally participated in the April 15, 2022 CBCA teleconference where Judge Sheridan explicitly cancelled the July 5 hearing and set June 30 as the deadline for proposing a new schedule. The CBCA's order memorializing that teleconference identifies "Mr. George Miller, the trustee for appellant" as a participant in the call. *See* Ex. 14 (April 15, 2022 Order).

*Second*, the Trustee received the June 28, 2022 CBCA order, two days before his testimony, clarifying that July 15, 2022 was the deadline for proposing a "mutually agreed upon schedule," not a trial date. The order was addressed to "George L. Miller of Miller, Coffey, Tate, LLP, Philadelphia, PA, Trustee for Appellant." *See* Ex. 16.

*Third*, the original hearing date set by the CBCA's March 9, 2022 order was July 5-7, 2022, not July 15. If any hearing date existed in the Trustee's mind, it would have been July 5-7, but that hearing was explicitly cancelled during the April 15 teleconference the Trustee attended.

*Fourth*, the Trustee's own appellate counsel from Venable LLP (James Y. Boland, Christopher G. Griesedieck, and Lindsay M. Reed) were counsel of record in the CBCA proceeding and appeared on all CBCA orders. The Trustee's testimony that he needed to "be ready for trial on July 15th" could not have been based on any communication from his own appellate counsel, who knew no such trial existed.

The conclusion is inescapable: the Trustee fabricated the "July 15 trial deadline" to create a false sense of urgency in the bankruptcy court, with the knowledge and acquiescence of his bankruptcy counsel who had personal knowledge the testimony was false.

**D. The Trustee's Professionals Had Conducted Extensive Review of TSI's Books and Records.**

Additionally, the Trustee's testimony that he had "five percent of the documents" and "virtually nothing" was contradicted not only by the document production record, but by his own firm's billing records showing comprehensive forensic review of TSI's financial records.

The Trustee's billing records establish that on April 22, 2022, more than *two months* before his June 30 testimony and one week after he participated in the CBCA teleconference cancelling the hearing, his accountant Kyle Andres (KCA) performed detailed reconciliations. *See generally* D.I. 390-1. This is precisely the financial data underlying the FEMA Claims for reimbursable costs.

Moreover, as detailed in the previous section, the Trustee's professionals spent dozens of additional hours in July and August 2022 systematically reviewing the entire D0 production from D000001 through D022481, including all FEMA documents. *Id.* The Trustee possessed

comprehensive documentation, his professionals conducted forensic analysis of that documentation, and his accountants billed for reconciling the very financial records that would support the FEMA Claims. The testimony that he had "virtually nothing" was materially false.

**E. The Pattern of Misrepresentations Continues in The January 2026 Letter Motion.**

The Trustee's Letter Motion employs the same tactic: misrepresenting his possession and knowledge of documents to obtain a favorable ruling. Just as the Trustee testified in June 2022 that he lacked documents while his professionals were billing for extensive document review, and that he urgently needed documents despite the lack of urgency, the Trustee now claims that TSI Members "refused to produce a single document" and "refused to identify documents," while simultaneously using as his Exhibit A discovery requests that explicitly acknowledge prior production by seeking only documents "not previously produced."

The pattern is unmistakable and spans nearly four years of this case. In June 2022, the Trustee fabricated an urgent "July 15 trial deadline" that does not exist to pressure the bankruptcy court into sanctioning TSI Members for allegedly withholding documents, when in fact (1) his professionals had received and extensively reviewed those documents, (2) he personally participated in a CBCA teleconference where the hearing was cancelled, (3) his bankruptcy counsel had personal knowledge no trial existed and sat silent during the false testimony, and (4) he received a CBCA order two days before his testimony confirming July 15 was merely a scheduling deadline.

Now, in January 2026, The Trustee claims TSI Members refused to produce and identify documents, when in fact (1) his own accountant requested and received a comprehensive 29-page index identifying every document in the production, (2) his professionals billed dozens of hours systematically reviewing those documents, (3) his own counsel elicited sworn testimony that all documents were provided, and (4) his discovery requests explicitly acknowledge prior production by seeking only documents "not previously produced." .

In both instances, the Trustee misrepresents the record to create a false narrative of TSI Members Counsel obstruction and his own lack of information, when the objective evidence establishes the opposite.

