**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| Team Systems International, LLC, | Case No. 22-10066 (CTG) |
| Debtor. | Re: D.I. 660 & 678 |

| | |
|---|---|
| George L. Miller, solely in his capacity as the Chapter 7 Trustee of Team Systems International, LLC, | |
| Plaintiff, | Adv. Proc. No. 23-50004 (CTG) |
| -against- | Re: Adv. D.I. 450 & 457 |
| Deborah Evans Mott, Steven M. Acosta, Christopher Mott, John S. Maciorowski, Addy Road LLC, Brent Road LLC, Benjamin P. Smith, Jessica M. Smith, TSI Gulf Coast, LLC, TSI Education & Training, Inc., and Team Systems International Southeast LLC, and John Does 1-100, | |
| Defendants. | |

**SUPPLEMENTAL DECLARATION OF BRYAN J. HALL IN SUPPORT OF THE MOTION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER (I) ENFORCING THE PRELIMINARY INJUNCTION, (II) LIFTING THE STAY ORDER, (III) DIRECTING DEBORAH EVANS MOTT AND JOHN S. MACIOROWSKI TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT, AND (IV) GRANTING RELATED RELIEF**

I, Bryan J. Hall, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am an attorney at law admitted to practice in the State of Delaware, among other

jurisdictions.  I am a partner with the law firm of Chipman Brown Cicero & Cole, LLP ("CBCC"),

which firm maintains offices at Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 and in New York, New York.

2.      I am one of the attorneys at CBCC who represented George L. Miller, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of the above-captioned Debtor and plaintiff in the above-captioned adversary proceeding.

3.      On December 19, 2025, the Trustee filed the Declaration of Bryan J. Hall (the "Original Declaration") in support of the *Motion of the Chapter 7 Trustee for Entry of an Order (i) Enforcing the Preliminary Injunction, (ii) Lifting the Stay Order, (iii) Directing Deborah Evans Mott and John S. Maciorowski to Show Cause Why They Should Not Be Held in Contempt, and (iv) Granting Related Relief* [Main Case D.I. 660; Adv. D.I. 450] (the "Enforcement Motion").

4.      Copies of the Trustee's Exhibits 1 through 5 are attached to the Original Declaration.

5.      I submit this supplemental declaration (the "Supplemental Declaration") in further support of the Enforcement Motion.

6.      Attached to this Supplemental Declaration as <u>Exhibit 6</u> is a true and correct copy of the Residential Real Estate Sale Contract dated as of March 25, 2025, for the real property located at 1059 SW Conch Circle, Blue Spring, Missouri 64064 (the "Missouri Property"), including the Seller's Disclosures and Condition of Property Addendum (Residential) dated as of March 23, 2025.

7.      Attached to this Supplemental Declaration as <u>Exhibit 7</u> is a true and correct copy of the Durable Power of Attorney of Deborah Evans Mott dated as of May 2, 2025.

8.      Attached to this Supplemental Declaration as <u>Exhibit 8</u> is a true and correct copy of the Durable Power of Attorney of John S. Maciorowski dated as of May 2, 2025.

9.      Attached to this Supplemental Declaration as <u>Exhibit 9</u> is a true and correct copy of the ALTA Settlement Statement – Seller for the Missouri Property dated as of May 6, 2025 and executed on May 15, 2025, together with the accompanying Closing Disclosure executed on May 15, 2025.

10.     Attached to this Supplemental Declaration as <u>Exhibit 10</u> is a true and correct copy of the Distribution of Seller Net Proceeds Check for the Missouri Property.

11.     Exhibits 6, 7, 8, 9, and 10 were obtained from Security 1st Title, the title company for the Missouri Property, in response to a subpoena for documents.

12.     Attached to this Supplemental Declaration as <u>Exhibit 11</u> is a true and correct copy of the 2025 Florida Limited Liability Company Amended Annual Report for Aloha Title LLC dated as of November 5, 2025.

13.     Attached to this Supplemental Declaration as <u>Exhibit 12</u> is a true and correct copy of the 2025 Florida Limited Liability Company Annual Report for Addy Road LLC dated as of April 30, 2025.

14.     Attached to this Supplemental Declaration as <u>Exhibit 13</u> is a true and correct copy of the 2025 Florida Limited Liability Company Annual Report for Team Systems International Southeast LLC dated as of November 3, 2025.

15.     Exhibits 11, 12, and 13 were obtained from the public website of the Secretary of State of the State of Florida.

16.     Attached to this Supplemental Declaration as <u>Exhibit 14</u> is a true and correct copy of the SAM.gov Entity Information sheet for Aloha Title LLC.

17.     Exhibit 14 was obtained from the United States government website, SAM.gov.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing statements

are true and correct to the best of my knowledge and belief.

Dated: January 20, 2026

*/s/ Bryan J. Hall*
Bryan J. Hall (No. 6285)
CHIPMAN BROWN CICERO & COLE, LLP
1313 N. Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
(302) 295-0199 (fax)
hall@chipmanbrown.com

## <u>EXHIBIT 6</u>

**Residential Real Estate Sale Contract**

dotloop signature verification: dtlp.us/YBYm-S2Ny-Z8MH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1



**KANSAS CITY REGIONAL ASSOCIATION OF REALTORS®**

# RESIDENTIAL REAL ESTATE SALE CONTRACT

1  **THIS CONTRACT is made between:** (Print names and <u>**INDICATE MARITAL STATUS OF PARTIES**</u>. If Seller name
2  is not completed, Licensee Assisting Seller to insert Seller name prior to presentation to Seller.)
3
4  **SELLER:** <u>Deborah Evans Mott (AMP)</u>
5  <u> </u>
6  **BUYER:** <u>Rachel M Stolte and Leon Dale Stolte (AMC)</u>
7  <u> </u>
8
9  ☐ **Bank-Owned Property (check if applicable).**  If the real property is bank-owned and the titled owner of record is
10 not known at the Effective Date of this Contract, BUYER and SELLER agree the name of the SELLER is amended
11 to as it is stated in the Deed at Closing and is incorporated herein by reference and in any amendments and addenda.
12 SELLER warrants it has full authority to sign and perform on this Contract on behalf of the titled owner of record.
13 ☐ **Improvements on the Property include a manufactured/mobile home. (**A manufactured/mobile home may
14 be considered personal property unless certain requirements have been met).
15
16 <u>**PROPERTY, ADDENDA, DESCRIPTIONS AND CONDITIONS**</u>
17
18 **1.   PROPERTY.**  BUYER agrees to purchase and SELLER agrees to sell the real property and the improvements
19 thereon **(the "Property")** commonly known as:
20 <u>1059 SW Conch Circle</u>     <u>Blue Springs</u>    <u>MO</u>    <u>64064</u>
21 **Street Address**        **City**        **State**    **Zip**
22
23 <u>Jackson</u>
24 **County**
25
26 **LEGAL DESCRIPTION.**  (Legal description on SELLER'S vesting deed(s) to govern):
27 <u>THE ESTATES AT CHAPMAN FAR MS 2ND PLAT---LOT 77</u>
28 <u> </u>
29 <u> </u>
30
31 This Contract, including the Fixtures, Equipment and Appliances paragraph of the Seller's Disclosure and Condition
32 of Property Addendum ("Seller's Disclosure"), not the MLS, or other promotional material, provides for what is
33 included in the sale of the Property.
34
35 Items listed in the "Additional Inclusions" or "Exclusions" below supersede the Seller's Disclosure and the pre-printed
36 list below.  If there are no "Additional Inclusions" or "Exclusions" listed, the Seller's Disclosure and the pre-printed
37 list below govern what is or is not included in the sale.
38
39 **IF THERE ARE DIFFERENCES BETWEEN THE SELLER'S DISCLOSURE AND THE PRE-PRINTED LIST**
40 **BELOW, THE SELLER'S DISCLOSURE GOVERNS.  Unless modified by the Seller's Disclosure and/or the**
41 **"Additional Inclusions" and/or the "Exclusions", all existing improvements on the Property (if any) and**
42 **appurtenances, fixtures and equipment (which SELLER agrees to own free and clear) whether buried,**
43 **nailed, bolted, screwed, glued or otherwise permanently attached to the Property are expected to remain**
44 **with Property, including, but not limited to:**
45
46 Attached shelves, racks, towel bars     Fireplace grates, screens, glass doors
47 Attached lighting     Mounted entertainment brackets
48 Attached floor coverings     Plumbing equipment and fixtures
49 Bathroom vanity mirrors,     Storm windows, doors, screens
50     attached or hung     Window blinds, curtains, coverings
51 Fences (including pet systems)       and window mounting components

DEM
03/25/25
dotloop verified
**SELLER | SELLER**    Initials   *SELLER and BUYER acknowledge they have read this page*   Initials   
                                                                              **BUYER | BUYER**

dotloop signature verification: dtlp.us/YBYm-S2hy-Z8MH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

52     **a. Electronic Systems and Components.** Upon closing SELLER agrees to reset to factory setting or provide
53     codes and passwords for all electronic systems or components at the PROPERTY, including those components
54     controlled remotely.

55

56     **b. Additional Inclusions.** The following items, if any, supersede the Seller's Disclosure and the pre-printed list
57     before; **are** considered to be part of the Property, and **are** included in the sale: _____

58     _____

59     _____

60     _____

61     _____

62     _____

63     _____

64

65     **c. Exclusions.** The following items, if any, supersede the Seller's Disclosure and the pre-printed list before; **are**
66     **not** considered to be part of the Property, and **are not** included in the sale: _____

67     _____

68     _____

69     _____

70     _____

71     _____

72     _____

73

74     **d. Additional Terms and Conditions**, if any: _____

75     _____

76     _____

77     _____

78     _____

79     _____

80

81     **e. Limited Home Warranty. (*Check One*)**

82

83     [X] BUYER waives the opportunity for a home warranty.

84

85     ☐ At a cost not to exceed $_____, (*check one*) ☐SELLER ☐BUYER agrees to purchase a home
86     warranty plan from _____ (vendor) to be paid at Closing. A home warranty
87     plan is a limited service contract covering repair or replacement of the working components of the Property for
88     a minimum of one (1) year from the Closing Date subject to the terms and conditions of the individual plan with
89     a per claim deductible of $_____.

90

91     The (*check one*) ☐ Licensee assisting SELLER ☐ Licensee assisting BUYER will be responsible for making
92     arrangements for the home warranty plan, submitting required documentation for such to the Closing Agent
93     prior to the Closing Date. Broker may receive a fee from the warranty company.

94

95     **Home warranty plans may not cover pre-existing conditions and are not a substitute for inspections.**

96

97  **2. ADDENDA.** The following Addenda (riders, supplements, etc.) are attached hereto and are a part of this Contract
98     (*Check applicable boxes):*

99

100    [X] **Seller's Disclosure and Condition of Property Add.**    ☐ **Other:** _____

101    ☐ **Lead Based Paint Disclosure Addendum**       ☐ **Other:** _____

102    [X] **Contingency for Sale and/or Closing Add.**      ☐ **Other:** _____

103       **(see SALE CONTINGENCY paragraph)**       ☐ **Other:** _____

104    [X] **Other:** <u>In Its Present Condition</u>       ☐ **Other:** _____

105    ☐ **Other:** _____       ☐ **Other:** _____

Initials   *SELLER and BUYER acknowledge they have read this page*   Initials

SELLER | SELLER                BUYER | BUYER

dotloop signature verification: dtlp.us/YBYm-52hy-ZBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

106    **3.   DESCRIPTIONS AND CONDITIONS.**
107
108    **a.   Effective Date.   The Effective Date** will be the date of final acceptance by the last party to sign this **Contract**
109    or a **Counter Offer Addendum.**
110
111    **b.   Seller's Disclosure Status.**   SELLER confirms information contained in the Seller's Disclosure and Condition
112    of Property Addendum is current as of the Effective Date of the Contract.   <u>SELLER understands that the law</u>
113    <u>requires disclosure of any material defects, known to SELLER, in the Property to prospective Buyer(s) and that</u>
114    <u>failure to do so may result in civil liability for damages.</u>
115
116    **c.   Entire Agreement and Manner of Modifications.**   This Contract and all attachments constitute the complete
117    agreement of the parties concerning the Property; supersede all previous agreements, and may be modified or
118    assigned only by a written agreement signed by all parties.
119
120    **d.   Parties.**   This is a Contract between SELLER and BUYER.   If SELLER or BUYER constitutes two or more
121    persons, the terms "SELLER" or "BUYER" will be construed to read "SELLERS" or "BUYERS" whenever the
122    sense of the Contract requires.
123
124    Unless identified as SELLER or BUYER, Listing Broker and any Cooperating Broker and their Agents
125    (collectively referred to as "Broker") and any Escrow or Closing Agent are acting as Agents only and are not
126    parties to this Contract.   Broker assisting buyer shall be an express third-party beneficiary of the provisions of
127    Section 4.f.1 of this Contract and shall have a separate and independent right to enforce such provision against
128    SELLER.
129
130    SELLER and BUYER acknowledge Broker may have a financial interest in third parties providing specialized
131    services required by this Contract including, but not limited to: Lender, title insurance company, Escrow Agent,
132    Closing Agent, warranty company, wood infestation/mechanical/structural or other inspectors and repair
133    personnel. SELLER and BUYER agree Broker will not be responsible for the conduct of third parties providing
134    specialized services whether those services were arranged by SELLER, BUYER, or Broker on behalf of either.
135
136    ☐ SELLER and/or BUYER is a licensed real estate broker or salesperson.  *(check applicable boxes)*
137    ☐ SELLER licensed in:   ☐ MO  ☐ KS  ☐Other _____
138    ☐ BUYER licensed in:    ☐ MO  ☐ KS  ☐Other _____
139
140    ☐ Licensee assisting SELLER is an immediate family member of: *(check applicable boxes)*
141    ☐ SELLER    ☐ BUYER
142    ☐ Licensee assisting BUYER is an immediate family member of: *(check applicable boxes)*
143    ☐ SELLER    ☐ BUYER
144
145    **e.   Notices.**   Any notice or other communication required or permitted hereunder may be delivered in person, by
146    facsimile, United States Postal Service, courier service or email to the address set forth in this Contract or such
147    other address or number as will be furnished in writing by any such party.
148
149    Such notice or communication will be deemed to have been given as of the date and time so delivered.  Delivery
150    to or receipt by the Licensee assisting BUYER will constitute receipt by BUYER and delivery to or receipt by the
151    Licensee assisting SELLER will constitute receipt by SELLER.
152
153    **f.   Time is of the essence**.  Time is of the essence in the performance of the obligations of the parties under this
154    Contract.  With the exception of the terms "banking days" or "business days", as used herein, a "**day**" is defined
155    as a 24-hour calendar day, seven (7) days per week.
156
157    **g.   Electronic Transaction.**   All parties agree this transaction may be conducted by electronic means, including
158    email, according to the Uniform Electronic Transaction Act as adopted in Kansas and Missouri.
159
160    **h.   Cyber Awareness.**  Because you are going to be involved in a real estate transaction where money is changing
161    hands, you are a potential target for cyber-criminals. Always contact the closer directly before wiring any money.

