**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>TEAM SYSTEMS INTERNATIONAL, LLC,<br><br>    Debtor. | Chapter 7<br><br>Case No. 22-10066 (CTG)<br><br>**Related Docket No. 777** |
| GEORGE L. MILLER,<br><br>    Plaintiff,<br><br>v.<br><br>DEBORAH EVANS MOTT, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 23-50004 (CTG)<br><br>**Related Docket No. 635** |

**MEMORANDUM OPINION**

The individual defendants in this adversary proceeding have filed a motion that seeks the recusal of the undersigned judge "from further proceedings in this adversary proceeding and the underlying chapter 7 case."[1]   Although these defendants are represented by counsel, they have captioned this document as "Pro Se solely for this motion."  As the first paragraph of the "Analysis" section of this Memorandum Opinion explains, federal law generally prohibits such a "hybrid representation."  The Court nonetheless addresses the merits of the recusal motion, which the Court denies for the reasons explained in this Memorandum Opinion.

---

[1] The moving defendants are Deborah Evans Mott, Steven M. Acosta, Christopher Mott and John S. Maciorowski.  They are referred to collectively as either the "individual defendants" or as "defendants."

The motion states that the individual defendants do not seek the judge's recusal because they "disagree with the Court's rulings."[2]  As the Court understands the motion, the individual defendants make the following two arguments.

*First,* the individual defendants contend that the Court has not paid sufficient heed to the national security concerns that they assert are presented by the case. They state that the debtor is a "cleared defense contractor" subject to a regulatory framework regarding access to sensitive information.[3]  They object that notwithstanding the debtor's status as a cleared defense contractor, the Court granted the chapter 7 trustee appointed in this case full access to the debtor's books and records, in alleged violation of this regulatory framework.  The motion argues that the Court's alleged indifference to these national security concerns was further reflected in an evidentiary ruling during the trial, in which the Court admitted into evidence certain of the debtor's emails that the trustee obtained by subpoena from the company that hosted the debtor's email system.  Or as the defendants' put it, the Court "denied Defendant's motion to exclude the unscreened server production."[4]

*Second*, the defendants note that the Court made a criminal referral to the United States Attorney after the Court issued an opinion finding that the debtor had fabricated business records and concealed transfers to insiders that were required to be disclosed.  That referral was made pursuant to 18 U.S.C. § 3057(a), which requires

---

[2] D.I. 635 at 2.  The motion to recuse was docketed in both the main bankruptcy case (D.I. 777) and in the adversary proceeding (D.I. 635).  This Memorandum Opinion cites to the filing on the adversary proceeding docket.

[3] *Id.*

[4] *Id.* at 3.

such a referral whenever a bankruptcy judge has "reasonable grounds for believing that any violation under chapter 9 of this title … relating to insolvent debtors … has been committed."[5]   The individual defendants object that the Court did not disclose the fact of the referral until 18 months later, after Deborah Mott, one of the individual defendants, had been indicted and her counsel had, during a hearing, accused the chapter 7 trustee of having made the referral.

The individual defendants contend that these circumstances would "cause a reasonable observer to question [the Court's] impartiality."[6]   The Court rejects that contention.

*First,* with respect to the alleged national security concerns, the Supreme Court held in *United States v. Reynolds* that the privilege "which protects military and state secrets" is one that "belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party."[7]   When the individual defendants first raised the alleged national security concerns, the Court invited lawyers from the Department of Justice to raise any objection that the United States might seek to assert.  After the chapter 7 trustee was appointed, the Court left the task of supervising the trustee's conduct to the Department of Justice, which by statute is responsible for doing so.[8]   At no point did a representative of the federal

---

[5] 18 U.S.C. § 3057(a).

[6] D.I. 635 at 23.

[7] *United States v. Reynolds*, 345 U.S. 1, 7 (1953).

[8] *See* 28 U.S.C. §§ 581(a)–(c), 586(a)(1), (a)(3), (c).

government assert that the conduct of the proceedings raised national security concerns.