**F. The Court May Impose a Variety of Remedies for the Pattern of Misrepresentations.**

The Trustee's conduct throughout the bankruptcy case and adversary proceedings demonstrates a deliberate pattern of misrepresenting facts to the Court to obtain favorable rulings against TSI Members. His counsel's knowing failure to correct false testimony about which he had actual knowledge, particularly given his status as a panel trustee with heightened ethical obligations, compounds these violations.

This pattern warrants various remedies under statute and case law. First, the Court may impose sanctions under Fed. R. Bankr. P. 9011. *See In re Defeo*, 632 B.R. 44, 51-57 (Bankr. D.S.C. 2021) (Bankr. D.S.C. Sept. 27, 2021) (imposing sanctions for failure to reasonably

investigate claims before filing); *see also In re Parikh*, 508 B.R. 572, 590-594 (Bankr. E.D.N.Y. 2014) (sanctioning an attorney for incomplete and contradictory filings that misled the court).

Second, the Court may also impose a surcharge for breach of fiduciary duty. *See Mosser v. Darrow*, 341 U.S. 267, 272-275 (1951) (holding a trustee personally liable for a willful breach even without estate loss); *see also In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357-60 & n. 26 (9th Cir. 1983) (summarizing the appropriate legal standard and remanding to find facts potentially supporting the surcharging of a trustee for negligent misconduct in estate administration, noting a trustee "is subject to personal liability for not only intentional but also negligent violations of duties imposed upon him by law[.]").

Third and finally, the Court may refer the matter to the U.S. Trustee's office for investigation of violations of the Trustee Handbook's ethical requirements and potential removal of the Trustee under 11 U.S.C. § 324. *See In re Walker*, 515 F.3d 1204, 1211-13 (11th Cir. 2008) (allowing *sua sponte* removal for lying under oath); *see also In re Tres-Ark, Inc.*, 483 B.R. 460, 466 (Bankr. W.D. Tex. 2012) (recognizing removal of trustee for cause includes "breach of fiduciary duty, trustee misconduct, and disinterestedness").

## **CONCLUSION**

The Trustee's Letter Motion is a transparent attempt to avoid his evidentiary burden on the Abandonment Motion and to delay a hearing on the merits. He cannot credibly oppose abandonment of claims he has already determined are not worth pursuing. His demand for additional discovery is pretextual and contradicted by the extensive documentary record, including his own billing records showing comprehensive review of all materials over four years.

The law places the burden squarely on the Trustee, as the party opposing abandonment, to show that these claims should be retained by the estate. He cannot meet this burden. His own binding statements and conduct establish that he has abandoned the claims under 11 U.S.C. § 554(b), among others, because:

- The Cancellation Claim was denied by the Federal Circuit for CBCA Appeals on July 15, 2024, as the Trustee certified to this Court the following day, *see* D.I. 528;
- The Change Order Claim submission denial was deliberate when the Trustee refused to file it on the October 6, 2023, *see* D.I. 643-3, 643-4;
- Both claims have been in the Trustee's possession for years without any action to monetize them since the adverse Federal Circuit judgment;
- The Trustee possessed comprehensive documentation since July 2022, reviewed it extensively (over 50 billable hours), participated actively in FEMA proceedings, retained expert counsel, and made informed business decisions not to pursue the claims; and
- The Trustee breached his fiduciary duty under Section 704(a)(1) by refusing to file the Change Order Claim and by refusing to authorize the Movants to preserve it.

No amount of additional discovery will change these undisputed facts. The Court should deny the Trustee's Letter Motion, proceed to a hearing on the Abandonment Motion on the

existing comprehensive record, and consider sanctions, removal, referral, and/or any other appropriate remedy against the Trustee.

Respectfully submitted,

**JOHN S. MALIK, ESQ.**
/s/ John S. Malik
Attorney at Law
100 East 14th Street
Wilmington, DE 19801
Phone: 302-427-2247
Email: jmalik@malik-law.com

**RANDY M. MOTT, ESQ.**
/s/ Randy M. Mott
DC Bar 211037
1627 K St. N.W. Suite 400
Washington, DC 20006
Phone: 202-470-0106
Email: randymott@rmottlaw.com
(admitted pro hac vice)

*Counsel to Deborah Evans Mott, Steven M. Acosta, Christopher Mott, and John S. Maciorowski, Addy Road LLC, and Team Systems International LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Bankruptcy Court for the District of Delaware by using the CM/ECF system. Participants in this case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ John S. Malik