Initials   *SELLER and BUYER acknowledge they have read this page*   Initials

SELLER   SELLER    BUYER   BUYER

dotloop signature verification: dtlp.us/YBYm-52hy-Z8MH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

162  **PURCHASE PRICE, FINANCIAL TERMS AND CLOSING AND POSSESSION**
163
164  **4. PURCHASE PRICE.** The Purchase Price for the Property is ........................................... $ 544,700.00
165  which BUYER agrees to pay as follows:
166
167  **a. Earnest Money** will be delivered to Licensee Assisting Seller or Escrow Agent
168  within 5 calendar days (three (3) if left blank) after the Effective Date
169  (the "Delivery Period") and must comply with state laws as defined in the
170  Earnest Money and Additional Deposits paragraph of this Contract.
171
172  **If Earnest Money is not delivered during the Delivery Period,  SELLER**
173  **may cancel this Contract by written notice once the Delivery Period has**
174  **ended and prior to delivery of the Earnest Money.**
175
176  **b. Earnest Money** in the amount of ............................................................................ $ 5,000.00    (b)
177  in the form of: *(Check one)*
178  ☒ Check/Electronic Funds Transfer/ACH  ☐ Other_____
179
180  Deposited with: Security 1st
181  *(Check one)* ☒ refundable ☐ non-refundable
182
183  BUYER acknowledges that funds payable to and held by SELLER **WILL NOT** be held
184  subject to the terms of the Earnest Money and Additional Deposits paragraph.
185
186  **c. Additional Earnest Money** in the amount of (ZERO ($0) if left blank)....... ............. $ 0    (c)
187  will be delivered on or before _____ in the form of: *(Check one)*
188  ☐ Check/Electronic Funds Transfer/ACH  ☐ Other_____
189
190  Deposited with: _____
191  *(Check one)* ☐ refundable ☐ non-refundable
192
193  BUYER acknowledges that funds payable to and held by SELLER **WILL NOT** be held
194  subject to the terms of the Earnest Money and Additional Deposits paragraph.
195
196  **d. Total Amount Financed by BUYER** (Zero (0) if Cash Sale) .................................... $ 389,700    (d)
197  (not including financed mortgage insurance premiums,
198  VA Funding Fee or other closing costs, if any)
199
200  **e. Balance of Purchase Price to be paid in CERTIFIED FUNDS**
201  Purchase Price (less b, c & d of this paragraph) on or before Closing Date. ............ $ 150,000    (e)
202  ☐ Includes Lender(s) approved down payment assistance.
203
204  **f. Total Additional Seller Expenses** (Each line ZERO ($0) if left blank):
205
206  1. **SELLER Compensation to Broker assisting BUYER.** SELLER agrees
207  to pay Broker assisting BUYER from SELLER'S funds at Closing .................. $ 16,341
208
209  2. **Additional SELLER paid costs.**  In addition to any other costs SELLER
210  agreed to pay herein, SELLER agrees to pay other allowable closing costs
211  permitted by Lender(s) and/or prepaid items for BUYER, not to exceed: ............ $_____
212
213  3. **Costs Not Payable by BUYER.** Some lending programs may prohibit
214  a **BUYER** from paying certain closing-related costs. SELLER agrees to
215  pay all costs associated with obtaining the **BUYER'S** loan(s) which
216  the program rules will not permit the **BUYER** to pay, not to exceed: .................. $_____
217
218  **TOTAL ADDITIONAL SELLER EXPENSES:** ...................................................... $ 16,341.00

Initials  *SELLER and BUYER acknowledge they have read this page*  Initials
SELLER  SELLER                                                                                    BUYER  BUYER

dotloop signature verification: dtlp.us/YBYm-S2hy-ZBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

219       **g.** **Other Financing Costs.**
220

221          1.  **Loan Costs.**  BUYER agrees to pay all customary costs necessary to obtain the Loan(s) (including but not
222              limited to, origination fees, discounts or buy-downs) unless otherwise agreed.
223

224          2.  **Private Mortgage Insurance (PMI).**  BUYER will pay any up front PMI premium and annual renewal
225              premiums or will finance the PMI as a part of the Loan(s), if required by Lender(s).
226

227          3.  **FHA Mortgage Insurance (MIP).**  BUYER will pay any up front MIP premium and annual renewal premiums
228              or will finance MIP as a part of the Loan(s).
229

230          4.  **VA Funding Fee** as required by Lender(s) will be paid at Closing by the BUYER or financed as part of the
231              Loan(s).
232

233          5.  **USDA Funding Fee** as required by Lender(s) will be paid at Closing by the BUYER or financed as part of
234              the Loan(s).
235

236          6.  **Flood Insurance.**  BUYER agrees to pay for flood insurance if required by Lender(s).
237

238  **5.**  **CLOSING AND POSSESSION.**  On or before _05/15/2025_____ (Closing Date), SELLER will execute and deliver
239      into escrow with the title company(s) or other Closing Agent(s), a general warranty deed (or special warranty deed
240      or fiduciary deed, if SELLER is a corporation, association, financial institution or fiduciary) and all other documents
241      and funds necessary to satisfy SELLER'S obligations under this Contract.
242

243      On or before the Closing Date, BUYER will execute and deliver into escrow with the title company(s) or other Closing
244      Agent(s), all documents (including note(s), mortgage(s)/deed(s) of trust, and any other documents required by
245      BUYER'S Lender(s), if BUYER is obtaining financing) and funds (including Loan proceeds, if BUYER is obtaining
246      financing) necessary to satisfy BUYER'S obligations under this Contract.
247

248      **SELLER and BUYER acknowledge all funds required for Closing must be in the form of cashier's check,**
249      **wire transfer or other certified funds.**
250

251      When all documents and funds have been executed and delivered into escrow with the title company(s) or other
252      Closing Agent(s), the Closing will be completed.  SELLER will deliver possession of the Property to BUYER on
253      _05/15/2025 AT FUNDING_____ at _____ o'clock ____. m., (if left blank, **Possession** will be 5:00 P.M. on the
254      **Closing Date**).
255

256      **BUYER must not occupy the Property or place personal property in or on it prior to completion of the**
257      **Closing and disbursement or availability of SELLER'S proceeds,** if any, unless otherwise agreed upon in writing
258      by the BUYER and the SELLER.
259

260  **6.**  **APPRAISED VALUE CONTINGENCY.**
261

262      **If Financing is being obtained, the appraisal must be completed within the Loan Approval Period.**
263

264      **If a cash sale, BUYER** may within _____ calendar days after the Effective Date of this Contract (within the
265      Inspection Period if left blank) obtain, at BUYER'S expense, an appraisal of the Property by an independent licensed
266      appraiser.
267

268      If the final appraised value of the property, as determined by BUYER'S Lender's appraiser or if a cash sale,
269      BUYER'S appraiser, is not equal to or greater than Purchase Price, BUYER will notify SELLER in writing, within
270      _____ calendar days (five (5) days if left blank), attaching a copy of the appraisal report, and the following may
271      occur:
272

273      **BUYER and SELLER will have _____ calendar days (five (5) days if left blank) after SELLER'S receipt of**
274      **BUYER'S appraisal report ("Appraisal Negotiation Period"), to reach an agreement resolving the**
275      **appraisal value and/or purchase price.**

____ Initials  *SELLER and BUYER acknowledge they have read this page*  Initials ____
SELLER | SELLER                                     BUYER | BUYER

dotloop signature verification: dtlp.us/YBYm-52hy-ZBMH

Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

276   During this period, SELLER or BUYER may seek a reconsideration of value by the appraiser.  If such
277   reconsideration finds a value equal to or greater than the Purchase Price, or if BUYER and SELLER sign an
278   Amendment resolving the difference between the appraised value and the Purchase Price, the transaction will
279   move forward to Closing.
280
281   **If no resolution is reached prior to the expiration of the Appraisal Negotiation Period, then after the**
282   **expiration of the Appraisal Negotiation period, either party may cancel this contract by written notice to**
283   **the other and BUYER'S Earnest Money will be subject to the provisions of the Earnest Money and**
284   **Additional Deposits paragraph of the Contract.**
285
286   **7.   SALE CONTINGENCY.**  *(Check applicable box)*
287
288   ☐  This Contract is **NOT** contingent upon the sale and/or Closing of a BUYER'S Property.
289
290   ☒  This Contract **IS** contingent upon the sale and/or Closing of a BUYER'S Property and a **Contingency For Sale**
291   **and/or Closing of Buyer's Property Addendum is attached.**
292
293
294   **8.   FINANCIAL TERMS.**
295
296   ☐  **THIS IS A CASH SALE**.  BUYER must provide written verification of funds within _____ calendar days (five (5)
297   days if left blank), after the Effective Date, which are sufficient to complete the Closing on this Contract.
298
299   ☒  **THIS IS A FINANCED SALE.**  This Contract is contingent upon BUYER obtaining the financing described in
300   this paragraph.
301
302   BUYER may obtain Loan(s) different from those described herein provided that the terms of the Loan(s) <u>do not</u>
303   <u>result in additional costs to SELLER, delay the Closing date, or change the Loan approval time frame.</u>  These
304   changes must be agreed in writing, by both parties, within five (5) calendar days of BUYER'S knowledge and no
305   later than _____ calendar days before Closing Date (fifteen (15) days if left blank). Any other changes must be
306   communicated to SELLER in writing and include a pre-approval letter.
307
308   <u>BUYER and SELLER are hereby informed any changes to the terms below after the Effective Date of the Contract</u>
309   <u>have the potential to delay Closing and/or change costs due to federal regulations.</u>
310
311   **a.   Type of Financing.**  Loan(s) will be ☒ owner-occupied Loan(s) or ☐ investment Loan(s).
312
313   **b.   Loan Types/Terms.**  <u>BUYER will obtain a Loan(s) upon the following terms.</u>
314

| | Primary Loan | Secondary Loan |
|---|---|---|
| 315 **Type:** | | |
| 316 Conventional | ☒ | ☐ |
| 317 FHA | ☐ | ☐ |
| 318 VA | ☐ | ☐ |
| 319 USDA | ☐ | ☐ |
| 320 Other_____ | ☐ | ☐ |
| 321 Owner Financing *(8d and 8e below do not apply)* | ☐ | ☐ |
| 322 | | |
| 323 **Interest Rate:** | | |
| 324 Fixed Rate | ☒ | ☐ |
| 325 Adjustable Rate | ☐ | ☐ |
| 326 Interest Only | ☐ | ☐ |
| 327 Other_____ | ☐ | ☐ |
| 328 | | |
| 329 **Amortization Period** | 30_____years | _____years |
| 330 **Principal Amount or LTV** | 28/72_____ | _____ |



Initials   *SELLER and BUYER acknowledge they have read this page*   Initials

SELLER | SELLER                                                                BUYER | BUYER

dotloop signature verification: dtlp.us/YBYm-S2hy-ZBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

331  All Loan amounts will include financed mortgage insurance premiums or VA funding fee, if any, according to the
332  provisions described herein (the "Loan").  The Loan(s) will be secured by a mortgage/deed of trust on the
333  Property or as otherwise required by Lender(s), and repayable in monthly installments.
334
335  **c.   The Loan(s) will bear interest as follows:**
336
337  1.  Primary Loan        ☐ interest rate not exceeding _____% per annum or
338                         ☒ the prevailing rate at closing
339
340  2.  Secondary Loan      ☐ interest rate not exceeding _____% per annum or
341                         ☐ the prevailing rate at closing
342
343  BUYER has the option to "lock in" the foregoing interest rate or to "float" the interest rate.
344
345  If BUYER locks in a rate, BUYER agrees to accept the "locked" rate and terms even if different than those stated
346  above.  If BUYER floats the rate, BUYER agrees to accept the rate and terms available from BUYER'S Lender(s)
347  for which BUYER qualifies at Closing.
348
349  **d.   Loan Application(s).**   BUYER agrees to authorize Lender(s) to perform all required services (credit report,
350  appraisal, etc.), pay the fees required by Lender(s), and provide Lender(s) with all information requested no
351  later than five (5) days after the Inspection Period ends.
352
353  ☒   **BUYER IS PRE-APPROVED** (See attached Lender(s) letter(s).) BUYER has submitted information to
354        Mr Cooper Home Mortgage    Zachary Pollard    (Lender(s)) who has checked
355        BUYER'S credit and indicated BUYER can qualify for a Loan(s) in an amount equal to or greater than
356        the Loan(s) contemplated in this Contract, subject to satisfactory appraisal of the Property and any
357        other conditions set forth in the attached Lender(s) letter(s)**.**  The pre-approval must indicate the
358        BUYER'S credit is acceptable to Lender(s) and indicate whether or not the pre-approval is subject to
359        the sale and Closing of the BUYER'S current property.
360
361  ☐   **BUYER IS NOT PRE-APPROVED.** Within _____ calendar days (five (5) days if left blank) after
362        the Effective Date of this Contract, BUYER will complete a written application.
363
364  **SELLER is aware that pre-approval is not a guarantee that BUYER will receive Lender(s) Loan
365  approval(s).**
366
367  **e.   Loan Approval(s).**   BUYER agrees to make a good faith effort to obtain a commitment for the Loan(s) within
368  _____ calendar days (forty-five (45) days if left blank) from the Effective Date of this Contract or within
369  _____ calendar days (five (5) days if left blank) prior to the Closing Date, whichever is earlier (the "Loan
370  Approval Period").
371
372  If BUYER is unable to obtain a commitment for the Loan(s) within the Loan Approval Period, SELLER may
373  cancel this Contract by written notice.
374
375  Upon written evidence of rejection provided by BUYER'S Lender(s), BUYER or SELLER may cancel this
376  Contract by written notice.
377
378  In either case, BUYER'S Earnest Money will be subject to the provisions of the Earnest Money and Additional
379  Deposits paragraph of the Contract.
380
381  **f.   Lender Appraisal Requirements.**   In addition to any other costs or sums to be paid by SELLER pursuant to
382  this Contract, SELLER agrees to pay an amount not to exceed $_____ (zero (0) if left blank) for
383  requirements contained in the Lender's appraisal and a copy of Lenders appraisal requirements will be provided
384  to SELLER.  If any repairs are required, they will be performed in a workmanlike manner with good-quality
385  materials.

_____ Initials   *SELLER and BUYER acknowledge they have read this page*   Initials _____
SELLER | SELLER                                                                BUYER | BUYER

dotloop signature verification: dtlp.us/YBYm-S2hy-ZBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

386  If appraisal and/or Lender(s) requirements exceed the amount in this blank and if SELLER and BUYER have
387  not agreed in writing to a resolution of the excess appraisal and/or Lender(s) requirements prior to the Closing
388  Date, or within the time period (no less than five (5) calendar days) specified in a written demand by either party,
389  this Contract will be cancelled and disposition of BUYER'S Earnest Money will be subject to the provisions of
390  the Earnest Money and Additional Deposits paragraph of the Contract.

391
392  **CONDITION, MAINTENANCE AND INSPECTIONS OF THE PROPERTY**

393
394  **9.  UTILITIES.**  SELLER agrees to leave all utilities on until the date of possession unless otherwise agreed.

395
396  The BUYER will pay SELLER for the amount of fuel left in tank(s) at Closing based upon SELLER'S actual cost at
397  time of purchase, if applicable. SELLER will have tank read no earlier than seven (7) calendar days and no later
398  than five (5) calendar days prior to the Closing Date and provide documentation to BUYER.

399
400  **10.  MAINTENANCE OF PROPERTY.**  SELLER will maintain the Property in its present condition and agrees to perform
401  ordinary and necessary maintenance, upkeep and repair to the Property through the Possession Date.

402
403  SELLER must advise BUYER in writing of any substantial change in the condition of the Property prior to Closing.

404
405  Unless otherwise agreed in writing, SELLER must remove all possessions, trash and debris, and clean the Property,
406  upon vacating or prior to delivery of Possession.

407
408  **11.  INSURANCE/CASUALTY LOSS.**  SELLER agrees to keep the Property insured until delivery of SELLER'S deed
409  to BUYER.

410
411  **BUYER and SELLER agree to consult with their respective insurance companies to ensure appropriate**
412  **coverage during the time between completion of close and possession.**

413
414  If before delivery of the deed to BUYER, the Property is damaged or destroyed by fire or other causes including
415  those that could be covered by what is known as fire and extended coverage insurance, then the SELLER must
416  notify the BUYER in writing within one (1) calendar day of discovery of such damage. The parties agree that the risk
417  of that damage or destruction will be borne as follows:

418
419  **a.**  If the damage is minor, SELLER may repair or replace the damage done to the Property if the work can be
420  completed before the Closing Date.

421
422  If the SELLER elects to repair or replace the damage done to the Property, but repair/replacement cannot be
423  completed prior to the Closing, with written agreement between the parties one of the following options will be
424  chosen:

425
426  1.  SELLER will pay for repair/replacement after Closing; or
427  2.  The parties will extend the Closing Date to such time as repairs/replacement can be completed; or
428  3.  With consent of BUYER'S Lender(s), 1.5 times the estimated cost of repair/replacement will be escrowed
429  until repair/replacement is complete with any funds remaining after payment for repairs/replacement being
430  remitted to the party that funded the escrow.

431
432  **b.**  If SELLER elects not to repair or replace the damage done to the Property, or if the damage is not minor, the
433  BUYER may enforce or cancel this Contract by written notice to SELLER within ten (10) calendar days after
434  receiving notice of such damage to the Property.

435
436  1.  If BUYER elects to enforce this Contract, the Purchase Price will not be reduced and the Property will be
437  conveyed in its existing condition at the time, provided SELLER must furnish BUYER with a copy of the
438  insurance damage assessment and be responsible for paying the insurance deductible and assign
439  SELLER'S fire and extended coverage proceeds to BUYER at Closing.
440  2.  If BUYER and SELLER mutually agree upon the cost of repairs, then SELLER may pay the cost of those
441  repairs.

 Initials  *SELLER and BUYER acknowledge they have read this page*  Initials 

dotloop signature verification: dtlp.us/YBYm-52hy-ZBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

442 **12.  SURVEY.**    BUYER may, at BUYER'S expense, obtain a "Staked Survey" of the Property no later than _____
443    calendar days (ten (10) days if left blank) prior to the Closing Date to assure there are no defects, encroachments,
444    overlaps, boundary line or acreage disputes, or other such matters that would be disclosed by a survey.