*Second*, with respect to the Court's criminal referral, the individual defendants state that they do not take issue with the referral itself but contend that the circumstances of the case as a whole – including various evidentiary rulings with which the individual defendants disagree – involve the "combination of accusatory and adjudicatory functions" in a way that creates an appearance of partiality.[9] That assertion is both untimely and incorrect. The failure to seek recusal based on the referral until almost two years after it was disclosed is a sufficient basis to deny the motion. On the merits, the individual defendants' contentions regarding the criminal referral are in essence a disagreement with Congress' judgment in enacting § 3057(a), which imposes a "mandatory" reporting obligation on the Court and does not require the referring judge thereafter to recuse. Regarding the timing of the Court's disclosure of the referral, federal criminal investigations are ordinarily kept confidential before an indictment has been issued. Deborah Mott was indicted in July 2024 and the Court disclosed the referral on August 24, 2024, the day after the Court was given reason to believe that the fact of the referral could bear on an issue arising in this adversary proceeding. The motion to recuse will therefore be denied.

**Factual and procedural background**

The Court held a trial on the underlying adversary proceeding from July 6, 2026 through July 10, 2026. The parties filed post-trial briefs through counsel on

---

[9] D.I. 635 at 26.

July 24, 2026, and the matter is now under advisement.  This Memorandum Opinion addresses only the background that is most relevant to recusal motion.

The debtor in this case was a government contractor.  The government contract that was directly at issue in the main bankruptcy case and this adversary proceeding was an agreement with the Federal Emergency Management Agency to provide bottled water to the victims of Hurricane Maria in Puerto Rico.  The debtor asserts that it also supplies fuel to the U.S. military and is engaged in other government contracts of a classified nature.  While the record on this issue is (perhaps necessarily) ambiguous, for the purposes of this motion, the Court will assume that the debtor was in fact engaged in government contracting activity that involved sensitive information that implicated concerns of national security.

The bankruptcy case was contentious from the beginning.  The case was filed in January 2022.  Two creditors had obtained judgments against the debtor in a lawsuit they filed in the U.S. District Court for the Southern District of Florida, contending that the debtor owed them money for their role in supplying the bottled water that the debtor delivered to Puerto Rico.[10]  The debtor's inability to post a bond to stay enforcement of those judgments was the event that precipitated the bankruptcy filing.  Those creditors moved to dismiss the bankruptcy case and sought discovery.  The Court conducted an evidentiary hearing  for two days in March 2022.  The evidence at that hearing established that the debtor had engaged in misconduct

---

[10] Those creditors, GPDEV, LLC and Simons Exploration, Inc., are referred to as the "judgment creditors."

in the Florida litigation; that the debtor had made substantial transfers that were to or for the benefit of insiders that had been misrepresented in the debtor's business records; and that Deborah Mott, the debtor's principal, gave misleading testimony about those transfers in a deposition taken in the bankruptcy case by the judgment creditors.  Based on the record presented to it, the Court concluded that the debtor had failed to meet its burden of establishing its good faith and the Court converted the case to one under chapter 7.[11]

### 1.    Treatment of confidential information

During the course of the March 2022 hearing on the motion to dismiss, Stephen Acosta, a member of the debtor and one of the individual defendants in this adversary proceeding, testified on direct examination about the debtor's business activity, and how it related to the 13-week budget that was appended to the debtor's motion for DIP financing, which Acosta described as being based on conservative assumptions. When asked about the fluctuations over time in expected revenue from its business supplying fuel to the military, Acosta testified that "if things are happening in part of the world, we move our naval fleets in and support naval fleets and the bigger the ship the more fuel they request and more frequency.  When ships patrol and they have fuel for so many days, and there's always on patrol, one will come in, fuel, and they'd switch out.  So, I will say in the Middle East the opt. tempo has gone up."[12]

---

[11] *In re Team Systems International LLC*, 640 B.R. 296 (Bankr. D. Del. 2022).

[12] March 9, 2022 Hr'g Tr. at 204.