446    BUYER acknowledges a Mortgage Inspection Report or "Loan Survey" may be required by a lending institution and
447    is not a "Staked Survey".  A title insurance company typically requires a "Staked Survey" in order to provide survey
448    coverage to the BUYER.

450    Within five (5) calendar days of BUYER'S receipt of Survey, BUYER must notify SELLER of any encroachments of
451    any improvements upon, from, or onto the Property or any building setback line, property line, or easement, which
452    encroachment will be deemed to be a title defect.  SELLER must remedy such defects as are susceptible of being
453    remedied prior to the Closing Date.  If SELLER does not remedy the defects in title, BUYER will have one of the
454    following options:

456    **a.**  Completing this purchase and accepting the title that SELLER is able to convey without adjustment in the
457        Purchase Price; or

459    **b.**  Cancelling this Contract by written notice. BUYER'S Earnest Money will be subject to the provisions of the
460        Earnest Money and Additional Deposits paragraph of the Contract.

462 **13.  INSPECTIONS.**  BUYER may, within <u>10</u>    calendar days (ten (10) days if left blank) (the "Inspection Period") <u>after</u>
463    the Effective Date of this Contract, at BUYER'S expense, have property inspections by an **independent, qualified**
464    **inspector(s)** which may include, but are not limited to:

466    appliances, plumbing (including sewer line and septic system), electrical, heating system, central air conditioning,
467    fireplace, chimney, foundation, roof, siding, windows, doors, ceilings, floors, insulation, drainage, interior and
468    exterior components, any wall, decks, driveways, patios, sidewalks, fences, slabs, pest infestation, health and/or
469    environmental concerns (including lead based paint, mold, asbestos and radon) as provided below and in the
470    Additional Disclosures Including Those Mandated by State or Federal Law paragraph.

472    It is BUYER'S responsibility to perform due diligence and verify any information that BUYER considers to be
473    material to the purchase of the Property. If the Property is governed by a homeowner's association, it is
474    recommended that BUYER determine the HOA funds on hand for expenditures and funds allotted for specific
475    projects. Any information provided by the Broker(s) and its affiliated licensee(s) assisting in this transaction is for
476    information and marketing purposes only. BUYER shall complete all due diligence and verification of material
477    concerns during the Inspection Period.

479    **a.  Property Insurability.**  During the Inspection Period, it is recommended BUYER determine if Property is
480        insurable.

482    **b.  Factors Affecting Inspections.**  BUYER acknowledges such inspections may not identify deficiencies in
483        inaccessible areas of the Property and may be limited by weather conditions at the time of the inspection. It is
484        recommended BUYER check with Lender(s) and/or local government authority regarding septic inspection.

486    **c.  Access to Property and Re-Inspections.**  SELLER must provide BUYER reasonable access to the Property
487        to conduct the inspections, re-inspections, inspection of any corrective measures completed by SELLER and/or
488        final walk through prior to the Closing Date.

490    **d.  Damages and Repairs.**  BUYER will be responsible and pay for any damage to the Property resulting from the
491        inspection(s).

493    **e.  Quality of Repairs.**  SELLER agrees any corrective measures which SELLER performs pursuant to the
494        following provisions will be completed in a workmanlike manner with good-quality materials.



SELLER

Initials    *SELLER and BUYER acknowledge they have read this page*    Initials

dotloop signature verification: dtlp.us/YBYm-5Zhy-ZBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

495      **f.**   **Wood-Destroying Insects. SELLER AGREES TO PAY TO HAVE THE PROPERTY TREATED** for control
496            of infestation by wood-destroying insects if a written inspection report of a certified pest inspector reveals
497            evidence of active infestation, or evidence of past untreated infestation, or otherwise recommends treatment
498            in the main dwelling unit, or included additional structures identified below or on the Property within thirty (30)
499            feet of such unit or structure(s) (or as otherwise required by government regulations if BUYER is obtaining an
500            FHA/VA or other government program Loan(s)). BUYER will pay for any inspections requested by BUYER
501            and/or required by BUYER'S Lender(s).
502
503            **The inspection report must be delivered WITHIN THE INSPECTION PERIOD, or any treatment will be at**
504            **the BUYER'S expense.**
505
506         1.   If treatment is required, SELLER will provide BUYER with a certificate evidencing treatment by a certified
507               pest inspector of SELLER'S choice, which certificate BUYER agrees to accept. Treatment will be completed
508               no earlier than ninety (90) calendar days prior to the Closing Date.
509
510         2.   Additional structures to be included in the inspection are: _____
511               _____
512               _____
513
514         3.   Any damage or repair issues related to wood-destroying insect infestations must be identified as
515               Unacceptable Conditions and addressed as set forth below.
516
517      **g.**   **What If Buyer Does Not Conduct Inspections?** If BUYER does not conduct inspections, BUYER will have
518            waived any right to cancel or renegotiate this Contract pursuant to the inspection provisions.
519
520      **h.**   **What is an Unacceptable Condition?** An Unacceptable Condition is any condition identified in a written
521            inspection report prepared by an independent qualified inspector(s) of BUYER'S choice, which condition is
522            unacceptable to BUYER and not otherwise excluded in this Contract.
523
524      **i.**   **What If Buyer Does Not Give Timely Notice Of Unacceptable Conditions?** If BUYER conducts inspections
525            but fails to notify SELLER of Unacceptable Conditions prior to the expiration of the Inspection Period, BUYER
526            will have waived any right to cancel or renegotiate this Contract pursuant to these inspection provisions.
527
528      **j.**   **What Is <u>Not</u> An Unacceptable Condition?** The following items will not be considered Unacceptable
529            Conditions and cannot be used by BUYER as a reason to cancel or renegotiate this Contract. Any items marked
530            Excluded (EX) on Seller's Disclosure and Condition of Property Addendum in addition to the following items will
531            not be considered: _____
532            _____
533            _____
534
535      **k.**   **What If Buyer's Inspections Reveal Unacceptable Conditions?** If BUYER'S inspections reveal
536            Unacceptable Conditions, BUYER may do any one of the following:
537
538         1.   **ACCEPT THE PROPERTY IN ITS PRESENT CONDITION.** BUYER may notify SELLER on the Inspection
539               Notice that the inspections are satisfactory or do nothing. In either case, BUYER will have waived any right
540               to cancel or renegotiate due to any Unacceptable Conditions; or
541
542         2.   **CANCEL THIS CONTRACT** by notifying SELLER on the Inspection Notice within the Inspection Period; or
543
544         3.   **OFFER TO RENEGOTIATE** with SELLER by notifying SELLER on the Resolution of Unacceptable
545               Conditions within the Inspection Period.
546
547      **l.**   **BUYER'S notice of cancellation or offer to renegotiate terminates the Inspection Period and must be**
548            **accompanied by the applicable written inspection report(s) in their entirety from the independent,**
549            **qualified inspector(s) who conducted the inspection(s).**
550

_DEM_ 03/25/25
SELLER / SELLER    Initials    *SELLER and BUYER acknowledge they have read this page*    Initials     BUYER / BUYER

dotloop signature verification: dtlp.us/YBYm-52hy-zBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

551     **m.** **Resolution of Unacceptable Conditions. BUYER and SELLER will have _____ calendar days (five (5)**
552     **days if left blank) after SELLER'S receipt of BUYER'S Inspection Notice/Resolution of Unacceptable**
553     **Conditions (the "Renegotiation Period"), to reach an agreement resolving the Unacceptable Conditions.**
554     Any of the following executed and delivered to the other party or other party's Agent prior to the expiration of
555     the Renegotiation Period will constitute such an agreement:
556
557         1. SELLER'S signature agreeing to do everything requested by BUYER on the original Resolution of
558         Unacceptable Conditions Amendment attached to Inspection Notice; or
559
560         2. A revised Resolution of Unacceptable Conditions Amendment signed by BUYER and SELLER resolving
561         the unacceptable conditions; or
562
563         3. BUYER'S signature on the Resolution of Unacceptable Conditions Amendment accepting the Property in
564         its present condition.
565
566     **If no agreement resolving the Unacceptable Conditions is reached during the Renegotiation Period as**
567     **provided above, then after the expiration of the Renegotiation Period either of the following is**
568     **permitted under the Contract.**
569
570         A. Negotiations may still proceed. Any agreement must be in a written Amendment and signed by both
571         parties.
572
573         B. Either party may cancel this Contract by written notice to the other and the Earnest Money will be
574         returned subject to the provisions of the Earnest Money and Additional Deposits paragraph of the
575         Contract.
576

## DEFAULTS AND REMEDIES

577
578
579 **14.** **DEFAULTS AND REMEDIES.** SELLER or BUYER will be in default under this Contract if either fails to comply with
580     any material covenant, agreement or obligation within any time limits required by this Contract. Following a default
581     by either SELLER or BUYER under this Contract, the other party will have the following remedies, subject to the
582     provisions of Earnest Money and Additional Deposits paragraph of this Contract.
583
584     **If SELLER defaults, BUYER may:**
585
586     **a.** Specifically enforce this Contract and recover damages suffered by BUYER as a result of the delay in the
587     acquisition of the Property.
588
589     **b.** Terminate this Contract by written notice to SELLER and, at BUYER'S option, pursue any remedy and
590     damages available by law or in equity. If BUYER elects to terminate this Contract, the Earnest Money will
591     be returned to BUYER subject to the provisions of Earnest Money and Additional Deposits paragraph of
592     this Contract.
593
594     **If BUYER defaults, SELLER may:**
595
596     **a.** Specifically enforce this Contract and recover damages suffered by SELLER as a result of the delay in the
597     sale of the Property.
598
599     **b.** Terminate this Contract by written notice to BUYER and, at SELLER'S option, either retain the Earnest
600     Money as liquidated damages as SELLER'S sole remedy (the parties recognizing that it would be
601     extremely difficult to ascertain the extent of actual damages caused by BUYER'S breach, and that the
602     Earnest Money represents as fair an approximation of such actual damages as the parties can now
603     determine) as provided in this Contract, or pursue any other remedy and damages available at law or in
604     equity.
605
606     In any legal action to enforce rights under this Contract, the prevailing party is entitled to reimbursement of all
607     reasonable attorney fees, court costs, and other related legal expenses incurred in connection with such legal
608     action.
609

Initials     ***SELLER and BUYER acknowledge they have read this page***    Initials

SELLER    SELLER                        BUYER    BUYER

dotloop signature verification: dtlp.us/YBYm-S2hy-ZBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

**15. DISPUTE RESOLUTION.** If a dispute arises relating to this Contract prior to or after closing between BUYER and SELLER, or between BUYER or SELLER and a Brokerage Firm or its licensee assisting in the transaction, and the parties to such dispute or claim are unable to resolve the dispute, BUYER and SELLER agree in good faith to attempt to settle such dispute through the dispute resolution process using a professional mediator. The parties to the dispute must agree in writing before any settlement is binding. Any agreement signed by the parties pursuant to the dispute resolution conference shall be binding. For controversies and claims that do not exceed the lesser of: (a) $5,000.00 (five thousand dollars); or (b) the applicable jurisdictional limit of small claims court, either party may bring such claims in small claims court in lieu of dispute resolution. The following matters are excluded from dispute resolution: foreclosure or other action to enforce a deed of trust, mortgage, or land contract; an unlawful detainer action; the filing or enforcement of a mechanic's lien; any matter, which is within the jurisdiction of a probate court, or; a violation of a state's real estate license laws. Each party agrees to pay their equal share of any cost to use the services of a professional mediator, unless otherwise agreed to by the parties.

**ADDITIONAL DISCLOSURES INCLUDING THOSE MANDATED BY STATE OR FEDERAL LAW**

**16. RADON, MICROBIALS AND OTHER ENVIRONMENTAL POLLUTANTS.**

    **a. Radon.** Every BUYER of residential real property is notified the Property may present exposure to dangerous concentrations of indoor radon gas that may place occupants at risk of developing radon-induced lung cancer.

    Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. Kansas law requires SELLER to disclose any information known to SELLER that shows elevated concentrations of radon gas in residential real property.

    The Kansas Department of Health and Environment recommends all homebuyers have an indoor radon test performed prior to purchasing or taking occupancy of residential real property. All testing for radon should be conducted by a radon measurement technician. Elevated radon concentrations can be easily reduced by a radon mitigation technician.

    For additional information, please go to http://www.kansasradonprogram.org or in Missouri a national source for radon information is http://www.epa.gov/radon.

    **b. Microbials and Other Environmental Pollutants.** BUYER acknowledges mold, fungi, bacteria and other microbials commonly exist in homes and will exist in the Property as a result of rain, humidity and other moisture in the Property and on materials during the normal construction process and as a result of the use of wood and other materials that commonly have mold, fungi, bacteria and other microbials at the time of delivery to the job site. BUYER has the opportunity to become informed about microbials and other environmental pollutants, and the potential health risks of microbials and other environmental pollutants.

        1. The SELLER and Licensee assisting the SELLER and/or the BUYER do not claim or possess any special expertise in the measurement or reduction of radon, microbials or other environmental pollutants, nor have they provided any advice to BUYER as to acceptable levels or possible health hazards of radon, microbials or other environmental pollutants.

        2. There can be no assurance that any existing systems, devices or methods incorporated into the Property for the purpose of reducing radon, microbials or other environmental pollutant levels will be effective and SELLER has no responsibility for the operation, maintenance or effectiveness of such systems, devices and methods.

**17. LEAD BASED PAINT DISCLOSURE.** If the property was built prior to 1978, BUYER acknowledges receiving, reading and signing the Federally required disclosure regarding lead based paint.

**18. CRIMINAL OFFENDERS.** In Missouri and Kansas, law requires persons who are convicted of certain crimes, including certain sexually violent crimes, to register with the Sheriff of the county in which they reside. If you, as the BUYER, desire information regarding those registrants, you may find information on the homepage of the Kansas Bureau of Investigation (KBI) at http://www.Kansas.gov/kbi or by contacting the local Sheriff's office in Kansas.



Initials _____ ***SELLER and BUYER acknowledge they have read this page*** Initials _____
SELLER    SELLER                                                                    BUYER    BUYER

dotloop signature verification: dtlp.us/YBYm-52hy-ZBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

666 In Missouri, you may find information on the homepage of the Missouri State Highway Patrol, at
667 https://www.mshp.dps.missouri.gov/CJ38/searchRegistry.jsp or BUYER should contact the Sheriff of the county in
668 which the Property is located.
669

670 **19. FRANCHISE DISCLOSURE.** Although one or more of the Brokers may be a member of a franchise, the
671 franchisor is not responsible for the acts of said Broker(s).
672

673 **20. BROKERAGE RELATIONSHIP DISCLOSURE.**
674

675 SELLER and BUYER acknowledge the Real Estate Brokerage Relationship Brochure has been furnished to them
676 and the brokerage relationships were disclosed to them no later than the first showing, upon first contact, or
677 immediately upon the occurrence of any change to that relationship.
678

679 SELLER and BUYER acknowledge the real estate Licensee(s) involved in this transaction may be acting as Agents
680 of the SELLER, Agents of the BUYER, Transaction Broker(s) or Disclosed Dual Agents (Available only in Missouri.).
681

682 Licensee acting in the capacity of:
683

684 **a.** Agent for the SELLER has a duty to represent the SELLER'S interest and will not be the Agent of the BUYER.
685 Information given by the BUYER to an Agent of the SELLER will be disclosed to the SELLER.
686 **b.** Agent for the BUYER has a duty to represent the BUYER'S interest and will not be an Agent of the SELLER.
687 Information given by the SELLER to an Agent of the BUYER will be disclosed to the BUYER.
688 **c.** Transaction Broker is not an Agent for either party and does not advocate the interests of either party.
689 **d.** Disclosed Dual Agent (Available only in Missouri.) is acting as an Agent for both the SELLER and the BUYER,
690 and a separate Disclosed Dual Agency Amendment is required.
691

692 **Agent generating the Contract is responsible for checking appropriate boxes on**
693 **BOTH sides of Agency PRIOR TO THEIR CLIENT SIGNING.**

694 | Licensee assisting SELLER is a: *(Check appropriate box(es))* | Licensee assisting BUYER is a: *(Check appropriate box(es))* |
695 |---|---|
696 | ☐ SELLER'S Agent | ☐ BUYER'S Agent |
697 | ☒ Designated SELLER'S Agent (In Kansas, Supervising | ☒ Designated BUYER'S Agent (In Kansas, Supervising |
698 | Broker acts as a Transaction Broker) | Broker acts as a Transaction Broker) |
699 | ☐ Transaction Broker and SELLER agrees, if applicable, | ☐ Transaction Broker and BUYER agrees, if applicable, |
700 | to sign a Transaction Broker Addendum. SELLER is not | to sign a Transaction Broker Addendum.  BUYER is not |
701 | being represented. | being represented. |
702 | ☐ Disclosed Dual Agent and SELLER agrees to sign a | ☐ Disclosed Dual Agent and BUYER agrees to sign a |
703 | Disclosed Dual Agency Amendment. (Missouri only) | Disclosed Dual Agency Amendment. (Missouri only) |
704 | ☐ BUYER'S Agent | ☐ SELLER'S Agent |
705 | ☐ Designated BUYER'S Agent (In Kansas, Supervising | ☐ Designated SELLER'S Agent (In Kansas, Supervising |
706 | Broker acts as Transaction Broker) | Broker acts as a Transaction Broker) |
707 | ☐ Subagent | ☐ Subagent of the SELLER |
708 | ☐ SELLER is not being represented. | ☐ BUYER is not being represented. |
709

710 **SOURCE OF BROKER COMPENSATION.** There are no standard compensation rates and compensation is fully
711 negotiable and not set by law.  Brokerage fees, to include but not limited to broker commissions and other fees, will be
712 paid out of escrow at Closing as follows, unless otherwise described in the terms of the respective agency agreements
713 or other SELLER/BUYER agreements. SELLER and BUYER acknowledge the brokerages involved in this transaction
714 are acting pursuant to separate brokerage service agreements entered into with SELLER and BUYER, respectively.
715 **SELLER and BUYER acknowledge Brokers may be compensated by more than one party in the transaction.**
716 (*Check all applicable boxes*)
717 **Brokers are compensated by:  ☒ SELLER and/or ☒ BUYER**
718

719 ~~The signers below acknowledge the Brokerage Relationship Disclosure.~~

720 *Shannon Cambiano*    dotloop verified    *Mike Mason*    3/25/2025 | 09:56 CD⊤
721    05/25/25 10:50 AM CDT
       WNNL-2IOH-ABZ0-OOND    A016CE2ECBAO47B...