In response to that answer, the debtor's lawyer remarked as follows: "for all of our benefit and for the Court's benefit, you know, you've several times, kind of, hesitated on what you feel comfortable saying.  Is that because TSI receives requests which might reflect classified movements and things that you're not really at liberty to tell everyone about?"[13]  Acosta responded to that by saying "Just working in clear spaces for so long, you know, working on clear programs, I – when I see our assets, United States assets, moving into an area through their fueling, I think, especially right now, it's pretty important to me to keep operational security –"[14]

At that point, the Court, aware that a lawyer from the Department of Justice (J. Zachary Balasko) had appeared in the case to protect the interests of the Department of Defense and was participating in the hearing by Zoom, interjected:

> THE COURT: Can I –- can I just pause here for a second?  Mr. Balasko, you're – are you still on – on the call?
>
> MR. BALASKO: Yes, Your Honor.
>
> THE COURT: Okay.  And on behalf of the Department of Justice, you're here to represent the Department of Defense in this Matter?
>
> MR. BALASKO: That's true.
>
> THE COURT: Okay.  So, to the extent a question calls for testimony that you believe would be inappropriate on behalf of the Department of Defense, you should not be shy about objecting on that basis. We're – we're clear there?
>
> MR. BALASKO: Sure, Your Honor.  And my colleague, Ms. Aizpuru is – is going to be handling Mr. Acosta's cross examination for us.
>
> THE COURT: Got it.

---

[13] *Id.*

[14] *Id.*

7

MR. BALASKO: It – we're not aware of any classified contracts prior to what was filed yesterday. So, I – I would have a hard time knowing what's – what's – what information is and isn't. But – but we will certainly admonish Mr. Acosta not to disclose any classified information and – and keep an eye on the testimony.

THE COURT: Okay.  And – and Ms. Aizpuru, you're on and are ready, willing, and able to assert an objection to the extent the question calls for the information that would imperil our national security?

MS. AIZPURU: Absolutely, Your Honor, at least to the extent that I'm aware of any classified or national security implications.

THE COURT: All right.  All right.  So, look, we're just going to handle it that way.  So, if you're asked a question, Mr. Acosta, you should answer the question honestly.  I haven't heard questions that, by their terms, call for information that, you know, is – is sensitive.  But, I think that, you know, the United States is well represented here and able to protect its interests and we're going to just follow the rules and let the government do the government's job.

So, with that, Mr. Lehman, you can continue.[15]

At no point over the course of the remaining testimony did counsel for the United States object to a line of questioning on the ground that the answer might reveal sensitive or classified information.

The Court ultimately determined to convert the case to one under chapter 7. The Court accordingly concluded its March 30, 2022 opinion by stating that "Counsel for GPDEV and Simons are directed to settle an appropriate order, on certification of counsel, after consulting about the form of order with the debtor, the Office of the U.S. Trustee, Bering Straits and the United States."[16]

---

[15] *Id.* at 204-206.  The hearing transcript misspelled Mr. Balasko's name.  That misspelling is corrected in the portion quoted above.

[16] *Team Systems*, 640 B.R. at 322.

The next day, on March 31, 2022, counsel for the judgment creditors filed a certification representing that "counsel for the Creditors, Debtor, U.S. Trustee, Bering Straits and the United States consulted regarding a proposed form of Order consistent with the Court's Memorandum Opinion [D.I. 146], and agreed upon the terms of the proposed Order filed contemporaneously herewith."[17]  The Court issued the order, in the form proposed, later that day.[18]  That order directed the debtor to "[i]mmediately turn-over to the chapter 7 trustee any and all records and estate property under their dominion, control and custody and as required by Federal Rule of Bankruptcy Procedure 1019(4)."[19]  The Office of the United States Trustee appointed George Miller as the interim chapter 7 trustee.[20]

Disputes arose quickly about the individual defendants' compliance with the terms of the conversion order.  In August 2023, the trustee filed a motion seeking an order that would grant the chapter 7 trustee access to various accounts owned by the bankruptcy estate that allegedly contained information that related to the estate's financial condition, including its "SAM.gov" and Commercial and Government Entity Code, maintained by the Defense Logistics Agency.[21]  The certificate of service

---

[17] *In re Team Systems International*, Bankr. D. Del. No. 22-10066, D.I. 147 ¶ 6.  Citations to material filed on the docket of this main bankruptcy case is cited as "Main Case D.I. __."

[18] Main Case D.I. 151.

[19] *Id.* ¶ 3.A.