722 Licensee assisting Seller    DATE    Licensee assisting Buyer    DATE
723 *Deborah Evans Mott*    dotloop verified    *Roonm844*    3/25/2025 | 09:54 CD⊤
724    03/25/25 11:47 AM
       EDT
       AEKA-SIQI-QCIA-OOAJ    9A8350E9904DD440...

725 **SELLER**    DATE    **DATE**
726                    *lason D*    3/25/2025 | 07:54 PD⊤
727                    2FBF53100BFE4BC...
728 **SELLER**    DATE    **BUYER**    DATE

dotloop signature verification: dtlp.us/Y8Ym-S2Ixy-ZBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

729 **TERMS AND CONDITIONS**
730
731 **21. EARNEST MONEY AND ADDITIONAL DEPOSITS.**
732
733     **a. Delivery.** SELLER may cancel the Contract by written notice if Earnest Money and Additional Deposits are not
734     received by Listing Broker or Escrow Agent as specified in this Contract.
735
736     **b. Deposit.** Earnest Money and Additional Deposits will be deposited into an insured account by the specified
737     Listing Broker/Escrow Agent within five (5) business days (Kansas Property) or ten (10) banking days (Missouri
738     Property) after the Effective Date, unless otherwise agreed upon in writing. All parties agree that Listing
739     Broker/Escrow Agent will retain any interest earned on escrowed funds.
740
741     **c. Cancellation of Contract.** If this Contract is terminated by the express provisions of this Contract or by either
742     party pursuant to a right expressly given in this Contract, the Earnest Money and Additional Deposits will be
743     returned to BUYER, unless non-refundable, and neither party will have any further rights or obligations under
744     this Contract, except as otherwise stated in this Contract.
745
746     Notwithstanding any other terms of this Contract providing for the forfeiture or refund of Earnest Money and
747     Additional Deposits, the parties understand neither the Listing Broker nor the Escrow Agent can distribute the
748     Earnest Money and Additional Deposits without the written consent of all parties to this Contract unless
749     permitted to do so by applicable state laws.
750
751     If BUYER and SELLER are unable to agree in writing upon the disposition of the Earnest Money and Additional
752     Deposits or any other funds, Listing Broker or Escrow Agent may commence an inter-pleader or similar
753     proceeding and BUYER and SELLER authorize Listing Broker or Escrow Agent to pay all funds to the Clerk of
754     the Court for disposition as the Court may direct.
755
756     BUYER and SELLER agree Listing Broker or Escrow Agent will be entitled to reimbursement of its costs incurred
757     in connection with the inter-pleader or similar proceeding including without limitation, reasonable attorney fees
758     and expenses.
759
760     BUYER and SELLER agree, in the absence of a dispute or written consent to distribution, the failure by either
761     to respond in writing to a certified letter from Listing Broker or Escrow Agent within seven (7) calendar days (if
762     Kansas Property)/fifteen (15) calendar days (if Missouri Property) of receipt thereof or failure to make written
763     demand for return or forfeiture of the Earnest Money and Additional Deposits within thirty (30) calendar days (if
764     Kansas Property)/sixty (60) calendar days (if Missouri Property) of notice of cancellation of this Contract will
765     constitute consent to distribution of the Earnest Money and Additional Deposits as suggested in such certified
766     letter.
767
768     All parties acknowledge any Earnest Deposit funds that remain in the Listing Broker or Escrow Agent's account
769     for over one (1) year (if Missouri Property)/five (5) years (if Kansas Property) may be sent to the respective
770     states as requested or required by law.
771
772 **22. TAXES, PRORATIONS AND SPECIAL ASSESSMENTS.** All general/state/county/school and municipal real estate
773 taxes, homeowner's association dues and fees, special assessments, interest on existing Loans to be assumed by
774 BUYER, and any other contractual obligations of SELLER to be assumed by BUYER for years prior to the current
775 calendar year will be paid by SELLER.
776
777     **a.** Any of the preceding items which become due and accrue during the calendar year in which SELLER'S warranty
778     deed is delivered (including but not limited to rents and deposits, if applicable) will be prorated between the
779     parties as of the Closing Date and, for all years thereafter, to the extent permitted by applicable law, will be
780     assumed and paid by the BUYER. BUYER acknowledges that the Property may be subject to a special
781     assessment, fee, or located in an improvement district. BUYER acknowledges this disclosure is required by
782     Kansas law, and may be found in the Seller's Disclosure and Condition of Property Addendum or a separate
783     document, if applicable.



Initials    *SELLER and BUYER acknowledge they have read this page*   Initials 

SELLER / SELLER                                              BUYER / BUYER

dotloop signature verification: dtlp.us/YBYm-52hy-ZBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

784  **b.** If the actual amount of any item, other than taxes for the current year, cannot be ascertained from the public
785  record, the amount of the item for the preceding year will be used for the current year's amount. If the actual
786  amount of taxes for the current calendar year cannot be determined, it will be estimated by using the current
787  year's appraised value, if available from the county taxing authority, and last year's mill levy. If appraised value
788  is not available, the Contract Purchase Price will be used with last year's mill levy. BUYER and SELLER agree
789  to accept such prorations as final and release each other, Broker(s), Agent(s), and Closing Agent(s) from any
790  liability for any increase or decrease in actual taxes due.
791
792  In Missouri, reassessment takes place in odd-numbered years. Missouri transactions closing in odd-
793  numbered years are subject to the process in the preceding paragraph. Missouri transactions closing in even-
794  numbered years will be prorated based upon the preceding year's amount.
795
796  **23.  EVIDENCE OF TITLE.** SELLER agrees to provide and pay for an owner's title insurance policy in the amount of
797  the Purchase Price insuring marketable fee simple title in BUYER, subject to the Permitted Exceptions and with
798  the exception of any liens, encumbrances or other matters affecting title to the Property created by BUYER or
799  arising by virtue of BUYER's activities or ownership.
800
801  Within a reasonable time after the Effective Date, but prior to the Closing Date (the "Commitment Delivery Date"),
802  SELLER agrees, at SELLER's expense, to deliver to BUYER a title insurance commitment from a company
803  authorized to insure titles in the state where the Property is located, setting forth its requirements to issue an
804  owner's title policy and mortgage policy, if applicable.
805
806  Unless there is a defect in title to the Property that is not corrected prior to the Closing Date, BUYER may not
807  object to untimely delivery of the title commitment. The title commitment will commit to insure marketable fee
808  simple title in the BUYER upon the recording of the deed or other document of conveyance.  Title to the Property
809  will be subject to the conditions in this Contract and to customary covenants, declarations, restrictions, zoning
810  laws, easements, party wall agreements, special assessments, and community contracts of record as of the date
811  of recording the deed or other document of conveyance (the "Permitted Exceptions").
812
813  BUYER will have a reasonable time after receipt of the title commitment (the "Objection Period") to notify SELLER
814  in writing of any valid objections to title to the Property. SELLER will then make a good faith effort to remedy the
815  defects in title. If SELLER is not able to remedy the title defects before the Closing Date, BUYER may elect to
816  waive the objections, extend the Closing Date a reasonable time for the SELLER to remedy the defects, or cancel
817  this Contract by written notice.
818
819  If the time between the Effective Date and the Closing Date is short, both the Commitment Delivery Date and the
820  Objection Period will be as soon as reasonably possible, but no later than the Closing Date.
821
822  **Mechanic's Lien Coverage.**  The owner's title policy will also insure BUYER as of the date of recording of the
823  deed or other document of conveyance, against any lien, or right to a lien for services, labor or material imposed
824  by law and not shown by the public records.  SELLER agrees to comply with the requirements of the title company
825  for issuance of this coverage.  Any mechanic's lien or notice of intent filed during construction and prior to closing
826  will not be deemed a defect in title unless the title insurance company will not insure against loss therefrom.
827
828  If the Property (Missouri only) has not been occupied by SELLER and has had recent construction work
829  performed, the SELLER may be required to post and record a "notice of intended sale", as stated in Chapter
830  429 of the Missouri Revised Statutes, in order for BUYER to obtain Mechanic's Lien Coverage. All parties are
831  advised to consult with the title company regarding these requirements.
832
833  **24.  EXPIRATION.** This offer will expire on  03/25/2025                    (five (5) days if left blank), at  9____
834  o'clock  p___.m. (5:00 p.m. if left blank) unless accepted or withdrawn before expiration.
835
836        **CAREFULLY READ THE TERMS HEREOF BEFORE SIGNING.  WHEN SIGNED BY ALL PARTIES, THIS
837              DOCUMENT BECOMES PART OF A LEGALLY BINDING CONTRACT.
838                    IF NOT UNDERSTOOD, CONSULT AN ATTORNEY BEFORE SIGNING.**
839



Initials  ___  *SELLER and BUYER acknowledge they have read this page*  Initials  

SELLER ‡ SELLER                                                        BUYER ‡ BUYER

dotloop signature verification: dtlp.us/YBYm-52hy-ZBMH
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1

840    **SELLER hereby authorizes Closing Agent to obtain payoff information from SELLER'S Lender(s).**
841
842    **BUYER and SELLER hereby specifically permit the Brokerage(s) assisting in the transaction to obtain and**
843    **retain copies of both BUYER'S and SELLER'S Closing Statements.**
844
845    ☐ Signatures not required, see Counter Offer Addendum

846    *Deborah Evans Mott*    dotloop verified        Room m 8's4    3/25/2025 | 09:54 CD
847                            03/25/25 11:47 AM EDT
                               HPMG-OVMY-NBAI-HFQA   9A8350E994DD440...
848    SELLER                              DATE    BUYER                                    DATE
849
850                                                Leon D                    3/25/2025 | 07:54 PD
851                                                2FBF53108BFE4BC...
852    SELLER                              DATE    BUYER                                    DATE
853
854    Reece Nichols – Leawood Town Center        Keller Williams Realty Partners, Inc
855    BROKERAGE                                  BROKERAGE
856
857    11601 Granada        Leawood    KS 66211   6850 College Blvd        Overland Park KS 66211
858    ADDRESS                                    ADDRESS
859
860    Shannon Cambiano                           Mike Mason
861    Name of Licensee assisting Seller    (Please Print)    Name of Licensee assisting Buyer    (Please Print)
862
863    816-805-6384        /913-345-0700          816-898-2021        /913-906-5400
864    Listing Licensee's Contact #   Brokerage Contact #    Selling Licensee's Contact #   Brokerage Contact #
865
866    scambiano@reecenichols.com                 mike@thedonnergroup.com
867    Listing Licensee's Email Address           Selling Licensee's Email Address
868
869
870    **FORM CERTIFICATION.** *(TO BE SIGNED BY LICENSEE PREPARING THIS FORM)*
871
872    The undersigned Licensee assisted in completing the blanks in the foregoing form and confirms, to the best of his/her
873    knowledge, that the printed form contains the language approved by Counsel for the Kansas City Regional Association
874    of REALTORS®.  The undersigned Licensee further confirms no additions or deletions to the approved language have
875    been made, except such changes as may appear hereon made by hand or computer generation and signed and/or
876    initialed by the party submitting this offer.  Licensee's signature below is not an opinion as to the legal validity or meaning
877    of any provisions contained in this form, but merely confirms, to the best of the Licensee's knowledge, no changes have
878    been made to the approved form.
879
880    By *Mike Mason*                            3/25/2025 | 09:56 CDT
       A018CE2FC8A0478
881            Licensee Preparing Form
882
883
884    **CERTIFICATION OF REJECTION.  (TO BE COMPLETED ONLY UPON SELLER'S REJECTION OF OFFER)**
885
886    Listing Licensee acknowledges receipt of this offer and has made a presentation to SELLER on _____ _____
887    for SELLER'S consideration.                                    DATE        TIME
888
889    By: _____
890            Licensee assisting Seller

Approved by Legal Counsel of the Kansas City Regional Association of REALTORS® for exclusive use by its REALTOR® members. No warranty
is made or implied as to the legal validity or adequacy of this Contract, or that it complies in every respect with the law or that its use is appropriate
for all situations. Local law, customs and practices, and differing circumstances in each transaction may dictate that amendments to this Contract
be made. Last revised October 2024. All previous versions of this document may no longer be valid. Copyright January 2025.

dotloop signature verification: dtlp.us/V0KR-tGEV-ObtI7
Docusign Envelope ID: 5FF4E9BF-405D-4826-A5CB-C1A5E86B74F1



# IN ITS PRESENT CONDITION
# ADDENDUM

1  **SELLER:** Deborah Evans Mott (AMP)

2  **BUYER:** Rachel M Stolte and Leon Dale Stolte (AMC)

3  **PROPERTY:** 1059 SW Conch Circle                    Blue Springs       MO  64064

4

5  This addendum modifies the Inspections section of the Contract. The Property is being sold in its present condition,
6  which includes all latent and patent defects and conditions.  Except as herein expressly stated, SELLER makes no
7  warranty, expressed or implied, including, without limitation, any implied warranty of merchantability or fitness for
8  any particular purpose.

9

10  ☒  1.  BUYER is entitled to conduct inspections as outlined in the Inspections Paragraph of the Contract.
11          SELLER will make no repairs and/or treatments.
12          BUYER will have the right to cancel the Contract, during the Inspection Period, if the results of the
13          inspections are unsatisfactory.
14          BUYER waives any right to renegotiate.  There is no Inspection Renegotiation Period pursuant to the
15          inspection provisions in the Contract.

16

17  ☐  2.  BUYER is entitled to conduct inspections for informational purposes ONLY.
18          SELLER will make no repairs and/or treatments.
19          BUYER waives any right to cancel the Contract pursuant to the inspection provisions in the Contract.
20          BUYER waives any right to renegotiate.  There is no Inspection Renegotiation Period pursuant to the
21          inspection provisions in the Contract.

22

23  ☐  3.  BUYER waives any right to conduct inspections as outlined in the Inspections Paragraph of the Contract.
24          SELLER will make no repairs and/or treatments.
25          BUYER waives any right to cancel or renegotiate pursuant to the inspection provisions in the Contract.

26

27  It is understood by all parties that the sale of the Property in its present condition does not relieve the SELLER of the
28  obligation to disclose all material facts of which SELLER has knowledge relating to the condition of the Property.

29

30  BUYER is advised that various professional inspection are available and advisable.  BUYER's waiver of any right to
31  inspection is the BUYER'S decision alone.  All Parties indemnify and hold harmless SELLER, BROKER, and
32  BROKER'S affiliated licensees, agents and employees from any liability or obligation resulting from or in connection
33  with this decision.

34

35  SELLER understands and agrees that the Property will be delivered to the BUYER in the same condition and state
36  of repair as at the time of agreement and SELLER is still responsible to care for the Property through the
37  Possession Date as outlined in the Condition, Maintenance and Inspections of the Property section of the
38  Residential Real Estate Sale Contract.