[20] Main Case D.I. 152.  After a subsequent dispute over a contested chapter 7 trustee election, the Court concluded that Miller would become the permanent case trustee.  *See In re Team Systems International LLC*, No. 22-10066, 2022 WL 2792006 (Bankr. D. Del. July 15, 2022); Main Case D.I. 228 (order appointing Miller as permanent case trustee).

[21] Main Case D.I. 351.  The parties use the acronym "CAGE" to describe Commercial and Government Entity credentials.

appended to the trustee's motion represents that the motion was served on the General Services Administration, the Defense Logistics Agency, and the United States Attorney.[22]   The individual defendants opposed the motion on the ground that the relief sought would bypass various governmental requirements for obtaining access to the information.[23]   None of the governmental entities objected, however.

That motion was set for hearing on September 20, 2023.   Counsel for the individual defendants argued that relief sought would override the right of various federal agencies to control access to sensitive information.   "[O]ur concern is that the trustee will use this order to sort of – as like a battering ram to sort of override and try to convince the agencies that he's not subject – because of the Court's order, he's not subject to the normal oversight regulatory process, which we all seem to be in agreement the trustee must follow."[24]

In response to that point, the Court commented that "I see that Mr. Balasko, on behalf of the United States, is actually on the Zoom," and asked whether the Government "take[s] issue with the representation that the motion was properly served on the United States?"[25]   He responded as follows:

> MR. BALASKO: Your Honor, the United States got copied by email and by – from the docket of the motion.   We reviewed the motion and we made a decision not to object to it.   We don't object to the proposed order, either.

---

[22] Main Case D.I. 351-12.

[23] Main Case D.I. 358.

[24] Sept. 20, 2023 Hr'g Tr. at 28.

[25] *Id.* at 29.

As the Court noted, you're not altering the relationship between the Government and the debtor with regard to the SAM account. It's merely confirming the trustee's rights and authority under the Bankruptcy Code to act in this regard.

And to the extent there are issues between the agencies and TSI, the agency will deal with that. We don't have an objection to the relief being sought today.

THE COURT: Okay. So just – that's helpful and I appreciate it. But just, if I don't – if you don't mind my just being extra clear.

You're satisfied that the form of order submitted to the attached – that was attached to the motion is appropriate and doesn't, by its terms, prejudice the rights of any governmental agency with respect to any matter. Is that right?

MR. BALASKO: Yes, Your Honor. That's correct.[26]

On that basis, the Court overruled the objection and entered the order in the form proposed.[27]

Notwithstanding several orders of the Court, the individual defendants neither met their obligations as representatives of the debtor to cooperate in providing information to the trustee, nor their obligations as defendants to produce documents in discovery. The trustee did, however, serve a subpoena on the company that hosted the debtor's email, and obtained copies of various emails in response to that subpoena.[28] During the recently concluded trial, the Court admitted into evidence several of those documents, over the objection of the individual defendants that the documents were obtained "in violation of the Stored Communications Act."[29]

---

[26] *Id.* at 29-30.

[27] Main Case D.I. 379.

[28] *See* D.I. 614; July 6, 2026 Hr'g Tr. at 71-72.

[29] *See* July 8, 2026 Hr'g Tr. at 132-136.

The motion to recuse states that the Court overruled the objection on the ground that the national security concerns raised by the individual defendants were "not a big deal" because the trustee had served a subpoena.[30]  For the proposition that the Court made that comment, the motion cites to the "July 6, 2026 Trial Tr."   The Court has reviewed the trial transcript and cannot locate any discussion that can fairly be described as the Court waiving off national security concerns as "not a big deal," either on July 6, 2026 or any other date.

Rather, when the Court overruled the defendants' objection to the admissibility of the documents, it first found that TSI's failure to produce the documents themselves did not make the documents inadmissible.  It ruled that the fact that the documents the trustee sought to admit were ones "that TSI was required to produce and that it chose not to doesn't render them inadmissible when obtained from a third party."[31]  Second, in response to the claim that documents were "owned by the United States Government Intelligence Agencies," the Court stated that it would be up to "the Department of Justice" to "come in on their behalf."[32]  The Court also rejected the claim that the emails were inauthentic, and admitted them over any hearsay-based objection on the ground that the emails in question were statements of a party

---

[30] D.I. 635 at 12.