39

40  *Deborah Evans Mott*    dotloop verified        *Signed by:* *Rachel M Stolte*
41                          03/25/25 11:47 AM EDT                                      3/25/2025 | 09:54 CDT
42                          FL5Z-NA60-SOTJ-H1M5    9A8350E994DD440...
    **SELLER**                    **DATE**        **BUYER**                              **DATE**

43

44                                                *Signed by:* *Leon D Stolte*
45                                                                                      3/25/2025 | 07:54 PDT
46  **SELLER**                    **DATE**        2FBF53106BFE4BC...  **BUYER**          **DATE**

Approved by Legal Counsel of the Kansas City Regional Association of REALTORS® for exclusive use by its REALTOR® members. No
warranty is made or implied as to the legal validity or adequacy of this Contract, or that it complies in every respect with the law or that its use is
appropriate for all situations. Local law, customs and practices, and differing circumstances in each transaction may dictate that amendments to
this Contract be made. Last revised August 2022. All previous versions of this document may no longer be valid. Copyright January 2025.

dotloop signature verification: dtlp.us/DY2k-Tnpf-KhuIs
Docusign Envelope ID: 955BDEDC-C38D-4E6E-A36A-19D469B2068E



**SELLER'S DISCLOSURE AND CONDITION OF PROPERTY ADDENDUM (Residential)**

F333

1   **SELLER** (*Indicate Marital Status*): _____ Deborah Evans Mott, AMP
2
3   _____
4
5   **PROPERTY:**   1059    SW    Conch    Circl    Lee's Summit, MO 64064
6
7   **1. NOTICE TO SELLER.**
8   Be as complete and accurate as possible when answering the questions in this disclosure. Attach additional sheets if
9   space is insufficient for all applicable comments. SELLER understands that the law requires disclosure of any material
10  defects, known to SELLER, in the Property to prospective Buyer(s) and that failure to do so may result in civil liability
11  for damages. Non-occupant SELLERS are not relieved of this obligation. This disclosure statement is designed to
12  assist SELLER in making these disclosures. Licensee(s), prospective buyers and buyers will rely on this information.
13
14  **2. NOTICE TO BUYER.**
15  This is a disclosure of SELLER'S knowledge of the Property as of the date signed by SELLER and is not a substitute
16  for any inspections or warranties that BUYER may wish to obtain. It is not a warranty of any kind by SELLER or a
17  warranty or representation by the Broker(s) or their licensees.
18
19  **3. OCCUPANCY.**
20  Approximate age of Property? _3½ yrs_    How long have you owned? _3½ yrs_
21  Does SELLER currently occupy the Property? ..................................................................... Yes☐ No☒
22  If "No", how long has it been since SELLER occupied the Property? _n/a_ years/months
23
24  ☐ SELLER has never occupied the Property. SELLER to answer all questions to the best of SELLER'S knowledge.
25
26  **4. TYPE OF CONSTRUCTION.** ☐ Manufactured    ☐ Modular    ☒ Conventional/Wood Frame
27
28  ☐ Mobile    ☐ Other_____
29
30  **5. LAND (SOILS, DRAINAGE AND BOUNDARIES). (IF RURAL OR VACANT LAND, ATTACH SELLER'S LAND
31  DISCLOSURE ALSO.)   ARE YOU AWARE OF:**
32      **a.** Any fill or expansive soil on the Property? ........................................................... Yes☐ No☒
33      **b.** Any sliding, settling, earth movement, upheaval or earth stability problems
34          on the Property? ........................................................................................ Yes☐ No☒
35      **c.** The Property or any portion thereof being located in a flood zone, wetlands
36          area or **proposed** to be located in such as designated by FEMA which
37          requires flood insurance? ......................................................................... Yes☐ No☒
38      **d.** Any drainage or flood problems on the Property or adjacent properties? .......... Yes☐ No☒
39      **e.** Any flood insurance premiums that you pay? ................................................. Yes☐ No☒
40      **f.** Any need for flood insurance on the Property? ............................................... Yes☐ No☒
41      **g.** Any boundaries of the Property being marked in any way? ............................ Yes☐ No☒
42      **h.** The Property having had a stake survey? .................................................... Yes☒ No☐
43      **i.** Any encroachments, boundary line disputes, or non-utility easements
44          affecting the Property? ............................................................................. Yes☐ No☒
45      **j.** Any fencing on the Property? ..................................................................... Yes☐ No☒
46          If "Yes", does fencing belong to the Property?.........................N/A☐ Yes☒ No☐
47      **k.** Any diseased, dead, or damaged trees or shrubs on the Property? ............... Yes☐ No☒
48      **l.** Any gas/oil wells, lines or storage facilities on Property or adjacent property?.......... Yes☐ No☒
49      **m.** Any oil/gas leases, mineral, or water rights tied to the Property? .................. Yes☐ No☒
50
51  If any of the answers in this section are "Yes", explain in detail or attach other
52  _Stake survey by builder to install fence_
53
54

☐ DEM
02/14/25
**SELLER**  Initials  ☐ **SELLER**    Initials  Initial [RM]  Initial [LDS]  **BUYER**  **BUYER**

F333

55  6. **ROOF.**
56  a. Approximate Age: _3½_ years ☐ Unknown  Type: _Composite_
57  b. Have there been any problems with the roof, flashing or rain gutters? ........................ Yes☐ No☒
58     If "Yes", what was the date of the occurrence?_____
59  c. Have there been any repairs to the roof, flashing or rain gutters? ............................... Yes☐ No☒
60     Date of and company performing such repairs_____/_____
61  d. Has there been any roof replacement? ................................................................ Yes☐ No☒
62     If "Yes", was it: ☐ Complete or ☐ Partial
63  e. What is the number of layers currently in place? ____|____ layers or ☐ Unknown.
64
65     If any of the answers in this section are "Yes", explain in detail or attach all warranty information and other
66     **documentation:**
67  ┌─────────────────────────────────────────────────────────────────────────────────────┐
68  │                                                                                       │
69  └─────────────────────────────────────────────────────────────────────────────────────┘

70  7. **INFESTATION. ARE YOU AWARE OF:**
71  a. Any termites, wood destroying insects, or **other** pests on the Property? ..................... Yes☐ No☒
72  b. Any damage to the Property by termites, wood destroying insects or **other**
73     pests? ............................................................................................ Yes☐ No☒
74  c. Any termite, wood destroying insects or **other** pest control treatments on the
75     Property in the last five (5) years? ............................................................ Yes☐ No☒
76     If "Yes", list company, **when** and **where** treated_____
77  d. Any current warranty, bait stations or other treatment coverage by a licensed
78     pest control company on the Property? .......................................................... Yes☐ No☒
79     If "Yes", the annual cost of service renewal is $_____ and the time
80     remaining on the service contract is _____.
81     **(Check one)** ☐ The treatment system stays with the Property or ☐ the treatment system is
82     subject to removal by the treatment company if annual service fee is not paid.
83
84     If any of the answers in this section are "Yes", explain in detail or attach all warranty information and other
85     **documentation:**
86  ┌─────────────────────────────────────────────────────────────────────────────────────┐
87  │                                                                                       │
88  └─────────────────────────────────────────────────────────────────────────────────────┘

89  8. **STRUCTURAL, BASEMENT/CRAWL SPACE, FIREPLACE AND EXTERIOR ITEMS.**
90     **ARE YOU AWARE OF:**
91  a. Any movement, shifting, deterioration, or other problems with walls, foundations,
92     crawl space or slab? ........................................................................... Yes☐ No☒
93  b. Any cracks or flaws in the walls, ceilings, foundations, concrete slab,
94     crawl space, basement floor or garage? ........................................................ Yes☐ No☒
95  c. Any corrective action taken including, but not limited to piering or bracing? ............... Yes☐ No☒
96  d. Any water leakage or dampness in the house, crawl space or basement? ................... Yes☐ No☒
97  e. Any dry rot, wood rot or similar conditions on the wood of the Property? ................... Yes☐ No☒
98  f. Any problems with windows or exterior doors?................................................ Yes☐ No☒
99  g. Any problems with driveways, patios, decks, fences or retaining walls on the Property? ... Yes☐ No☒
100 h. Any problems with fireplace including, but not limited to firebox, chimney,
101    chimney cap and/or gas line? ...............................................................N/A☐ Yes☐ No☒
102    Date of any repairs, inspection(s) or cleaning? _____
103    Date of last use? _____ _Unk_
104 i. Does the Property have a sump pump?........................................................ Yes☒ No☐
105    If "Yes", location: _basement laundry room_
106 j. Any repairs or other attempts to control the cause or effect of any problem described above?..... Yes☐ No☐
107
108    If any of the answers in this section are "Yes", explain in detail or attach all warranty information and other
109    **documentation:**
110 ┌─────────────────────────────────────────────────────────────────────────────────────┐
111 │                                                                                       │
    └─────────────────────────────────────────────────────────────────────────────────────┘

_DEM_ 02/14/25 dotloop verified  **SELLER** Initials ____    Initials _R_ _LDS_ **BUYER** **BUYER**

dotloop signature verification: dtlp.us/DY2k-Tnpf-KTu6
Docusign Envelope ID: 955BDEDC-C38D-4E6E-A36A-19D469B2068E

F333

112 **9. ADDITIONS AND/OR REMODELING.**
113    **a.** Are you aware of any additions, structural changes, or other material alterations to
114     the Property? ........................................................................................................... Yes ☐ No ☒
115     If "Yes", explain in detail: _____
116     _____
117    **b.** If "Yes", were all necessary permits and approvals obtained, and was all work in
118     compliance with building codes? ................................................................N/A ☒ Yes ☐ No ☐
119     If "No", explain in detail: _____
120     _____
121

122 **10. PLUMBING RELATED ITEMS.**
123    **a.** What is the drinking water source? ☒ Public ☐ Private ☐ Well ☐ Cistern ☐ Other: _____
124     If well water, state type _____ depth _____ diameter _____ age _____
125    **b.** If the drinking water source is a well, has water been tested for safety? ...........................N/A ☐ Yes ☐ No ☐
126     If "Yes", when was the water last checked for safety? _____ (attach test results)
127    **c.** Is there a water softener on the Property? ............................................................... Yes ☐ No ☒
128     If "Yes", is it: ☐ Leased ☐ Owned?
129    **d.** Is there a water purifier system? ............................................................................ Yes ☐ No ☒
130     If "Yes", is it: ☐ Leased ☐ Owned?
131    **e.** What type of sewage system serves the Property? ☒ Public Sewer ☐ Private Sewer
132     ☐ Septic System, Number of Tanks _____ ☐ Cesspool ☐ Lagoon ☐ Other _____
133    **f.** Approximate location of septic tank and/or absorption field: _____
134     _____
135    **g.** The location of the sewer line clean out trap is: _Basement_
136    **h.** Is there a sewage pump on the septic system? .......................................................N/A ☐ Yes ☐ No ☐
137    **i.** Is there a grinder pump system? ............................................................................ Yes ☐ No ☐
138    **j.** If there is a privately owned system, when was the septic tank, cesspool, or sewage
139     system last serviced? _____ By whom? _____
140    **k.** Is there a sprinkler system? .............................................................................. Yes ☒ No ☐
141     Does sprinkler system cover full yard and landscaped areas? ...........................N/A ☐ Yes ☒ No ☐
142     If "No", explain in detail: _____
143    **l.** Are you aware of any leaks, backups, or other problems relating to any of the
144     plumbing, water, and sewage related systems? .......................................................... Yes ☒ No ☐
145    **m.** Type of plumbing material currently used in the Property:
146     ☐ Copper ☐ Galvanized ☐ PVC ☐ PEX ☐ Other _____
147     The location of the main water shut-off is: _Basement_
148    **n.** Is there a back flow prevention device on the lawn sprinkling system,
149     sewer or pool? ........................................................................................N/A ☐ Yes ☒ No ☐
150

151    **If your answer to (l) in this section is "Yes", explain in detail or attach available**
152    **documentation:**
153    1. Sump pump failed in 2023. Carpet was wet, so all pad and carpet was pulled up
154    and replaced in basement. No further issues w/ new sump pump.

---

DEM
02/14/25
SELLER _____ SELLER    Initials _____

Initials _____ KR LDS
BUYER † BUYER

Seller's Disclosure and Condition of Property Addendum – Residential
Page 3 of 8

F333

155 **11. HEATING AND AIR CONDITIONING.**
156     **a.** Does the Property have air conditioning? ................................................................ Yes ☒ No ☐
157     ☐Central Electric ☐Central Gas ☐Heat Pump ☐ Window Unit(s)
158     Unit    Age of Unit    Leased    Owned    Location    Last Date Serviced/By Whom?
159     1.      3.5      ☒    basement
160     2.
161     **b.** Does the Property have heating systems? ................................................................ Yes ☐ No ☐
162     ☐Electric ☐Fuel Oil ☒Natural Gas ☐Heat Pump ☐Propane
163     ☐Fuel Tank ☐Other
164     Unit    Age of Unit    Leased    Owned    Location    Last Date Serviced/By Whom?
165     1.      3.5      ☒    basement    10/24
166     2.                                       Midwest H&C
167     **c.** Are there rooms without heat or air conditioning? ................................................... Yes ☐ No ☒
168     If "Yes", which room(s)?
169     **d.** Does the Property have a water heater? ................................................................ Yes ☒ No ☐
170     ☐Electric ☒Gas ☐ Solar ☐ Tankless
171     Unit    Age of Unit    Leased    Owned    Location    Capacity    Last Date Serviced/By Whom?
172     1.      3.5      ☒    basement
173     2.
174     **e.** Are you aware of any problems regarding these items? ........................................ Yes ☐ No ☒
175     If "Yes", explain in detail:
176
177
178

179 **12. ELECTRICAL SYSTEM.**
180     **a.** Type of material used: ☒ Copper ☐ Aluminum ☐Unknown
181     **b.** Type of electrical panel(s): ☒Breaker ☐ Fuse
182     Location of electrical panel(s):    basement
183     Size of electrical panel(s) (total amps), if known:    200
184     **c.** Are you aware of any problem with the electrical system? ..................................... Yes ☐ No ☒
185     If "Yes", explain in detail:
186
187
188

189 **13. HAZARDOUS CONDITIONS. ARE YOU AWARE OF:**
190     **a.** Any underground tanks on the Property? ................................................................ Yes ☐ No ☒
191     **b.** Any landfill on the Property? ................................................................................ Yes ☐ No ☒
192     **c.** Any toxic substances on the Property (e.g. tires, batteries, etc.)? ........................... Yes ☐ No ☒
193     **d.** Any contamination with radioactive or other hazardous material?........................... Yes ☐ No ☒
194     **e.** Any testing for any of the above-listed items on the Property? ............................... Yes ☐ No ☒
195     **f.** Any professional testing/mitigation for radon on the Property? ............................... Yes ☐ No ☒
196     **g.** Any professional testing/mitigation for mold on the Property? ................................ Yes ☐ No ☒
197     **h.** Any other environmental issues? ........................................................................ Yes ☐ No ☒
198     **i.** Any controlled substances ever manufactured on the Property?.............................. Yes ☐ No ☒
199     **j.** Any methamphetamine ever manufactured on the Property? ................................... Yes ☐ No ☒
200     **(In Missouri, a separate disclosure is required if methamphetamine or other controlled**
201     **substances have been produced on the Property, or if any resident of the Property has**
202     **been convicted of the production of a controlled substance.)**
203
204     **If any of the answers in this section are "Yes", explain in detail or attach test results and other**
205     **documentation:**
206
207

SELLER   SELLER     Initials                      Initials    BUYER   BUYER

dotloop signature verification: dtlp.us/DY2k-Tnpf-KTulS
Docusign Envelope ID: 955BDEDC-C38D-4E6E-A36A-19D469B2068E

F333

**14. NEIGHBORHOOD INFORMATION & HOMEOWNER'S ASSOCIATION.  ARE YOU AWARE OF:**

a. The Property located outside of city limits?...................................................... Yes☐ No☑

b. Any current/pending bonds, assessments, or special taxes that apply to Property? .................................................................................................... Yes☐ No☑
   If "Yes", what is the amount? $

c. Any condition or proposed change in your neighborhood or surrounding area or having received any notice of such? ............................................... Yes☐ No☑

d. Any defect, damage, proposed change or problem with any common elements or common areas? ...................................................... Yes☐ No☑

e. Any condition or claim which may result in any change to assessments or fees?...................... Yes☐ No☑

f. Any streets that are privately owned? .................................................... Yes☐ No☑

g. The Property being in a historic, conservation or special review district that requires any alterations or improvements to the Property be approved by a board or commission? ............................................................... Yes☐ No☑

h. The Property being subject to tax abatement? ........................................ Yes☐ No☑

i. The Property being subject to a right of first refusal?............................ Yes☐ No☑
   If "Yes", number of days required for notice: _____

j. The Property being subject to covenants, conditions, and restrictions of a Homeowner's Association or subdivision restrictions? .............................. Yes☑ No☐

k. Any violations of such covenants and restrictions? ...........................N/A☐ Yes☐ No☑

l. The Homeowner's Association imposing its own transfer fee and/or initiation fee when the Property is sold? .....................................N/A☐ Yes☑ No☐
   If "Yes", what is the amount? $

m. The Property being subject to a Homeowners Association fee?...............Yes☑ No☐
   If "Yes", Homeowner's Association dues are paid in full until  12/31/24  in the amount of
   $ 250  payable ☑yearly ☐semi-annually ☐monthly ☐quarterly, sent to: _____
                                                                                          and such includes:
   Neighborhood pool
   Homeowner's Association/Management Company contact name, phone number, website, or email address:
   _____
   _____
   _____

n. The Property being subject to a secondary Master Community Homeowners Association fee?... Yes☐ No☑

**If any of the answers in this section are "Yes" (except m), explain in detail or attach other documentation:**

_____
_____
_____

**15. PREVIOUS INSPECTION REPORTS.**

Has Property been inspected in the last twelve (12) months? ............................ Yes☐ No☑
If "Yes", a copy of inspection report(s) are available upon request.