[31] July 8, 2026 Hr'g Tr. at 132.

[32] *Id.* at 132-133.

12

opponent.[33]  When the same objection was raised with respect to other documents, the Court indicated that it would overrule the objection for the same reasons.[34]

### 2.    The criminal referral

The relevant facts as they relate to the criminal referral are set forth in full in the August 9, 2024 letter this Court docketed in which it disclosed the fact of the criminal referral.[35]  In short, the Court concluded that the circumstances described in the Court's January 31, 2023 opinion required it to report the matter to the United States Attorney, which it did by letter dated February 2, 2023.  Deborah Mott was indicted in July 2024.  At an August 23, 2024 hearing on the defendants' motion to stay this adversary proceeding pending Mott's criminal trial, it became apparent that defendants assumed that the chapter 7 trustee had made the criminal referral.  Defendant's counsel argued that the chapter 7 trustee should not be permitted to object to the stay on the grounds that a stay would delay the adversary, since (the defendants contended) the chapter 7 trustee made the criminal referral.  "[M]y point is [that] they're complaining about delay when they're the ones that … did the referral."[36]

The following day, the Court docketed a letter that described its criminal referral and attached a copy of its February 2, 2023 referral letter to the U.S.

---

[33] *Id.* at 133-134.  *See generally* Fed. R. Evid. 801(d)(2).

[34] July 8, 2026 Hr'g Tr. at 136.  Counsel for the trustee set forth further context with respect to the subpoenaed emails on pp. 136-139 of the same transcript.

[35] D.I. 292.

[36] Aug. 8, 2024 Hr'g Tr. at 13.

Attorney.[37]  The Court's August 2024 letter explained that it had no knowledge of whether or not the chapter 7 trustee had also made a criminal referral.  The August 24 letter further explained that the Court did not believe that the question of who made the referral was material to any matter before it.[38]  Nevertheless, in an "abundance of caution," the Court disclosed that it had made the referral and attached its referral letter.

The Court's August 24, 2024 letter also addressed, *sua sponte*, the question whether the referral would affect the Court's ability to preside fairly over the adversary proceeding.  The Court concluded that neither Canon 3(C)(1)(a) of the Code of Judicial Conduct nor 28 U.S.C. § 455(b) required the Court's recusal.[39]  No party took issue with that conclusion in the almost two years that passed between the docketing of the Court's letter on August 24, 2024 and the filing of the recusal motion that is now before the Court.

### Analysis

As an initial matter, although defendants are represented by counsel, they captioned their recusal motion as being filed "Pro Se solely for this Motion."  It appears that the motion is thus not properly before the Court.  Section 1654 of title 28 provides: "In all courts of the United States the parties may plead and conduct their own cases personally *or* by counsel as, by the rules of such courts, respectively,

---

[37] D.I. 292.

[38] *Id.* at 3.

[39] *Id.* at 4.

14

are permitted to manage and conduct causes therein.[40]  The Third Circuit and other courts have indicated that the disjunctive term "or" in § 1654 typically prohibits such a hybrid representation.  As the Third Circuit said in *United States v. Turner*, "*pro se litigants have no right to hybrid representation because a defendant does not have a constitutional right to choreograph special appearances by counsel.*"[41]

The record in this case does not suggest that the individual defendants are no longer represented by counsel.  To the contrary, on July 24, 2026, after the recusal motion was filed, the individual defendants filed a post-trial brief through counsel.[42] The motion to recuse accordingly involves the kind of "hybrid representation" that § 1654 has been read to prohibit.

Nonetheless, the Court will address the recusal motion on the merits because it bears on the integrity of the judicial process and the fundamental fairness of the Court's proceedings.

Section 455(a) of title 28 provides that a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[43]  The test under this provision is objective: whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned.[44]  The provision serves a purpose broader than the interests of the parties

---

[40] 28 U.S.C. § 1654 (emphasis added).

[41] 677 F.3d 570, 578 (3d Cir. 2012) (internal citation, quotation, and brackets omitted).

[42] D.I. 646.

[43] 28 U.S.C. § 455(a).