**16. OTHER MATTERS.  ARE YOU AWARE OF:**

a. Any of the following?
   ☐Party walls ☐Common areas ☐ Easement Driveways .......................... Yes☐ No☑

b. Any fire damage to the Property? ........................................................ Yes☐ No☑

c. Any liens, other than mortgage(s)/deeds of trust currently on the Property? ............... Yes☐ No☑

d. Any violations of laws or regulations affecting the Property?........................ Yes☐ No☑

e. Any other conditions that may materially affect the value or desirability of the Property? .......................................................... Yes☐ No☑

f. Any other condition, including but not limited to financial, that may prevent you from completing the sale of the Property? .................................... Yes☐ No☑

g. Any animals or pets residing in the Property during your ownership? .......Yes☑ No☐

h. Any general stains or pet stains to the carpet, the flooring or sub-flooring? .............. Yes☐ No☑

i. Missing keys for any exterior doors, including garage doors to the Property? .......Yes☑ No☐
   List locks without keys  front door  _____

j. Any violations of zoning, setbacks or restrictions, or non-conforming uses? ................ Yes☐ No☑

k. Any unrecorded interests affecting the Property? .................................. Yes☐ No☑

l. Anything that would interfere with giving clear title to the BUYER? .......................... Yes☐ No☑

| Initial | Initial |
|---------|---------|
| KM | DS |

DEM
02/14/25
dotloop verified
SELLER    Initials                              Initials    BUYER    BUYER

Seller's Disclosure and Condition of Property Addendum -- Residential
Page 5 of 8

dotloop signature verification: dtlp.us/DYZk-Tnpf-KfuiS
Docusign Envelope ID: 955BDEDC-C38D-4E6E-A36A-19D469B2068E

F333

| | | | | |
|---|---|---|---|---|
| 268 | m. | Any existing or threatened legal action pertaining to the Property? | Yes ☐ | No ☒ |
| 269 | n. | Any litigation or settlement pertaining to the Property? | Yes ☐ | No ☒ |
| 270 | o. | Any added insulation since you have owned the Property? | Yes ☐ | No ☒ |
| 271 272 | p. | Having replaced any appliances that remain with the Property in the past five (5) years? | Yes ☐ | No ☒ |
| 273 274 | q. | Any transferable warranties on the Property or any of its components? | Yes ☐ | No ☒ |
| 275 276 | r. | Having made any insurance or other claims pertaining to the Property in the past five (5) years? | Yes ☐ | No ☒ |
| 277 | | If "Yes", were repairs from claim(s) completed? | N/A ☐ Yes ☐ | No ☐ |
| 278 | s. | Any use of synthetic stucco on the Property? | Yes ☐ | No ☒ |

279
280 **If any of the answers in this section are "Yes", explain in detail:**
281
282
283
284

285 **17. UTILITIES.** Identify the name and phone number for utilities listed below.
286    Electric Company Name: _Wergy_        Phone # _____
287    Gas Company Name: _Spire_        Phone # _____
288    Water Company Name: _Lake Lotawana_        Phone # _____
289    Trash Company Name: _____        Phone # _____
290    Other: _____        Phone # _____
291    Other: _____        Phone # _____
292

293 **18. ELECTRONIC SYSTEMS AND COMPONENTS.**
294    Any technology or systems staying with the Property? .......................... N/A ☐ Yes ☐ No ☒
295    If "Yes" list: 
296
297
298
299    Upon Closing SELLER will provide BUYER with codes and passwords, or items will be reset to factory settings.
300

301 **19. FIXTURES, EQUIPMENT AND APPLIANCES (FILL IN ALL BLANKS).**
302    The Residential Real Estate Sale Contract, including this paragraph of the residential Seller's Disclosure and
303    Condition of Property Addendum ("Seller's Disclosure"), not the MLS, or other promotional material, provides for
304    what is included in the sale of the Property. Items listed in the "Additional Inclusions" or "Exclusions" in
305    Subparagraphs 1b and 1c of the Contract supersede the Seller's Disclosure and the pre-printed list in Paragraph 1
306    of the Contract. If there are no "Additional Inclusions" or "Exclusions" listed, the Seller's Disclosure and the pre-
307    printed list govern what is or is not included in this sale. If there are differences between the Seller's Disclosure and
308    the Paragraph 1 list, the Seller's Disclosure governs. Unless modified by the Seller's Disclosure and/or the
309    "Additional Inclusions" and/or the "Exclusions" in Paragraph 1b and/or 1c, all existing improvements on the Property
310    (if any) and appurtenances, fixtures and equipment (which seller agrees to own free and clear), whether buried,
311    nailed, bolted, screwed, glued or otherwise permanently attached to Property are expected to remain with Property,
312    including, but not limited to:
313
314    Attached shelves, racks, towel bars        Fireplace grates, screens, glass doors
315    Attached lighting        Mounted entertainment brackets
316    Attached floor coverings        Plumbing equipment and fixtures
317    Bathroom vanity mirrors,        Storm windows, doors, screens
318        attached or hung        Window blinds, curtains, coverings
319    Fences (including pet systems)        and window mounting components
320
321

DEM
02/14/25
dotloop verified
SELLER | SELLER    Initials ____    Initials ____    Initial R V    Initial LDS    BUYER | BUYER

dotloop signature verification: dtlp.us/DY2k-TnpT-KTuiS
Docusign Envelope ID: 955BDEDC-C38D-4E6E-A36A-19D469B2068E

F333

322 ***Fill in all blanks using one of the abbreviations listed below.***
323    **"OS" = Operating and Staying with the Property** (any item that is performing its intended function).
324    **"EX" = Staying with the Property but Excluded from Mechanical Repairs**; cannot be an Unacceptable
325       **Condition.**
326    **"NA" = Not applicable** (any item not present).
327    **"NS" = Not staying with the Property** (item should be identified as "NS" below.)
328
329

| | | | |
|---|---|---|---|
| 330 | NA Air Conditioning Window Units, #____ | NA Laundry - Washer | |
| 331 | OS Air Conditioning Central System | NA Laundry - Dryer | |
| 332 | NA Attic Fan | ____ Elec. ____ Gas | |
| 333 | OS Ceiling Fan(s), # 4 | MOUNTED ENTERTAINMENT EQUIPMENT | |
| 334 | NA Central Vac and Attachments | NA Item #1 _____ | |
| 335 | NA Closet Systems | Location_____ | |
| 336 | Location_____ | Item #2 _____ | |
| 337 | OS Doorbell | Location_____ | |
| 338 | NA Electric Air Cleaner or Purifier | Item #3 _____ | |
| 339 | NA Electric Car Charging Equipment | Location_____ | |
| 340 | OS Exhaust Fan(s) – Baths | Item #4 _____ | |
| 341 | NA Fences – Invisible & Controls | Location_____ | |
| 342 | Fireplace(s), #____ | Item #5 _____ | |
| 343 | Location #1 ____ FR ____ Location #2 _____ | Location_____ | |
| 344 | ____ Chimney ____ Chimney | NA Outside Cooking Unit | |
| 345 | X Gas Logs / Gas Logs | NA Propane Tank | |
| 346 | ____ Gas Starter ____ Gas Starter | ____ Owned ____ Leased | |
| 347 | ____ Heat Re-circulator ____ Heat Re-circulator | NA Security System | |
| 348 | ____ Insert ____ Insert | ____ Owned ____ Leased | |
| 349 | ____ Wood Burning Stove ____ Wood Burning Stove | OS Smoke/Fire Detector(s), # 4 | |
| 350 | ____ Other_____ ____ Other_____ | NA Shed(s), #____ | |
| 351 | NA Fountain(s) | NA Spa/Hot Tub | |
| 352 | OS Furnace/Heat Pump/Other Heating System | NA Spa/Sauna | |
| 353 | OS Garage Door Keyless Entry | NA Spa Equipment | |
| 354 | OS Garage Door Opener(s), # 2 | OS Sprinkler System Auto Timer | |
| 355 | NA Garage Door Transmitter(s), # 1 | OS Sprinkler System Back Flow Valve | |
| 356 | NA Gas Yard Light | OS Sprinkler System (Components & Controls) | |
| 357 | OS Humidifier | NA Statuary/Yard Art | |
| 358 | NA Intercom | NA Swing set/Playset | |
| 359 | OS Jetted Tub | OS Sump Pump(s), # 1 | |
| 360 | KITCHEN APPLIANCES | NA Swimming Pool (Swimming Pool Rider Attached) | |
| 361 | Cooking Unit | NA Swimming Pool Heater | |
| 362 | OS Stove/Range | NA Swimming Pool Equipment | |
| 363 | ____ Elec. X Gas ____ Convection | NA TV Antenna/Receiver/Satellite Dish | |
| 364 | ____ Built-in Oven | ____ Owned ____ Leased | |
| 365 | ____ Elec. ____ Gas ____ Convection | OS Water Heater(s) | |
| 366 | ____ Cooktop ____ Elec ____ Gas | NA Water Softener and/or Purifier | |
| 367 | ____ Microwave Oven | ____ Owned ____ Leased | |
| 368 | OS Dishwasher | NA Boat Dock, ID #____ | |
| 369 | OS Disposal | NA Camera-Surveillance Equipment | |
| 370 | NA Freezer | NA Generator | |
| 371 | ____ Location | ____ Other _____ | |
| 372 | OS Refrigerator (#1) | ____ Other _____ | |
| 373 | ____ Location Kitchen | ____ Other _____ | |
| 374 | NA Refrigerator (#2) | ____ Other _____ | |
| 375 | ____ Location _____ | ____ Other _____ | |
| 376 | NA Trash Compactor | ____ Other _____ | |

DEM
02/14/25
SELLER | SELLER    | Initials

Initials | KM LDS
BUYER | BUYER

dotloop signature verification: dtlp.us/DY2k-Tnpf-KTul6
Docusign Envelope ID: 955BDEDC-C38D-4E6E-A36A-19D469B2068E

F333

377 Disclose any material information and describe any significant repairs, improvements or alterations to the Property not
378 fully revealed above. If applicable, state who did the work.  Attach to this disclosure any repair estimates, reports,
379 invoices,   notices   or   other   documents   describing   or   referring   to   the   matters   revealed   herein:
380
381
382
383

384 The undersigned SELLER represents, to the best of their knowledge, the information set forth in the foregoing
385 Disclosure Statement is accurate and complete.  SELLER does not intend this Disclosure Statement to be a warranty or
386 guarantee of any kind.   SELLER hereby authorizes the Licensee assisting SELLER to provide this information to
387 prospective BUYER of the Property and to real estate brokers and licensees.  **SELLER will promptly notify Licensee**
388 **assisting the SELLER, in writing, if any information in this disclosure changes prior to Closing, and Licensee**
389 **assisting the SELLER will promptly notify Licensee assisting the BUYER, in writing, of such changes. (SELLER**
390 **and BUYER initial and date any changes and/or attach a list of additional changes. If attached, # ____**
391 **pages).**
392
393              **CAREFULLY READ THE TERMS HEREOF BEFORE SIGNING.  WHEN SIGNED BY ALL PARTIES, THIS**
394                     **DOCUMENT BECOMES PART OF A LEGALLY BINDING CONTRACT.**
395                     **IF NOT UNDERSTOOD, CONSULT AN ATTORNEY BEFORE SIGNING.**
396
397
398
399  *Deborah Evans Mott*          dotloop verified
400                                02/14/25 4:07 PM EST
                                  1D4K-V9T6-VPTN-XD6K
401 **SELLER**                          **DATE**    **SELLER**                          **DATE**
402
403 **BUYER ACKNOWLEDGEMENT AND AGREEMENT**
404
405  1.  I understand and agree the information in this form is limited to information of which SELLER has actual knowledge
406      and SELLER need only make an honest effort at fully revealing the information requested.
407  2.  This Property is being sold to me without warranties or guaranties of any kind by SELLER, Broker(s) or licensees
408      concerning the condition or value of the Property.
409  3.  I agree to verify any of the above information, and any other important information provided by SELLER or Broker(s)
410      (including any information obtained through the Multiple Listing Service) by an independent investigation of my own.
411      I have been specifically advised to have Property examined by professional inspectors.
412  4.  I acknowledge neither SELLER nor Broker(s) is an expert at detecting or repairing physical defects in Property.
413  5.  I specifically represent there are no important representations concerning the condition or value of Property made
414      by SELLER or Broker(s) on which I am relying except as may be fully set forth in writing and signed by them.
415
416  Signed by:                                                Signed by:
417
418  [signature]              3/23/2025 | 1    [signature]              3/23/2025 | 15:20 P
       9A8350E994DD440...                          2FBF53106BFE4BC...
419 **BUYER**                          **DATE**    **BUYER**                          **DATE**

Approved by Legal Counsel of the Kansas City Regional Association of REALTORS® for exclusive use by its REALTOR® members. No
warranty is made or implied as to the legal validity or adequacy of the Contract, or that it complies in every respect with the law or that its
use is appropriate for all situations. Local law, customs and practices, and differing circumstances in each transaction may dictate that
amendments to this Contract be made. Last revised 10/21. All previous versions of this document may no longer be valid. Copyright
January 2022.

dotloop signature verification: dtlp.us/6qRn-ZN7f-FSXR
Docusign Envelope ID: 955BDEDC-C38D-4E6E-A36A-19D469B2068E



# CONTINGENCY FOR SALE AND/OR CLOSING
# OF BUYER'S PROPERTY ADDENDUM

1  **SELLER:** Deborah Evans Mott (AMP)

2  **BUYER:** Rachel M Stolte and Leon Dale Stolte (AMC)

3

4  **PROPERTY:** 1059 SW Conch Circle        Blue Springs        MO  64064

5

6  **THE CONTRACT IS CONTINGENT UPON THE SALE AND CLOSING OF BUYER'S PROPERTY**
7  **LOCATED AT:** 2553 NW Bent Tree Circle

8  Lee's Summit                    MO     64081        ("BUYER'S Property")

9  which is or will be listed for sale with Keller Williams Realty Partners, Inc – Mike Mason

10  on or before 3/29/2025        with terms as provided in either Paragraph 1 or 2 below.

11

12  **CHECK AND COMPLETE APPLICABLE CONTINGENCY #1 BELOW (CLOSING) OR #2 BELOW**
13  **(SALE AND CLOSING)**

14

15  ☐ 1.  **CONTINGENT ON CLOSING: BUYER'S PROPERTY IS CURRENTLY UNDER CONTRACT**
16      with a Closing Date that permits BUYER to purchase SELLER'S Property by the Closing Date in
17      this Contract. **This option does not include Seller kick-out rights.**

18

19      The following documents and information are provided (*Check applicable box(es)):*
20          ☐ Contract for sale of present property
21          ☐ Lender letter for buyer of present property
22          ☐ Inspections have been completed
23          ☐ Inspections have not been completed
24          ☐ Inspections issues have been successfully negotiated
25          ☐ Other contingencies_____

26

27      BUYER agrees to keep SELLER timely informed of the closing status of BUYER'S Property.
28      Should it become evident that BUYER'S Property will not close within the above timeframe,
29      BUYER will inform SELLER immediately, and SELLER or BUYER may cancel this Contract.