[44] *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860–861 (1988).

before the court: it is meant to protect "the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted."[45]

At the same time, the standard does not license recusal that is based on speculation, a litigant's dissatisfaction with the substance of a judge's rulings, or positions the judge has necessarily formed in the ordinary course of presiding over the case. As the Supreme Court explained in *Liteky v. United States*, judicial rulings and opinions the judge forms on the basis of facts introduced or events occurring in the course of the proceedings, "almost never constitute a valid basis for a bias or partiality motion," and will support recusal only in the rare case where they "display a deep-seated favoritism or antagonism that would make fair judgment impossible."[46] The bias contemplated by the statute, in other words, must generally stem from a source outside the four corners of the litigation itself.[47] Consistent with this principle, the Third Circuit has repeatedly held that "a party's displeasure with legal rulings does not form an adequate basis for recusal."[48]

## I. None of the Court's rulings regarding national security matters would lead a reasonable person to question the Court's impartiality.

The Supreme Court's landmark opinion in *United States v. Reynolds* holds that the "privilege which protects military and state secrets" is one that "belongs to the

---

[45] *In re Sch. Asbestos Litig.*, 977 F.2d 764, 776 (3d Cir. 1992).

[46] *Liteky v. United States,* 510 U.S. 540, 555 (1994).

[47] *Id.* at 554–556.

[48] *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000).

16

Government and must be asserted by it; it can neither be claimed nor waived by a private party."[49] The Supreme Court made clear in that opinion that this privilege is not one that is to be asserted lightly. As a threshold requirement, "[t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer."[50] If that condition is satisfied, the court then "must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect."[51]

Consistent with these legal principles, at every point in these proceedings at which the defendants have voiced a concern about national security issues, this Court has turned to counsel representing the United States to give it the opportunity to weigh in. Had the Government expressed such a concern, this Court would have exercised "the traditional reluctance to intrude upon the authority of the Executive in military and national security affairs."[52] The Government, however, has at no point in these proceedings expressed any such concern.

Nor is there merit to the defendants' argument that the Court was required to supervise the actions of the chapter 7 trustee with respect to its access to sensitive information. The task of supervising the role of chapter 7 trustees is committed, by

---

[49] *Reynolds*, 345 U.S. at 7 (footnotes omitted).

[50] *Id.* at 7-8 (footnotes omitted).

[51] *Id.* at 8 (footnotes omitted). *See also United States v. Zubaydah*, 595 U.S. 195, 204-205 (2022).

[52] *Id.* at 205 (internal citation, quotation, and brackets omitted).

statute, to the Department of Justice. Under title 28, the Attorney General appoints United States Trustees, who, under the Attorney General's general supervision, must establish and supervise panels of private trustees to serve as chapter 7 case trustees.[53] Accordingly, chapter 7 trustees serve under the appointment and supervision authority of the Department of Justice. Consistent with that division of responsibility, this Court neither supervises nor manages chapter 7 trustees. Rather, the chapter 7 trustee is a litigant who appears before the Court like any other. The Court appreciates that the defendants may take issue with any number of this Court's rulings, on evidentiary and other issues.[54] And if the Court ultimately rules against the defendants, they will be fully entitled to challenge those rulings on appeal. Nothing in this Court's rulings, or in its alleged failure to supervise the conduct of the chapter 7 trustee, provides a basis, however, for a reasonable person to question the Court's impartiality.

Likewise, under the regulatory scheme that the individual defendants have cited, the debtor's asserted status as a cleared government contractor does not vest this Court with any independent authority — let alone obligation — to adjudicate questions of personnel or facility security clearance eligibility. That determination is

---

[53] *See* 28 U.S.C. §§ 581(a)–(c), 586(a)(1), (a)(3), (c).

[54] While defendants point to various other statutory schemes, such as the Stored Communications Act, that the defendants argue were violated by the admission of those documents into evidence. Defendants point to no authority, however, suggesting that violations of any of those statutory schemes – even if it could be raised by a private party rather than by the United States – gives rise to a rule providing for the exclusion of evidence in a civil trial.

18

committed by regulation to the Defense Counterintelligence and Security Agency.[55]

If the defendants believed that the trustee's access to the debtor's SAM.gov account

or CAGE credentials raised an eligibility question, the appropriate avenue for

resolving it was that agency, not an objection lodged in this litigation.