30

31  ☒ 2.  **CONTINGENT ON SALE AND CLOSING: BUYER'S PROPERTY IS NOT CURRENTLY**
32      **UNDER CONTRACT.** BUYER'S Property must be under contract within 30____ calendar days
33      (thirty (30) days if left blank) from the Effective Date of this Contract (the "Contract Deadline")
34      with a Closing Date that permits BUYER to purchase the Property. If BUYER'S Property is not
35      under contract by the Contract Deadline, either party may cancel this Contract. If BUYER'S
36      Property is under contract after the Contract Deadline but before either party cancels this
37      Contract, then neither party will have the right to cancel due solely to the BUYER'S failure to
38      meet the Contract Deadline. **This option includes Seller kick-out rights.**

39

40      **a.** If at any time prior to BUYER getting BUYER'S Property under contract, SELLER accepts
41          another offer on the Property (Backup Contract), SELLER will provide BUYER with signed
42          Kick-Out Notice/Notice of Backup Contract form of SELLER'S intent to cancel this Contract. If
43          BUYER wishes to continue with this Contract, BUYER will comply with one of the two options
44          below within _____ calendar days (two (2) days if left blank):

45

46          1) Provide SELLER with evidence that BUYER'S Property is now under contract with a
47              closing date that will permit BUYER to purchase SELLER'S Property; or

48

SELLER | SELLER    Initials                    Initials    BUYER | BUYER

dotloop signature verification: dtlp.us/6qRn-ZN7f-FSXR
Docusign Envelope ID: 955BDEDC-C38D-4E6E-A36A-19D469B2068E

49            2) Provide SELLER with the following:

50                i) An amendment or Kick-Out Notice Response signed by BUYER stating the
51                    Contingency for Sale And/Or Closing Addendum is waived and removed from
52                    the Contract (This means BUYER will no longer have the right to cancel if
53                    BUYER'S Property does not sell or close); AND
54               ii) Evidence from a credible financial institution demonstrating BUYER has
55                    sufficient funds and ability (either cash or financing) to close by the Closing
56                    Date of the Contract without the sale of BUYER'S Property.  For the purposes
57                    of this section, if BUYER does not have sufficient funds to purchase without
58                    financing, BUYER must provide loan approval consistent with the financing
59                    provisions of the Contract that is NOT dependent on nor requires the sale
60                    of BUYER'S Property to qualify for the financing needed to purchase the
61                    Property.

62

63      **b.** If BUYER accepts an offer on BUYER'S Property <u>prior</u> to receiving a Kick-Out Notice
64          or cancellation from SELLER, BUYER will notify SELLER of the contract on BUYER'S
65          Property, and the parties will be subject to the Terms of Paragraph 1 above in lieu of
66          Paragraph 2. BUYER will provide SELLER with applicable documentation referenced
67          in Paragraph 1 as it becomes available.

68

69    ALL PARTIES AGREE THAT UPON REMOVAL OF THE CONTINGENCY FOR THE SALE OF THE
70    BUYER'S PROPERTY, AFTER DELIVERY OF A KICK-OUT NOTICE RESPONSE INDICATING
71    BUYER'S INTENT AND ABILITY TO PROCEED TO CLOSING, **THE EARNEST DEPOSIT IS NON-**
72    **REFUNDABLE.**

73

74       **CAREFULLY READ THE TERMS HERE OF BEFORE SIGNING. WHEN SIGNED BY ALL PARTIES,**
75                  **THIS DOCUMENT BECOMES PART OF A LEGALLY BINDING CONTRACT.**
76               **IF NOT UNDERSTOOD, CONSULT AN ATTORNEY BEFORE SIGNING.**

77

78 *Deborah Evans Mott*    dotloop verified        Signed by:
79                     03/25/25 11:47 AM EDT                              3/23/2025 | 17:19 CDT
                            TTCZ-FX0I-RQRN-OCLB         9A8350E994DD440...
80 SELLER                          DATE       BUYER                          DATE

81

82                                           Signed by:
83                                                          3/23/2025 | 15:20 PDT
                                               2FBF53106BFE4BC...
84 SELLER                           DATE       BUYER                          DATE

Approved by Legal Counsel of the Kansas City Regional Association of REALTORS® for exclusive use by its REALTOR® members. No warranty is made or implied as to the legal validity or adequacy of this Contract, or that it complies in every respect with the law or that its use is appropriate for all situations. Local law, customs and practices, and differing circumstances in each transaction may dictate that amendments to this Contract be made. Last revised September 2024. All previous versions of this document may no longer be valid. Copyright January 2025.

## EXHIBIT 7

**Mott Durable Power of Attorney**

# DURABLE POWER OF ATTORNEY

**KNOWN BY ALL MEN BY THESE PRESENTS,** that on this _____2nd_____ day of _____May_____, _____2025_____, I, Deborah Evans Mott, a married person, ("Grantor"/"Principal") do hereby constitute and appoint Juan Ruiz ("Grantee"), whose mailing address is: 200 S. Andrews Avenue Ste 604 Lauderdale, FL 33301, my true and lawful attorney-in-fact for me for the purposes set forth in this instrument with respect to the following real estate located at (Street Address) 1059 SW Conch Cir, Blue Springs, MO 64064 (hereinafter referred to as the Subject Property):

**Lot 77, THE ESTATES AT CHAPMAN FARMS - 2ND PLAT, a subdivision in Blue Springs, Jackson County, Missouri.**

1. **Powers granted my attorney-in-fact.** I hereby give, grant and bestow upon my attorney-in-fact the following powers:

   a. to sell, transfer and convey the homestead and any other real property; to make, execute, acknowledge, endorse and deliver for me all contracts, extensions, closing statements, assignments, escrow agreements, affidavits, deeds and all other documents and instruments of whatever kind necessary to consummate the sale of the Subject Property upon whatever terms my attorney shall deep acceptable; to transfer and convey to any Grantee whomsoever for such sum and on such terms and with such agreements as to him or her shall seem proper; deliver good and sufficient conveyances for the same upon any such consideration and with any such clauses, covenants and agreements to be therein contained as my attorney-in-fact shall think fit and convenient;

   b. to purchase, acquire, manage, and control all of my interest in and to the Subject Property; to demise or lease Subject Property to such person or persons and for such rent as he may see fit; to make, execute and acknowledge all documents necessary to purchase, acquire, lease or manage Subject Property;

   c. to borrow money on my behalf from any individual or institution; to make, execute, deliver and acknowledge any mortgages, deeds of trust, promissory notes, construction loan agreements, interim financing agreements, long-term financing agreements, or any other forms of encumbrances thereon as my attorney-in-fact shall deem necessary;

   d. to recover, collect and receive all sums of money which shall become due and owing to me in my name by means of any sale, conveyance or lease and to take all lawful ways and means for the recovery thereof, to execute and deliver sufficient acquaintances, releases and discharges therefore as well as of any lien or liens securing any obligation arising in connection therewith;

 Security 1st Title  |  3124085  |  docs_midwest/recordable_docs/mo/mo_dpoa.html

e. to act under changed conditions, the exact nature of which cannot now be foreseen, it being intended to vest in my said attorney, and I do hereby vest in my said attorney, full power to control and manage Subject Property, giving and granting to my attorney-in-fact full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in connection with the Subject Property.

2. **Enumeration of Powers is Not a Limitation of Powers.** The foregoing enumeration of powers shall not be held to limit or restrict in any manner the powers of my attorney-in-fact to deal in any manner with respect to Subject Property.

3. **Ratification of Attorney's Acts.** I hereby ratify and confirm all my attorney-in-fact may or shall lawfully do or cause to be done by virtue of the powers herein granted my attorney-in-fact.

4. **Hold Harmless for Reliance upon this Document.** I covenant and agree to hold harmless any person who may act in reliance upon the authority granted herein to my attorney-in-fact.

5. **Recording of Power Attorney.** This Durable Power of Attorney may be recorded in the office of the Register of Deeds of the county in which the Subject Property is located.

6. **Revocation.** This Power of Attorney shall remain in full force and effect unless, and until, I record a revocation of this Power of Attorney in the office of the Register of Deeds of the county in which the Subject Property is located.

THIS IS A DURABLE POWER OF ATTORNEY AND THE AUTHORITY OF MY ATTORNEY IN FACT SHALL NOT TERMINATE IF I BECOME DISABLED OR IN THE EVENT OF LATER UNCERTAINTY AS TO WHETHER I AM DEAD OR ALIVE.

_Deborah Evans Mott_
Deborah Evans Mott

State of _VA_ , County of _Fairfax_ ss.

On this day of _May 2, 2025_ before me personally appeared Deborah Evans Mott, known to me to be the persons described in and who executed the foregoing instrument, and acknowledged to me that they executed the same for the purposes therein stated.

My Commission Expires: _8/31/2025_          _MK Singh_
                                                                    Notary Public

in and for said County and State

BEANT K. SINGH
Notary Public
Commonwealth of Virginia
Registration No. 357168
My Commission Expires Aug 31, 2025

Security 1st Title | 3124085 | docs_midwest/recordable_docs/mo/mo_dpoa.html

**<u>EXHIBIT 8</u>**

**Maciorowski Durable Power of Attorney**

# DURABLE POWER OF ATTORNEY

**KNOWN BY ALL MEN BY THESE PRESENTS,** that on this _____2nd_____ day of
_____May_____ , _____2025_____ , I, John Maciorowski , a married person,
("Grantor"/"Principal") do hereby constitute and appoint  Juan Ruiz ("Grantee"), whose mailing address is:  200 S.
Andrews Avenue Ste 604 Lauderdale, FL 33301, my true and lawful attorney-in-fact for me for the purposes set
forth in this instrument with respect to the following real estate located at (Street Address) 1059 SW Conch Cir,
Blue Springs, MO 64064 (hereinafter referred to as the Subject Property):

**Lot 77, THE ESTATES AT CHAPMAN FARMS - 2ND PLAT, a subdivision in Blue Springs, Jackson
County, Missouri.**

1. **Powers granted my attorney-in-fact.** I hereby give, grant and bestow upon my attorney-in-fact the
   following powers:

   a.  to sell, transfer and convey the homestead and any other real property; to make, execute,
   acknowledge, endorse and deliver for me all contracts, extensions, closing statements, assignments,
   escrow agreements, affidavits, deeds and all other documents and instruments of whatever kind
   necessary to consummate the sale of the Subject Property upon whatever terms my attorney shall
   deep acceptable; to transfer and convey to any Grantee whomsoever for such sum and on such terms
   and with such agreements as to him or her shall seem proper; deliver good and sufficient
   conveyances for the same upon any such consideration and with any such clauses, covenants and
   agreements to be therein contained as my attorney-in-fact shall think fit and convenient;

   b.  to purchase, acquire, manage, and control all of my interest in and to the Subject Property; to demise
   or lease Subject Property to such person or persons and for such rent as he may see fit; to make,
   execute and acknowledge all documents necessary to purchase, acquire, lease or manage Subject
   Property;

   c.  to borrow money on my behalf from any individual or institution; to make, execute, deliver and
   acknowledge any mortgages, deeds of trust, promissory notes, construction loan agreements, interim
   financing agreements, long-term financing agreements, or any other forms of encumbrances thereon
   as my attorney-in-fact shall deem necessary;

   d.  to recover, collect and receive all sums of money which shall become due and owing to me in my
   name by means of any sale, conveyance or lease and to take all lawful ways and means for the
   recovery thereof, to execute and deliver sufficient acquaintances, releases and discharges therefore
   as well as of any lien or liens securing any obligation arising in connection therewith;

 **Security 1ˢᵗ Title**  |  3124085 |  docs_midwest/recordable_docs/mo/mo_dpoa.html

e. to act under changed conditions, the exact nature of which cannot now be foreseen, it being intended to vest in my said attorney, and I do hereby vest in my said attorney, full power to control and manage Subject Property, giving and granting to my attorney-in-fact full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in connection with the Subject Property.

2. **Enumeration of Powers is Not a Limitation of Powers.** The foregoing enumeration of powers shall not be held to limit or restrict in any manner the powers of my attorney-in-fact to deal in any manner with respect to Subject Property.

3. **Ratification of Attorney's Acts.** I hereby ratify and confirm all my attorney-in-fact may or shall lawfully do or cause to be done by virtue of the powers herein granted my attorney-in-fact.

4. **Hold Harmless for Reliance upon this Document.** I covenant and agree to hold harmless any person who may act in reliance upon the authority granted herein to my attorney-in-fact.

5. **Recording of Power Attorney.** This Durable Power of Attorney may be recorded in the office of the Register of Deeds of the county in which the Subject Property is located.

6. **Revocation.** This Power of Attorney shall remain in full force and effect unless, and until, I record a revocation of this Power of Attorney in the office of the Register of Deeds of the county in which the Subject Property is located.

THIS IS A DURABLE POWER OF ATTORNEY AND THE AUTHORITY OF MY ATTORNEY IN FACT SHALL NOT TERMINATE IF I BECOME DISABLED OR IN THE EVENT OF LATER UNCERTAINTY AS TO WHETHER I AM DEAD OR ALIVE.

_John Maciorowski_
John Maciorowski


State of ___VA___ , County of ___Fairfax___ } ss.

On this day of ___May 2 2025___ before me personally appeared John Maciorowski , known to me to be the persons described in and who executed the foregoing instrument, and acknowledged to me that they executed the same for the purposes therein stated.

My Commission Expires: ___8/31/2025___          ___B K Singh___
                                                                              Notary Public
                                                                 in and for said County and State

```
BEANT K. SINGH
Notary Public
Commonwealth of Virginia
Registration No. 357168
My Commission Expires Aug 31, 2025
```

## **EXHIBIT 9**

**ALTA Settlement Statement and Closing Disclosure**

| American Land Title Association | ALTA Settlement Statement - Seller |
|---|---|
| | Adopted 05-01-2015 |

| | |
|---|---|
| File Number: 25001902 | **Platinum Title, LLC** |
| Print Date & Time: 5/6/2025 1:04 PM | **6850 College Blvd** |
| Escrow Officer: Kristen Morphew | **Overland Park, KS 66211** |
| Settlement Location: 6850 College Blvd | |
| Overland Park, KS | |
| 66211 | |

**Property Address:** Property Address
1059 SW Conch Cir. Blue Springs, Missouri 64064

Subdivision
Lot 77, The Estates at Chapman Farms - 2nd Plat, Jackson County, Missouri

PIN
53-610-04-32-00-0-00-000

**Buyer:** Rachel M. Stolte - 1059 SW Conch Cir., Blue Springs, MO 64064
Leon Dale Stolte - 1059 SW Conch Cir., Blue Springs, MO 64064

**Seller:** Deborah Evans Mott, MO

**Lender:** Nationstar Mortgage LLC, dba Mr. Cooper ISAOA/ATIMA - PO Box 7729, Springfield, OH 45501

Settlement Date: 5/15/2025
Disbursement Date: 5/15/2025
Additional dates per state requirements: 5/15/2025

| Description | Seller | |
|---|---|---|
| | **Debit** | **Credit** |
| **Financial** | | |
| Sales Price of Property | | $544,700.00 |
| 2024 County Taxes  POCS $7,426.79 | | |
| Wire Fee to Platinum Title, LLC | $15.00 | |
| **Prorations/Adjustments** | | |
| County Taxes 1/1/2025 to 5/15/2025 @$7,815.17/yr | $2,869.13 | |
| HOA Dues 5/15/2025 to 12/31/2025 @$655.00/yr | | $412.74 |
| **Title Charges & Escrow/Settlement Charges** | | |
| E-Filing Fee to Security 1st Title Company | $10.00 | |
| Overngiht Fee to Security 1st Title Company | $50.00 | |
| Owner's Policy to Security 1st Title Company | $559.00 | |
| Recording of POA to Security 1st Title Company | $96.00 | |
| Title - Closing Protection Letter Fee to Security 1st Title Company | $25.00 | |
| Title Closing Protection Letter Fee to Old Republic National Title Insurance Company | $25.00 | |
| Title Service Charge to Security 1st Title Company | $1,097.00 | |
| **Commission** | | |

Copyright 2015 American Land Title Association.
All rights reserved.

Page 1 of 3

File# 25001902
Printed on May 06, 2025 at 1:04 PM

| | Debit | Credit |
|---|---|---|
| Real Estate Commission Buyer's Broker $16,341.00 to Keller Williams Realty Partners, Inc. | $16,341.00 | |
| Real Estate Commission Seller's Broker $16,341.00 + $375.00 to ReeceNichols Real Estate | $16,716.00 | |
| **Miscellaneous** | | |
| HOA Dues to The Estates at Chapman Farms HOA | $1,367.95 | |
| Notary Fee to BancServ | $150.00 | |
| Shannon Cambiano Fee to Shannon Cambiano | $6,577.51 | |
| **Subtotals** | **$45,898.59** | **$545,112.74** |
| Due To Seller | $499,214.15 | |
| **Totals** | **$545,112.74** | **$545,112.74** |

Copyright 2015 American Land Title Association.
All rights reserved.