## II.    The circumstances surrounding the referral letter would not lead a reasonable person to question the Court's impartiality.

The defendants' argument that the Court's criminal referral provides a

grounds for recusal also fails on both timeliness and on the merits.   Regarding

timeliness, the Third Circuit has explained that a party seeking recusal under

§ 455(a) must raise the issue promptly upon learning of the facts said to support it.

The requirement exists both to give the court the opportunity to assess the question

before taking further action in the case, and to prevent a party from banking a

potential disqualification argument as a hedge against an unfavorable outcome.[56]

Here, the movants have been aware of the referral, and of the Court's reasoning for

declining to recuse on account of it, since August 9, 2024, when the Court disclosed

both to all parties in a letter filed on the docket of this adversary proceeding.[57]

Nothing about the fact of the referral, or the circumstances that led the Court to

conclude it was statutorily required, has changed in the intervening two-year period.

The defendants did not move for recusal until after the Court held a trial over five

---

[55] *See* 32 C.F.R. pt. 117 (the National Industrial Security Program Operating Manual, often referred to as the "NISPOM rule").

[56] *See In re Kensington Int'l Ltd.*, 368 F.3d 289, 312-313 (3d Cir. 2004).

[57] D.I. 292.

days from July 6, 2026 through July 10, 2026.  The untimeliness of their objection is a sufficient basis to reject it.

The outcome on the merits is, in any event, the same.  The movants invoke the Supreme Court's decisions in *Murchison* and *Williams v. Pennsylvania* for the proposition that a judge who has performed an accusatory function in a matter may not thereafter sit in judgment of it.[58] And while that is a correct statement, both cases involved circumstances materially different from those presented here.  In *Murchison*, the judge personally developed the evidence underlying the charge, acting in the words of the Court as a "one-man grand jury."[59] In *Williams*, the judge had personally approved, in his prior capacity as a prosecutor, the decision to seek the death penalty in the very case before him.[60]

By contrast, the referral at issue here was based entirely on findings the Court made in its January 31, 2023 Memorandum Opinion, reached after an adversarial evidentiary hearing at which Ms. Mott was represented by counsel and had a full opportunity to contest the evidence presented.  The Court did not investigate outside the record of the case before it, did not gather evidence of its own, and took no role in the decision whether to prosecute — a decision committed to the discretion of the United States Attorney.  In making the referral, the Court merely complied with the requirement in § 3057(a) of title 18 that "[a]ny judge, receiver or trustee" who has

---

[58] *See In re Murchison*, 349 U.S. 133 (1955); *Williams v. Pennsylvania*, 579 U.S. 1 (2016).

[59] *Murchison,* 349 U.S. at 137-139.

[60] *Williams,* 579 U.S. at 8.

"reasonable grounds for believing" that a bankruptcy-related offense has been committed "shall report" the matter to the United States Attorney.

The movants' theory is, in essence, a challenge to the judgment that Congress made in § 3057(a). By its terms, this statute contemplates that a judge's reporting obligation will arise from what the judge has learned in presiding over the very proceeding in which the violation is believed to have occurred. In the ordinary course, there is no other source from which a judge's "reasonable grounds for believing" could arise. If compliance with that mandatory duty by the presiding judge itself created a basis for disqualification, the judge would simultaneously be disqualified by the act of doing so from continuing to preside over the case in which the reportable conduct arose. Section 3057(a) does not instruct a referring judge to thereafter recuse, and the Court is not aware of any authority that reads that statute or § 455(a) to require recusal in such circumstances.

Nor is the passage of time between the referral and its disclosure a basis for recusal. Ordinarily, federal criminal investigations are not disclosed before an indictment is issued.[61] Mott was indicted in July 2024. As the Court's August 24, 2024 disclosure letter explained, the Court disclosed the fact of the referral the day after the question whether the chapter 7 trustee had made the referral was raised as an issue in this adversary proceeding.

---

[61] *See, e.g., Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 (1979) (cataloging the reasons why "preindictment proceedings" are not typically "made public").

## Conclusion

For the foregoing reasons, the motion to recuse will be denied.  The Court will issue a separate order so providing.


Dated: July 27, 2026

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

22