File# 25001902
Printed on May 06, 2025 at 1:04 PM

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. SELLER INSTRUCTIONS: If this real estate was your principal residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4797, Form 6252 and/or Schedule D (Form 1040). This transaction does not need to be reported on Form 1099-S if you sign a certification containing assurances that any capital gain from this transaction will be exempt from tax under new IRS Code Section 121. You are required by law to provide the Settlement Agent with your correct taxpayer identification number. If you do not provide the Settlement Agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.

**Acknowledgement**

· We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Platinum Title, LLC to cause the funds to be disbursed in accordance with this statement.

I have carefully reviewed the Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of Settlement Statement. The Settlement Agent does not warrant or represent the accuracy of information provided by any party, including information concerning POC items and information supplied by the lender in this transaction appearing on this Settlement Statement pertaining to "Comparison of Loan Estimate, Closing Disclosure and Settlement Statement Charges" and "Loan Terms", and the parties hold harmless the Settlement Agent as to any inaccuracies in such matters. The parties have read the above sentences, recognize that the recitations herein are material, agree to same, and recognize Title Company is relying on the same.

Deborah Evans Mott, by Juan Ruiz, her Attorney-     Date  5/15/2025
in-Fact

John Maciorowski, by Juan Ruiz, his Attorney-
in-Fact

Copyright 2015 American Land Title Association.
All rights reserved.

File# 25001902
Printed on May 06, 2025 at 1:04 PM

# Closing Disclosure

## Closing Information

| | |
|---|---|
| Date Issued | 4/08/2025 |
| Closing Date | 5/15/2025 |
| Disbursement Date | 5/15/2025 |
| Settlement Agent | Platinum Title, LLC |
| File # | 25001902 |
| Property | 1059 SW Conch Cir. |
| | Blue Springs, MO 64064 |
| Sale Price | $544,700 |

## Transaction Information

| | |
|---|---|
| Borrower | Rachel M. Stolte and Leon Dale Stolte |
| | 1059 SW Conch Cir. |
| | Blue Springs, MO 64064 |
| Seller | Deborah Evans Mott |
| | |
| | MO |

## Summaries of Transactions

### SELLER'S TRANSACTION

| Due to Seller at Closing | | $545,112.74 |
|---|---|---|
| 01 Sale Price of Property | | $544,700.00 |
| 02 Sale Price of Any Personal Property Included in Sale | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **Adjustments for Items Paid by Seller in Advance** | | |
| 09 City/Town Taxes | | |
| 10 County Taxes | | |
| 11 Assessments | | |
| 12 HOA Dues | 5/15/25 to 12/31/25 | $412.74 |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |

| Due from Seller at Closing | | $45,898.59 |
|---|---|---|
| 01 Excess Deposit | | |
| 02 Closing Costs Paid at Closing (J) | | $43,014.46 |
| 03 Existing Loan(s) Assumed or Taken Subject to | | |
| 04 Payoff of First Mortgage Loan | | |
| 05 Payoff of Second Mortgage Loan | | |
| 06 | | |
| 07 | | |
| 08 Seller Credit | | |
| 09 2024 County Taxes | | |
| 10 Wire Fee | | $15.00 |
| 11 | | |
| 12 | | |
| 13 | | |
| **Adjustments for Items Unpaid by Seller** | | |
| 14 City/Town Taxes | | |
| 15 County Taxes | 1/1/25 to 5/15/25 | $2,869.13 |
| 16 Assessments | | |
| 17 | | |
| 18 | | |
| 19 | | |

### CALCULATION

| Total Due to Seller at Closing | $545,112.74 |
|---|---|
| Total Due from Seller at Closing | -$45,898.59 |
| Cash  ☐ From  ☒ To Seller | $499,214.15 |

## Contact Information

### REAL ESTATE BROKER (B)

| | |
|---|---|
| Name | Keller Williams Realty Partners, Inc. |
| Address | 6850 College Blvd. |
| | Overland Park, KS 66211 |
| MO License ID | |
| Contact | Mike Mason |
| Contact MO License ID | |
| Email | mike@thedonnergroup.com |
| Phone | |

### REAL ESTATE BROKER (S)

| | |
|---|---|
| Name | ReeceNichols Real Estate |
| Address | 11601 Granada |
| | Leawood, KS 66211 |
| MO License ID | |
| Contact | Shannon Cambiano |
| Contact MO License ID | |
| Email | scambiano@reecenichols.com |
| Phone | |

### SETTLEMENT AGENT

| | |
|---|---|
| Name | Platinum Title, LLC |
| Address | 4400 College Blvd |
| | Overland Park, KS 66211 |
| MO License ID | 8237209 |
| Contact | Kristen Morphew |
| Contact MO License ID | |
| Email | Kristen@platinumtitlellc.com |
| Phone | 913-491-5001 |



**Questions?** If you have questions about the loan terms or costs on this form, use the contact information above. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Closing Cost Details

| Loan Costs | | Seller-Paid | |
|---|---|---|---|
| | | At Closing | Before Closing |
| **A. Origination Charges** | | | |
| 01 % of Loan Amount (Points) | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| **B. Services Borrower Did Not Shop For** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| **C. Services Borrower Did Shop For** | | | |
| 01 E-Filing Fee | to Security 1st Title Company | $10.00 | |
| 02 Overnight Fee | to Security 1st Title Company | $50.00 | |
| 03 Owner's Policy | to Security 1st Title Company | $559.00 | |
| 04 Recording of POA | to Security 1st Title Company | $96.00 | |
| 05 Title - Closing Protection Letter Fee | to Security 1st Title Company | $25.00 | |
| 06 Title Service Charge | to Security 1st Title Company | $1,097.00 | |
| 07 | | | |
| 08 | | | |

| Other Costs | | | |
|---|---|---|---|
| **E. Taxes and Other Government Fees** | | | |
| 01 Recording Fees | Deed:        Mortgage: | | |
| 02 | | | |
| **F. Prepaids** | | | |
| 01 Homeowner's Insurance Premium ( mo.) | | | |
| 02 Mortgage Insurance Premium      ( mo.) | | | |
| 03 Prepaid Interest ( per day from to  ) | | | |
| 04 Property Taxes | ( mo.) | | |
| 05 | | | |
| **G. Initial Escrow Payment at Closing** | | | |
| 01 Homeowner's Insurance | per month for mo. | | |
| 02 Mortgage Insurance | per month for mo. | | |
| 03 Property Taxes | per month for mo. | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 Aggregate Adjustment | | | |
| **H. Other** | | | |
| 01 HOA Dues | to The Estates at Chapman Farms HOA | $1,367.95 | |
| 02 Notary Fee | to BancServ | $150.00 | |
| 03 Real Estate Commission Buyer's Broker | to Keller Williams Realty Partners, Inc. | $16,341.00 | |
| 04 Real Estate Commission Seller's Broker | to ReeceNichols Real Estate | $16,716.00 | |
| 05 Shannon Cambiano Fee | to Shannon Cambiano | $6,577.51 | |
| 06 Title Closing Protection Letter Fee | to Old Republic National Title Insurance Company | $25.00 | |
| 07 | | | |
| 08 | | | |
| 09 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| **J. TOTAL CLOSING COSTS** | | $43,014.46 | $0.00 |

*Deborah Evans Mott, by Juan Ruiz, her attorney-in-fact*
Deborah Evans Mott, by Juan Ruiz, her Attorney-
in-Fact

5/15/2025
Date

*John Maciorowski, by Juan Ruiz, his attorney in fact*
John Maciorowski, by Juan Ruiz, his Attorney-
in-Fact

**EXHIBIT 10**

**Distribution of Seller Net Proceeds Check**

# Security 1st Title

## DISTRIBUTION OF SELLER NET PROCEEDS CHECK

*(Please check the appropriate paragraph)*

SELLER:     Deborah Evans Mott and John Maciorowski
BORROWER:   Rachel M Stolte and Leon Dale Stolte
FILE NO.:   3124085
ADDRESS:    1059 SW Conch Cir, Blue Springs, MO 64064

—— The proceeds check will be picked up by the seller or_____

Please call: Home: _____ Cell: _____Work: _____

**OR**

—— Please forward the net proceed check by:
—— Overnight Mail
Address to send check: _____

**OR**

✗ PLEASE WIRE TRANSFER **(Please verify with your banking institution regarding their instructions for incoming wire transfers as they may have specific instructions for wire transmittals)**

Intermediary Bank Name:_____ Intermediary Bank ABA No.:_____

Name of Bank: *TD Bank* _____ Phone No: _____

ABA No.: *031101266*   Acct No.: ████ *1610*

Name on the account: *Aloha Title*

**\*\*PLEASE NOTE\*\*** The seller acknowledges the possibility of additional documentation that requires the Seller's signature prior to the release of any funds.

—— Please fax or email further documentation in need of a signature to: _____

*Deborah Evans Mott, by J.R., her attorney in fact*
Deborah Evans Mott, by Juan Ruiz, her
Attorney-in-Fact

*John Maciorowski, by J.S., his attorney in fact*
John Maciorowski, by Juan Ruiz, his Attorney-
in-Fact

Forwarding Address: *200 S Andrews Ave #604*
*Ft Lauderdale, FL 33301*

Phone Number: _____



3124085  |  docs_midwest/internal/conditional/distribution_net_proceeds.html

**<u>EXHIBIT 11</u>**

**Aloha Title LLC 2025 Amended Annual Report**

**2025  FLORIDA LIMITED LIABILITY COMPANY AMENDED ANNUAL REPORT**

DOCUMENT# L17000237691

**Entity Name:** ALOHA TITLE LLC

**FILED**

**Nov 05, 2025**
**Secretary of State**
**5529726503CC**

**Current Principal  Place of Business:**

200 S ANDREWS AVENUE
 604
FORT LAUDERDALE, FL  33301

**Current Mailing Address:**

200 S ANDREWS AVENUE
 604
FORT LAUDERDALE,  FL  33301  US

**FEI Number: 82-3434532**                                    **Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

RUIZ, JUAN S
200 S ANDREWS AVENUE
 604
FORT LAUDERDALE, FL 33301  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:   JUAN RUIZ                                                             11/05/2025

                    Electronic Signature of Registered Agent                                                    Date

**Authorized Person(s) Detail :**

| Title | MGR | Title | AUTHORIZED REPRESENTATIVE |
|---|---|---|---|
| Name | RUIZ, JUAN | Name | RUIZ, ADRIANA |
| Address | 200 S ANDREWS AVENUE 604 | Address | 200 S ANDREWS AVENUE 604 |
| City-State-Zip: | FORT LAUDERDALE FL 33301 | City-State-Zip: | FORT LAUDERDALE  FL 33301 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: JUAN RUIZ                                         MANAGER                    11/05/2025

        Electronic Signature of Signing Authorized Person(s) Detail                                         Date

## **EXHIBIT 12**

**Addy Road LLC 2025 Annual Report**

# 2025 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# L19000145635

**FILED**

**Apr 30, 2025**
**Secretary of State**
**7515282306CC**

**Entity Name:** ADDY ROAD LLC

**Current Principal  Place of Business:**

705 RIVERSIDE DRIVE
ORMOND BEACH,  FL  32176

**Current Mailing Address:**

705 RIVERSIDE DRIVE
ORMOND BEACH,  FL  32176  US

**FEI Number: NOT APPLICABLE**                    Certificate of Status Desired:  No

**Name and Address of Current Registered Agent:**

RUIZ, JUAN
200 S. ANDREWS AVENUE
604
FT. LAUDERDALE , FL  33301  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:  JUAN RUIZ                                                        04/30/2025

_____
Electronic Signature of Registered Agent                                                         Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MGR |
| Name | MOTT, DEBORAH E |
| Address | 705 RIVERSIDE DRIVE |
| City-State-Zip: | ORMOND BEACH FL 32176 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: DEBORAH MOTT                              MGR                    04/30/2025

_____
Electronic Signature of Signing Authorized Person(s) Detail                                   Date

## **EXHIBIT 13**

**Team Systems International Southeast LLC 2025 Amended Annual Report**

**2025 FLORIDA LIMITED LIABILITY COMPANY AMENDED ANNUAL REPORT**

DOCUMENT# L21000176791

**FILED**
**Nov 03, 2025**
**Secretary of State**
**6171683994CC**

**Entity Name:** TEAM SYSTEMS INTERNATIONAL SOUTHEAST LLC

**Current Principal Place of Business:**

705 RIVERSIDE DRIVE
ORMOND BEACH, FL 32176

**Current Mailing Address:**

705 RIVERSIDE DRIVE
ORMOND BEACH, FL 32176 US

**FEI Number: NOT APPLICABLE**                **Certificate of Status Desired:** Yes

**Name and Address of Current Registered Agent:**

RUIZ, JUAN
200 S. ANDREWS AVENUE
STE 604
FT LAUDERDALE, FL 33301 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:   JUAN RUIZ                                                                  11/03/2025
                    Electronic Signature of Registered Agent                                        Date

**Authorized Person(s) Detail :**

Title            MGR

Name          MACIOROWSKI, JOHN S

Address       705 RIVERSIDE DRIVE

City-State-Zip:   ORMOND BEACH FL 32176

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: JOHN MACIOROWSKI                        MGR                11/03/2025
                Electronic Signature of Signing Authorized Person(s) Detail                        Date

# **EXHIBIT 14**

**Aloha Title LLC SAM.gov Entity Information**

# ALOHA TITLE LLC  Active Registration

**Unique Entity ID**
YVD9BGBUPH99

**CAGE/NCAGE**
116S6

*Expiration Date*
Mar 25, 2026

**Physical Address**
200 S Andrews AVE
STE 604
Fort Lauderdale,
Florida
33301-2090, United
States

**Mailing Address**
200 S Andrews AVE
STE 604
Fort Lauderdale,
Florida
33301-2090, United
States

**Purpose of Registration**
**All Awards**

ⓘ   **Review**
Debt Subject to Offset

**Version**
2025-03-14 15:

## BUSINESS INFORMATION

**Doing Business As**
**(blank)**

**URL**
www.Aloha-Defense.com

**Division Name**
**Aloha Defense**

**Division Number**
**(blank)**

**Congressional District**
**Florida 23**

**State/Country of Incorporation**
**Florida, United States**

### Registration Dates

Activation Date
**Apr 4, 2025**

Submission Date
**Mar 25, 2025**

Initial Registration Date
**Mar 14, 2025**

| Owner | CAGE | Legal Business Name |
|---|---|---|
| **Immediate Owner** | (blank) | (blank) |
| **Highest Level Owner** | (blank) | (blank) |

### Entity Dates

Entity Start
Date
**Nov 16, 2017**

 Fiscal Year End
Close Date

**Dec 31**

## Executive Compensation

Registrants in the System for Award Management (SAM) respond to the Executive Compensation questions in accordance with Section 6202 of P.L. 110-252, amending the Federal Funding Accountability and Transparency Act (P.L. 109-282). This information is not displayed in SAM. It is sent to USAspending.gov for display in association with an eligible award. Maintaining an active registration in SAM demonstrates the registrant responded to the questions.

# SAM SEARCH AUTHORIZATION

I authorize my entity's non-sensitive information to be displayed in SAM public search results:

 Yes

# ENTITY TYPES

## Business Types

| | |
|---|---|
| Entity Structure | **Partnership or Limited Liability Partnership** |
| Entity Type | **Business or Organization** |
| Profit Structure | **For Profit Organization** |
| Organization Factors | **Limited Liability Company** |

### Socio-Economic Types

**Self Certified Small Disadvantaged Business, Women-Owned Small Business, Women-Owned Business, Hispanic American Owned**

Check the registrant's Reps & Certs, if present, under FAR 52.212-3 or FAR 52.219-1 to determine if the entity is an SBA-certified HUBZone small business concern. Additional small business information may be found in the SBA's Dynamic Small Business Search if the entity completed the SBA supplemental pages during registration.

# FINANCIAL INFORMATION

## Payments

Accepts Credit Card Payments
**Yes**

Debt Subject To Offset ⑦
**Yes**

### ACCOUNT DETAILS

EFT Indicator   **0000**
CAGE Code   **116S6**

## POINTS OF CONTACT

## Electronic Business

### Primary Point of Contact

**Christopher Mott, VP**

Address
**200 S Andrews AVE Suite 604**
**Fort Lauderdale, Florida 33301**
**United States**

## Government Business

### Primary Point of Contact

**Christopher Mott, VP**

Address
**200 S Andrews AVE Suite 604**
**Fort Lauderdale, Florida 33301**
**United States**